JUDGE HOLWELL

07 CIV 8488

Edwin G. Schallert, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY, | : | |
| Plaintiff, | : | |
| vs. | : | 07 Civ. _____ |
| STATE STREET BANK AND TRUST COMPANY and STATE STREET GLOBAL ADVISORS, INC., | : | **COMPLAINT** |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC"), by

its attorneys, Debevoise & Plimpton LLP, for PRIAC's complaint against defendants

State Street Bank and Trust Company ("SSB") and State Street Global Advisors, Inc.

("SSgA") (together, "State Street"), alleges upon knowledge with respect to PRIAC and

its own acts, and upon information and belief with respect to all other matters, as follows:

OCT 0 1 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## The Nature of the Action

1.      This action arises out of State Street's deceptive, imprudent and incompetent performance of its obligations as a fiduciary, in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  State Street acted as a fiduciary and investment manager with respect to the assets invested in the Intermediate Bond Fund and the Government Credit Bond Fund (together, the "Bond Funds").  The Bond Funds were collective bank trusts that PRIAC made available through separate accounts to retirement plans and plan participants.

2.      State Street described each of the Bond Funds as an "enhanced bond index" fund that sought "stable, predictable returns" slightly above an index consisting of investment-grade U.S. Government and corporate bonds.  State Street stated that the objective of its "enhanced" management was to add modest value over an index "while mirroring its risk profile."  State Street represented that its investment decisions followed a "disciplined, risk-controlled investment process" and a "diversified core fixed income allocation" strategy that allowed it "to protect our portfolios from risk driven by random and unpredictable events."

3.      Although the full dimensions of State Street's misconduct have not yet been revealed, PRIAC has recently learned that State Street – without advising PRIAC or the retirement plan and plan participant investors – radically altered the investment strategies of the Bond Funds.  For example, State Street took undisclosed, highly leveraged positions in mortgage-related financial derivatives.  State Street thereby concentrated the holdings of the Bond Funds in these assets and exposed the Bond Funds

to an inappropriate level of risk for an enhanced bond index fund. State Street's approach produced catastrophic results during the summer of 2007 as the Bond Funds diverged dramatically from their benchmarks. Although both funds were supposed to closely track benchmark indexes, with a "maximum" annual difference from the benchmark of 0.75%, in just two months the Bond Funds fell short of their respective benchmarks by approximately 28% and 14%. As events unfolded, State Street provided untimely, incomplete and misleading information to PRIAC.

4.     As a result of State Street's misconduct, PRIAC separate accounts that held the assets of about 165 retirement plans and approximately 28,000 individual plan participants invested in the Bond Funds lost roughly $80 million.

## Subject Matter Jurisdiction

5.     This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because the action arises under ERISA.

## The Parties

6.     PRIAC is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. PRIAC is an indirect wholly-owned subsidiary of Prudential Financial, Inc. PRIAC offers an array of financial products and services, including pension and retirement-related services and administration.

7.     SSB, which does business under the name "State Street Bank," is a wholly owned subsidiary of State Street Corporation, a publicly registered financial holding company. SSB is a bank organized under the laws of the Commonwealth of

Massachusetts, with its principal place of business in Boston, Massachusetts. SSB provides investment servicing and investment management services; as of June 30, 2007, it had $1.9 trillion of assets under management.

8.    SSgA, a wholly-owned subsidiary of State Street Corporation, is a Delaware corporation with its principal place of business in Boston, Massachusetts. "State Street Global Advisors" has described itself as "a division" of SSB and as "the investment arm" of State Street Corporation.

### Personal Jurisdiction and Venue

9.    This Court has personal jurisdiction over defendants pursuant to 29 U.S.C. § 1132(e)(2) because (a) ERISA provides for nationwide service of process and defendants have continuous and systematic contacts with the United States and (b) defendants transact business in this District.

10.    Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because (a) relevant retirement plans are administered in this District and (b) a defendant may be found in this District.

### The Underlying Arrangements

11.    PRIAC provides retirement products and services to defined contribution and defined benefit plans. Under its Alliance Fund program, PRIAC offers institutional retirement plan sponsors access to a wide variety of mutual funds and bank collective trusts managed by recognized investment professionals, enabling plan sponsors to assemble a menu of investment choices for retirement plans and plan participants. PRIAC establishes a separate account for each Alliance Fund and invests plan assets in a

4

single underlying mutual fund or bank collective trust account in accordance with investment choices made by plans and plan participants.

12.    Prior to April 1, 2004, the Bond Funds were made available to retirement plans and plan participants through the retirement unit of CIGNA Retirement & Investment Services ("CIGNA Retirement"). Effective April 1, 2004, CIGNA Retirement became part of PRIAC.

13.    SSB, as trustee, established the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, dated February 21, 1991, most recently amended and restated on August 15, 2005 (the "Bank Collective Trust"). Funds that are part of the Bank Collective Trust, including the Bond Funds, are under the exclusive management and control of SSB. Pursuant to the Bank Collective Trust, SSB issued units of the Bond Funds to the Alliance Funds.

14.    Participation in the retirement plans that invest in the Bank Collective Trust is limited to qualified investors who maintain various pension plan accounts pursuant to ERISA and the Internal Revenue Code. Under ERISA the assets of each Alliance Fund separate account are treated as the assets of the pension plans investing in such separate account, and PRIAC is a fiduciary with respect to such assets as that term is defined in Section 3(21) of ERISA.

15.    CIGNA Retirement and "State Street Global Advisors, a division of State Street Bank and Trust Company ('State Street')" executed the Second Amended and Restated Investment Management Agreement in June 2003 (the "IMA"). Pursuant to the IMA, CIGNA Retirement appointed State Street as Investment Manager as that term is

defined in § 3(38) of ERISA, and State Street acknowledged that it is a fiduciary as that term is defined in § 3(21) of ERISA. In the IMA, CIGNA Retirement represented and warranted that it too was a fiduciary.

16.     The IMA provides that "[t]he Funds will be maintained in accordance with investment objectives, the current form of which is attached hereto as Exhibit 1." The IMA stated that the investment objective of the Government Credit Bond Fund was "to match or exceed the return of the Lehman Brothers Government Credit Bond Index," and the investment objective of the Intermediate Bond Fund was "to match or exceed the return of the Lehman Brothers Intermediate Government Corporate Bond Index."

17.     State Street had sole investment discretion as to the Bond Funds. PRIAC had no control over the investment process or investment decisions of the Bond Funds. PRIAC prepared on a quarterly basis "Fund Fact Sheets" for each of the Alliance Funds that summarized each fund's objective and other descriptive information for plan sponsors and plan participants. PRIAC relied upon information provided to it by State Street in preparing Fund Fact Sheets.

### State Street's Representations

18.     From in or about 1996 until 2007, State Street's descriptions of the Bond Funds consistently emphasized its control and avoidance of risk to investors in the Bond Funds. Throughout that period, State Street characterized its "core fixed investment approach" as "an enhanced bond indexing approach." For example, State Street explained: "The objective of enhanced management is to add value over the index while

mirroring its risk profile. As a result, our strategy combines the predictable strengths of passive management with the repeatable aspects of active management."

19.     State Street disseminated a chart labeled "What we do and why. . . ." The chart highlighted State Street's avoidance of "High Risk" approaches that resulted in "Unpredictable Exposure to Random Events," while stressing the "Low Risk" features of its approach. State Street represented that it used a "disciplined, risk-controlled framework" and that it had been able "to protect our portfolios from risks driven by random and unpredictable events."

20.     State Street's descriptions of the Bond Funds consistently stressed its control and avoidance of risk in numerous other ways. For example:

(a)     The Bond Funds invested in fixed-income securities, as opposed to higher-risk equity securities, and State Street stated that it invested only in investment-grade securities.

(b)     State Street repeatedly described the objective of the Bond Funds as seeking to achieve "stable, predictable returns" that would match or exceed a benchmark index by modest amounts (for example, 20-30 basis points, where a basis point equals one one-hundredth of one percent, or .01%).

(c)     State Street used conservative fixed-income indexes as benchmarks for the performance of the Bond Funds. The Lehman Brothers U.S. Government/Credit Index, as of year-end 2006, consisted of more than two-thirds U.S. Government and Government-related bonds, and one-third

corporate bonds.  The components of the benchmark index were all investment grade, and nearly two-thirds of the index components were rated AAA, the highest credit ranking assigned by Standard & Poor's, a nationally recognized credit rating agency.  The index excluded Collateralized Mortgage Obligations, "bonds with equity-type features" and "structured notes with embedded swaps."  The Lehman Brothers Intermediate U.S. Government/Credit Index is similar but includes fixed-income securities with maturities from one to ten years.

(d)     State Street described the difference between the performance of the Bond Funds and the performance of the benchmark indices in terms of "tracking error."  State Street explained that its tracking error calculation "describes how the [Bond Fund's] portfolio's return may differ from the benchmark return over a one-year period."  State Street represented that the targeted tracking error of the Bond Funds was in the range of 40-60 basis points, with a "maximum" tracking error of 75 basis points, or 0.75%.

(e)     State Street approved Fund Fact Sheets that described the Intermediate Bond Fund as suitable for "moderate risk investors" who sought higher current returns than are available in short-term bonds with "less volatility than a long-term bond" and with only "potentially moderate fluctuations in account balances."

### State Street's Conduct

21.    It now appears that, without advising PRIAC or the retirement plan or plan participant investors, State Street changed the investment strategy and objectives of the Bond Funds. State Street eventually devoted a significant portion of the Bond Funds' investment strategy to mortgage-related financial instruments. These included derivatives based on asset-backed securities that overwhelmingly derived their contingent liability from home equity loans and other mortgage-backed securities. As one example, State Street recently revealed that it held for several months during 2007 a long position on the BBB ABX Index, which State Street described as "relatively new" and as "a synthetic index whose returns are linked to 20 sub-prime US mortgage pools."

22.    State Street's altered investment strategy resulted in highly leveraged portfolios that magnified the Bond Funds' risks and potential exposure to losses. In late August 2007, State Street disclosed to PRIAC for the first time that its "market value adjusted net notional leverage" for the Intermediate Bond Fund as of July 31 was 4.31, while the comparable figure for the Government Credit Bond Fund was 5.66. The notional exposure to mortgage-related financial instruments apparently amounted to billions of dollars in additional exposure to credit, market and interest rate risks, an amount far beyond the dollars invested by retirement plans and plan participants in the Bond Funds.

23.    Although purporting to manage enhanced index funds that would closely track the performance and mirror the risk profile of their benchmark indexes, State Street imprudently exposed the Bond Funds to market volatility and risks far out of line with the

investments that comprise the Lehman benchmark indexes. By its excessive leveraging and undue concentration of exposure to mortgage-related financial instruments, State Street created risks that were markedly at odds with its stated investment objectives and with its descriptions of the Bond Funds. Moreover, State Street misrepresented to PRIAC and to the retirement plan and plan participant investors the true nature of the risks inherent in State Street's approach to the Bond Funds.

24.     State Street agreed to be bound by the high standards imposed on it under ERISA as a fiduciary of retirement plan savings. Yet, while it received millions of dollars in fees from the Bond Funds, State Street failed to exercise the standard of care of a prudent investment manager in the same or similar circumstances charged with managing retirement plan assets.

25.     State Street compounded its breaches of fiduciary duties in violation of ERISA by providing untimely, incomplete, and misleading information as the problems arising from the mismanagement of the Bond Funds unfolded. For example:

(a)     On or about August 1, 2007, PRIAC told State Street that it needed "to know whether there has been any intentional, material change to how this commingled trust [the Intermediate Bond Fund has] been managed over the last 5 years." State Street responded by advising PRIAC that "[t]here has been no material change in the way this Fund has been managed."

(b)     On or about August 2, 2007, PRIAC requested that State Street provide it with an updated report on characteristics of the Intermediate Bond Fund.

State Street did not respond to this request for about two weeks, during which time the performance of the fund deteriorated.

(c)     In an email on August 14, 2007, State Street tried to explain its inability to provide the information about the Intermediate Bond Fund that PRIAC had requested two weeks earlier:

> I wish I had the information that you are looking for and I apologize again for not delivering it by now.  The recent turmoil in the fixed income market has affected almost all of our active fixed income funds and we're trying to answer questions as they come in.  To say the least, it's been overwhelming.
>
> It's actually been well over 14 days since we promised that we would get proper characteristics for the Fund and we have failed to deliver.

(d)     On August 23, 2007, PRIAC requested that State Street  provide written answers to several questions regarding the Bond Funds.  State Street provided incomplete and inadequate responses to these questions.

(e)     Weeks after PRIAC requested that State Street redeem remaining amounts in the Bond Funds, State Street was unable to provide a full and fair accounting.  In mid-September 2007, State Street informed PRIAC that it was restating prices of one of the Bond Funds dating back to August 23, resulting in lower redemption proceeds.

26.     In a conference call on Wednesday, August 22, 2007, representatives of PRIAC questioned State Street about the deteriorating value of the Bond Funds. Representing State Street on the call were Mark Flinn, the relationship manager who

dealt with PRIAC, and Michael Wands, State Street's head of North American Fixed Income. During this call, State Street acknowledged that the Bond Funds had in recent months held highly leveraged positions and had been exposed to the mortgage-related investments in a highly concentrated fashion. Mr. Wands stated in words or substance that State Street's strategy had changed over time and that State Street "forgot there was a lot more risk in the strategy" that was not reflected in the volatility of the funds. When asked how PRIAC could have known of both the leverage and increased sector concentration of the Bond Funds, Mr. Wands responded in words or substance that these were "good questions," and admitted that State Street "didn't do a very good job" of informing PRIAC of these changes.

27.     Preliminary estimates indicate that, in just two months starting on July 1, 2007, the benchmark indexes for the Bond Funds increased by 3% and 2% while the corresponding Bond Fund returns declined by 25% and 12%, respectively. In late September 2007, State Street reported that the value of the asset-backed investments it had made in the Bond Funds had declined by nearly 70% in August 2007 alone.

28.     On August 29, 2007, PRIAC requested that State Street redeem all remaining amounts in the Bond Funds. State Street subsequently terminated and liquidated the Bond Funds.

29.     The losses to the PRIAC separate accounts from State Street's misconduct relating to the Bond Funds, measured by the difference between the performance of the Bond Funds and their benchmark indexes from July 1, 2007 through redemption, are currently estimated to be approximately $80 million.

**Claim for Relief**
**(Violations of ERISA)**

30.     PRIAC incorporates the allegations set forth in paragraphs 1 through 29.

31.     Under Section 3(21) of ERISA, 29 U.S.C. § 1002(21), State Street was at all relevant times an ERISA fiduciary as to the retirement plans and plan assets invested in the Bond Funds.

32.     Under Section 3(38) of ERISA, 29 U.S.C. § 1002(38), State Street was at all relevant times an investment manager of the Bond Funds that were made available to retirement plans and plan participants through PRIAC separate accounts.

33.     As a fiduciary and as an investment manager under ERISA, State Street owed a duty of care and loyalty to retirement plans with respect to the management of, and communications about, the investments in the Bond Funds.  Pursuant to Section 404(a) of ERISA, 29 U.S.C. § 1104(a), State Street was obligated to discharge its responsibilities with the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

34.     State Street breached its duties to the retirement plans, in violation of Section 404(a) of ERISA, by, among other things, (a) misrepresenting the investment strategy of the Bond Funds and failing to notify investors of State Street's change in investment strategy, (b) exposing the Bond Funds to excessive, undisclosed levels of risk through inappropriate leverage and concentration of investments in mortgage-related financial instruments that are not in the benchmark indexes; (c) fundamentally altering

the investment strategy for the Bond Funds in a way that was inconsistent with its prior representations to PRIAC and the retirement plan and the plan participant investors; and (d) failing to maintain sufficient diversification in the investments held by the Bond Funds in light of their stated objectives.

35.     Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by ERISA is personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and is subject to such other equitable or remedial relief as the court may deem appropriate.

36.     Under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), a civil action may be brought by a fiduciary for appropriate relief under Section 409 of ERISA, 29 U.S.C. § 1109.  PRIAC is a fiduciary with respect to the assets of the separate accounts and the retirement plans within the meaning of Section 502(a)(2).

37.     Under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), a civil action may be brought by a fiduciary to enjoin any act or practice that violates any provision of ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the plan.  PRIAC is a fiduciary within the meaning of Section 502(a)(3).

38.   PRIAC has a legal and equitable right to obtain relief on behalf of the separate accounts and the retirement plans for losses resulting from State Street's violations of ERISA.

39.   Based on its violations of ERISA, State Street is subject to the equitable remedies of restitution and disgorgement.

## **Relief Sought**

PRIAC respectfully requests that this Court enter a Judgment, in favor of PRIAC and against State Street, providing as follows:

A.   State Street shall pay and restore to the separate accounts maintained by PRIAC an amount to be determined by the Court that will effect full restitution and compensation for the losses that resulted from State Street's violations of ERISA, together with pre-judgment interest running from the dates such losses were incurred.

B.   State Street shall pay and disgorge to the separate accounts maintained by PRIAC an amount to be determined by the Court equal to all fees and other amounts it received for providing services in connection with the Bond Funds, together with pre-judgment interest running from the dates such amounts were received.

C.   State Street shall be permanently enjoined from further breaching, violating or failing to discharge its duties under ERISA.

D.   PRIAC shall be awarded its attorneys' fees and costs, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

E.   PRIAC, in its capacity as a fiduciary and on behalf of the separate

accounts and the retirement plans, shall be awarded such other and further

relief as the Court deems just and proper.

Dated: New York, New York
       October 1, 2007

DEBEVOISE & PLIMPTON LLP

By _Edwin G. Schallert_
Edwin G. Schallert
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Plaintiff Prudential
Retirement Insurance and Annuity Company

16