PAUL, HASTINGS, JANOFSKY & WALKER LLP
Barry Sher (BS-4252)
Daniel B. Goldman (DG-4503)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000
*Counsel for Defendants State Street Bank and Trust Company
and State Street Global Advisors, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. ERISA LITIGATION<br><br>This document relates to:<br>07-CV-8488 (*Prudential Retirement Insurance and Annuity Company v. State Street Bank and Trust Company and State Street Global Advisors, Inc.*) | Index No. 07-CV-8488 (RJH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Dated:        New York, New York
             February 4, 2008

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

PRUDENTIAL'S REIMBURSEMENT OF THE PLANS ....................................... 3

ARGUMENT ........................................................................................................... 7

I.    PRUDENTIAL'S REIMBURSEMENT OF THE REDEEMED PLANS BARS IT
      FROM SEEKING RECOVERY ON THEIR BEHALF ................................... 7

      A.    Prudential's Claims on Behalf of the Redeemed Plans Should be
            Dismissed for Lack of Standing ......................................................... 7

      B.    In the Alternative, State Street is Entitled to Summary Judgment ...... 11

II.   PLAINTIFF'S CLAIMS PURSUANT TO ERISA SECTION 502(a)(3) MUST
      BE DISMISSED FOR THE ADDITIONAL REASON THAT THE
      COMPLAINT CONTAINS NO VIABLE CLAIMS FOR EQUITABLE RELIEF ........ 13

      A.    Standard of Review ............................................................................ 13

      B.    The Complaint Contains No Viable Claims for Equitable Relief ........ 14

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006)................................................................................8

*Alton Mem. Hosp. v. Metro. Life Ins. Co.*,
    656 F.2d 245 (7th Cir. 1981) ...................................................................10, 12

*Am. Home Assur. Co. v. Crowley Ambassador*,
    No. 01 Civ. 3605 (PKL), 2003 WL. 328301 (S.D.N.Y. Feb. 11, 2003)............12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).......................................................................................11

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..................................................................................14

*Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005)............................................................................8

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006)....................................................................10, 15

*D'Amico v. City of N.Y.*,
    132 F.3d 145 (2d Cir. 1998)..........................................................................11

*Devlin v. Empire Blue Cross and Blue Shield*,
    274 F.3d 76 (2d Cir. 2001).............................................................................13

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994).............................................................................14

*Granite State Outdoor Adver., Inc. v. Zoning Bd. of City of Stamford*,
    38 Fed.Appx. 680, 2002 WL. 1369857 (2d Cir. 2002).......................................7

*Great-West Life and Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)................................................................................15, 16

*Harley v. Minn. Mining and Manuf. Co.*,
    284 F.3d 901 (8th Cir. 2002) ..........................................................................8

*Lee v. Burkhart*,
    991 F.2d 1004 (2d Cir. 1993)........................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page**

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir. 1996)....................................................................14

*Levin v. Harleston,*
    966 F.2d 85 (2d Cir. 1992)..................................................................17

*In re Long Island Lighting Co.,*
    129 F.3d 268 (2d Cir. 1997)...............................................................13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)...................8

*Makarova v. U.S.,*
    201 F.3d 110 (2d Cir. 2000)................................................................7

*In re Marsh Erisa Litig.,*
    No. 04 Civ. 8157, 2006 WL. 3706169 (S.D.N.Y. Dec. 14, 2006)...................15

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)..............................................................9, 10, 12

*McCullough v. Aegon USA, Inc.,*
    No. 06-CV-0068, 2007 WL. 3232202 (N.D.Iowa Oct. 30, 2007).................8

*Merck & Co., Inc. v. MediPlan Health Consulting, Inc.,*
    434 F. Supp. 2d 257 (S.D.N.Y. 2006)................................................12

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993).......................................................................14, 15

*N.Y.S. Dist. Council of Carpenters Pension Fund v. Savasta,*
    No. 99 Civ 11362, 2005 WL. 22872 (S.D.N.Y. Jan. 4, 2005)...................16, 17

*Nechis v. Oxford Health Plans, Inc.,*
    421 F.3d 96 (2d Cir. 2005)..............................................................11, 17

*Peregrine Myanmar Ltd. v. Segal,*
    89 F.3d 41 (2d Cir. 1996)....................................................................17

*Richards v. FleetBoston Fin. Corp.,*
    427 F. Supp. 2d 150 (D.Conn. 2006)....................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Scotto v. Almenas,*
    143 F.3d 105 (2d Cir. 1998)................................................................11

*Strougo v. Bassini,*
    282 F.3d 162 (2d Cir. 2002)................................................................14

*Sylman v. Equitable Life Assur. Soc'y. of U.S.,*
    No. 87-C 1987 WL. 17076 (N.D.N.Y. July 29, 1987)........................................12

## STATUTES

29 U.S.C. § 1109................................................................9, 10, 12

29 U.S.C. § 1132(a)(2)................................................................9, 10, 12

29 U.S.C. § 1132(a)(3)................................................................3, 13-17

Fed. R. Civ. P. 12(b)(1)................................................................1, 7

Fed. R. Civ. P. 12(b)(6)................................................................1, 13

Fed. R. Civ. P. 56(b)................................................................11

Defendants State Street Bank and Trust Company and State Street Global Advisors[1] (collectively, "State Street") respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed in this action ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of standing, and 12(b)(6), for failure to state a claim, or in the alternative for summary judgment.

## PRELIMINARY STATEMENT

Prudential Retirement Insurance and Annuity Company ("Prudential") purports to bring this suit under ERISA as a fiduciary on behalf of retirement plans (the "Plans") that invested in separate accounts established by Prudential (the "Prudential Separate Accounts") to invest in two actively-managed State Street funds, the Government Credit Fund and the Intermediate Bond Fund (collectively, the "Funds"). Prudential seeks to recover the Plans' alleged losses arising out of their investment in the Funds, which lost value in the wake of recent unprecedented market conditions.

However, Prudential has now produced documents showing that out of the 215 plans that were invested in the Funds, 191 of them (the "Redeemed Plans") have already been paid $79 million by Prudential in what Prudential represented to the Plans were "Total Make Whole" payments to cover "the losses" allegedly "caused by State Street." Although Prudential has subsequently described these payments as loans to the Redeemed Plans, they are nothing of the sort. The documents make clear that the Redeemed Plans *never*, under any circumstances, have to pay back the amounts they have received. The "Total Make Whole" payments were just

---

[1] State Street notes that State Street Global Advisors, Inc. is erroneously named as a defendant. State Street Global Advisors, Inc. is a Delaware holding company with no employees and no operations, and has nothing to do with Prudential or the Funds. "State Street Global Advisors," a different entity, is a division of State Street Bank and Trust Company.

that – payments to make the Redeemed Plans whole for any alleged losses. Calling these payments "loans" to the Redeemed Plans is a misleading characterization.

The only aspect of the Total Make Whole payments involving a so-called loan arises from the convoluted structure Prudential set up between different accounts within Prudential itself. Under Prudential's plan, one arm of Prudential "loaned" $79 million to the Prudential Separate Accounts, which are nothing more than accounts set up within Prudential in order to aggregate the investments of participating plans for the purpose of making pooled investments in the State Street Funds. The documents make clear that the Redeemed Plans were required to be redeemed out of the Prudential Separate Accounts upon receipt of the Total Make Whole payments. Thus, the Redeemed Plans no longer have any interest in the Prudential Separate Accounts. As a result, whether the Prudential Separate Accounts may have an obligation to pay back any of the $79 million that may be recovered in this litigation is irrelevant, as that is purely intra-Prudential bookkeeping and does not impose any obligation on the Redeemed Plans whatsoever.

Nor will the Redeemed Plans receive any benefit from any recovery of the $79 million from State Street. Prudential's Complaint makes it clear that any such recovery would go directly to the Prudential Separate Accounts, not to the Plans. And since the Redeemed Plans no longer have any interest in the Prudential Separate Accounts, they will never see a dime of any such recovery.

Prudential therefore lacks standing under Article III of the United States Constitution and under ERISA to pursue claims on behalf of the Redeemed Plans, for they have already been made whole for "the losses" and will not benefit from the relief Prudential seeks. Prudential cannot use ERISA provisions designed exclusively to provide recovery for injured

plans as a means to recover money for itself.  In the alternative, State Street is entitled to partial

summary judgment that the "damages" Prudential seeks on behalf of the Redeemed Plans may

not include any sums that Prudential has already paid to them, any recovery of which will benefit

only Prudential, not the Plans.

Prudential's attempt to assert a claim under Section 502(a)(3) of ERISA fails for

an additional reason.  That section allows only equitable relief, not claims for damages.  Despite

the "equitable" label Prudential applies to its claims, in reality it seeks monetary damages at law

– specifically an amount equal to the Plans' alleged investment losses.  Section 502(a)(3) does

not allow such relief, and Prudential cannot recast its claim as equitable by seeking an injunction

for "restitution and disgorgement."  Courts pierce such attempts to mask the substance of Section

502(a)(3) claims, and dismiss them.  The same is true of Prudential's claim for an injunction

preventing State Street from "further" breaching or violating ERISA.  Apart from the

impropriety of such an injunction, Prudential acknowledges in the Complaint that it has already

terminated the Plans' investment in the Funds, so there is nothing to enjoin.

In short, Prudential has no standing to bring this action and no right to the relief it

seeks.  State Street's motion to dismiss or in the alternative for summary judgment should be

granted.

## PRUDENTIAL'S REIMBURSEMENT OF THE PLANS

Prudential first disclosed its reimbursement of the Redeemed Plans in a form 8-K

filed with the SEC on October 1, 2007, the same day on which this lawsuit was filed, which

stated that Prudential would reimburse the Redeemed Plans for their alleged losses:

> PRIAC is … implementing a process under which affected plan
> clients that authorize PRIAC to proceed on their behalf will receive
> payments from funds provided by PRIAC for the losses referred to
> above. The Company's consolidated financial statements, and the
> results of the Retirement segment included in the Company's

> Investment Division, for the quarter ended September 30, 2007
> will include a pre-tax charge, within adjusted operating income and
> income from continuing operations before income taxes, of
> approximately $80 million, reflecting these payments to plan
> clients and certain related costs.[2]

Prudential form 8-K dated October 1, 2007 (Goldman Decl. Exh. 1); see also Prudential form 8-

K dated October 31, 2007 at Exh. 99.0, p.4 (Goldman Decl. Exh. 2) and Prudential form 10-Q

dated November 1, 2007 at 63 (Goldman Decl. Exh. 3) (disclosing charge against earnings).

Notably, in contrast to Prudential's description of its reimbursement of the Plans as a "loan,"

none of these disclosures state that the Plans are subject to any repayment obligation whatsoever.

Also in October 2007, Prudential distributed to the Plans documents entitled

"Explanation and Authorization of Prudential's Process for Addressing Your Defined

Contribution [/Defined Benefit] Plan's Losses in the State Street Intermediate Bond Fund" and

"Explanation and Authorization of Prudential's Process for Addressing Your Defined Benefit

Plan's Losses in the State Street Government Credit Bond Fund" (Goldman Decl. Exhs. 4, 5 and

6)[3] (collectively, the "Explanation and Authorization").  According to Prudential's Explanation

and Authorization:

> Prudential is...implementing a process allowing your Plan to
> receive immediate payment for *the losses caused by State
> Street*....[b]efore December 1, 2007, your Plan must decide
> whether to receive an 'up front' payment *for the losses caused by
> State Street* by granting Prudential Retirement the Authorization
> contained in the 'Formal Plan Authorization' below.

---

[2] That Prudential unilaterally decided to reimburse the Plans for their investment losses is not
surprising given Prudential's own exposure in this matter.  Prudential – which was a fiduciary for
the Redeemed Plans and, unlike State Street, contracted and communicated directly with the
Redeemed Plans – apparently inaccurately represented to the Plans that one of the two Funds
was a passive index fund, despite repeated disclosures by State Street to Prudential that the Fund
was actively managed.  See, e.g., First Quarter 2007 Prudential fact sheet entitled "State Street
Global Advisors Passive Intermediate Bond Index SL Series Fund"(Goldman Decl. Exh. 7).
[3]  With the exception of the name of the applicable Fund, these documents are substantively
identical.

Explanation and Authorization at 1-3 (emphasis added).

The process that Prudential followed to reimburse the Redeemed Plans for "the losses" allegedly "caused by State Street" was as follows:

- "Prudential Retirement will make a loan to the Separate Account in an amount equal to:

    (i) the difference between the return on the Benchmark Index and the return actually received by your Plan from the State Street Fund (the 'Benchmark Make Whole Amount'). The Benchmark Make Whole Amount will be calculated for the period from July 1 through August 29, 2007 (or for the portion of such period that your participants invested in the Separate Account)….; plus

    (ii) a return on the Benchmark Make Whole Amount for the period from August 29 (or the date of any earlier redemption) to October 8, 2007, such return to match the return on the Benchmark Index (such return, plus the Benchmark Make Whole Amount being the 'Total Make Whole Amount')"

- The Plan will then "receive a special redemption payment from the Separate Account equal to the Total Make Whole Amount."

- "The method of calculation of the Benchmark Make Whole Amount means that your Plan will not be paying Prudential Retirement or State Street any investment management fees for July and August."

- The Plan "will redeem its remaining investment interest in the Separate Account and will instruct Prudential Retirement on the substitute investment option that will receive the redemption proceeds."

- "Prudential Retirement will not charge any interest or fees on the loan it makes to the Separate Account. The loan will be repayable from the proceeds of the lawsuit against State Street."

Explanation and Authorization at 2-3. As a result, each of the Redeemed Plans received a "special redemption payment" equal to the amount of the losses Prudential attributed to State Street's conduct, and the Redeemed Plans' interest in the Separate Account was redeemed so that the Redeemed Plans no longer have any interest in the Prudential Separate Accounts.

Critically, pursuant to the Explanation and Authorization, the Redeemed Plans are under no obligation to repay the "loan" under any circumstances. As Prudential emphasized:

> Please remember that the loan described above is from Prudential Retirement to the Separate Account, and is repayable only by the Separate Account. Prudential Retirement can obtain repayment of the loan only from your Plan's portion of the proceeds of the State Street lawsuit. *If the lawsuit proceeds are not sufficient to repay the loan made by Prudential Retirement, Prudential Retirement will forgive the unpaid balance of the loan. Neither your Plan nor your participants will be obligated to re-pay to Prudential Retirement or to the Separate Accounts any such unpaid balance from any source other than from the proceeds of the State Street lawsuit.*

Explanation and Authorization at 3-4 (emphasis added).

According to Prudential, 191 out of 215 eligible Plans accepted Prudential's offer, and received $79 million in "Total Make Whole Amounts" to reimburse them for the alleged "losses caused by State Street." Defendants' Statement of Material Undisputed Facts at ¶ 2 and ¶ 4.

## ARGUMENT

### I.

### PRUDENTIAL'S REIMBURSEMENT OF THE REDEEMED PLANS BARS IT FROM SEEKING RECOVERY ON THEIR BEHALF

By Prudential's own admission, the Redeemed Plans, on whose behalf Prudential purports to sue, have already been reimbursed for their alleged "losses caused by State Street." Despite Prudential's attempts to structure this transaction as a "loan," the Redeemed Plans are under no obligation to repay anything. As Prudential represented to the Plans, they have been "totally made whole." Prudential thus lacks standing under both Article III of the Constitution and under ERISA to prosecute its claims. Further, it cannot attempt to recover damages on behalf of the Redeemed Plans when they have been made whole and any recovery would benefit only Prudential.

**A.  Prudential's Claims on Behalf of the Redeemed Plans Should be Dismissed for Lack of Standing**

When the factual basis of the Court's jurisdiction is disputed, as it is here, it is the Plaintiff's burden to establish the Court's jurisdiction, and the Court may consider factual material beyond the scope of the pleadings, such as the details of Prudential's reimbursement of the Redeemed Plans. Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

"To establish [Article III] standing, a plaintiff must show that (1) he has suffered an 'injury in fact'; (2) the injury is causally connected to the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." Granite State Outdoor Adver., Inc. v. Zoning Bd. of City of Stamford, 38 Fed.Appx. 680, 684, 2002 WL 1369857 at *2 (2d Cir.

7

2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Thus, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006).

In Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 200 (2d Cir. 2005), the Second Circuit held that "obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss; to wit, that they have suffered an injury in fact." See also Richards v. FleetBoston Fin. Corp., 427 F.Supp. 2d 150, 175 (D.Conn. 2006) ("A showing of individual loss by the plaintiff is required for claims seeking restitution or disgorgement, even when the plaintiff premises such claims on violations of section 404."); Harley v. Minn. Mining and Manuf. Co., 284 F.3d 901 (8th Cir. 2002) (Article III standing lacking where allegedly imprudent plan sponsor contributed amounts sufficient to put the plan's portfolio into a surplus position, because plan participants suffered no harm); McCullough v. Aegon USA, Inc., No. 06-CV-0068-LRR, 2007 WL 3232202 (N.D.Iowa Oct. 30, 2007) (same; surveying Harley and other authorities addressing ERISA standing issues).

With respect to the Redeemed Plans, all of Prudential's claims fail this Article III test. The Redeemed Plans, according to Prudential, have been compensated for "the losses caused by State Street" through "Total Make Whole" payments, and these payments are irrevocable. Any recovery would go to the Prudential Separate Accounts, in which the Redeemed Plans no longer have any interest, and *not* to the Redeemed Plans. Complaint at 15 (demanding payment of judgment *to Prudential Separate Accounts*). The Redeemed Plans will not benefit from any recovery by Prudential of the $79 million from State Street. See

8

Prudential's Explanation and Authorization at 6 (a Redeemed Plan is not obligated to repay its share of $79 million redemption payment except "to the extent that the Plan (or a Plan participant) receives any lawsuit proceeds."). Prudential therefore does not have standing to sue on behalf of the Redeemed Plans.

Prudential also lacks statutory standing under ERISA to prosecute its Section 502(a)(2) claims. Relief pursuant to Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), is founded upon Section 409 of ERISA, 29 U.S.C. § 1109, which provides in relevant part that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good *to such plan any losses to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109 (emphasis added). Prudential alleges that State Street was a fiduciary with respect to the Plans and, as such, is liable to the Plans under Sections 409 and 502(a)(2) for the losses purportedly suffered by the Plans.

It is well established that claims may be brought pursuant to these provisions of ERISA only for the benefit of a plan. In <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134 (1985), the Supreme Court rejected an attempt by an individual beneficiary to pursue relief under Section 409 of ERISA, and concluded that the remedies provided by the section are limited to those which would benefit a plan as a whole. The Court observed that:

> [W]hen the entire section is examined, the emphasis on the relationship between the fiduciary and the plan as an entity becomes apparent. Thus, not only is the relevant fiduciary relationship characterized at the outset as one 'with respect to a plan,' but the potential personal liability of the fiduciary is 'to make good *to such plan* any losses *to the plan*…and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*.'

Id. at 140 (emphasis in original).  According to the Court, "[t]he entire text of Section 409 persuades us that Congress did not intend that section to authorize any relief except for the *plan itself*." Id. at 144 (emphasis added).  See also Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) ("*Russell* ... bars plaintiffs from suing under Section 502(a)(2) because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."); Coan v. Kaufman, 457 F.3d 250, 261 (2d Cir. 2006) (affirming district court dismissal of 502(a)(2) claim, in face of difficulty in ensuring adherence to Russell's requirement "that recovery inures to the benefit of the plan as a whole").

Prudential does not seek any relief for the Redeemed Plans.  As Prudential has represented, the Redeemed Plans have been made whole.  Instead, Prudential now seeks only to satisfy its *own* losses through recovery of its "loan" to the Prudential Separate Accounts, in which the Redeemed Plans no longer have any interest.  Prudential may view this lawsuit as a means to get itself off the hook for the $79 million that it paid to the Redeemed Plans, but ERISA does not permit a fiduciary to use these provisions to sue for losses suffered on its own account.  Alton Mem. Hosp. v. Metro. Life Ins. Co., 656 F.2d 245, 250 (7th Cir. 1981) (where injury suffered solely by fiduciary, "we cannot see how any joint responsibility [between co-fiduciaries] for those damages [to a fiduciary] leads to a cause of action under ERISA.  There simply has been no harm to the plan, its participants, or its beneficiaries. ....the very language of Section 1109(a) emphasizes that no cause of action can be had ...unless the plan suffers losses.").  With respect to the Redeemed Plans, Prudential's claims under Section 502(a)(2) and Section 409 thus fail because Prudential lacks standing under ERISA to bring them.

Prudential has no standing for an additional reason.  Because the Redeemed Plans no longer have any interest in the Prudential Separate Accounts, Prudential is not acting in a

fiduciary capacity with respect to the Redeemed Plans by seeking recovery for itself via the Prudential Separate Accounts. ERISA Section 502's grant of standing to participants, beneficiaries, or fiduciaries is exclusive. See, e.g., Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100-101 (2d Cir. 2005) (noting that "[t]he Supreme Court has construed Section 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA"). As the relief – recovery to Prudential Separate Accounts in which it alone retains an interest – that Prudential requests cannot be sought in its fiduciary capacity on behalf of the Redeemed Plans, Prudential thus lacks standing under Section 502 to seek it.

**B.      In the Alternative, State Street is Entitled to Summary Judgment**

State Street is also entitled to summary judgment with respect to Prudential's claims on behalf of the Redeemed Plans. As the Redeemed Plans have been "totally made whole" for "the losses" allegedly "caused by State Street," they have suffered no damages for which Prudential can seek recovery under ERISA on their behalf.

"Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). The substantive law governing the case determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A motion for summary judgment cannot be defeated by conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the non-moving party must present specific evidence showing the existence of a genuine factual issue. Id.

Summary judgment may be sought with respect to all or part of any claim. Fed. R. Civ. P. 56(b). Even if liability remains contested, it is appropriate for the Court to render

11

partial summary judgment with respect to damages when the relevant material facts are undisputed. See, e.g., Am. Home Assur. Co. v. Crowley Ambassador, No. 01 Civ. 3605 (PKL), 2003 WL 328301 (S.D.N.Y. Feb. 11, 2003) (granting defendant's partial motion for summary judgment limiting damages to statutory caps); Sylman v. Equitable Life Assur. Soc'y. of U.S., No. 87-CV-110, 1987 WL 17076, at *2 (N.D.N.Y. July 29, 1987) (granting defendant's motion for summary judgment limiting damages in action seeking punitive damages under ERISA Section 409); see also Merck & Co., Inc. v. MediPlan Health Consulting, Inc., 434 F.Supp.2d 257, 265 (S.D.N.Y. 2006) (granting summary judgment with respect to pre-suit damages in patent infringement case while allowing remainder of case to proceed).

As Prudential has already made them whole, the Redeemed Plans have no damages that Prudential can recover on their behalf. Even if Prudential's lawsuit recovers nothing, the Plans will retain the "Total Make Whole" payments that Prudential has already paid to them. The Redeemed Plans never have to pay Prudential back. Further, with respect to Prudential's claims for this alleged $79 million in July-August investment losses, Prudential is the only party that stands to gain a benefit from any recovery. Prudential cannot seek restitution of the Redeemed Plans' purported losses when the Redeemed Plans have already been made whole for those losses.[4]

Further, as Section 502(a)(2) only permits recovery of damages for the benefit of an injured plan, Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), Prudential is barred from using Section 502(a)(2) to recover its own losses. This ERISA provision does not create a right for fiduciaries to recover losses suffered on their own account. Alton Mem. Hosp. v. Metro. Life Ins. Co., 656 F.2d 245, 250 (7th Cir. 1981). As the Plans have been made whole,

---

[4] As discussed in Section II, below, Prudential's restitution claim is not a proper request under ERISA for equitable relief and should be dismissed in any event.

and as Prudential is not entitled to sue under these ERISA provisions on its own behalf, State Street is thus entitled to summary judgment that Prudential is not entitled to any of the damages it seeks "on behalf" of the Redeemed Plans.

Even if Prudential attempts to contradict its prior statements to the Redeemed Plans that they have been made whole for "the losses" allegedly "caused by State Street" – notwithstanding its obligation as a fiduciary "to provide full and accurate information to the plan beneficiaries regarding the administration of the plan," Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001) (citing In re Long Island Lighting Co., 129 F.3d 268, 271-72 (2d Cir. 1997)) – and instead attempts to argue that there could be damages in excess of its "total make whole" payments to them, Prudential is barred from seeking recovery under ERISA of the $79 million it has paid to the Redeemed Plans.  Whatever speculative additional damages Prudential may attempt to claim on behalf of the Redeemed Plans, it is indisputable that the reimbursed $79 million no longer constitutes "losses of a plan," and that any recovery of this $79 million would benefit only Prudential, not the Redeemed Plans.  As the ERISA provisions under which Prudential sues do not provide for a fiduciary's recovery of its own losses, Prudential is thus barred from seeking recovery of this money.

At a minimum, therefore, State Street is entitled to partial summary judgment that the damages Prudential seeks may not include the $79 million it has paid to the Redeemed Plans.

## II.
## PLAINTIFF'S CLAIMS PURSUANT TO ERISA SECTION 502(a)(3) MUST BE DISMISSED FOR THE ADDITIONAL REASON THAT THE COMPLAINT CONTAINS NO VIABLE CLAIMS FOR EQUITABLE RELIEF

### A.    Standard of Review

The standards governing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are well settled.  In ruling upon the motion, the Court construes in the plaintiff's favor well-

pleaded factual allegations. <u>Strougo v. Bassini</u>, 282 F.3d 162, 167 (2d Cir. 2002). However,

"bald assertions and conclusions of law will not suffice" to state a claim. <u>Leeds v. Meltz</u>, 85

F.3d 51, 53 (2d Cir. 1996); <u>accord</u> <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007)

("Factual allegations must be enough to raise a right to relief above the speculative level."); <u>First</u>

<u>Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994) (mere "conclusions of

law or unwarranted deductions" need not be credited under Rule 12(b)(6)).

**B.       The Complaint Contains No Viable Claims for Equitable Relief**

Section 502(a)(3) authorizes civil actions to "(A) to enjoin any act or practice

which violates any [ERISA] provision … or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any [ERISA]

provisions … or the terms of the plan." Notwithstanding Prudential's passing allegation that it is

seeking the "equitable remedies of restitution and disgorgement" (Compl. ¶ 39), or its request for

an injunction, the Complaint contains no viable requests for equitable relief, and should be

dismissed.

Prudential's requested "restitution" for alleged investment losses is not an

equitable remedy. Prudential seeks only compensation for loss, and that remedy is not available

under Section 502(a)(3). In <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248 (1993), former employees

of a steel company brought a Section 502(a)(3) action against a non-fiduciary actuary of their

pension plan, seeking monetary relief for the actuary's alleged participation in a breach of duty

by the plan's fiduciaries. The Court held that such monetary damages fell outside the scope of

the equitable relief provided by Section 502(a)(3): "[a]lthough they often dance around the

word, what petitioners in fact seek is nothing other than compensatory *damages* – monetary

relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties.

14

Money damages, are of course, the classic form of *legal* relief." Id. at 255 (emphasis in original).

Similarly, in <u>Great-West Life and Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), the Court rejected a claim under Section 502(a)(3) by an insurance company seeking to compel reimbursement by a policyholder of medical expenses subsequently recovered by her in litigation. Rejecting the argument that the requested relief would simply amount to an equitable injunction to require payment, the Court observed that, "[a]lmost invariably … suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Id. at 210. The Court concluded that, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214.

Applying this line of cases, the Second Circuit recently rejected a claim under Section 502(a)(3) for equitable relief on behalf of plan members who allegedly were injured by imprudent investment decisions by the plan fiduciary. The plaintiff in <u>Coan v. Kaufman</u>, 457 F.3d 250, 254 (2d Cir. 2006), "suggest[ed] that appropriate equitable relief might entail 'make whole monetary relief' or an injunction 'reinstating the terminated plans [and] requiring the trustees to pay into them additional benefits lost through a breach of fiduciary duty.'" Upholding the district court's ruling that this requested relief was "not equitable in form or substance" (id. at 262), the Second Circuit concluded that Section 502(a)(3) could not provide an avenue for recovery, as "[Plaintiff] seeks monetary relief; she does not attempt to recover a specifically identified fund from the defendants." Id. at 263. See also In re Marsh Erisa Litig., No. 04 Civ.

8157, 2006 WL 3706169 at *4 (S.D.N.Y. Dec. 14, 2006) (dismissing Section 502(a)(3) claim for damages stemming from plan investments in Marsh stock, as "[p]laintiffs' request for the recovery of damages allegedly suffered by the Plan on its investment in MMC stock is clearly inappropriate under Section 502(a)(3), as legal damages are simply not available under this expressly equitable remedial provision").

Here too, Prudential seeks no more than "compensation for loss" from State Street's alleged breach of its duties under ERISA.  Prudential has not, moreover, alleged the existence of any specifically identified fund in which the money it seeks is held.  Nor could it, as the specific funds Prudential seeks (value lost as a result of fluctuations in the credit markets) are not in State Street's possession.  Great West, 534 U.S. at 214 (equitable relief not available when "the funds to which petitioners claim an entitlement…are not in respondents' possession.").  Like the unsuccessful 502(a)(3) claims of the plaintiffs in Coan and In re Marsh Erisa Litig., Prudential's attempt to cast its claim for legal damages as a request for equitable relief must fail.

Prudential also attempts to recover an amount equal to the management fees earned by State Street with respect to the Plans.  Its effort to construe this as an equitable claim for disgorgement is misguided.  In a case involving a similar claim under Section 502(a)(3), N.Y.S. Dist. Council of Carpenters Pension Fund, et al v. Savasta, No. 99 Civ 11362 (GBD), 2005 WL 22872 (S.D.N.Y. Jan. 4, 2005), the plaintiff sought disgorgement of the fees paid by a plan to an allegedly negligent pension consultant.  The Court rejected the claim:

> Those fees do not constitute identifiable proceeds belonging to the Fund which are in the defendants' possession.  The plaintiff cannot transform the nature of the relief sought by simply designating it as equitable relief in the form of disgorgement of fees.  The fees do not amount to illegal profits or ill-gotten gains derived directly from defendants' alleged culpable acts.  The fees were paid for services rendered by defendants pursuant to their alleged agreement with the Fund.  Thus, the relief sought is actually to

16

> recovery [of] damages from defendants' alleged breach of
> contract....Hence, the nature of the claim is one at law, and simply
> seeks to impose personal liability on defendants to recover
> monetary damages albeit in the form of fees paid to them by the
> Fund. Such an action cannot be maintained pursuant to § 502(a)(3)
> of ERISA.

Id. at *3. Like the fees at issue in Savasta, the fees Prudential seeks here are not "identifiable

proceeds belonging to the Fund[s]," nor are they "illegal profits or ill-gotten gains." Prudential's

claim for fees is simply another attempt to recover damages at law.

      The final "equitable" relief sought by Plaintiff – a permanent injunction barring

State Street "from further breaching, violating, or failing to discharge its duties under ERISA" –

is equally untenable. A plaintiff seeking a permanent injunction must show that it has suffered

irreparable harm and that it has no adequate remedy at law. Nechis v. Oxford Health Plans, Inc.,

421 F.3d 96, 103-04 (2d Cir. 2005). "[This] requirement ... cannot be met where there is no

showing of any real or immediate threat that the plaintiff will be wronged again." Levin v.

Harleston, 966 F.2d 85, 90 (2d Cir. 1992). Not only has Prudential failed to allege facts which

might support any of the elements of this standard, but it cannot do so, as Prudential has

redeemed the investment by the Plans in the Funds and thereby terminated the Plans' relationship

with the Funds. Compl. ¶ 28 ("On August 29, 2007, PRIAC requested that State Street redeem

all remaining amounts in the Bond Funds. State Street subsequently terminated and liquidated

the Bond Funds."). This termination renders Prudential's request for a permanent injunction

moot, as the Plans no longer have an investment in the Funds.[5]

---

[5] Even if the request were not moot, the injunctive relief Prudential seeks is improper and
overbroad, as "an injunction must be more specific than a simple command that the defendant
obey the law." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir. 1996).

## **CONCLUSION**

For the reasons discussed above, the Complaint should be dismissed, or, in the alternative, State Street should be granted summary judgment with respect to Prudential's claim for damages.

Dated: New York, New York
       February 4, 2008

By: _/S/ Barry Sher_____
Barry Sher (BS-4252)
Daniel B. Goldman (DG-4503)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000
Counsel for Defendants State Street Bank and Trust
Company and State Street Global Advisors, Inc.

## CERTIFICATE OF SERVICE

The undersigned member of the Bar of this Court hereby certifies that, on February 4,

2008, he caused to be served a true and correct copy of the foregoing Memorandum of Law in

Support of Defendants' Motion to Dismiss and in the Alternative for Partial Summary Judgment,

along with Defendants' Statement of Materials Undisputed Facts and the Declaration of Daniel

B. Goldman dated February 4, 2008 and the exhibits attached thereto, via E-Mail, First Class

Mail and ECF filing upon the following counsel of record for Plaintiff Prudential Retirement

Insurance and Annuity Company:

Edwin G. Schallert, Esq.
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000


Dated: New York, New York
        February 4, 2008

                                            _____/s/_____
                                                Barry Sher