**EXHIBIT 4**

# EXPLANATION AND AUTHORIZATION

## OF

## PRUDENTIAL'S PROCESS FOR ADDRESSING YOUR DEFINED CONTRIBUTION PLAN'S LOSSES IN THE STATE STREET INTERMEDIATE BOND FUND

## EXPLANATION

**Executive Summary**

After exploring all options, on October 1, 2007, Prudential Retirement filed a lawsuit against State Street Bank and Trust Company and its affiliates ("State Street") to recover losses suffered by the Prudential Retirement separate account (the "Separate Account"), by your Plan and by your plan participants as a result of investing in the State Street Intermediate Bond Fund (the "State Street Fund"). According to State Street, the investment objective of its fund was to "match or exceed" the return of the Lehman Brothers Intermediate U.S. Government Corporate Bond Index (the "Benchmark Index"). The lawsuit contends that State Street misrepresented the investment strategies and practices of the State Street Fund and failed to exercise the standard of care of a prudent investment manager. State Street also did not disclose these off-index investment strategies and practices to Prudential Retirement, to your Plan, or to your plan participants.

Prudential Retirement is also implementing a process allowing your Plan to receive immediate payment for the losses caused by State Street. The process requires that your Plan authorize Prudential Retirement to proceed against State Street on behalf of your Plan. The process is designed to protect the interests of the affected Plans and their participants while Prudential Retirement pursues remedies against State Street, and should not be viewed as an admission of liability for Prudential Retirement.

**Summary of Prudential's Process**

Shares of the State Street Fund were held by the Separate Account. Your Plan was an investor in the Separate Account. To address State Street's negative impact on your Plan and its participants, Prudential Retirement is seeking your Plan's authorization to take the following steps:

- Prudential Retirement will make a loan to the Separate Account in an amount equal to:

  (i)   the difference between the return on the Benchmark Index and the return actually received by your Plan from the State Street Fund (the "Benchmark Make Whole Amount"). The Benchmark Make Whole Amount will be calculated for the period from July 1 through August 29, 2007 (or for the portion of such period that your participants invested in the Separate Account). Please note that on August 29, the Separate Account cashed out its investment in the State Street Fund; plus

  (ii)  a return on the Benchmark Make Whole Amount for the period from August 29 (or the date of any earlier redemption) to October 8, 2007, such return to match the return on the Benchmark Index (such return, plus the Benchmark Make Whole Amount being the "Total Make Whole Amount"); plus

  (iii) a portion of the costs of bringing the lawsuit against State Street on behalf of the Separate Account and your Plan.

  Prudential Retirement will not charge any interest or fees on the loan it makes to the Separate Account. The loan will be repayable from the proceeds of the lawsuit against State Street.

- Your Plan will redeem its remaining investment interest in the Separate Account and will instruct Prudential Retirement on the substitute investment option that will receive the redemption proceeds.

- Your Plan will also receive a special redemption payment from the Separate Account equal to the Total Make Whole Amount. This special redemption payment "makes your plan whole to the Benchmark Index" for your investment in the State Street Fund during the period between July 1 through August 29, with the result that, for such period, your Plan and its participants will receive a return equal to the Benchmark Index. From August 29th (or earlier for Plans or participants that redeemed out of the Separate Account) through October 8th, your

Plan will receive a return on its July and August losses in the State Street Fund equal to the return on the Benchmark Index. Also, the method of calculation of the Benchmark Make Whole Amount means that your Plan will not be paying Prudential Retirement or State Street any investment management fees for July and August.

- Your Plan will authorize Prudential Retirement, in Prudential Retirement's capacity as a fiduciary under ERISA with respect to the Separate Account and with respect to your Plan, to prosecute and resolve the lawsuit against State Street seeking the return of the losses on the State Street Fund and other damages and recoveries. Prudential Retirement will advance to the Separate Account amounts necessary to pay the legal fees in connection with the prosecution and settlement of such lawsuit. Your plan will not have to pay legal fees "out-of-pocket."

**Important Details Concerning Timing, the Redemption Payment and the State Street Lawsuit**

- **Before December 1, 2007, your Plan must decide whether to receive an "up front" payment for the losses caused by State Street by granting Prudential Retirement the authorization contained in the "Formal Plan Authorization" below.** If your Plan does not elect to receive this "up front" payment, your Plan will only receive from Prudential Retirement the Plan's share of the recovery received from State Street for the Separate Account, if any, in connection with the lawsuit being brought by Prudential Retirement. Prudential Retirement makes no assurances whatsoever concerning the amount and the timing of any such recovery.

- As more fully described in the Formal Plan Authorization below, if your Plan signs the Authorization it will receive a special redemption payment from the Separate Account, as soon as practicable, equal to the Total Make Whole Amount. This special redemption payment will fully restore your Plan's losses as compared to the Benchmark Index returns for the period from July 1 to August 29, 2007, and will pay you a Benchmark Index return on those losses through October 8, 2007.

- Please remember that the loan described above is from Prudential Retirement to the Separate Account, and is repayable only by the Separate Account. Prudential Retirement can obtain repayment of the loan only from your Plan's portion of the proceeds of the State Street lawsuit. If the lawsuit proceeds are not sufficient to repay the loan made by Prudential Retirement, Prudential Retirement will forgive the unpaid balance of the loan. Neither your Plan nor your participants will be obligated to re-pay to Prudential Retirement or to the Separate Account any such

3

unpaid loan balance from any source other than from the proceeds of the State Street lawsuit.

- Also, if the proceeds of the State Street lawsuit allocable to your Plan exceed the special redemption payment made by the Separate Account to your Plan plus an allocable portion of the legal fees associated with the State Street lawsuit, we will pay such excess to your Plan.

**<u>Summary of Actions Requested</u>**

In order to receive from Prudential Retirement the payment described herein, your Plan is being asked to:

(i)     authorize the loan from Prudential Retirement to the Separate Account,

(ii)    authorize the Separate Account to prosecute and resolve a lawsuit against State Street on the Plan's behalf and to pay associated legal fees,

(iii)   elect to make a special redemption from the Separate Account in respect of the Plan's losses related to the State Street Fund,

(iv)   elect to make a redemption of the Plan's remaining investment interest in the Separate Account and identify a substitute Plan investment option to receive the proceeds,

(v)    provide instructions that, for participants that exchanged out of the Separate Account before August 29th, their portion of the special redemption payment should be deposited into the Plan investment option that the participant exchanged into.

*In order to process your payment, your approval is needed for the process described above, and must in any event be received before December 1, 2007.* We suggest that your Plan complete, sign and return the Formal Plan Authorization contained below as soon as possible, in order to allow us to make the payment to your Plan specified in detail in the Authorization.

Also attached are answers to questions you might have on the treatment of this process under the Internal Revenue Code and ERISA. They are provided by the law firm of the Groom Law Group, Chartered. While the attached questions and answers are not a replacement for your own review and that of your legal counsel, Prudential Retirement hopes they are a helpful start.

---

### FORMAL PLAN AUTHORIZATION

The undersigned retirement plan (the "Plan"), an investor in the State Street Global Advisors Intermediate Bond NL Series Fund – Class A Shares through a Prudential Retirement Insurance and Annuity Company ("PRIAC") Separate Account (the "Separate Account"), hereby:

1.    Authorizes PRIAC to lend to the Separate Account an amount equal to:

      (i)    the amount necessary to restore each Plan participant's account balance to the level it would have achieved if the return of the Separate Account equaled the return of the Lehman Brothers Intermediate U.S. Government Credit Index, both computed for the period(s) the Plan participant was invested in the Separate Account between July 1, 2007, through August 29, 2007; plus

      (ii)    a return on the amount described in clause (i) above equal to the return on the Lehman Brothers U.S. Intermediate Government Credit Index for the following period:

            i.    If the Plan or Plan participant redeemed its interest in the Separate Account before August 29, 2007, the period is from the date of such redemption through October 8, 2007

            ii.    If the Plan or Plan participant redeemed its interest in the Separate Account on or after August 29, 2007, the period is from August 29, 2007 through October 8, 2007, plus

      (iii)    the portion of the legal fees and expenses associated with prosecuting the lawsuit against State Street on behalf of the Separate Account and your Plan ("Allocable Attorney Fees"),

and in each case the foregoing amounts will be calculated to reimburse the participant for any investment fees imposed during such period by either PRIAC or State Street (the amount described in clauses (i) and (ii) above being (the

"Special Loan Payment"). PRIAC will not charge any interest or fees on any part of the loan.

The Plan understands that the terms of such loan made by PRIAC to the Separate Account will provide that the Separate Account's obligation to repay the loan will be limited exclusively to the Plan's interest in the Lawsuit Proceeds. "Lawsuit Proceeds" means the proceeds (whether in respect of investment-related damages, special damages or attorney fees, whether by judgment, settlement or otherwise, and whether paid in whole or in part to the Separate Account or the Plan), if any, of the State Street Lawsuit. "State Street Lawsuit" means the lawsuit filed by PRIAC on behalf of the Separate Account against State Street Bank and Trust Company and its affiliates to recover the losses suffered by investors in the Separate Account and similarly-situated separate accounts, which lawsuit may be amended or supplemented by additional causes of action, claims and defendants.

The Plan understands that it (or any Plan participant) is not obligated to repay the Special Loan Payment made to the Separate Account or the Redemption Payment (as such term is defined below) made to the Plan, except to the extent that the Plan (or a Plan participant) receives any Lawsuit Proceeds.

2.    Acknowledges that PRIAC is a fiduciary of the Plan in connection with the Plan's investment in the Separate Account and authorizes PRIAC to prosecute and resolve the State Street Lawsuit on behalf of the Plan, including with respect to any claim for damages in excess of the Special Loan Payment plus any claim to recovery of legal fees and expenses. The undersigned acknowledges that, if the Lawsuit Proceeds allocable to the Plan exceeds the sum of the Special Loan Amount and Allocable Attorney Fees, any such excess amount will be allocated to the Plan in a manner consistent with PRIAC's obligation as a fiduciary in connection with the Separate Account.

3.    Authorizes PRIAC to redeem the Special Loan Payment from the Separate Account (the amount redeemed being a "Special Redemption Payment"), and acknowledges that the Special Redemption Payment represents a redemption of that portion of the Plan's interest in the Separate Account corresponding to an equal portion of the Plan's claims against State Street, and instructs PRIAC to invest such Special Redemption Payment in the substitute investment described in clause 4 or 5 below, as applicable.

4.    With respect to Plan participants that are still invested in the Separate Account on the date of the Special Redemption Payment, authorizes PRIAC to redeem all remaining investment units therein attributable to such Plan participants, and to deposit all the proceeds of that redemption and of such participants' portion of the Special Redemption Payment in the following substitute investment option:_____.

5.      With respect to Plan participants that exchanged out of the Separate Account
        before the date of the Special Redemption Payment, authorizes PRIAC to deposit
        the proceeds of such Plan participants' portion of the Special Redemption
        Payment in the investment option into which such participant previously
        exchanged his interest in the Separate Account.

PRIAC shall take the actions described in Section 4 and 5 as soon as practicable after its
receipt of this Formal Plan Authorization Form completed and signed by the Plan.

Capitalized terms have the meaning assigned in this Formal Plan Authorization.

This Formal Plan Authorization must be completed and signed before December 1, 2007
in order for the Plan to avail itself of the Prudential Retirement process described above.

NAME OF PLAN

_____

By: _____

Name:

Title:

Dated: _____, 2007

# GROOM LAW GROUP

### Questions and Answers on Prudential's Plan for Addressing State Street Fund Losses

### October 1, 2007

1. **Is Prudential Retirement Insurance and Annuity Company's redemption payment for the benefit of certain participants a "contribution" for purposes of rules under the Internal Revenue Code relating to annual contribution limits, non-discrimination and deductibility?**

The redemption payment by Prudential Retirement Insurance and Annuity Company ("Prudential") is being made as part of the process described in the attached explanation of Prudential's Plan for Addressing State Street Fund Losses. In our view, under IRS guidance, this type of payment should be treated in a manner similar to plan earnings and not as a "contribution" within the meaning of the various Internal Revenue Code provisions.

2. **Is Prudential's redemption payment currently taxable to the affected plan participants?**

No, under section 402(a) of the Internal Revenue Code, the payment should not be taxable to affected participants until distributed from the plan, similar to plan earnings.

3. **What should you consider as an ERISA fiduciary in deciding whether to agree to Prudential's plan for addressing the State Street Fund losses?**

As you know, in making a decision on behalf of a plan, an ERISA fiduciary must act prudently and solely in the interest of the plan and its participants and beneficiaries. Prudence is generally measured by focusing on the fiduciary's conduct in arriving at a decision, asking whether the fiduciary used appropriate methods to investigate and determine the merits of a particular decision. This is called "procedural prudence." DOL regulations that address the investment duties of fiduciaries similarly provide that a fiduciary will satisfy its duty to act prudently by giving "appropriate consideration" to facts and circumstances that the fiduciary knows or should know are relevant to the particular investment or investment course of action, and then acting accordingly. 29 C.F.R. § 2550.404a-1.

To ensure that it is making a prudent, informed decision on behalf of its plan, the plan fiduciary should first thoroughly understand how Prudential's proposal would work. Here are the key features –

- The redemption payment to the plan will be funded through a loan by Prudential to the Prudential State Street Separate Account (*i.e.*, the loan proceeds will be used to redeem the plan's units and fund attorneys' fees for the State Street lawsuit).

- Prudential will advance the cost of attorneys' fees for the lawsuit against State Street on behalf of the Separate Account and its investor plans.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

- The Separate Account loan will have to be repaid only if amounts are recovered from State Street for that Separate Account or its investing plans. Otherwise, neither the Separate Account nor the investing plans are required to repay this loan.

- Any recovery against State Street for the Separate Account in excess of the amounts loaned by Prudential to that Separate Account will be allocated among the plans that invested in the Separate Account.

- The plan is not being asked to waive any claims that it may have in connection with the Prudential State Street Separate Account losses. In order to receive the proceeds, it is being asked to authorize Prudential to make the loan to the Separate Account and to pursue the lawsuit against State Street.

Once it understands Prudential's proposal, a prudent fiduciary should weigh the potential benefits of the proposal to the plan and its participants against any potential risks and costs. A fiduciary might identify the following as possible benefits of Prudential's proposal: (i) the plan (and participants) would obtain immediate access to funds to make up losses from the investment in the Prudential State Street Separate Account during July-August 2007; (ii) the plan (and participants) would receive this payment without incurring any out-of-pocket costs of litigation or other action (e.g., attorneys fees); and (iii) there is the potential for an additional recovery by the plan if Prudential's lawsuit results in a recovery to the Separate Account that exceeds the aggregate loans made by Prudential to the Separate Account. A fiduciary might identify as a possible risk or cost of accepting Prudential's proposal the fact that any recovery in litigation pursued separately by the plan could be reduced by the amount of the redemption payment received by the plan under Prudential's proposal or could be affected by a decision or settlement in the Prudential lawsuit.

When considering a course of action for its plan, a plan fiduciary should also ensure that the plan does not engage in any prohibited transactions under ERISA or the Internal Revenue Code. See Q&A 4 for a discussion of this consideration.

4.    **Will Prudential's redemption payment or proposed loan to the Separate Account constitute a "prohibited transaction" under ERISA § 406 or the Internal Revenue Code § 4975 for either the Plan sponsor/fiduciary or Prudential?**

So long as a fiduciary of the Plan agrees to the procedures Prudential Retirement has proposed (see the attached Explanation and Authorization Form), we believe that the payment and/or loan, if prohibited at all, should be eligible for one or more exemptions from the prohibited transaction rules of ERISA and the Code. For example, as Prudential Retirement has explained, the redemption payment is funded through a no-interest, unsecured loan by Prudential to the Prudential State Street Separate Account; we believe that the "Interest-Free Loan Exemption" (Prohibited Transaction Class Exemption 80-26) should be available to cover those loans. In addition, because the redemption payment is actually accomplished through your Plan's sale (redemption) of its units of the Separate Account (a "pooled separate account"), the redemption payment may also be eligible for relief under the "Pooled Separate Account

Exemption" in ERISA section 408(b)(8) and Code section 4975(d)(8).  That exemption covers the purchase or sale of units in a pooled separate account.

**5.    How will the Prudential redemption payment be reported to Plan participants? How will it be reported to my Plan?**

Prudential Retirement has advised that each participant in a defined contribution plan credited with the redemption payment will receive a statement showing that he or she was credited with an "earnings adjustment" in the Prudential State Street Separate Account immediately before transfer of the balance (which will include the redemption payment) to the investment fund chosen by the plan fiduciary as the successor fund.  The transfer to the new investment fund will be reflected on the participant's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new fund.

The plan administrator of a defined benefit or defined contribution plan credited with the redemption payment will receive a statement indicating that the plan was credited with an "earnings adjustment" in the Prudential State Street Separate Account in the amount of the redemption payment, immediately prior to the transfer of the plan's balance in the Prudential State Street Separate Account (including the Prudential payment) to a new Prudential investment fund.  (The plan administrator will have identified this new investment fund and directed Prudential to transfer to that fund the proceeds of the redemption from the Prudential State Street Separate Account.)  The transfer to the new investment fund will show on the plan's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new investment fund.

**6.    What will my Plan have to report on its Form 5500?  Does it have to include the Prudential loan to the Prudential State Street Separate Account?**

On the plan's Form 5500, we expect that the only reporting required will be:  (i) the beginning and end of year balances in all pooled separate accounts in the aggregate (including the balances in the Prudential State Street Separate Account at the beginning of the year and the balance in the new investment fund at the end of the year), on Schedule H Part I line 1 c (10); and (ii) the net investment gain/loss on investments in all pooled separate accounts, on Schedule H Part II line 2 b (7).  Of course, you should consult your own advisors with respect to your reporting obligations as plan administrator of your Plan.

The Prudential State Street Separate Account will file its own Form 5500 as a "direct filing entity", as it has done in the past, and the Prudential loan to the Prudential State Street Separate Account and the related redemption of units will be reflected in that filing.

**7.    Is there a deadline for accepting Prudential's offer to make the redemption payment?**

*Yes.*  Prudential has indicated that December 1, 2007 is the deadline for submitting the Authorization Form requesting a redemption payment.  Thus, the executed Authorization Form must be *received by Prudential by December 1, 2007.*

-4-

8.    **If I don't sign the Authorization Form and receive a redemption payment now, can I elect to do so later?**

*No.* To receive the redemption payment, you must deliver the executed Authorization Form to Prudential by December 1, 2007.

9.    **What happens to my plan's claim against State Street in connection with the Prudential State Street Separate Account if I don't sign the Authorization Form and receive the redemption payment?**

As a fiduciary of the Separate Account, Prudential will still pursue the claim against State Street on behalf of the Separate Account in which your plan invested. If there is a recovery from State Street in connection with that Separate Account, your plan will be entitled to a share of that recovery. However, there is no guarantee that your share of the amount ultimately recovered from State Street will be as much as the redemption payment Prudential is offering to you or that there will be any recovery at all.

*********

*These Questions and Answers reflect legal advice provided to Prudential Retirement Insurance and Annuity Company ("Prudential") only and should not be construed as legal advice to any other individual or entity. The answers to the questions are based on applicable law as of the date hereof and the facts as they have been explained to us. We do not make any representation as to any different facts or any authority issued or made available in the future. Any individual or entity (other than Prudential Retirement Insurance and Annuity Company) that has questions as to the tax and other legal implications of Prudential's Plan for Addressing the State Street Fund Losses should consult with its own legal counsel.*

*U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.*

**EXHIBIT 5**

## EXPLANATION AND AUTHORIZATION

## OF

## PRUDENTIAL'S PROCESS FOR ADDRESSING YOUR DEFINED BENEFIT PLAN'S LOSSES IN THE STATE STREET INTERMEDIATE BOND FUND

## EXPLANATION

### Executive Summary

After exploring all options, on October 1, 2007, Prudential Retirement filed a lawsuit against State Street Bank and Trust Company and its affiliates ("State Street") to recover losses suffered by the Prudential Retirement separate account (the "Separate Account") and by your Plan as a result of investing in the State Street Intermediate Bond Fund (the "State Street Fund"). According to State Street, the investment objective of its fund was to "match or exceed" the return of the Lehman Brothers Intermediate U.S. Government Corporate Bond Index (the "Benchmark Index"). The lawsuit contends that State Street misrepresented the investment strategies and practices of the State Street Fund and failed to exercise the standard of care of a prudent investment manager. State Street also did not disclose these off-index investment strategies and practices to Prudential Retirement or to your Plan.

Prudential Retirement is also implementing a process allowing your Plan to receive immediate payment for the losses caused by State Street. The process requires that your Plan authorize Prudential Retirement to proceed against State Street on behalf of your Plan. The process is designed to protect the interests of the affected Plans while Prudential Retirement pursues remedies against State Street, and should not be viewed as an admission of liability for Prudential Retirement.

**Summary of Prudential's Process**

Shares of the State Street Fund were held by the Separate Account. Your Plan was an investor in the Separate Account. To address State Street's negative impact on your Plan, Prudential Retirement is seeking your Plan's authorization to take the following steps:

- Prudential Retirement will make a loan to the Separate Account in an amount equal to:

  (i) the difference between the return on the Benchmark Index and the return actually received by your Plan from the State Street Fund (the "Benchmark Make Whole Amount"). The Benchmark Make Whole Amount will be calculated for the period from July 1 through August 29, 2007 (or for the portion of such period that your Plan invested in the Separate Account). Please note that on August 29, the Separate Account cashed out its investment in the State Street Fund; plus

  (ii) a return on the Benchmark Make Whole Amount for the period from August 29 (or the date of any earlier redemption) to October 8, 2007, such return to match the return on the Benchmark Index (such return, plus the Benchmark Make Whole Amount being the "Total Make Whole Amount"); plus

  (iii) a portion of the costs of bringing the lawsuit against State Street on behalf of the Separate Account and your Plan.

  Prudential Retirement will not charge any interest or fees on the loan it makes to the Separate Account. The loan will be repayable from the proceeds of the lawsuit against State Street.

- Your Plan will redeem its remaining investment interest in the Separate Account and will instruct Prudential Retirement on the substitute investment option that will receive the redemption proceeds.

- Your Plan will also receive a special redemption payment from the Separate Account equal to the Total Make Whole Amount. This special redemption payment "makes your plan whole to the Benchmark Index" for your investment in the State Street Fund during the period between July 1 through August 29, with the result that, for such period, your Plan will receive a return equal to the Benchmark Index. From August 29th (or earlier for Plans that redeemed out of the Separate Account) through October 8th, your Plan will receive a return on its July

and August losses in the State Street Fund equal to the return on the Benchmark Index. Also, the method of calculation of the Benchmark Make Whole Amount means that your Plan will not be paying Prudential Retirement or State Street any investment management fees for July and August.

- Your Plan will authorize Prudential Retirement, in Prudential Retirement's capacity as a fiduciary under ERISA with respect to the Separate Account and with respect to your Plan, to prosecute and resolve the lawsuit against State Street seeking the return of the losses on the State Street Fund and other damages and recoveries. Prudential Retirement will advance to the Separate Account amounts necessary to pay the legal fees in connection with the prosecution and settlement of such lawsuit. Your plan will not have to pay legal fees "out-of-pocket."

- 

**Important Details Concerning Timing, the Redemption Payment and the State Street Lawsuit**

- **Before December 1, 2007, your Plan must decide whether to receive an "up front" payment for the losses caused by State Street by granting Prudential Retirement the authorization contained in the "Formal Plan Authorization" below.** If your Plan does not elect to receive this "up front" payment, your Plan will only receive from Prudential Retirement the Plan's share of the recovery received from State Street for the Separate Account, if any, in connection with the lawsuit being brought by Prudential Retirement. Prudential Retirement makes no assurances whatsoever concerning the amount and the timing of any such recovery.

- As more fully described in the Formal Plan Authorization below, if your Plan signs the Authorization it will receive a special redemption payment from the Separate Account, as soon as practicable, equal to the Total Make Whole Amount. This special redemption payment will fully restore your Plan's losses as compared to the Benchmark Index returns for the period from July 1 to August 29, 2007, and will pay you a Benchmark Index return on those losses through October 8, 2007.

- Please remember that the loan described above is from Prudential Retirement to the Separate Account, and is repayable only by the Separate Account. Prudential Retirement can obtain repayment of the loan only from your Plan's portion of the proceeds of the State Street lawsuit. If the lawsuit proceeds are not sufficient to repay the loan made by Prudential Retirement, Prudential Retirement will forgive the unpaid balance of the loan. Your Plan will not be obligated to re-pay to Prudential Retirement or to the Separate Account any such unpaid loan balance from any source other than from the proceeds of the State Street lawsuit.

3

- Also, if the proceeds of the State Street lawsuit allocable to your Plan exceed the special redemption payment made by the Separate Account to your Plan plus an allocable portion of the legal fees associated with the State Street lawsuit, we will pay such excess to your Plan.

## Summary of Actions Requested

In order to receive from Prudential Retirement the payment described herein, your Plan is being asked to:

(i)     authorize the loan from Prudential Retirement to the Separate Account,

(ii)    authorize the Separate Account to prosecute and resolve a lawsuit against State Street on the Plan's behalf and to pay associated legal fees,

(iii)   elect to make a special redemption from the Separate Account in respect of the Plan's losses related to the State Street Fund,

(iv)    if your Plan is still invested in the Separate Account, elect to make a redemption of the Plan's remaining investment interest in the Separate Account and identify a substitute Plan investment option to receive the proceeds.

*In order to process your payment, your approval is needed for the process described above, and must in any event be received before December 1, 2007.* We suggest that your Plan complete, sign and return the Formal Plan Authorization contained below as soon as possible, in order to allow us to make the payment to your Plan specified in detail in the Authorization.

Also attached are answers to questions you might have on the treatment of this process under the Internal Revenue Code and ERISA. They are provided by the law firm of the Groom Law Group, Chartered. While the attached questions and answers are not a replacement for your own review and that of your legal counsel, Prudential Retirement hopes they are a helpful start.

4

## FORMAL PLAN AUTHORIZATION

The undersigned retirement plan (the "Plan"), an investor in the State Street Global Advisors Intermediate Bond NL Series Fund – Class A Shares through a Prudential Retirement Insurance and Annuity Company ("PRIAC") Separate Account (the "Separate Account"), hereby:

1.      Authorizes PRIAC to lend to the Separate Account an amount equal to:

   (i)     the amount necessary to restore your Plan's account balance to the level it would have achieved if the return of the Separate Account equaled the return of the Lehman Brothers Intermediate U.S. Government Credit Index, both computed for the period(s) the Plan was invested in the Separate Account between July 1, 2007 through August 29, 2007; plus

   (ii)    a return on the amount described in clause (i) above equal to the return on the Lehman Brothers U.S. Intermediate Government Credit Index for the following period:

      i.   If the Plan redeemed its interest in the Separate Account before August 29, 2007, the period is from the date of such redemption through October 8, 2007

      ii.  If the Plan redeemed its interest in the Separate Account on or after August 29, 2007, the period is from August 29, 2007 through October 8, 2007, plus

   (iii)   the portion of the legal fees and expenses associated with prosecuting the lawsuit against State Street on behalf of the Separate Account and your Plan ("Allocable Attorney Fees"),

and in each case the foregoing amounts will be calculated to reimburse the Plan for any investment fees imposed during such period by either PRIAC or State Street (the amount described in clauses (i) and (ii) above being the "Special Loan Payment"). PRIAC will not charge any interest or fees on any part of the loan.

The Plan understands that the terms of such loan made by PRIAC to the Separate Account will provide that the Separate Account's obligation to repay the loan will be limited exclusively to the Plan's interest in the Lawsuit Proceeds. "Lawsuit Proceeds" means the proceeds (whether in respect of investment-related damages,

special damages or attorney fees, whether by judgment, settlement or otherwise, and whether paid in whole or in part to the Separate Account or the Plan), if any, of the State Street Lawsuit. "State Street Lawsuit" means the lawsuit filed by PRIAC on behalf of the Separate Account against State Street Bank and Trust Company and its affiliates to recover the losses suffered by investors in the Separate Account and similarly-situated separate accounts, which lawsuit may be amended or supplemented by additional causes of action, claims and defendants.

The Plan understands that it is not obligated to repay the Special Loan Payment made to the Separate Account or the Redemption Payment (as such term is defined below) made to the Plan, except to the extent that the Plan receives any Lawsuit Proceeds.

2.    Acknowledges that PRIAC is a fiduciary of the Plan in connection with the Plan's investment in the Separate Account and authorizes PRIAC to prosecute and resolve the State Street Lawsuit on behalf of the Plan, including with respect to any claim for damages in excess of the Special Loan Payment plus any claim to recovery of legal fees and expenses. The undersigned acknowledges that, if the Lawsuit Proceeds allocable to the Plan exceeds the sum of the Special Loan Amount and Allocable Attorney Fees, any such excess amount will be allocated to the Plan in a manner consistent with PRIAC's obligation as a fiduciary in connection with the Separate Account.

3.    Authorizes PRIAC to redeem the Special Loan Payment from the Separate Account (the amount redeemed being a "Special Redemption Payment"), and acknowledges that the Special Redemption Payment represents a redemption of that portion of the Plan's interest in the Separate Account corresponding to an equal portion of the Plan's claims against State Street, and instructs PRIAC to invest such Special Redemption Payment in the substitute investment described in clause 4 or 5 below, as applicable.

4.    With respect to a Plan that is still invested in the Separate Account on the date of the Special Redemption Payment, authorizes PRIAC to redeem all remaining investment units therein and deposit all the proceeds of that redemption and of the Special Redemption Payment in the following substitute investment option:_____.

5.    With respect to a Plan that has redeemed out of the Separate Account before the date of the Special Redemption Payment, authorizes PRIAC to deposit the proceeds of the Special Redemption Payment in the Plan investment receiving such redemption proceeds, unless PRIAC is instructed otherwise.

PRIAC shall take the actions described in Section 4 and 5 as soon as practicable after its receipt of this Formal Plan Authorization completed and signed by the Plan.

6

Capitalized terms have the meaning assigned in this Formal Plan Authorization.

This Formal Plan Authorization must be completed and signed before December 1, 2007 in order for the Plan to avail itself of the Prudential Retirement process described above.

NAME OF PLAN

_____

By: _____

Name:

Title:

Dated: _____, 2007

7

# GROOM LAW GROUP

### Questions and Answers on Prudential's Plan for Addressing State Street Fund Losses

### October 1, 2007

1.  **Is Prudential Retirement Insurance and Annuity Company's redemption payment for the benefit of certain participants a "contribution" for purposes of rules under the Internal Revenue Code relating to annual contribution limits, non-discrimination and deductibility?**

    The redemption payment by Prudential Retirement Insurance and Annuity Company ("Prudential") is being made as part of the process described in the attached explanation of Prudential's Plan for Addressing State Street Fund Losses. In our view, under IRS guidance, this type of payment should be treated in a manner similar to plan earnings and not as a "contribution" within the meaning of the various Internal Revenue Code provisions.

2.  **Is Prudential's redemption payment currently taxable to the affected plan participants?**

    No, under section 402(a) of the Internal Revenue Code, the payment should not be taxable to affected participants until distributed from the plan, similar to plan earnings.

3.  **What should you consider as an ERISA fiduciary in deciding whether to agree to Prudential's plan for addressing the State Street Fund losses?**

    As you know, in making a decision on behalf of a plan, an ERISA fiduciary must act prudently and solely in the interest of the plan and its participants and beneficiaries. Prudence is generally measured by focusing on the fiduciary's conduct in arriving at a decision, asking whether the fiduciary used appropriate methods to investigate and determine the merits of a particular decision. This is called "procedural prudence." DOL regulations that address the investment duties of fiduciaries similarly provide that a fiduciary will satisfy its duty to act prudently by giving "appropriate consideration" to facts and circumstances that the fiduciary knows or should know are relevant to the particular investment or investment course of action, and then acting accordingly. 29 C.F.R. § 2550.404a-1.

    To ensure that it is making a prudent, informed decision on behalf of its plan, the plan fiduciary should first thoroughly understand how Prudential's proposal would work. Here are the key features –

    - The redemption payment to the plan will be funded through a loan by Prudential to the Prudential State Street Separate Account (*i.e.*, the loan proceeds will be used to redeem the plan's units and fund attorneys' fees for the State Street lawsuit).

    - Prudential will advance the cost of attorneys' fees for the lawsuit against State Street on behalf of the Separate Account and its investor plans.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

- The Separate Account loan will have to be repaid only if amounts are recovered from State Street for that Separate Account or its investing plans. Otherwise, neither the Separate Account nor the investing plans are required to repay this loan.

- Any recovery against State Street for the Separate Account in excess of the amounts loaned by Prudential to that Separate Account will be allocated among the plans that invested in the Separate Account.

- The plan is not being asked to waive any claims that it may have in connection with the Prudential State Street Separate Account losses. In order to receive the proceeds, it is being asked to authorize Prudential to make the loan to the Separate Account and to pursue the lawsuit against State Street.

Once it understands Prudential's proposal, a prudent fiduciary should weigh the potential benefits of the proposal to the plan and its participants against any potential risks and costs. A fiduciary might identify the following as possible benefits of Prudential's proposal: (i) the plan (and participants) would obtain immediate access to funds to make up losses from the investment in the Prudential State Street Separate Account during July-August 2007; (ii) the plan (and participants) would receive this payment without incurring any out-of-pocket costs of litigation or other action (e.g., attorneys fees); and (iii) there is the potential for an additional recovery by the plan if Prudential's lawsuit results in a recovery to the Separate Account that exceeds the aggregate loans made by Prudential to the Separate Account. A fiduciary might identify as a possible risk or cost of accepting Prudential's proposal the fact that any recovery in litigation pursued separately by the plan could be reduced by the amount of the redemption payment received by the plan under Prudential's proposal or could be affected by a decision or settlement in the Prudential lawsuit.

When considering a course of action for its plan, a plan fiduciary should also ensure that the plan does not engage in any prohibited transactions under ERISA or the Internal Revenue Code. See Q&A 4 for a discussion of this consideration.

4.    **Will Prudential's redemption payment or proposed loan to the Separate Account constitute a "prohibited transaction" under ERISA § 406 or the Internal Revenue Code § 4975 for either the Plan sponsor/fiduciary or Prudential?**

So long as a fiduciary of the Plan agrees to the procedures Prudential Retirement has proposed (see the attached Explanation and Authorization Form), we believe that the payment and/or loan, if prohibited at all, should be eligible for one or more exemptions from the prohibited transaction rules of ERISA and the Code. For example, as Prudential Retirement has explained, the redemption payment is funded through a no-interest, unsecured loan by Prudential to the Prudential State Street Separate Account; we believe that the "Interest-Free Loan Exemption" (Prohibited Transaction Class Exemption 80-26) should be available to cover those loans. In addition, because the redemption payment is actually accomplished through your Plan's sale (redemption) of its units of the Separate Account (a "pooled separate account"), the redemption payment may also be eligible for relief under the "Pooled Separate Account

Exemption" in ERISA section 408(b)(8) and Code section 4975(d)(8). That exemption covers the purchase or sale of units in a pooled separate account.

**5.    How will the Prudential redemption payment be reported to Plan participants? How will it be reported to my Plan?**

Prudential Retirement has advised that each participant in a defined contribution plan credited with the redemption payment will receive a statement showing that he or she was credited with an "earnings adjustment" in the Prudential State Street Separate Account immediately before transfer of the balance (which will include the redemption payment) to the investment fund chosen by the plan fiduciary as the successor fund. The transfer to the new investment fund will be reflected on the participant's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new fund.

The plan administrator of a defined benefit or defined contribution plan credited with the redemption payment will receive a statement indicating that the plan was credited with an "earnings adjustment" in the Prudential State Street Separate Account in the amount of the redemption payment, immediately prior to the transfer of the plan's balance in the Prudential State Street Separate Account (including the Prudential payment) to a new Prudential investment fund. (The plan administrator will have identified this new investment fund and directed Prudential to transfer to that fund the proceeds of the redemption from the Prudential State Street Separate Account.) The transfer to the new investment fund will show on the plan's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new investment fund.

**6.    What will my Plan have to report on its Form 5500?  Does it have to include the Prudential loan to the Prudential State Street Separate Account?**

On the plan's Form 5500, we expect that the only reporting required will be: (i) the beginning and end of year balances in all pooled separate accounts in the aggregate (including the balances in the Prudential State Street Separate Account at the beginning of the year and the balance in the new investment fund at the end of the year), on Schedule H Part I line 1 c (10); and (ii) the net investment gain/loss on investments in all pooled separate accounts, on Schedule H Part II line 2 b (7). Of course, you should consult your own advisors with respect to your reporting obligations as plan administrator of your Plan.

The Prudential State Street Separate Account will file its own Form 5500 as a "direct filing entity", as it has done in the past, and the Prudential loan to the Prudential State Street Separate Account and the related redemption of units will be reflected in that filing.

**7.    Is there a deadline for accepting Prudential's offer to make the redemption payment?**

*Yes.* Prudential has indicated that December 1, 2007 is the deadline for submitting the Authorization Form requesting a redemption payment. Thus, the executed Authorization Form must be *received by Prudential by December 1, 2007.*

8.    **If I don't sign the Authorization Form and receive a redemption payment now, can I elect to do so later?**

*No.*  To receive the redemption payment, you must deliver the executed Authorization Form to Prudential by December 1, 2007.

9.    **What happens to my plan's claim against State Street in connection with the Prudential State Street Separate Account if I don't sign the Authorization Form and receive the redemption payment?**

As a fiduciary of the Separate Account, Prudential will still pursue the claim against State Street on behalf of the Separate Account in which your plan invested.  If there is a recovery from State Street in connection with that Separate Account, your plan will be entitled to a share of that recovery.  However, there is no guarantee that your share of the amount ultimately recovered from State Street will be as much as the redemption payment Prudential is offering to you or that there will be any recovery at all.

*********

*These Questions and Answers reflect legal advice provided to Prudential Retirement Insurance and Annuity Company ("Prudential") only and should not be construed as legal advice to any other individual or entity.  The answers to the questions are based on applicable law as of the date hereof and the facts as they have been explained to us.  We do not make any representation as to any different facts or any authority issued or made available in the future. Any individual or entity (other than Prudential Retirement Insurance and Annuity Company) that has questions as to the tax and other legal implications of Prudential's Plan for Addressing the State Street Fund Losses should consult with its own legal counsel.*

*U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.*

**EXHIBIT 6**

**EXPLANATION AND AUTHORIZATION**

**OF**

**PRUDENTIAL'S PROCESS FOR ADDRESSING YOUR DEFINED BENEFIT
PLAN'S LOSSES IN THE STATE STREET GOVERNMENT CREDIT BOND
FUND**

**EXPLANATION**

**Executive Summary**

After exploring all options, on October 1, 2007, Prudential Retirement filed a
lawsuit against State Street Bank and Trust Company and its affiliates ("State Street") to
recover losses suffered by the Prudential Retirement separate account (the "Separate
Account") and by your Plan as a result of investing in the State Street U.S. Government
Credit Bond Fund (the "State Street Fund").  According to State Street, the investment
objective of its fund was to "match or exceed" the return of the Lehman Brothers
Government Credit Bond Index (the "Benchmark Index").  The lawsuit contends that
State Street misrepresented the investment strategies and practices of the State Street
Fund and failed to exercise the standard of care of a prudent investment manager.  State
Street also did not disclose these off-index investment strategies and practices to
Prudential Retirement or to your Plan.

Prudential Retirement is also implementing a process allowing your Plan to
receive immediate payment for the losses caused by State Street.  The process requires
that your Plan authorize Prudential Retirement to proceed against State Street on behalf
of your Plan.  The process is designed to protect the interests of the affected Plans while
Prudential Retirement pursues remedies against State Street, and should not be viewed as
an admission of liability for Prudential Retirement.

**Summary of Prudential's Process**

Shares of the State Street Fund were held by the Separate Account. Your Plan was an investor in the Separate Account. To address State Street's negative impact on your Plan, Prudential Retirement is seeking your Plan's authorization to take the following steps:

- Prudential Retirement will make a loan to the Separate Account in an amount equal to:

    (i)     the difference between the return on the Benchmark Index and the return actually received by your Plan from the State Street Fund (the "Benchmark Make Whole Amount"). The Benchmark Make Whole Amount will be calculated for the period from July 1 through September 5, 2007 (or for the portion of such period that your Plan invested in the Separate Account). Please note that on September 5, the Separate Account received the first installment of redemption proceeds relating to the State Street Fund; plus

    (ii)    a return on the Benchmark Make Whole Amount for the period from September 5 (or the date of any earlier redemption) to October 8, 2007, such return to match the return on the Benchmark Index (such return, plus the Benchmark Make Whole Amount being the "Total Make Whole Amount"); plus

    (iii)   a portion of the costs of bringing the lawsuit against State Street on behalf of the Separate Account and your Plan.

    Prudential Retirement will not charge any interest or fees on the loan it makes to the Separate Account. The loan will be repayable from the proceeds of the lawsuit against State Street.

- Your Plan will redeem its remaining investment interest in the Separate Account and will instruct Prudential Retirement on the substitute investment option that will receive the redemption proceeds.

- Your Plan will also receive a special redemption payment from the Separate Account equal to the Total Make Whole Amount. This special redemption payment "makes your plan whole to the Benchmark Index" for your investment in the State Street Fund during the period between July 1 through September 5, with the result that, for such period, your Plan will receive a return equal to the Benchmark Index. From September 5th (or earlier for Plans that redeemed out of

the Separate Account) through October 8th, your Plan will receive a return on its July, August and early September losses in the State Street Fund equal to the return on the Benchmark Index. Also, the method of calculation of the Benchmark Make Whole Amount means that your Plan will not be paying Prudential Retirement or State Street any investment management fees for July 1 through September 5, 2007.

- Your Plan will authorize Prudential Retirement, in Prudential Retirement's capacity as a fiduciary under ERISA with respect to the Separate Account and with respect to your Plan, to prosecute and resolve the lawsuit against State Street seeking the return of the losses on the State Street Fund and other damages and recoveries. Prudential Retirement will advance to the Separate Account amounts necessary to pay the legal fees in connection with the prosecution and settlement of such lawsuit. Your plan will not have to pay legal fees "out-of-pocket."

**Important Details Concerning Timing, the Redemption Payment and the State Street Lawsuit**

- **Before December 1, 2007, your Plan must decide whether to receive an "up front" payment for the losses caused by State Street by granting Prudential Retirement the authorization contained in the "Formal Plan Authorization" below.** If your Plan does not elect to receive this "up front" payment, your Plan will only receive from Prudential Retirement the Plan's share of the recovery received from State Street for the Separate Account, if any, in connection with the lawsuit being brought by Prudential Retirement. Prudential Retirement makes no assurances whatsoever concerning the amount and the timing of any such recovery.

- As more fully described in the Formal Plan Authorization below, if your Plan signs the Authorization it will receive a special redemption payment from the Separate Account, as soon as practicable, equal to the Total Make Whole Amount. This special redemption payment will fully restore your Plan's losses as compared to the Benchmark Index returns for the period from July 1 to September 5, 2007, and will pay you a Benchmark Index return on those losses through October 8, 2007.

- Please remember that the loan described above is from Prudential Retirement to the Separate Account, and is repayable only by the Separate Account. Prudential Retirement can obtain repayment of the loan only from your Plan's portion of the proceeds of the State Street lawsuit. If the lawsuit proceeds are not sufficient to repay the loan made by Prudential Retirement, Prudential Retirement will forgive the unpaid balance of the loan. Your Plan will not be obligated to re-pay to

3

Prudential Retirement or to the Separate Account any such unpaid loan balance from any source other than from the proceeds of the State Street lawsuit.

- Also, if the proceeds of the State Street lawsuit allocable to your Plan exceed the special redemption payment made by the Separate Account to your Plan plus an allocable portion of the legal fees associated with the State Street lawsuit, we will pay such excess to your Plan.

## **Summary of Actions Requested**

In order to receive from Prudential Retirement the payment described herein, your Plan is being asked to:

(i)    authorize the loan from Prudential Retirement to the Separate Account,

(ii)   authorize the Separate Account to prosecute and resolve a lawsuit against State Street on the Plan's behalf and to pay associated legal fees,

(iii)  elect to make a special redemption from the Separate Account in respect of the Plan's losses related to the State Street Fund,

(iv)   if your Plan is still invested in the Separate Account, elect to make a redemption of the Plan's remaining investment interest in the Separate Account and identify a substitute Plan investment option to receive the proceeds.

*In order to process your payment, your approval is needed for the process described above, and must in any event be received before December 1, 2007.* We suggest that your Plan complete, sign and return the Formal Plan Authorization contained below as soon as possible, in order to allow us to make the payment to your Plan specified in detail in the Authorization.

Also attached are answers to questions you might have on the treatment of this process under the Internal Revenue Code and ERISA. They are provided by the law firm of the Groom Law Group, Chartered. While the attached questions and answers are not a replacement for your own review and that of your legal counsel, Prudential Retirement hopes they are a helpful start.

4

## FORMAL PLAN AUTHORIZATION

The undersigned retirement plan (the "Plan"), an investor in the State Street Global Advisors Government Credit Bond NL Series Fund – Class A Shares through a Prudential Retirement Insurance and Annuity Company ("PRIAC") Separate Account (the "Separate Account"), hereby:

1.    Authorizes PRIAC to lend to the Separate Account an amount equal to:

      (i)    the amount necessary to restore your Plan's account balance to the level it would have achieved if the return of the Separate Account equaled the return of the Lehman Brothers Government Credit Bond Index, both computed for the period(s) the Plan was invested in the Separate Account between July 1, 2007 through September 5, 2007; plus

      (ii)    a return on the amount described in clause (i) above equal to the return on the Lehman Brothers Government Credit Bond Index for the following period:

            i.  If the Plan redeemed its interest in the Separate Account before September 5, 2007, the period is from the date of such redemption through October 8, 2007

            ii.  If the Plan redeemed its interest in the Separate Account on or after September 5, 2007, the period is from September 5, 2007 through October 8, 2007, plus

      (iii)    the portion of the legal fees and expenses associated with prosecuting the lawsuit against State Street on behalf of the Separate Account and your Plan ("Allocable Attorney Fees"),

and in each case the foregoing amounts will be calculated to reimburse the Plan for any investment fees imposed during such period by either PRIAC or State Street (the amount described in clauses (i) and (ii) above being (the "Special Loan Payment"). PRIAC will not charge any interest or fees on any part of the loan.

The Plan understands that the terms of such loan made by PRIAC to the Separate Account will provide that the Separate Account's obligation to repay the loan will be limited exclusively to the Plan's interest in the Lawsuit Proceeds. "Lawsuit

Proceeds" means the proceeds (whether in respect of investment-related damages, special damages or attorney fees, whether by judgment, settlement or otherwise, and whether paid in whole or in part to the Separate Account or the Plan), if any, of the State Street Lawsuit. "State Street Lawsuit" means the lawsuit filed by PRIAC on behalf of the Separate Account against State Street Bank and Trust Company and its affiliates to recover the losses suffered by investors in the Separate Account and similarly-situated separate accounts, which lawsuit may be amended or supplemented by additional causes of action, claims and defendants.

The Plan understands that it is not obligated to repay the Special Loan Payment made to the Separate Account or the Redemption Payment (as such term is defined below) made to the Plan, except to the extent that the Plan receives any Lawsuit Proceeds.

2.    Acknowledges that PRIAC is a fiduciary of the Plan in connection with the Plan's investment in the Separate Account and authorizes PRIAC to prosecute and resolve the State Street Lawsuit on behalf of the Plan, including with respect to any claim for damages in excess of the Special Loan Payment plus any claim to recovery of legal fees and expenses. The undersigned acknowledges that, if the Lawsuit Proceeds allocable to the Plan exceeds the sum of the Special Loan Amount and Allocable Attorney Fees, any such excess amount will be allocated to the Plan in a manner consistent with PRIAC's obligation as a fiduciary in connection with the Separate Account.

3.    Authorizes PRIAC to redeem the Special Loan Payment from the Separate Account (the amount redeemed being a "Special Redemption Payment"), and acknowledges that the Special Redemption Payment represents a redemption of that portion of the Plan's interest in the Separate Account corresponding to an equal portion of the Plan's claims against State Street, and instructs PRIAC to invest such Special Redemption Payment in the substitute investment described in clause 4 or 5 below, as applicable.

4.    With respect to a Plan that is still invested in the Separate Account on the date of the Special Redemption Payment, authorizes PRIAC to redeem all remaining investment units therein and deposit all the proceeds of that redemption and of the Special Redemption Payment in the following substitute investment option:_____.

5.    With respect to a Plan that has redeemed out of the Separate Account before the date of the Special Redemption Payment, authorizes PRIAC to deposit the proceeds of the Special Redemption Payment in the Plan investment receiving such redemption proceeds, unless PRIAC is instructed otherwise.

PRIAC shall take the actions described in Section 4 and 5 as soon as practicable after its receipt of this Formal Plan Authorization completed and signed by the Plan.

Capitalized terms have the meaning assigned in this Formal Plan Authorization.

This Formal Plan Authorization must be completed and signed before December 1, 2007 in order for the Plan to avail itself of the Prudential Retirement process described above.

NAME OF PLAN

_____

By: _____

Name:

Title:

Dated: _____, 2007

# GROOM LAW GROUP

### Questions and Answers on Prudential's Plan for Addressing State Street Fund Losses

### October 1, 2007

1. **Is Prudential Retirement Insurance and Annuity Company's redemption payment for the benefit of certain participants a "contribution" for purposes of rules under the Internal Revenue Code relating to annual contribution limits, non-discrimination and deductibility?**

   The redemption payment by Prudential Retirement Insurance and Annuity Company ("Prudential") is being made as part of the process described in the attached explanation of Prudential's Plan for Addressing State Street Fund Losses. In our view, under IRS guidance, this type of payment should be treated in a manner similar to plan earnings and not as a "contribution" within the meaning of the various Internal Revenue Code provisions.

2. **Is Prudential's redemption payment currently taxable to the affected plan participants?**

   No, under section 402(a) of the Internal Revenue Code, the payment should not be taxable to affected participants until distributed from the plan, similar to plan earnings.

3. **What should you consider as an ERISA fiduciary in deciding whether to agree to Prudential's plan for addressing the State Street Fund losses?**

   As you know, in making a decision on behalf of a plan, an ERISA fiduciary must act prudently and solely in the interest of the plan and its participants and beneficiaries. Prudence is generally measured by focusing on the fiduciary's conduct in arriving at a decision, asking whether the fiduciary used appropriate methods to investigate and determine the merits of a particular decision. This is called "procedural prudence." DOL regulations that address the investment duties of fiduciaries similarly provide that a fiduciary will satisfy its duty to act prudently by giving "appropriate consideration" to facts and circumstances that the fiduciary knows or should know are relevant to the particular investment or investment course of action, and then acting accordingly. 29 C.F.R. § 2550.404a-1.

   To ensure that it is making a prudent, informed decision on behalf of its plan, the plan fiduciary should first thoroughly understand how Prudential's proposal would work. Here are the key features —

   - The redemption payment to the plan will be funded through a loan by Prudential to the Prudential State Street Separate Account (*i.e.*, the loan proceeds will be used to redeem the plan's units and fund attorneys' fees for the State Street lawsuit).

   - Prudential will advance the cost of attorneys' fees for the lawsuit against State Street on behalf of the Separate Account and its investor plans.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

- The Separate Account loan will have to be repaid only if amounts are recovered from State Street for that Separate Account or its investing plans. Otherwise, neither the Separate Account nor the investing plans are required to repay this loan.

- Any recovery against State Street for the Separate Account in excess of the amounts loaned by Prudential to that Separate Account will be allocated among the plans that invested in the Separate Account.

- The plan is not being asked to waive any claims that it may have in connection with the Prudential State Street Separate Account losses. In order to receive the proceeds, it is being asked to authorize Prudential to make the loan to the Separate Account and to pursue the lawsuit against State Street.

Once it understands Prudential's proposal, a prudent fiduciary should weigh the potential benefits of the proposal to the plan and its participants against any potential risks and costs. A fiduciary might identify the following as possible benefits of Prudential's proposal: (i) the plan (and participants) would obtain immediate access to funds to make up losses from the investment in the Prudential State Street Separate Account during July-August 2007; (ii) the plan (and participants) would receive this payment without incurring any out-of-pocket costs of litigation or other action (e.g., attorneys fees); and (iii) there is the potential for an additional recovery by the plan if Prudential's lawsuit results in a recovery to the Separate Account that exceeds the aggregate loans made by Prudential to the Separate Account. A fiduciary might identify as a possible risk or cost of accepting Prudential's proposal the fact that any recovery in litigation pursued separately by the plan could be reduced by the amount of the redemption payment received by the plan under Prudential's proposal or could be affected by a decision or settlement in the Prudential lawsuit.

When considering a course of action for its plan, a plan fiduciary should also ensure that the plan does not engage in any prohibited transactions under ERISA or the Internal Revenue Code. See Q&A 4 for a discussion of this consideration.

4.    **Will Prudential's redemption payment or proposed loan to the Separate Account constitute a "prohibited transaction" under ERISA § 406 or the Internal Revenue Code § 4975 for either the Plan sponsor/fiduciary or Prudential?**

So long as a fiduciary of the Plan agrees to the procedures Prudential Retirement has proposed (see the attached Explanation and Authorization Form), we believe that the payment and/or loan, if prohibited at all, should be eligible for one or more exemptions from the prohibited transaction rules of ERISA and the Code. For example, as Prudential Retirement has explained, the redemption payment is funded through a no-interest, unsecured loan by Prudential to the Prudential State Street Separate Account; we believe that the "Interest-Free Loan Exemption" (Prohibited Transaction Class Exemption 80-26) should be available to cover those loans. In addition, because the redemption payment is actually accomplished through your Plan's sale (redemption) of its units of the Separate Account (a "pooled separate account"), the redemption payment may also be eligible for relief under the "Pooled Separate Account

Exemption" in ERISA section 408(b)(8) and Code section 4975(d)(8). That exemption covers the purchase or sale of units in a pooled separate account.

**5.    How will the Prudential redemption payment be reported to Plan participants? How will it be reported to my Plan?**

Prudential Retirement has advised that each participant in a defined contribution plan credited with the redemption payment will receive a statement showing that he or she was credited with an "earnings adjustment" in the Prudential State Street Separate Account immediately before transfer of the balance (which will include the redemption payment) to the investment fund chosen by the plan fiduciary as the successor fund. The transfer to the new investment fund will be reflected on the participant's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new fund.

The plan administrator of a defined benefit or defined contribution plan credited with the redemption payment will receive a statement indicating that the plan was credited with an "earnings adjustment" in the Prudential State Street Separate Account in the amount of the redemption payment, immediately prior to the transfer of the plan's balance in the Prudential State Street Separate Account (including the Prudential payment) to a new Prudential investment fund. (The plan administrator will have identified this new investment fund and directed Prudential to transfer to that fund the proceeds of the redemption from the Prudential State Street Separate Account.) The transfer to the new investment fund will show on the plan's statement as a redemption of units out of the Prudential State Street Separate Account and a purchase of units in the new investment fund.

**6.    What will my Plan have to report on its Form 5500? Does it have to include the Prudential loan to the Prudential State Street Separate Account?**

On the plan's Form 5500, we expect that the only reporting required will be: (i) the beginning and end of year balances in all pooled separate accounts in the aggregate (including the balances in the Prudential State Street Separate Account at the beginning of the year and the balance in the new investment fund at the end of the year), on Schedule H Part I line 1 c (10); and (ii) the net investment gain/loss on investments in all pooled separate accounts, on Schedule H Part II line 2 b (7). Of course, you should consult your own advisors with respect to your reporting obligations as plan administrator of your Plan.

The Prudential State Street Separate Account will file its own Form 5500 as a "direct filing entity", as it has done in the past, and the Prudential loan to the Prudential State Street Separate Account and the related redemption of units will be reflected in that filing.

**7.    Is there a deadline for accepting Prudential's offer to make the redemption payment?**

*Yes.* Prudential has indicated that December 1, 2007 is the deadline for submitting the Authorization Form requesting a redemption payment. Thus, the executed Authorization Form must be *received by Prudential by December 1, 2007.*

8.  **If I don't sign the Authorization Form and receive a redemption payment now, can I elect to do so later?**

*No.* To receive the redemption payment, you must deliver the executed Authorization Form to Prudential by December 1, 2007.

9.  **What happens to my plan's claim against State Street in connection with the Prudential State Street Separate Account if I don't sign the Authorization Form and receive the redemption payment?**

As a fiduciary of the Separate Account, Prudential will still pursue the claim against State Street on behalf of the Separate Account in which your plan invested. If there is a recovery from State Street in connection with that Separate Account, your plan will be entitled to a share of that recovery. However, there is no guarantee that your share of the amount ultimately recovered from State Street will be as much as the redemption payment Prudential is offering to you or that there will be any recovery at all.

\*\*\*\*\*\*\*\*

*These Questions and Answers reflect legal advice provided to Prudential Retirement Insurance and Annuity Company ("Prudential") only and should not be construed as legal advice to any other individual or entity. The answers to the questions are based on applicable law as of the date hereof and the facts as they have been explained to us. We do not make any representation as to any different facts or any authority issued or made available in the future. Any individual or entity (other than Prudential Retirement Insurance and Annuity Company) that has questions as to the tax and other legal implications of Prudential's Plan for Addressing the State Street Fund Losses should consult with its own legal counsel.*

*U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.*

**EXHIBIT 7**

# State Street Global Advisors Passive Intermediate Bond Index SL Series Fund

Class A Shares

**First Quarter 2007 Fund Fact Sheet**

## Description/Objective

This Separate Account invests wholly in the State Street Global Advisors Passive Intermediate Bond Index SL Series Fund (the "Fund"), a commingled fund. This enhanced index Fund seeks to achieve stable, predictable returns above those of the Lehman Brothers Intermediate U.S. Government/Credit Index. There is no assurance the objective of the Fund will be met.

## Investor Risk Profile

This Account may be suitable for moderate-risk investors who:
- Seek higher current income to be reinvested in the portfolio than is available from short-term bonds with less volatility than a long-term bond.
- Can tolerate a potentially moderate level of account balance fluctuation.

| Low | Moderate | High |
|-----|----------|------|

## Key Facts

| | |
|---|---|
| **INVESTMENT ADVISER:** | State Street Global Advisors |
| **FUND CATEGORY:** | Fixed Income - Domestic |
| **NET ASSETS:** | $1,259 Million |
| **INCEPTION DATE:** | Jan. 1988 |
| **DUE DILIGENCE QUARTILE RANK:** | 2 |
| **MANDATE BENCHMARK▼:** | Lehman Brothers Intermediate U.S. Government/Credit Index |
| **PORTFOLIO MANAGER:** | John Kirby |

The **Due Diligence Quartile Rank** shown is based on the latest available Due Diligence Analysis as of 12/31/2006. This Fund was rated against 96 funds in the Fixed Income - SSgA Intermediate Universe. See Userguide or pg 2 for definition.

## Performance* (%)
As of 3/31/2007

| | Cumulative Returns | | Average Annual Total Returns | | | | |
|---|---|---|---|---|---|---|---|
| | Quarter | YTD | 1 Year | 3 Year | 5 Year | 10 Year | Since Inception |
| Fund | 0.88 | 0.88 | 5.49 | 2.35 | 4.67 | 5.71 | N/A |
| Mandate Benchmark▼ | 1.59 | 1.59 | 6.14 | 2.60 | 4.91 | 5.99 | N/A |

\* Results are net of the highest management fee for this Fund (currently 0.35%), but are before any contract-related expenses. The Separate Account was established in 12/1996. Performance from periods prior to 1/1997 represents the State Street Global Advisors Passive Intermediate Bond Index SL Series Fund, net of the applicable management fee.

## Annual Performance*

| | Fund | Mandate Benchmark▼ |
|---|---|---|
| **2006** | 4.27% | 4.08% |
| **2005** | 1.38% | 1.58% |
| **2004** | 3.10% | 3.04% |
| **2003** | 4.26% | 4.31% |
| **2002** | 9.32% | 9.84% |

The performance quoted above represents past performance and current performance may be lower or higher than the performance data quoted. Past performance does not guarantee future results. The investment return and principal value will fluctuate so that an investor's units, when redeemed may be worth more or less than original cost. The performance results shown do not reflect the deduction of the sales charge that may apply if mutual fund shares were purchased outside of the plan, such sales charges would lower performance.

▼ An investment cannot be made directly in an index.

**Lehman Brothers Intermediate U.S. Government/Credit Index:** Composed of all bonds covered by the Lehman Brothers U.S. Government Bond and U.S. Credit Indexes with maturities between 1 and 9.99 years. This index includes all publicly issued, fixed rate, nonconvertible investment-grade corporate debt. Issues are rated at least Baa by Moody's Investors Service or BBB by Standard & Poor's, if unrated by Moody's. Collateralized Mortgage Obligations (CMOs) are not included. Total return comprises price appreciation/depreciation and income as a percentage of the original investment. Indexes are rebalanced monthly by market capitalization.

✆ For current performance or additional information, go to: **www.Prudential.com** or call the toll-free number that appears on your statement.

Prudential ⬡ Financial

First Quarter 2007 Fund Fact Sheet                    State Street Global Advisors Passive Intermediate Bond Index SL Series Fund

| Sector Allocation | | As of 3/31/2007 | |
|---|---|---|---|
| Corporates | 38.23% | Agency | 10.91% |
| Treasury | 24.07% | Non-US Credit (Yankee) | 6.75% |
| Asset-Backed | | Utility | 2.76% |
| Securities (ABS) | 23.79% | Mortgage-Backed | |
| Finance | 15.28% | Securities (MBS) | 2.64% |
| Industrial | 13.45% | CMBS | 0.36% |

## ADVANTAGE

State Street Global Advisors is a strong manager of large fixed income portfolios, with total assets under management of one trillion dollars. State Street employs a unique, active fixed income trading strategy. The Fund combines the usually predictable strength of passive management with the repeatable aspects of active management to seek to provide a stable pattern of incremental returns.

## GUIDELINES

- Employs an enhanced bond indexing strategy which seeks to add consistent value over the benchmark through a disciplined, risk-controlled investment process that combines qualitative and quantitative portfolio management techniques.
- The portfolio is duration neutral relative to the benchmark.
- Invests only in investment-grade securities. Historically, the average credit quality rating is AA.
- Incremental returns are achieved through an investment process that seeks to emphasize three specific criteria:
  - ◇ Superior portfolio structure: Utilizing active sector and issue selection techniques, only those securities which represent relative value are purchased;
  - ◇ Targeted credit analysis: Ongoing research on the fixed income sectors is conducted by in-house staff; and
  - ◇ Opportunistic trading: Prices in the fixed income markets are negotiated. Supplying liquidity for a price through active trading strategies is a low-risk/high-reward process.

## PORTFOLIO MANAGER

- **John Kirby** is the portfolio manager for the fund and head of passive fixed income.

## DUE DILIGENCE QUARTILE RATING

The Due Diligence Advisor Program℠ employs a disciplined process (patent pending) to select, evaluate, and monitor the investment offering. This Program helps to ensure that funds offered by Prudential Retirement are highly competitive and meet the varied investment requirements of the retirement plan sponsors and their employees, as well as outside retirement plan consultants that may be involved with the plan. The "Due Diligence Quartile Rank" provides an overall rank for each manager within the relevant style universe (e.g., Large Cap Stock - Growth). Each fund is assessed on the basis of nominal and risk adjusted returns, and downside and relative risk (versus an appropriate benchmark). For Funds that have been in existence for more than 5 years, only actual performance will be used in the evaluation process. For funds in existence less than five years composite performance may be included in the evaluation if such composite performance is shown on the fact sheet. Composite performance is not actual and not reflective of any specific investment but is comprised of accounts that are managed in a substantially similar strategy as this separate account. These metrics are weighted based on 1-3 and 5-year results, with greatest emphasis placed on long-term timeframes. Criteria are then used to generate an overall rating that determines a quartile distribution for the Fund within its peer group on a quarterly basis.

## OTHER

The Fund is market valued. Account balance is influenced by the timing and size of contributions/deposits and withdrawals.

The investment manager of the separate account (as that term is defined in ERISA) is Prudential Retirement Insurance and Annuity Company. The registered investment manager is State Street Global Advisors.

Prudential Retirement is a Prudential Financial business. Prudential Retirement's Manager of Managers group annuity contracts are issued by The Prudential Retirement Insurance and Annuity Company (PRIAC), Hartford, CT, a Prudential Financial company.

Prudential 🦅 Financial

**EXHIBIT 8**

LEGAL_US_E # 77575473.2

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

Edwin G. Schallert
Partner
Tel  212 909 6295
Fax  212 909 6836
egschallert@debevoise.com

January 14, 2008

BY HAND

Barry G. Sher, Esq.
Paul Hastings
75 East 55th Street, 1st Floor
New York, NY  10022

**Prudential v. State Street
Docket No. 07 Civ. 8488 (RJH)**

Dear Barry:

    I am writing on behalf of Prudential Retirement Insurance and Annuity Company ("Prudential") to follow up on our recent discussions.

    First, I enclose the materials that Prudential sent in October 2007 to persons authorized to act on behalf of 215 defined contribution and defined benefit plans.  Of those, 24 plans did not elect to participate in the loan process.  Prudential has advanced $79 million pursuant to the process.

    Second, this will confirm that defendants' time to serve their motion to dismiss or their answer is extended to Monday, February 4, 2008.  The date for plaintiff to serve its opposition to any motion to dismiss will be Monday, March 10, 2008.  The date for defendants to serve any reply papers will be Monday, April 7, 2008.  (Regardless of how papers are served, copies will be transmitted electronically to opposing counsel on those dates.)  These dates will be incorporated into the proposed scheduling order.

    Thank you for your attention to this matter.

Sincerely yours,

*Ed Schallert*

Edwin G. Schallert

Enclosures
22647180

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai