UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN RE STATE STREET BANK AND TRUST : 
CO. ERISA LITIGATION :
:
:
:         07 Civ. 8488 (RJH)

This document relates to: :
:
07 Civ. 8488 (*Prudential Retirement Insurance and* :
*Annuity Company v. State Street Bank and Trust* :
*Company and State Street Global Advisors, Inc.*) :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### DECLARATION OF EDWIN G. SCHALLERT PURSUANT TO RULE 56(f) IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Edwin G. Schallert, hereby declare as follows:

1.      I am an attorney admitted to practice in New York. I am a member of the bar of this Court and a member of the firm of Debevoise & Plimpton LLP, which represents plaintiff Prudential Retirement Insurance and Annuity Company ("Prudential") in this action.

2.      I submit this declaration pursuant to Federal Rule of Civil Procedure 56(f) to explain why Prudential is unable to provide the Court with affidavits or depositions to oppose one aspect of the pending motion for summary judgment brought by State Street Bank and Trust Company and State Street Global Advisors (together, "State Street").

3.      It is not clear to Prudential whether State Street, in support of its motion for summary judgment, is contending that there is no genuine issue of material fact that the damages incurred by the affected retirement plans (the "Plans") exceed the advances made by Prudential to certain Plans during the pendency of this action. If State Street is making that contention,

Prudential's response is that while it has reason to believe that the damages incurred will exceed the advances, it does not yet possess the admissible evidence that would enable it to oppose this aspect of State Street's motion.

4.      State Street has not yet provided any discovery in this case.  On February 4, 2008, Prudential served its First Set of Requests for the Production of Documents on State Street, a copy of which is attached hereto as Exhibit A.  At State Street's request, Prudential agreed to extend State Street's time to provide its responses and objections to these document requests from March 5, 2008 until March 24, 2008.  According to the scheduling order issued by this court, document discovery is to be completed on or before September 12, 2008.

5.      Through its document requests and other discovery, Prudential expects to discover information that will enable it to establish facts about State Street's conduct and about the investments at issue in this action, including: (1) when State Street breached its fiduciary duties, (2) the specific holdings of the bond funds managed by State Street, (3) State Street's investment strategy for those bond funds and changes in that strategy, (4) State Street's disclosures and non-disclosures to Prudential, (5) State Street's measurement of tracking error and other metrics evaluating risk, (6) State Street's intent and knowledge with respect to investments by those bond funds, and (7) recoveries to which the Plans are entitled, including (i) damages pursuant to the rule set forth in *Donovan v. Bierwirth*, 752 F.2d 1049, 1056 (2d Cir. 1985), and (ii) the profits that State Street made on Plan assets that were invested in the bond funds.  All, or virtually all, of this information is within the exclusive control of State Street.

6.      Prudential expects to present factual and expert testimony about State Street's breaches of its fiduciary duties, State Street's measurement of tracking error and other metrics evaluating risk, and the calculation of damages to Plans.  Prudential expects that these expert

opinions will be based on, among other things, information obtained through document and deposition discovery against State Street.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York, on March 10, 2008.

_____/s/ Edwin G. Schallert_____
Edwin G. Schallert

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN RE STATE STREET BANK AND TRUST          :
CO. ERISA LITIGATION                                    :
                                                                        :
                                                                        :          07 Civ. 8488 (RJH)
This document relates to:                              :
                                                                        :
07 Civ. 8488 (*Prudential Retirement Insurance and* :
*Annuity Company v. State Street Bank and Trust*    :
*Company and State Street Global Advisors, Inc.*)  :
                                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S FIRST SET OF REQUESTS
## FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff requests

that defendants produce the following documents for examination, inspection and copying.

The uniform definitions and rules of construction set forth in Rule 26.3 of the Civil Rules

of this Court (the "Local Rules") are incorporated herein by reference, and all capitalized terms

used but not defined herein have the definitions (if any) given to them in the complaint in this

action (the "Complaint"). In addition, the following instructions and definitions apply to this

First Set of Requests for the Production of Documents (the "Requests").

### Instructions

1.        Responsive documents should be produced at the offices of Debevoise &

Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attention: Edwin G. Schallert,

Esq., within thirty (30) days after service of the Requests.

2.        Responsive documents should be produced as they have been kept in the ordinary

course of business or should be organized and labeled to correspond with the Requests to which

they are responsive.  All attachments and appended or embedded links or files should be produced if any one of them is responsive to any of the Requests.

3.    If defendants are not producing documents with respect to any of the Requests, defendants should so state in writing.

4.    In producing documents pursuant to the Requests, defendants should furnish all documents that are in the possession, custody or control or either of them, regardless of whether those documents are possessed by such defendants or by any of their agents, attorneys, investigators, representatives, financial advisors, consultants or employees.

5.    The Requests should be deemed to be continuing, so as to require prompt supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if further documents called for herein are obtained or discovered after defendants respond to the Requests.

6.    If any documents or parts of documents called for by the Requests are withheld or redacted under an assertion of privilege or work-product production, defendants should comply with the requirements of Rule 26.2 of the Local Rules.

7.    If any documents or parts of documents called for by these Requests have been destroyed, discarded, or otherwise disposed of, defendants should provide a list setting forth as to each such document the following information: (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for

destruction or other disposition; (g) the name, address, occupation, title, and business affiliation of each person who authorized destruction or other disposition; (h) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the document; and (i) the Request or Requests to which the document is responsive.

8.    Defendants should produce all electronically stored information in the form in which it ordinarily is maintained, with the exception of e-mails.  E-mails should be produced in electronic form in a manner that preserves the relationship between each e-mail and all its attachments. Information from each e-mail header field should be produced in a separate database field.  Any attachments to an e-mail should be produced in the electronic from in which it ordinarily is maintained.

9.    When producing electronically stored information, defendants should provide any and all associated metadata and any and all associated files, including but not limited to attachments or hyperlinked files.

10.    Defendants should produce all voice recordings, including digital.

## Definitions

1.      The term "10% Policy" refers to the practice of charging certain costs, and of effecting a given contribution at the Base Fund's Net Asset Value as calculated at the end of the day on the date of the contribution, all as described in the second-to-last and third-to-last paragraphs of Exhibit 2 ("Fee Schedule") to the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company.

2.      The term "ABX Index" refers to any index created by the London-based Markit Group that is based on a basket of specified tranches of specified issuances of residential subprime mortgage-backed securities, including but not limited to the index that Defendants have referred to as the "BBB ABX Index."

3.      The term "Base Fund" has the same meaning as the terms "'base' fund" or "base fund," as used in the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company.

4.      The term "Benchmark Indices" refers to the Lehman Brothers Intermediate U.S. Government/Credit Index, the Lehman Brothers U.S. Government/Credit Index, and the J.P. Morgan 1 Month LIBOR Index.

5.      The term "CIGNA" refers to CIGNA Corporation and the Connecticut General Life Insurance Company, together with their parent companies, subsidiaries, affiliates,

4

predecessors and successors, as well as any employees, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys.

6.    The term "Class Description" has the same meaning given to this term in the Fourth Trust Declaration.

7.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8.    The term "Defendants" refers to State Street Bank and Trust Company (including State Street Global Advisors) and State Street Global Advisors, Inc., together with their parent companies, subsidiaries, affiliates and predecessors, as well as any employees, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys.

9.    The term "Defendant Management" refers to the senior management or boards of directors of defendants (or of either of them), or committees of any such board of directors; any oversight or risk-management committee of defendants (or of either of them); the trustees of the Trust or members of the board of any registered mutual fund; or the officers of defendants (or of either of them) who are or were responsible for supervising or overseeing investment managers for any of the Subject Funds or Subject Strategies.

10.    The term "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended.

11.    The term "Expense-Charging Policy" refers to the practice or policy of charging or assessing certain expenses that may be charged to a "Participant" (as defined in the Fourth Trust Declaration), all as described in Section 5.6 of the Fourth Trust Declaration.

22662978v1

12.     The term "Final Fund Termination Date" refers to the later of (a) the termination date of the Intermediate Bond Fund and (b) the termination date of the Government Bond Fund.

13.     The "Fourth Trust Declaration" refers to the Fourth Amended and Restated Declaration of Trust executed by State Street Bank on or about August 15, 2005.

14.     The term "Fund Declaration" has the same meaning given to this term in the Fourth Trust Declaration.

15.     The term "Fund Suspensions" refers to the dissolutions, liquidations, or suspensions or redemptions of the Intermediate Bond Fund, the Government Bond and the Limited Duration Bond Fund.

16.     The term "Government Bond Fund" refers to the Government Credit Bond Non-Lending Fund and the Government Credit Bond Non-Lending Series Fund created pursuant to the Trust, and any other series, class, variation or marketing name used to describe an investment in the portfolio of assets held in such funds or a substantially similar portfolio.

17.     The term "Government Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Government Bond Fund.

18.     The term "Intermediate Bond Fund" refers to the Intermediate Bond Securities Lending Fund and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other series, class, variation or marketing name used to describe an investment in the portfolio of assets held in such funds or a substantially similar portfolio.

6

19.     The term "Intermediate Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Intermediate Bond Fund.

20.     The term "Investment Management Agreement" refers to the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company, as well as any related written or oral contract, understanding, promise, agreement or agreement in principle, all exhibits or other documents ancillary thereto or referred to therein, and all drafts of and amendments to or restatements of the foregoing documents.

21.     The term "Limited Duration Bond Fund" refers to any fund or trust that has been referred to by Defendants as the Limited Duration Bond Fund.

22.     The term "Limited Duration Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle that Defendants have referred to as the Limited Duration Bond Strategy, together with any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Limited Duration Bond Fund.

23.     The term "Mortgage-Backed Derivatives" refers to swaps, options, swaptions, futures or other derivatives, the value of which or the obligation of a party under which is

dependent on or is derived from, in whole or in part, home equity loans or mortgages, including but not limited to the ABX Index.

     24.    The term "Mortgage-Backed Securities" refers to securities (whether referred to as mortgage-backed securities, asset-backed securities, collateralized debt obligations, or another term) that are collateralized by, or consist of assets deriving their value directly or indirectly from, residential home equity loans or mortgages.

     25.    The term "Operative Documents" refers to the Investment Management Agreement, the Original Agreements, the Trust Declaration, the Subject Fund Declarations, and the Subject Fund Class Descriptions.

     26.    The term "Original Agreements" has the meaning given to it in the Investment Management Agreement.

     27.    The term "Pension Plans" refers to all "pension plans," within the meaning of that term under ERISA, that had or have investments in the Intermediate Bond Fund or the Government Bond Fund through "separate accounts" (as that term is defined in ERISA § 3(17)) that were or are held by Prudential or by any of Prudential's clients through a Prudential account.

     28.    The term "Prudential" refers to plaintiff Prudential Retirement Insurance and Annuity Company, together with its parent companies, subsidiaries, affiliates, and predecessors, as well as any employees, agents, representatives, or any other person(s) acting behalf of any of them, including attorneys.

     29.    The term "Risk Information and Targets" refers to actual, expected or target risk levels, or actual, expected or target levels of tracking error, volatility, value at risk, shortfall, risk budget, or any other measure of risk or uncertainty.

30.     The term "State Street Pension Plans" refers to all pension plans (as that term is defined in ERISA § 3(2A)) that have been established or maintained by Defendants, alone or in conjunction with other employers, whose participants were or have included employees of Defendants.

31.     The term "State Street Target Date Funds" refers to all funds managed by Defendants that (a) have the term "Target Date" in their names or in a name under which they have been marketed or (b) changed or change their investment portfolios for retirement accounts based on a beneficiary's age, number of years remaining before anticipated retirement, or similar time-based criteria.

32.     The term "Subject Fund Class Descriptions" refers to all Class Descriptions executed by Defendants, pursuant to the Trust Declaration, relating to the issuance of units in any class of the trust (or trusts) established pursuant to the Trust Declaration with respect to any Subject Fund.

33.     The term "Subject Fund Declarations" refers to all Fund Declarations and amended or restated Fund Declarations issued by Defendants pursuant to the Trust Declaration, relating to the establishment or continuance of any of the Subject Funds.

34.     The term "Subject Funds" refers to (a) the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund (the "Bond Funds"), (b) any current or former portfolios or accounts of the Trust that have invested in the Bond Funds, and (c) any current or former portfolios or accounts of the Trust in which any Bond Funds have invested.

35.     The term "Subject Strategy" refers to the Intermediate Bond Strategy, the Government Bond Strategy and the Limited Duration Bond Strategy.

36.     The term "Trust" refers to trust, sub-accounts and portfolios created pursuant to the Trust Declaration, including sub-accounts and portfolios that have been closed, frozen, liquidated or otherwise terminated.

37.     The term "Trust Declaration" refers to the Declaration of Trust, dated on or about February 21, 1991, pursuant to which State Street Bank and Trust Company established the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, together with all amendments and restatements of such declaration, including but not limited to the Fourth Trust Declaration.

**Documents to be Produced**

1.      The Operative Documents, together with any amendments, supplements or modifications of the Operative Documents.

2.      All documents relating to the creation, modification, amendment, supplementation or restatement of any of the Operative Documents.

3.      All documents concerning communications between (a) Defendants and (b) Prudential and CIGNA (or either of them), relating to the Operative Documents.

4.      All documents concerning communications on or after January 1, 2005, relating to any Subject Fund, Mortgage-Backed Derivatives or Mortgage-Backed Securities.

5.      All documents concerning the establishment of the Subject Funds, or concerning the investment strategies or objectives, guidelines, policies or rules of the Subject Funds.

6.      All documents concerning communications between or among Defendants, including without limitation any communication with any trustee of any of the Subject Funds, relating to any Subject Fund, or to Mortgage-Backed Derivatives.

7.      All documents concerning communications between (a) Defendants and (b) Prudential and CIGNA (or either of them), concerning (i) the Trust or (ii) any Subject Fund or any other funds that are in the Trust or were established pursuant to the Trust Declaration and that were or are held by Defendants, including documents relating to or contemplating the formation of the Trust, the formation of any Subject Fund, or the formation of any other funds that are in the Trust or were established pursuant to the Trust Declaration and have been held by Defendants.

11

8.     All documents concerning Prudential's investment, whether directly or through any other fund, account or pooled investment vehicle, in any of the Subject Funds, including all documents reflecting, memorializing, discussing or relating to performance goals, objectives, investment styles, disclosures, disclosure policies or practices, and expectations regarding the management of any of the Subject Funds, and all documents reflecting, memorializing or manifesting analyses of, or comparisons of performance to the Benchmark Indices or other indices.

9.     All documents concerning Prudential's investment, whether directly or through any other fund, account or pooled investment vehicle, in any Subject Strategy, including documents establishing, memorializing or discussing performance goals, objectives, investment styles, disclosure practices, and expectations regarding the management of the Subject Strategies, and including documents reflecting, memorializing, or manifesting analyses of or comparisons to Benchmark Indices or other indices.

10.     All documents relating to any Subject Fund, including but not limited to plans, contracts, reports, internal memoranda, PowerPoint or other presentation materials, notes, meeting minutes (including those from committee meetings), offering memoranda, promotional materials, analyses, research results, internal compliance reports and strategy documents.

11.     All documents concerning any Subject Fund that were delivered to Prudential, CIGNA or any other person or entity that invested in a Subject Fund.

12.     All documents concerning communications between Prudential and Defendants on or after January 1, 2005, seeking, providing or concerning information about the Intermediate Bond Fund or the Government Bond Fund.

12

13.    All documents concerning the goals, objectives, investment style, performance or underperformance, disclosures, disclosure policies or practices, or expectations for the management or conduct of any Subject Fund.

14.    All documents concerning the goals, objectives, investment styles, performance, underperformance, or disclosure policies or practices of, or disclosures relating to, or expectations for the management or conduct of, any Subject Strategy.

15.    All documents concerning analyses of Benchmark Indices.

16.    All documents concerning comparisons of the performance of any Subject Fund or Subject Strategy to Benchmark Indices or other indices.

17.    All documents concerning possible or proposed changes to strategies, practices or personnel intended to address or avoid underperformance of any Subject Fund or Subject Strategy.

18.    All documents concerning any Subject Strategy, including plans, contracts, reports, internal memoranda, PowerPoint or other presentation materials, notes, meeting minutes (including those from committee meetings), offering memoranda, promotional materials, analyses, research results, internal compliance reports and strategy documents.

19.    All documents concerning Mortgage-Backed Derivatives held by a Subject Fund.

20.    All documents concerning Defendants' consideration or recognition of the Subject Funds' status as plan assets governed by ERISA, including but not limited to consideration or recognition of such status in connection with Defendants' inclusion of investments in Mortgage-Backed Securities or Mortgage-Backed Derivatives in the portfolios of Subject Funds.

13

21.     All documents concerning the use of financial leverage in any Subject Fund or Subject Strategy or Defendants' assessment of the appropriate degree of financial leverage used in the portfolios of Subject Funds.

22.     All documents concerning Risk Information and Targets for any Subject Fund or Subject Strategy, including but not limited to all documents concerning calculations of Risk Information and Targets for any Subject Fund or Subject Strategy, the results of such calculations or the methods or models used to make such calculations.

23.     All documents concerning the Defendants' policies, processes, and practices for determining the ongoing suitability of the Subject Funds as investment options for ERISA pension plans, or concerning any application thereof with respect to the Subject Funds.

24.     All documents concerning investment strategies designed to hedge, manage or isolate risks of Subject Funds or Subject Strategies, or to manage, limit or constrain Risk Information and Targets of Subject Funds or Subject Strategies.

25.     All documents concerning disclosure to Prudential or CIGNA, to Defendant Management or to others of Risk Information and Targets, or of investment strategies designed to hedge, manage or isolate risk, for any Subject Fund or Subject Strategy.

26.     All documents analyzing or discussing risk or risk-measurement metrics (including Risk Information and Targets), and models or methods to compute such metrics.

27.     All documents concerning the liquidity of the Subject Funds or Subject Strategies, including documents concerning calculations of such liquidity or models to contain, limit or manage such liquidity.

14

28.     All documents discussing or analyzing liquidity policies or practices of any pooled investment vehicles or concerning models or methods to contain, limit, manage or measure the liquidity of pooled investment vehicles.

29.     All documents concerning Defendants' valuation policies and practices for marking to market investments in the Subject Funds, including but not limited to valuation policies and practices concerning Mortgage-Backed Securities and Mortgage-Backed Derivatives.

30.     All documents, including but not limited to accountants' work papers, concerning financial statements or performance reports (whether audited or unaudited) of Subject Funds, including (a) any Form 5500 Annual Return/Reports or similar reports, (b) any yearly or quarterly financial statements concerning the Subject Funds and (c) any filings or reports prepared in connection with the Subject Funds in compliance with 29 C.F.R. section 2520.103-12.

31.     All accountants' work papers or other documents created by auditors or accountants during the period from January 1, 2005, to the present, concerning the Subject Funds but not responsive to the Document Request immediately above.

32.     All documents concerning the Subject Funds and that were created pursuant to Sections 6.2, 6.3 or 6.4 of the Fourth Trust Declaration, or any section of a Trust Document addressing substantially the same topic(s) as Sections 6.2, 6.3 or 6.4 of the Fourth Trust Declaration, including but not limited to accountants' work papers.

22662978v1

33.    All documents created on or after January 1, 2005, concerning management letters prepared by independent accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards.

34.    All documents created on or after January 1, 2005, prepared by accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards, concerning control deficiencies or material weaknesses in Defendants' internal controls over financial reporting that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing investments of the Subject Funds.

35.    All documents created on or after January 1, 2005, prepared by accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards, concerning any subsequent discovery of facts existing at the date of an accountant's or auditor's report that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing the investments of the Subject Funds.

36.    All documents created on or after January 1, 2005, concerning management responses or explanations addressing issues raised in management letters or other communications prepared by independent auditors that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing the investments of the Subject Funds.

37.    All documents concerning disclosures to Prudential or CIGNA, Prudential clients, Defendant Management or others of the use of leverage in any Subject Fund or Subject Strategy.

16

38.    All documents concerning potential or actual use of Mortgage-Backed Securities or Mortgage-Backed Derivatives in or in connection with any Subject Fund or Subject Strategy, or relating to the consideration of or decisions about such use.

39.    All documents concerning disclosure to Prudential or CIGNA, to Defendant Management or to others of the potential or actual use of Mortgage-Backed Derivatives in any Subject Fund or Subject Strategy.

40.    All documents concerning the potential or actual diversification or concentration of the investments of the Subject Funds or Subject Strategies.

41.    All documents concerning disclosures to Prudential or CIGNA, to Defendant Management or to others, of the diversification or concentration of investments in the Subject Funds or Subject Strategies.

42.    All documents concerning potential or actual redemptions or withdrawals from the Subject Funds and their actual or potential effect on the Risk Information and Targets of, the use of leverage in, the use of Mortgage-Backed Derivatives in, or the diversification or concentration of investments in, any of the Subject Funds.

43.    All documents concerning disclosure practices or policies with respect to information about the Subject Funds.

44.    All documents concerning disclosures to Prudential, CIGNA, Defendant Management or others of information about any aspect of the Subject Funds.

45.    All documents concerning fees charged or collected by Defendants for or in connection with the management of the Subject Funds.

46.    All documents created on or after January 1, 1996, describing, analyzing or setting forth all fees charged by Defendants for or in connection with the management of any fixed-income pooled investment vehicle, including any collective trust.

47.    All documents concerning revenues other than management fees earned by Defendants in connection with any Subject Fund (including but not limited to revenues from the lending of securities or other assets), including documents concerning the division of securities-lending proceeds between Defendants and other entities.

48.    All documents concerning losses during 2006 or 2007 in any Subject Fund or Subject Strategy.

49.    All documents created on or after January 1, 1996, discussing, explaining or analyzing the use of the terms "enhanced index fund" or "actively managed index fund" to identify certain funds, trusts or strategies.

50.    All documents concerning the potential or actual use of an ABX Index (or derivatives based on an ABX Index) in connection with Subject Funds or Subject Strategies.

51.    All documents concerning consideration or discussion of what version of an ABX Index (such as the AAA, AA, A, BBB or BBB minus tranches) would be appropriate or consistent with the investment goals of the Subject Funds as ERISA retirement plan assets.

52.    All documents concerning consideration or discussion of what magnitude (total dollar amount) of investments in any version of an ABX Index (such as the AAA, AA, A, BBB or BBB minus tranches) would be appropriate or consistent with the investment goals of the Subject Funds, including but not limited to such documents that relate to the fact that assets of the Subject Funds are ERISA retirement plan assets.

18

53.     Documents reflecting, on a daily basis, from January 1, 2005, the (a) the asset holdings of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund, (b) the liabilities of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund, and (c) long and short positions of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund in financial derivatives not accounted for in (a) and (b) above.

54.     Documents showing, on a daily basis starting January 19, 2006, the end-of-day unit price or share price of each tranche of the ABX Index that was held by the Subject Funds.

55.     All documents concerning the permissibility, appropriateness, or compliance under the Operative Documents of any investment by the Subject Funds in derivatives.

56.     All documents relating to the permissibility, appropriateness, or compliance under the Operative Documents of any investment by the Subject Funds in other funds managed by Defendants, including but not limited to investments between and among the Subject Funds.

57.     Documents showing on a daily basis starting January 1, 2005, all investments in, and redemptions from, the Limited Duration Bond Fund.

58.     All documents concerning any investigation or internal review undertaken by or for Defendants or Defendant Management since January 1, 2005, concerning (a) losses incurred in any Subject Fund or Subject Strategy; (b) investments by the Subject Funds in Mortgage-Backed Securities and Mortgage-Backed Derivatives; (c) potential or actual conflicts of interest; (d) disclosure policy or practice, or disclosures to Prudential or CIGNA, to Defendant Management, or to others; (e) any Subject Fund in which Prudential or its clients have invested; or (f) any Subject Strategy.

19

59.    All documents concerning Defendants' "systematic review of the risk, compliance and control infrastructure across the broad array of SSgA's products and it operations," referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008, or concerning the conclusions and findings of that review.

60.    All documents concerning Defendants' review, analysis, internal investigation or inquiry of all fixed income investments and strategies that were exposed to subprime investments, as referred to by Ronald E. Logue, Defendants' Chairman of the Board and Chief Executive Officer, during Defendants' conference call and webcast on January 3, 2008, or concerning the resulting conclusions and findings.

61.    All documents concerning Defendants' "review and ongoing discussions with customers who invested in" Defendants' fixed income strategies employing subprime investments that were the basis for Defendants' determination to establish a reserve of approximately $618 million to address legal exposure, as referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

62.    All documents concerning Defendants' decision "to close certain funds" and Defendants' modification of investment policies of the active fixed income strategies that were exposed to subprime markets and suffered significant losses during the third quarter of 2007, referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

63.    All documents concerning the "risk and compliance process to insure that . . . [the] investment decisions [made by Defendants' portfolio managers] are proper and consistent

with customer guidelines," referred to by Edward R. Resch, Defendants' Chief Financial Officer, during Defendants' conference call and webcast on January 3, 2008.

64.    All documents concerning Defendants' establishment of a reserve of approximately $618 million announced by Defendants on or about January 3, 2008 (including but not limited to memoranda, draft memoranda, accountants' calculations, and accountant working papers).

65.    Any documents provided to accountants in connection with the process that led to Defendants' decision to establish a reserve of approximately $618 million, announced by Defendants on or about January 3, 2008.

66.    All documents created on or after January 1, 2005, concerning Defendants' exposure or the Subject Funds' exposure to subprime Mortgage-Backed Securities or Mortgage-Backed Derivatives, including communications between Defendants' money market desk and Defendants' fixed income desk.

67.    All documents concerning Defendants' communications on or after January 1, 2005, with any federal, state, or local government agency, or any self-regulatory agency or authority, relating to Mortgage-Backed Securities or Mortgage-Backed Derivatives, including communications relating to losses arising from investments in securities or financial instruments concerning subprime residential mortgages.

68.    All documents concerning enforcement actions, investigations or inquiries since January 1, 2005, by any federal, state, local or self-regulatory agency or authority relating to (a) the investment, investment management or portfolio management activities of Defendants, or (b) the performance or management of the Subject Funds or Subject Strategies.

69.     All documents produced or provided to any federal, state, local or self-regulatory agency or authority in connection with enforcement actions, subpoenas, investigations or inquiries referred to in the previous paragraph.

70.     Documents revealing or reflecting the names and the qualifications of persons who (a) were day-to-day portfolio managers for any Subject Fund or any Subject Strategy, or (b) supervised or oversaw any of the day-to-day portfolio managers for any Subject Fund or any Subject Strategy.

71.     Documents concerning the management and committee reporting relationships and supervisory structure in place with respect to each person who was or is a day-to-day portfolio manager for any Subject Fund or any Subject Strategy.

72.     Documents revealing or reflecting the names of (a) Defendants' sales, marketing and relationship-management personnel with responsibility for clients that invested in any Subject Fund or Subject Strategy at any time on or after January 1, 2005, or of (b) other officers or employees of Defendants who interacted regularly with such clients on or after January 1, 2005.

73.     All documents concerning any role or conduct of Defendants in financing (through loans, lending commitments, letters of credit, securities lending, dollar rolls, repurchase agreements, reverse repurchase agreements, or other means), underwriting, creating, sponsoring, packaging, marketing or promoting any Mortgage-Backed Securities or Mortgage-Backed Derivatives from January 1, 2005, to the Final Fund Termination Date.

74.     Documents concerning any Mortgage-Backed Security or Mortgage-Backed Derivative that was invested in by any Subject Fund or Subject Strategy and was underwritten, created, sponsored, packaged, marketed or promoted by Defendants.

75.     Documents showing the assets and liabilities, on a daily basis, of State Street Target Date Funds or any State Street Pension Plans that were (directly or indirectly) invested in any Subject Fund or Subject Strategy at any time on or after January 1, 2005, including off-balance-sheet long and short positions in financial derivative instruments, on both an invested capital and a notional basis.

76.     All documents concerning any decision about or consideration of, on or after January 1, 2005, (a) reducing or eliminating holdings by any State Street Target Date Fund in any Subject Fund or Subject Strategy, or (b) any strategy or policy that would have the effect of reducing or eliminating such holdings.

77.     All documents concerning any decision about or consideration of, on or after January 1, 2005, discontinuing the offering of any investment option to employees of State Street through a State Street Pension Plan.

78.     Documents showing the dollar amount, on a daily basis, of cross-ownership among Subject Funds on a daily basis since January 1, 2005.

79.     All documents concerning credit ratings of securities invested in by Subject Funds.

80.     Documents that reflect, identify and quantify the investments by each Subject Fund in any other Subject Fund or any Subject Strategy, on both an invested capital and notional basis, as of (a) the close of business on the last business day of each calendar quarter, and (b) the

23

close of business on each business day on or after January 1, 2005, or that concern the acquisition price of any such investments.

81.    Documents that reflect, identify and quantify the investments by each Subject Strategy in any Subject Fund, on both an invested capital and notional basis, as of (a) the close of business on the last business day of each calendar quarter and (b) the close of business on each business day on or after January 1, 2005, or that concern the acquisition price of any such investments.

82.    Documents that reflect, identify, or quantify the investment positions of each Subject Fund, the net asset value of each Subject Fund, and the value of each unit of each Subject Fund, as of (a) the close of business on the last business day of each calendar quarter and (b) the close of business on each business day on or after January 1, 2005, or that concern the acquisition price of any such investment position.

83.    To the extent that defendants' responses to the previous Request enables Prudential to identify any investment positions held by any Subject Fund only as shares or units of some other fund, trust or similar pooled investment vehicle, documents that identify the underlying assets or investment positions held by those investment vehicles, directly or indirectly, to the level of the underlying security, derivative contract, or item of real or personal property.

84.    Documents that reflect or reveal the performance of each Subject Fund relative to the Benchmark Indices, as of the close of business on the last business day of each calendar quarter since the inception of the Subject Funds, and as of the close of business on each business day on or after January 1, 2005.

22662978v1

85.    All documents concerning the Fund Suspensions.

86.    Documents created on or after January 1, 2005, concerning the policies or procedures of Defendants regarding potential or actual conflicts of interest in discharging Defendants' duties pursuant to the Trust, including policies or procedures relating to (a) methods of pricing the securities held in any of the Subject Funds; (b) the management of sensitive information, including the use of "Chinese Walls"; (c) the allocation of buy and sell orders among customers, clients or trusts; (d) the allocation among different customers, clients or trusts of market liquidity in selling or otherwise reducing holdings in Mortgage-Backed Securities or Mortgage-Backed Derivatives; (e) front-running, twisting or scalping, with respect to both trading by portfolio managers for personal accounts and trading for accounts and commingled vehicles created or advised by Defendants; (f) cross-trading; (g) best-price execution; (h) correction of errors in the establishment of unit values and/or the pricing of securities or other instruments held in an investment portfolio; (i) charging depositing, investing, departing, or redeeming investors with certain costs, including the application of the 10% Policy and the Expense-Charging Policy; and (j) complying with ERISA.

87.    All documents concerning the application or implementation with respect to the Subject Funds of any policies or procedures regarding managing conflicts of interest.

88.    Documents concerning any arrangement for preferential treatment of any investor or investors in any of the Subject Funds relative to any other investor or investors in any of the Subject Funds.

89.    Documents concerning any instance in which any person or entity invested in, or withdrew or redeemed holdings from, any of the Subject Funds or any associated Base Fund,

25

without being charged the amount that would ordinarily have been dictated by the 10% Policy or the Expense-Charging Policy.

90.    Documents reflecting any portfolio trade, exchange or contract to which the Defendants or a Subject Fund was a party and a Subject Fund or Subject Strategy was a counter-party.

91.    Documents created on or after January 1, 2005, reflecting directed trading in connection with any of the Subject Funds.

92.    All documents created on or after January 1, 2005, concerning the derivation or calculation of the value of any portfolio assets or liabilities of any Subject Fund or Subject Strategy for use in calculating the net asset value, unit price or share price of such Subject Fund or Subject Strategy, including the value of any Mortgage-Backed Security or Mortgage-Backed Derivative held by any Subject Fund or Subject Strategy.

93.    All documents created on or after January 1, 2005, concerning financial or mathematical models (or the inputs or assumptions underlying them) used to value or mark any securities held in the Subject Funds.

94.    All documents created on or after January 1, 2005, concerning efforts to re-assess appropriate inputs and assumptions used in financial or mathematical models to reflect changing conditions in any market that traded any Mortgage-Backed Security or Mortgage-Backed Derivative that was held or considered for holding in the Subject Funds.

95.    All documents created on or after January 1, 2005, concerning the price or cash flow of any Mortgage-Backed Security or Mortgage-Backed Derivative, including documents concerning models or methods used to calculate such price or cash flow.

96.     All documents concerning calculations conducted by Defendants on or after January 1, 2005, of the values of the units of each of the Subject Funds as of the close of each business day.

97.     All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, at any time after January 1, 2005 held direct or indirect authority over Defendants' investment policies or investment decisions with respect to the Subject Funds or Subject Strategies, including but not limited to Sean Flannery, Paul Greff, Michael O'Hara and William Hunt.

98.     All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, on or after January 1, 2005, had decision-making authority with respect to regulatory or legal compliance matters affecting the Subject Funds or Subject Strategies.

27

99.     Any insurance policy (together with endorsements, riders, amendments and renewals) that will or might provide coverage for defendants' (or either of defendants') costs in connection with this action, including the costs of an adverse judgment, the costs of settlement and legal fees and costs, including but not limited to the insurance agreements referred to in section II.D of State Street Bank and Trust Company and State Street Global Advisor, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).

Dated:  February 4, 2008
        New York, New York

                            DEBEVOISE & PLIMPTON LLP


                            By _____
                                Edwin G. Schallert
                                egschall@debevoise.com

                            919 Third Avenue
                            New York, New York 10022
                            (212) 909-6000

                            *Attorneys for Plaintiff Prudential
                            Retirement Insurance and Annuity Company*

22662978v1