**EXHIBIT N**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN RE STATE STREET BANK AND TRUST     :
CO. ERISA LITIGATION

    :

    :

    :       07 Civ. 8488 (RJH)

This document relates to:    :

    :

07 Civ. 8488 (*Prudential Retirement Insurance and* :
*Annuity Company v. State Street Bank and Trust*   :
*Company and State Street Global Advisors, Inc.*)   :

    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S FIRST SET OF REQUESTS
## FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff requests

that defendants produce the following documents for examination, inspection and copying.

The uniform definitions and rules of construction set forth in Rule 26.3 of the Civil Rules

of this Court (the "Local Rules") are incorporated herein by reference, and all capitalized terms

used but not defined herein have the definitions (if any) given to them in the complaint in this

action (the "Complaint"). In addition, the following instructions and definitions apply to this

First Set of Requests for the Production of Documents (the "Requests").

### Instructions

1.      Responsive documents should be produced at the offices of Debevoise &

Plimpton LLP, 919 Third Avenue, New York, New York 10022, Attention: Edwin G. Schallert,

Esq., within thirty (30) days after service of the Requests.

2.      Responsive documents should be produced as they have been kept in the ordinary

course of business or should be organized and labeled to correspond with the Requests to which

they are responsive.  All attachments and appended or embedded links or files should be produced if any one of them is responsive to any of the Requests.

3.    If defendants are not producing documents with respect to any of the Requests, defendants should so state in writing.

4.    In producing documents pursuant to the Requests, defendants should furnish all documents that are in the possession, custody or control or either of them, regardless of whether those documents are possessed by such defendants or by any of their agents, attorneys, investigators, representatives, financial advisors, consultants or employees.

5.    The Requests should be deemed to be continuing, so as to require prompt supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if further documents called for herein are obtained or discovered after defendants respond to the Requests.

6.    If any documents or parts of documents called for by the Requests are withheld or redacted under an assertion of privilege or work-product production, defendants should comply with the requirements of Rule 26.2 of the Local Rules.

7.    If any documents or parts of documents called for by these Requests have been destroyed, discarded, or otherwise disposed of, defendants should provide a list setting forth as to each such document the following information: (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for

2

destruction or other disposition; (g) the name, address, occupation, title, and business affiliation of each person who authorized destruction or other disposition; (h) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the document; and (i) the Request or Requests to which the document is responsive.

8.    Defendants should produce all electronically stored information in the form in which it ordinarily is maintained, with the exception of e-mails.  E-mails should be produced in electronic form in a manner that preserves the relationship between each e-mail and all its attachments. Information from each e-mail header field should be produced in a separate database field.  Any attachments to an e-mail should be produced in the electronic from in which it ordinarily is maintained.

9.    When producing electronically stored information, defendants should provide any and all associated metadata and any and all associated files, including but not limited to attachments or hyperlinked files.

10.    Defendants should produce all voice recordings, including digital.

3

## Definitions

1.      The term "10% Policy" refers to the practice of charging certain costs, and of effecting a given contribution at the Base Fund's Net Asset Value as calculated at the end of the day on the date of the contribution, all as described in the second-to-last and third-to-last paragraphs of Exhibit 2 ("Fee Schedule") to the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company.

2.      The term "ABX Index" refers to any index created by the London-based Markit Group that is based on a basket of specified tranches of specified issuances of residential subprime mortgage-backed securities, including but not limited to the index that Defendants have referred to as the "BBB ABX Index."

3.      The term "Base Fund" has the same meaning as the terms "'base' fund" or "base fund," as used in the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company.

4.      The term "Benchmark Indices" refers to the Lehman Brothers Intermediate U.S. Government/Credit Index, the Lehman Brothers U.S. Government/Credit Index, and the J.P. Morgan 1 Month LIBOR Index.

5.      The term "CIGNA" refers to CIGNA Corporation and the Connecticut General Life Insurance Company, together with their parent companies, subsidiaries, affiliates,

4

predecessors and successors, as well as any employees, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys.

6.    The term "Class Description" has the same meaning given to this term in the Fourth Trust Declaration.

7.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

8.    The term "Defendants" refers to State Street Bank and Trust Company (including State Street Global Advisors) and State Street Global Advisors, Inc., together with their parent companies, subsidiaries, affiliates and predecessors, as well as any employees, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys.

9.    The term "Defendant Management" refers to the senior management or boards of directors of defendants (or of either of them), or committees of any such board of directors; any oversight or risk-management committee of defendants (or of either of them); the trustees of the Trust or members of the board of any registered mutual fund; or the officers of defendants (or of either of them) who are or were responsible for supervising or overseeing investment managers for any of the Subject Funds or Subject Strategies.

10.    The term "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended.

11.    The term "Expense-Charging Policy" refers to the practice or policy of charging or assessing certain expenses that may be charged to a "Participant" (as defined in the Fourth Trust Declaration), all as described in Section 5.6 of the Fourth Trust Declaration.

22662978v1

12.    The term "Final Fund Termination Date" refers to the later of (a) the termination date of the Intermediate Bond Fund and (b) the termination date of the Government Bond Fund.

13.    The "Fourth Trust Declaration" refers to the Fourth Amended and Restated Declaration of Trust executed by State Street Bank on or about August 15, 2005.

14.    The term "Fund Declaration" has the same meaning given to this term in the Fourth Trust Declaration.

15.    The term "Fund Suspensions" refers to the dissolutions, liquidations, or suspensions or redemptions of the Intermediate Bond Fund, the Government Bond and the Limited Duration Bond Fund.

16.    The term "Government Bond Fund" refers to the Government Credit Bond Non-Lending Fund and the Government Credit Bond Non-Lending Series Fund created pursuant to the Trust, and any other series, class, variation or marketing name used to describe an investment in the portfolio of assets held in such funds or a substantially similar portfolio.

17.    The term "Government Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Government Bond Fund.

18.    The term "Intermediate Bond Fund" refers to the Intermediate Bond Securities Lending Fund and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other series, class, variation or marketing name used to describe an investment in the portfolio of assets held in such funds or a substantially similar portfolio.

19.     The term "Intermediate Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Intermediate Bond Fund.

20.     The term "Investment Management Agreement" refers to the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, by and between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company, as well as any related written or oral contract, understanding, promise, agreement or agreement in principle, all exhibits or other documents ancillary thereto or referred to therein, and all drafts of and amendments to or restatements of the foregoing documents.

21.     The term "Limited Duration Bond Fund" refers to any fund or trust that has been referred to by Defendants as the Limited Duration Bond Fund.

22.     The term "Limited Duration Bond Strategy" refers to any single-client managed account or commingled or pooled investment vehicle that Defendants have referred to as the Limited Duration Bond Strategy, together with any single-client managed account or commingled or pooled investment vehicle (other than the Trust) that was or is managed by Defendants and that had or has substantially the same investment strategy or investment objectives as those of the Limited Duration Bond Fund.

23.     The term "Mortgage-Backed Derivatives" refers to swaps, options, swaptions, futures or other derivatives, the value of which or the obligation of a party under which is

7

dependent on or is derived from, in whole or in part, home equity loans or mortgages, including but not limited to the ABX Index.

24.    The term "Mortgage-Backed Securities" refers to securities (whether referred to as mortgage-backed securities, asset-backed securities, collateralized debt obligations, or another term) that are collateralized by, or consist of assets deriving their value directly or indirectly from, residential home equity loans or mortgages.

25.    The term "Operative Documents" refers to the Investment Management Agreement, the Original Agreements, the Trust Declaration, the Subject Fund Declarations, and the Subject Fund Class Descriptions.

26.    The term "Original Agreements" has the meaning given to it in the Investment Management Agreement.

27.    The term "Pension Plans" refers to all "pension plans," within the meaning of that term under ERISA, that had or have investments in the Intermediate Bond Fund or the Government Bond Fund through "separate accounts" (as that term is defined in ERISA § 3(17)) that were or are held by Prudential or by any of Prudential's clients through a Prudential account.

28.    The term "Prudential" refers to plaintiff Prudential Retirement Insurance and Annuity Company, together with its parent companies, subsidiaries, affiliates, and predecessors, as well as any employees, agents, representatives, or any other person(s) acting behalf of any of them, including attorneys.

29.    The term "Risk Information and Targets" refers to actual, expected or target risk levels, or actual, expected or target levels of tracking error, volatility, value at risk, shortfall, risk budget, or any other measure of risk or uncertainty.

8

30.    The term "State Street Pension Plans" refers to all pension plans (as that term is defined in ERISA § 3(2A)) that have been established or maintained by Defendants, alone or in conjunction with other employers, whose participants were or have included employees of Defendants.

31.    The term "State Street Target Date Funds" refers to all funds managed by Defendants that (a) have the term "Target Date" in their names or in a name under which they have been marketed or (b) changed or change their investment portfolios for retirement accounts based on a beneficiary's age, number of years remaining before anticipated retirement, or similar time-based criteria.

32.    The term "Subject Fund Class Descriptions" refers to all Class Descriptions executed by Defendants, pursuant to the Trust Declaration, relating to the issuance of units in any class of the trust (or trusts) established pursuant to the Trust Declaration with respect to any Subject Fund.

33.    The term "Subject Fund Declarations" refers to all Fund Declarations and amended or restated Fund Declarations issued by Defendants pursuant to the Trust Declaration, relating to the establishment or continuance of any of the Subject Funds.

34.    The term "Subject Funds" refers to (a) the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund (the "Bond Funds"), (b) any current or former portfolios or accounts of the Trust that have invested in the Bond Funds, and (c) any current or former portfolios or accounts of the Trust in which any Bond Funds have invested.

9

35.    The term "Subject Strategy" refers to the Intermediate Bond Strategy, the Government Bond Strategy and the Limited Duration Bond Strategy.

36.    The term "Trust" refers to trust, sub-accounts and portfolios created pursuant to the Trust Declaration, including sub-accounts and portfolios that have been closed, frozen, liquidated or otherwise terminated.

37.    The term "Trust Declaration" refers to the Declaration of Trust, dated on or about February 21, 1991, pursuant to which State Street Bank and Trust Company established the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, together with all amendments and restatements of such declaration, including but not limited to the Fourth Trust Declaration.

10

## Documents to be Produced

1.      The Operative Documents, together with any amendments, supplements or modifications of the Operative Documents.

2.      All documents relating to the creation, modification, amendment, supplementation or restatement of any of the Operative Documents.

3.      All documents concerning communications between (a) Defendants and (b) Prudential and CIGNA (or either of them), relating to the Operative Documents.

4.      All documents concerning communications on or after January 1, 2005, relating to any Subject Fund, Mortgage-Backed Derivatives or Mortgage-Backed Securities.

5.      All documents concerning the establishment of the Subject Funds, or concerning the investment strategies or objectives, guidelines, policies or rules of the Subject Funds.

6.      All documents concerning communications between or among Defendants, including without limitation any communication with any trustee of any of the Subject Funds, relating to any Subject Fund, or to Mortgage-Backed Derivatives.

7.      All documents concerning communications between (a) Defendants and (b) Prudential and CIGNA (or either of them), concerning (i) the Trust or (ii) any Subject Fund or any other funds that are in the Trust or were established pursuant to the Trust Declaration and that were or are held by Defendants, including documents relating to or contemplating the formation of the Trust, the formation of any Subject Fund, or the formation of any other funds that are in the Trust or were established pursuant to the Trust Declaration and have been held by Defendants.

11

8.      All documents concerning Prudential's investment, whether directly or through any other fund, account or pooled investment vehicle, in any of the Subject Funds, including all documents reflecting, memorializing, discussing or relating to performance goals, objectives, investment styles, disclosures, disclosure policies or practices, and expectations regarding the management of any of the Subject Funds, and all documents reflecting, memorializing or manifesting analyses of, or comparisons of performance to the Benchmark Indices or other indices.

9.      All documents concerning Prudential's investment, whether directly or through any other fund, account or pooled investment vehicle, in any Subject Strategy, including documents establishing, memorializing or discussing performance goals, objectives, investment styles, disclosure practices, and expectations regarding the management of the Subject Strategies, and including documents reflecting, memorializing, or manifesting analyses of or comparisons to Benchmark Indices or other indices.

10.      All documents relating to any Subject Fund, including but not limited to plans, contracts, reports, internal memoranda, PowerPoint or other presentation materials, notes, meeting minutes (including those from committee meetings), offering memoranda, promotional materials, analyses, research results, internal compliance reports and strategy documents.

11.      All documents concerning any Subject Fund that were delivered to Prudential, CIGNA or any other person or entity that invested in a Subject Fund.

12.      All documents concerning communications between Prudential and Defendants on or after January 1, 2005, seeking, providing or concerning information about the Intermediate Bond Fund or the Government Bond Fund.

13.     All documents concerning the goals, objectives, investment style, performance or underperformance, disclosures, disclosure policies or practices, or expectations for the management or conduct of any Subject Fund.

14.     All documents concerning the goals, objectives, investment styles, performance, underperformance, or disclosure policies or practices of, or disclosures relating to, or expectations for the management or conduct of, any Subject Strategy.

15.     All documents concerning analyses of Benchmark Indices.

16.     All documents concerning comparisons of the performance of any Subject Fund or Subject Strategy to Benchmark Indices or other indices.

17.     All documents concerning possible or proposed changes to strategies, practices or personnel intended to address or avoid underperformance of any Subject Fund or Subject Strategy.

18.     All documents concerning any Subject Strategy, including plans, contracts, reports, internal memoranda, PowerPoint or other presentation materials, notes, meeting minutes (including those from committee meetings), offering memoranda, promotional materials, analyses, research results, internal compliance reports and strategy documents.

19.     All documents concerning Mortgage-Backed Derivatives held by a Subject Fund.

20.     All documents concerning Defendants' consideration or recognition of the Subject Funds' status as plan assets governed by ERISA, including but not limited to consideration or recognition of such status in connection with Defendants' inclusion of investments in Mortgage-Backed Securities or Mortgage-Backed Derivatives in the portfolios of Subject Funds.

13

21.    All documents concerning the use of financial leverage in any Subject Fund or Subject Strategy or Defendants' assessment of the appropriate degree of financial leverage used in the portfolios of Subject Funds.

22.    All documents concerning Risk Information and Targets for any Subject Fund or Subject Strategy, including but not limited to all documents concerning calculations of Risk Information and Targets for any Subject Fund or Subject Strategy, the results of such calculations or the methods or models used to make such calculations.

23.    All documents concerning the Defendants' policies, processes, and practices for determining the ongoing suitability of the Subject Funds as investment options for ERISA pension plans, or concerning any application thereof with respect to the Subject Funds.

24.    All documents concerning investment strategies designed to hedge, manage or isolate risks of Subject Funds or Subject Strategies, or to manage, limit or constrain Risk Information and Targets of Subject Funds or Subject Strategies.

25.    All documents concerning disclosure to Prudential or CIGNA, to Defendant Management or to others of Risk Information and Targets, or of investment strategies designed to hedge, manage or isolate risk, for any Subject Fund or Subject Strategy.

26.    All documents analyzing or discussing risk or risk-measurement metrics (including Risk Information and Targets), and models or methods to compute such metrics.

27.    All documents concerning the liquidity of the Subject Funds or Subject Strategies, including documents concerning calculations of such liquidity or models to contain, limit or manage such liquidity.

28.    All documents discussing or analyzing liquidity policies or practices of any pooled investment vehicles or concerning models or methods to contain, limit, manage or measure the liquidity of pooled investment vehicles.

29.    All documents concerning Defendants' valuation policies and practices for marking to market investments in the Subject Funds, including but not limited to valuation policies and practices concerning Mortgage-Backed Securities and Mortgage-Backed Derivatives.

30.    All documents, including but not limited to accountants' work papers, concerning financial statements or performance reports (whether audited or unaudited) of Subject Funds, including (a) any Form 5500 Annual Return/Reports or similar reports, (b) any yearly or quarterly financial statements concerning the Subject Funds and (c) any filings or reports prepared in connection with the Subject Funds in compliance with 29 C.F.R. section 2520.103-12.

31.    All accountants' work papers or other documents created by auditors or accountants during the period from January 1, 2005, to the present, concerning the Subject Funds but not responsive to the Document Request immediately above.

32.    All documents concerning the Subject Funds and that were created pursuant to Sections 6.2, 6.3 or 6.4 of the Fourth Trust Declaration, or any section of a Trust Document addressing substantially the same topic(s) as Sections 6.2, 6.3 or 6.4 of the Fourth Trust Declaration, including but not limited to accountants' work papers.

22662978v1

33.    All documents created on or after January 1, 2005, concerning management letters prepared by independent accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards.

34.    All documents created on or after January 1, 2005, prepared by accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards, concerning control deficiencies or material weaknesses in Defendants' internal controls over financial reporting that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing investments of the Subject Funds.

35.    All documents created on or after January 1, 2005, prepared by accountants or auditors in accordance with U.S. Generally Accepted Accounting Principles or Generally Accepted Auditing Standards, concerning any subsequent discovery of facts existing at the date of an accountant's or auditor's report that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing the investments of the Subject Funds.

36.    All documents created on or after January 1, 2005, concerning management responses or explanations addressing issues raised in management letters or other communications prepared by independent auditors that concern any affiliate, division, group, entity, employees or agents that are or were responsible (directly or indirectly) for managing the investments of the Subject Funds.

37.    All documents concerning disclosures to Prudential or CIGNA, Prudential clients, Defendant Management or others of the use of leverage in any Subject Fund or Subject Strategy.

16

38.     All documents concerning potential or actual use of Mortgage-Backed Securities or Mortgage-Backed Derivatives in or in connection with any Subject Fund or Subject Strategy, or relating to the consideration of or decisions about such use.

39.     All documents concerning disclosure to Prudential or CIGNA, to Defendant Management or to others of the potential or actual use of Mortgage-Backed Derivatives in any Subject Fund or Subject Strategy.

40.     All documents concerning the potential or actual diversification or concentration of the investments of the Subject Funds or Subject Strategies.

41.     All documents concerning disclosures to Prudential or CIGNA, to Defendant Management or to others, of the diversification or concentration of investments in the Subject Funds or Subject Strategies.

42.     All documents concerning potential or actual redemptions or withdrawals from the Subject Funds and their actual or potential effect on the Risk Information and Targets of, the use of leverage in, the use of Mortgage-Backed Derivatives in, or the diversification or concentration of investments in, any of the Subject Funds.

43.     All documents concerning disclosure practices or policies with respect to information about the Subject Funds.

44.     All documents concerning disclosures to Prudential, CIGNA, Defendant Management or others of information about any aspect of the Subject Funds.

45.     All documents concerning fees charged or collected by Defendants for or in connection with the management of the Subject Funds.

46.    All documents created on or after January 1, 1996, describing, analyzing or setting forth all fees charged by Defendants for or in connection with the management of any fixed-income pooled investment vehicle, including any collective trust.

47.    All documents concerning revenues other than management fees earned by Defendants in connection with any Subject Fund (including but not limited to revenues from the lending of securities or other assets), including documents concerning the division of securities-lending proceeds between Defendants and other entities.

48.    All documents concerning losses during 2006 or 2007 in any Subject Fund or Subject Strategy.

49.    All documents created on or after January 1, 1996, discussing, explaining or analyzing the use of the terms "enhanced index fund" or "actively managed index fund" to identify certain funds, trusts or strategies.

50.    All documents concerning the potential or actual use of an ABX Index (or derivatives based on an ABX Index) in connection with Subject Funds or Subject Strategies.

51.    All documents concerning consideration or discussion of what version of an ABX Index (such as the AAA, AA, A, BBB or BBB minus tranches) would be appropriate or consistent with the investment goals of the Subject Funds as ERISA retirement plan assets.

52.    All documents concerning consideration or discussion of what magnitude (total dollar amount) of investments in any version of an ABX Index (such as the AAA, AA, A, BBB or BBB minus tranches) would be appropriate or consistent with the investment goals of the Subject Funds, including but not limited to such documents that relate to the fact that assets of the Subject Funds are ERISA retirement plan assets.

18

53.     Documents reflecting, on a daily basis, from January 1, 2005, the (a) the asset holdings of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund, (b) the liabilities of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund, and (c) long and short positions of the Intermediate Bond Fund, the Government Bond Fund and the Limited Duration Bond Fund in financial derivatives not accounted for in (a) and (b) above.

54.     Documents showing, on a daily basis starting January 19, 2006, the end-of-day unit price or share price of each tranche of the ABX Index that was held by the Subject Funds.

55.     All documents concerning the permissibility, appropriateness, or compliance under the Operative Documents of any investment by the Subject Funds in derivatives.

56.     All documents relating to the permissibility, appropriateness, or compliance under the Operative Documents of any investment by the Subject Funds in other funds managed by Defendants, including but not limited to investments between and among the Subject Funds.

57.     Documents showing on a daily basis starting January 1, 2005, all investments in, and redemptions from, the Limited Duration Bond Fund.

58.     All documents concerning any investigation or internal review undertaken by or for Defendants or Defendant Management since January 1, 2005, concerning (a) losses incurred in any Subject Fund or Subject Strategy; (b) investments by the Subject Funds in Mortgage-Backed Securities and Mortgage-Backed Derivatives; (c) potential or actual conflicts of interest; (d) disclosure policy or practice, or disclosures to Prudential or CIGNA, to Defendant Management, or to others; (e) any Subject Fund in which Prudential or its clients have invested; or (f) any Subject Strategy.

19

59.     All documents concerning Defendants' "systematic review of the risk, compliance and control infrastructure across the broad array of SSgA's products and it operations," referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008, or concerning the conclusions and findings of that review.

60.     All documents concerning Defendants' review, analysis, internal investigation or inquiry of all fixed income investments and strategies that were exposed to subprime investments, as referred to by Ronald E. Logue, Defendants' Chairman of the Board and Chief Executive Officer, during Defendants' conference call and webcast on January 3, 2008, or concerning the resulting conclusions and findings.

61.     All documents concerning Defendants' "review and ongoing discussions with customers who invested in" Defendants' fixed income strategies employing subprime investments that were the basis for Defendants' determination to establish a reserve of approximately $618 million to address legal exposure, as referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

62.     All documents concerning Defendants' decision "to close certain funds" and Defendants' modification of investment policies of the active fixed income strategies that were exposed to subprime markets and suffered significant losses during the third quarter of 2007, referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

63.     All documents concerning the "risk and compliance process to insure that . . . [the] investment decisions [made by Defendants' portfolio managers] are proper and consistent

with customer guidelines," referred to by Edward R. Resch, Defendants' Chief Financial Officer, during Defendants' conference call and webcast on January 3, 2008.

64.     All documents concerning Defendants' establishment of a reserve of approximately $618 million announced by Defendants on or about January 3, 2008 (including but not limited to memoranda, draft memoranda, accountants' calculations, and accountant working papers).

65.     Any documents provided to accountants in connection with the process that led to Defendants' decision to establish a reserve of approximately $618 million, announced by Defendants on or about January 3, 2008.

66.     All documents created on or after January 1, 2005, concerning Defendants' exposure or the Subject Funds' exposure to subprime Mortgage-Backed Securities or Mortgage-Backed Derivatives, including communications between Defendants' money market desk and Defendants' fixed income desk.

67.     All documents concerning Defendants' communications on or after January 1, 2005, with any federal, state, or local government agency, or any self-regulatory agency or authority, relating to Mortgage-Backed Securities or Mortgage-Backed Derivatives, including communications relating to losses arising from investments in securities or financial instruments concerning subprime residential mortgages.

68.     All documents concerning enforcement actions, investigations or inquiries since January 1, 2005, by any federal, state, local or self-regulatory agency or authority relating to (a) the investment, investment management or portfolio management activities of Defendants, or (b) the performance or management of the Subject Funds or Subject Strategies.

22662978v1

69.    All documents produced or provided to any federal, state, local or self-regulatory agency or authority in connection with enforcement actions, subpoenas, investigations or inquiries referred to in the previous paragraph.

70.    Documents revealing or reflecting the names and the qualifications of persons who (a) were day-to-day portfolio managers for any Subject Fund or any Subject Strategy, or (b) supervised or oversaw any of the day-to-day portfolio managers for any Subject Fund or any Subject Strategy.

71.    Documents concerning the management and committee reporting relationships and supervisory structure in place with respect to each person who was or is a day-to-day portfolio manager for any Subject Fund or any Subject Strategy.

72.    Documents revealing or reflecting the names of (a) Defendants' sales, marketing and relationship-management personnel with responsibility for clients that invested in any Subject Fund or Subject Strategy at any time on or after January 1, 2005, or of (b) other officers or employees of Defendants who interacted regularly with such clients on or after January 1, 2005.

73.    All documents concerning any role or conduct of Defendants in financing (through loans, lending commitments, letters of credit, securities lending, dollar rolls, repurchase agreements, reverse repurchase agreements, or other means), underwriting, creating, sponsoring, packaging, marketing or promoting any Mortgage-Backed Securities or Mortgage-Backed Derivatives from January 1, 2005, to the Final Fund Termination Date.

22662978v1

74.    Documents concerning any Mortgage-Backed Security or Mortgage-Backed Derivative that was invested in by any Subject Fund or Subject Strategy and was underwritten, created, sponsored, packaged, marketed or promoted by Defendants.

75.    Documents showing the assets and liabilities, on a daily basis, of State Street Target Date Funds or any State Street Pension Plans that were (directly or indirectly) invested in any Subject Fund or Subject Strategy at any time on or after January 1, 2005, including off-balance-sheet long and short positions in financial derivative instruments, on both an invested capital and a notional basis.

76.    All documents concerning any decision about or consideration of, on or after January 1, 2005, (a) reducing or eliminating holdings by any State Street Target Date Fund in any Subject Fund or Subject Strategy, or (b) any strategy or policy that would have the effect of reducing or eliminating such holdings.

77.    All documents concerning any decision about or consideration of, on or after January 1, 2005, discontinuing the offering of any investment option to employees of State Street through a State Street Pension Plan.

78.    Documents showing the dollar amount, on a daily basis, of cross-ownership among Subject Funds on a daily basis since January 1, 2005.

79.    All documents concerning credit ratings of securities invested in by Subject Funds.

80.    Documents that reflect, identify and quantify the investments by each Subject Fund in any other Subject Fund or any Subject Strategy, on both an invested capital and notional basis, as of (a) the close of business on the last business day of each calendar quarter, and (b) the

23

close of business on each business day on or after January 1, 2005, or that concern the
acquisition price of any such investments.

81.    Documents that reflect, identify and quantify the investments by each Subject
Strategy in any Subject Fund, on both an invested capital and notional basis, as of (a) the close of
business on the last business day of each calendar quarter and (b) the close of business on each
business day on or after January 1, 2005, or that concern the acquisition price of any such
investments.

82.    Documents that reflect, identify, or quantify the investment positions of each
Subject Fund, the net asset value of each Subject Fund, and the value of each unit of each
Subject Fund, as of (a) the close of business on the last business day of each calendar quarter and
(b) the close of business on each business day on or after January 1, 2005, or that concern the
acquisition price of any such investment position.

83.    To the extent that defendants' responses to the previous Request enables
Prudential to identify any investment positions held by any Subject Fund only as shares or units
of some other fund, trust or similar pooled investment vehicle, documents that identify the
underlying assets or investment positions held by those investment vehicles, directly or
indirectly, to the level of the underlying security, derivative contract, or item of real or personal
property.

84.    Documents that reflect or reveal the performance of each Subject Fund relative to
the Benchmark Indices, as of the close of business on the last business day of each calendar
quarter since the inception of the Subject Funds, and as of the close of business on each business
day on or after January 1, 2005.

24

85.     All documents concerning the Fund Suspensions.

86.     Documents created on or after January 1, 2005, concerning the policies or procedures of Defendants regarding potential or actual conflicts of interest in discharging Defendants' duties pursuant to the Trust, including policies or procedures relating to (a) methods of pricing the securities held in any of the Subject Funds; (b) the management of sensitive information, including the use of "Chinese Walls"; (c) the allocation of buy and sell orders among customers, clients or trusts; (d) the allocation among different customers, clients or trusts of market liquidity in selling or otherwise reducing holdings in Mortgage-Backed Securities or Mortgage-Backed Derivatives; (e) front-running, twisting or scalping, with respect to both trading by portfolio managers for personal accounts and trading for accounts and commingled vehicles created or advised by Defendants; (f) cross-trading; (g) best-price execution; (h) correction of errors in the establishment of unit values and/or the pricing of securities or other instruments held in an investment portfolio; (i) charging depositing, investing, departing, or redeeming investors with certain costs, including the application of the 10% Policy and the Expense-Charging Policy; and (j) complying with ERISA.

87.     All documents concerning the application or implementation with respect to the Subject Funds of any policies or procedures regarding managing conflicts of interest.

88.     Documents concerning any arrangement for preferential treatment of any investor or investors in any of the Subject Funds relative to any other investor or investors in any of the Subject Funds.

89.     Documents concerning any instance in which any person or entity invested in, or withdrew or redeemed holdings from, any of the Subject Funds or any associated Base Fund,

25

without being charged the amount that would ordinarily have been dictated by the 10% Policy or the Expense-Charging Policy.

90.    Documents reflecting any portfolio trade, exchange or contract to which the Defendants or a Subject Fund was a party and a Subject Fund or Subject Strategy was a counter-party.

91.    Documents created on or after January 1, 2005, reflecting directed trading in connection with any of the Subject Funds.

92.    All documents created on or after January 1, 2005, concerning the derivation or calculation of the value of any portfolio assets or liabilities of any Subject Fund or Subject Strategy for use in calculating the net asset value, unit price or share price of such Subject Fund or Subject Strategy, including the value of any Mortgage-Backed Security or Mortgage-Backed Derivative held by any Subject Fund or Subject Strategy.

93.    All documents created on or after January 1, 2005, concerning financial or mathematical models (or the inputs or assumptions underlying them) used to value or mark any securities held in the Subject Funds.

94.    All documents created on or after January 1, 2005, concerning efforts to re-assess appropriate inputs and assumptions used in financial or mathematical models to reflect changing conditions in any market that traded any Mortgage-Backed Security or Mortgage-Backed Derivative that was held or considered for holding in the Subject Funds.

95.    All documents created on or after January 1, 2005, concerning the price or cash flow of any Mortgage-Backed Security or Mortgage-Backed Derivative, including documents concerning models or methods used to calculate such price or cash flow.

96.     All documents concerning calculations conducted by Defendants on or after January 1, 2005, of the values of the units of each of the Subject Funds as of the close of each business day.

97.     All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, at any time after January 1, 2005 held direct or indirect authority over Defendants' investment policies or investment decisions with respect to the Subject Funds or Subject Strategies, including but not limited to Sean Flannery, Paul Greff, Michael O'Hara and William Hunt.

98.     All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, on or after January 1, 2005, had decision-making authority with respect to regulatory or legal compliance matters affecting the Subject Funds or Subject Strategies.

99.     Any insurance policy (together with endorsements, riders, amendments and renewals) that will or might provide coverage for defendants' (or either of defendants') costs in connection with this action, including the costs of an adverse judgment, the costs of settlement and legal fees and costs, including but not limited to the insurance agreements referred to in section II.D of State Street Bank and Trust Company and State Street Global Advisor, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).

Dated:  February 4, 2008
        New York, New York

                            DEBEVOISE & PLIMPTON LLP

                            By _Edwin G. Schallert / by M.D.S._____
                                Edwin G. Schallert
                                egschall@debevoise.com

                            919 Third Avenue
                            New York, New York 10022
                            (212) 909-6000

                            *Attorneys for Plaintiff Prudential*
                            *Retirement Insurance and Annuity Company*

22662978v1

**EXHIBIT O**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE STATE STREET BANK AND TRUST CO. :
ERISA LITIGATION                      :        07 Civ. 8488 (RJH)
                                      :
This document relates to:             :
                                      :
07 Civ. 9319                          :
07 Civ. 9687                          :
08 Civ. 0265                          :
                                      :
                                      :
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' FIRST SET OF REQUESTS
## FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Unisystems, Inc., and Warren Cohen, Trustee Of The Unisystems, Inc. Employees' Profit Sharing Plan, Merrimack Mutual Fire Insurance Co. and Alan Kober, Trustee Of The Andover Companies Employees Savings And Profit Sharing Plan, and Nashua Corporation Pension Plan Committee, John L. Patenaude, Margaret Callan, and Karen Adams (collectively "Plaintiffs") request that defendants produce the following documents for examination, inspection and copying.

The uniform definitions and rules of construction set forth in Rule 26.3 of the Civil Rules of this Court (the "Local Rules") are incorporated herein by reference. In addition, the following instructions and definitions apply to this First Set of Requests for the Production of Documents (the "Requests").

## **Instructions**

1.      Responsive documents (as defined below) shall be produced at the offices of Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, New York 10019 Attention: Jerald Bien-Willner, Esq., within thirty (30) days after service of the Requests.

2.      Responsive documents shall be produced as they have been kept in the ordinary course of business or should be organized and labeled to correspond with the Requests to which they are responsive.  All attachments and appended or embedded links or files should be produced if any one of them is responsive to any of the Requests.

3.      If defendants are not producing documents with respect to any of the Requests, defendants shall so state in writing.

4.      In producing documents pursuant to the Requests, defendants shall furnish all documents that are in the possession, custody or control or either of them, regardless of whether those documents are possessed by such defendants or by any of their agents, attorneys, investigators, representatives, financial advisors, consultants or employees.

5.      The Requests shall be deemed to be continuing, so as to require prompt supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if further documents called for herein are obtained or discovered after defendants respond to the Requests.

6.      If any documents or parts of documents called for by the Requests are withheld or redacted under an assertion of privilege or work-product production, defendants shall comply with the requirements of Rule 26.2 of the Local Rules.

7.     If any documents or parts of documents called for by these Requests have been destroyed, discarded, or otherwise disposed of, defendants shall provide a list setting forth as to each such document the following information: (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for destruction or other disposition; (g) the name, address, occupation, title, and business affiliation of each person who authorized destruction or other disposition; (h) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the document; and (i) the Request or Requests to which the document is responsive.

8.     Defendants shall produce all electronically stored information in the form in which it ordinarily is maintained, with the exception of e-mails.  E-mails shall be produced in electronic form in a manner that preserves the relationship between each e-mail and all its attachments.  Information from each e-mail header field shall be produced in a separate database field.  Any attachments to an e-mail shall be produced in the electronic form in which it ordinarily is maintained.

9.     When producing electronically stored information, defendants shall provide any and all associated metadata and any and all associated files, including but not limited to attachments or hyperlinked files.

## Definitions

1.    The term "ABX Index" refers to any index created by the London-based Markit Group concerning residential subprime mortgage-backed securities, including but not limited to the index that Defendants have referred to as the "BBB ABX Index."

2.    The term "Benchmark Indices" refers to any index used to measure, track or compare, in whole or part, the performance of any Subject Fund, including, without limitation: the Lehman Brothers Intermediate U.S. Government/Credit Index; the Lehman Brothers U.S. Government/Credit Index; the Lehman Brothers Aggregate U.S. Bond Index; the Lehman Brothers High Yield Ba/B 3% Capped Index; the Lehman Brothers Intermediate Government Credit Bond Index; 90-day T-Bills; the LIBOR BBA London 90-day Index; the J.P. Morgan 1 Month LIBOR Index; the Standard and Poor's 500 Index; the S&P MidCap Index; the Russell 2000 Index, and; the MSCI ACWI ExUS Index.

3.    The term "Class Description" has the same meaning given to this term in the Fourth Trust Declaration (defined in paragraph 22, below).

4.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

5.    The term "Defendants" refers to State Street Bank and Trust Company (including State Street Global Advisors) and State Street Global Advisors, Inc., together with their parent companies, subsidiaries, affiliates and predecessors, as well as any employees, officers, directors, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys.

4

6.     The term "Defendant Management" refers to the senior management or boards of directors of Defendants (or of either of them), or committees of any such board of directors; any oversight or risk-management committee of Defendants (or any of them); the trustees of the Trust or members of the board of any registered mutual fund; or the officers of Defendants (or any of them) who are or were responsible for supervising or overseeing investment managers for any of the Subject Funds.

7.     The term "document" or "Document" shall have the broadest meaning accorded to it by Rule 34(a) of the Federal Rules of Civil Procedure, and includes without limitation all written, printed, typed, recorded or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft versions) in Defendants' actual or constructive possession, custody, care or control, including without limitation all writings, correspondence, e-mail letters, telegrams, notes, mailgrams, agenda, memoranda, inter-office communications, reports, press releases, logs, chronological memo files, meeting notes or memoranda, forecasts, projections, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, drawings, graphs, photographs, sound reproduction tapes, digital or analogue audio recordings, digital or analogue video recordings, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form, computer inputs or outputs, or any other tangible thing which constitutes or contains matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure. The term "document" or "Document" shall include not only originals but also any copies of reproductions of all such written, printed, typed, recorded or graphic matter upon which notations in writing, print or otherwise have been made that do not appear in the originals. In addition to the terms in the

foregoing list, any comment, notation, strike-out, interlineation, or other alteration appearing on any document or any copy of any document, that is not a part of the original text of such document, shall be considered a separate document, as shall any draft or preliminary form of any document.

8.     The term "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended.

9.     The term "Fund Declaration" has the same meaning given to this term in the Fourth Trust Declaration.

10.     The term "Fund Suspensions" refers to any dissolutions, liquidations, or suspensions or redemptions of any of the Subject Funds.

11.     The term "Mortgage-Backed Derivatives" refers to swaps, options, swaptions, futures or other derivatives, the value of which or the obligation of a party under which is dependent on or is derived from, in whole or in part, home equity loans or mortgages, and includes but is not limited to the ABX Index.

12.     The term "Mortgage-Backed Securities" refers to securities (whether referred to as mortgage-backed securities, asset-backed securities, or otherwise) that are collateralized by or consist of assets that derive their value directly or indirectly from residential home equity loans or mortgages.

13.     The term "Nationally Recognized Statistical Rating Organizations" (or "NRSRO")  refers to A.M. Best Company, Inc., Dominion Bond Rating Service Ltd., Fitch, Inc., Moody's Investors Service, and the Standard & Poor's Division of the McGraw Hill Companies Inc.

6

14.     The term "Operative Documents" refers to the Trust Declaration, the Subject Fund Declarations, and the Subject Fund Class Descriptions.

15.     The term "Risk Information and Targets" refers to actual or target risk levels, or actual or target levels of tracking error, volatility, value at risk, shortfall, risk budget, or any other measure of risk or uncertainty (including, without limitation, any other analyses, reviews, discussions, assessments or measurements of risk or risk levels).

16.     The term "State Street Target Date Funds" refers to all funds managed by Defendants that (a) have the term "Target Date" in their names or in the name by which they were marketed or (b) changed or change the investment portfolio for retirement accounts based on a beneficiary's age, number of years remaining before anticipated retirement, or some similar time-based criteria.

17.     The term "Subject Fund Class Descriptions" refers to all Class Descriptions executed by Defendants, pursuant to the Trust Declaration, relating to the issuance of units in any class of the trust (or trusts) established pursuant to the Trust Declaration with respect to any Subject Fund.

18.     The term "Subject Fund Declarations" refers to all Fund Declarations and amended or restated Fund Declarations issued by Defendants pursuant to the Trust Declaration, relating to the establishment or continuance of any of the Subject Funds.

19.     The term "Subject Funds" refers to, as defined in paragraphs 23 to 35 below, the Bond Market Non-Lending Fund, the Core Intermediate Credit Bond Fund, the Daily Bond Market Fund, the Daily Corporate / Government Credit Bond Fund, the Enhanced Intermediate Bond Fund, the Intermediate Bond Fund for Employee Trusts, the SSgA Bond Market Fund, the SSgA Short Term Bond Fund CTF, the SSgA Yield Plus Fund, the Total Bond Market Fund, the

Government Bond Fund, the Limited Duration Bond Fund, and any bond funds included in the "fixed income funds" referenced by Defendants in their Answers to Plaintiffs' First Amended Class Action Complaints.[1]

20.    The term "Subject Fund Plan Investors" refers to any plan (however denominated) governed by ERISA (or that identified itself to Defendants as, or that Defendants believed was, a plan governed by ERISA) that invested in any of the Subject Funds at any point between June 30, 2005 and present.

21.    The term "Trust" refers to trusts, sub-accounts, and portfolios created pursuant to the Trust Declaration, including sub-accounts and portfolios that have been closed, frozen, liquidated or otherwise terminated.

22.    The term "Trust Declaration" refers to the Declaration of Trust, dated on or about February 21, 1991, pursuant to which State Street Bank and Trust Company established the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, together with all amendments and restatements of such declaration, including but not limited to the Fourth Amended and Restated Declaration of Trust executed by State Street Bank on or about August 15, 2005 (the "Fourth Trust Declaration").

### Specific Funds

23.    The term "Bond Market Non-Lending Fund" refers to the Government Credit Bond Non-Lending Fund and the Government Credit Bond Non-Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

---

[1] *See, e.g.,* ¶ 32 of Defendants' Answer to the Unisystems First Amended Class Action Complaint and ¶ 18 of Defendants' Answer to the Andover First Amended Class Action Complaint.

24.    The term "Core Intermediate Credit Bond Fund" refers to the Intermediate Bond Securities Lending Fund and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

25.    The term "Daily Bond Market Fund" refers to the Daily Bond Market Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

26.    The term "Daily Corporate/Government Credit Bond Fund" refers to the Daily Corporate/Government Credit Bond Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

27.    The term "Government Credit Bond Fund" refers to the Government Credit Bond Non-Lending Fund and the Government Credit Bond Non-Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

28.    The term "Enhanced Intermediate Bond Fund" refers to the Enhanced Intermediate Bond Securities Lending Fund and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

29.     The term "Government Bond Fund" refers to the Government Credit Bond Non-Lending Fund and the Government Credit Bond Non-Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

30.     The term "Intermediate Bond Fund" refers to the Intermediate Bond Securities Lending Fund and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

31.     The term "SSgA Bond Market Fund" refers to the SSgA Bond Market Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

32.     The term "SSgA Short Term Bond Fund" refers to the SSgA Short Term Bond Fund CTF and the Intermediate Bond Securities Lending Series Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

33.     The term "SSgA Yield Plus Bond Fund" refers to the SSgA Yield Plus Bond Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

10

34.     The term "Total Bond Market Fund" refers to the Total Bond Market Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

35.     The term "Limited Duration Bond Fund" refers to the Limited Duration Bond Fund created pursuant to the Trust, and any other fund, series, class, account or portfolio thereof or that was referred to by that name by Defendants, and any predecessors or successors of any such fund, series, class, account or portfolio.

### Documents to be Produced

1.     The Operative Documents, together with any amendments, supplements or modifications of the Operative Documents.

2.     All documents relating to the creation, modification, amendment, supplementation or restatement of any of the Operative Documents.

3.     All documents concerning communications among, with or between Defendants (including, without limitation, any trustee of any of the Subject Funds, Defendants' parent companies, subsidiaries, affiliates and predecessors, as well as any employees, agents, representatives or any other person(s) acting on behalf of any of them, including attorneys) on or after January 1, 2005 relating to Mortgage-Backed Derivatives or Mortgage-Backed Securities.

4.     All documents concerning the goals, objectives, investment style, performance or underperformance, disclosure policies or practices, or expectations for the management or conduct of any Subject Fund (including, without limitation, analyses of Benchmark Indices or other indices, comparisons of performance to Benchmark Indices, and possible or proposed changes to strategies, practices or personnel intended to address or avoid underperformance).

11

5.      All documents concerning Mortgage-Backed Derivatives held by any Subject Fund.

6.      All documents concerning Mortgage-Backed Securities held by any Subject Fund.

7.      All documents concerning Defendants' consideration or recognition of the Subject Funds' status as plan assets governed by ERISA in connection with Defendants' inclusion of investments in Mortgage-Backed Securities or Mortgage-Backed Derivatives in the portfolios of Subject Funds (including but not limited to all documents concerning how, if at all, ERISA or ERISA-related considerations could, should, might or did impact or affect any of Defendants' actual, potential or suspected decisions with respect to any of the Subject Funds' investments in, or investment strategies with respect to, Mortgage-Backed Securities or Mortgage-Backed Derivatives).

8.      All documents concerning the use of financial leverage in any Subject Fund, including, without limitation, all documents concerning Defendants' analysis, review or assessment of the appropriate degree of financial leverage used in the Subject Funds.

9.      For each Subject Fund separately, Documents sufficient to identify the extent to which each Subject Fund was leveraged as of (a) the close of business on the last business day of each calendar quarter, (b) the close of business on the last business day of each month in 2005, 2006 and 2007, and (c) the close of business on each business day after January 1, 2006.

10.     All documents concerning Risk Information and Targets for each Subject Fund.

11.     All documents concerning the Defendants' policies, processes, and practices for determining the suitability of the Subject Funds as investment options for ERISA plans or any particular type of ERISA plan.

12.    All documents concerning Defendants' discussion, consideration, analysis, review or assessment of the suitability of the Subject Funds as investment options for ERISA plans or any particular type of ERISA plan.

13.    All documents concerning investment strategies, policies or practices of Subject Funds concerning the hedging, limitation, identification or isolation of investment risks.

14.    All documents concerning any actual, suggested or proposed disclosure, directly or indirectly, to Subject Fund Plan Investors, to Defendant Management or to others, of Risk Information and Targets concerning any Subject Fund.

15.    All documents concerning risk-measurement metrics, risk analyses, tracking-error, or other risk-related calculations, assessments or reviews that were conducted, performed, reviewed or made concerning the Subject Funds and/or their corresponding Benchmark Indices.

16.    All documents concerning Defendants' valuation policies and practices for marking to market (or otherwise valuing or pricing) investments in the Subject Funds, including but not limited to valuation policies and practices concerning Mortgage-Backed Securities and Mortgage-Backed Derivatives.

17.    All documents, including but not limited to accounting or accountants' work papers, concerning financial statements or performance reports of Subject Funds for the period from June 30, 2005 to the present.

18.    All documents concerning Defendants' discussion, consideration, analysis, review or assessment of the actual or potential liquidity (or illiquidity) of any Subject Funds' investments in any Mortgage-Backed Securities or Mortgage-Backed Derivatives.

19.    All documents concerning disclosures, directly or indirectly, to Subject Fund Plan Investors, Defendant Management or others of (a) the use or extent of leverage in any Subject

Fund, (b) Risk Information and Targets concerning the Subject Funds, (c) the Subject Funds' investment strategies, including strategies designed to identify, limit, manage, control, hedge or isolate investment risks; or (d) the potential or actual use of Mortgage-Backed Derivatives or Mortgage-Backed Derivatives in any Subject Fund.

20.     All documents concerning the proposed, contemplated or actual use of Mortgage-Backed Securities or Mortgage-Backed Derivatives as investments for, or in connection with, any Subject Fund.

21.     All documents concerning Defendants' practices or policies concerning the disclosure of information concerning the Subject Funds to (a) Subject Fund Plan Investors or (b) Defendant Management

22.     All documents concerning the actual, potential or proposed diversification or concentration of investments in any of the Subject Funds, including without limitation all documents concerning the actual, potential or possible risks associated therewith.

23.     Documents sufficient to identify all Subject Fund Plan Investors, including the name, address, and telephone number for each plan.

24.     Documents sufficient to identify all fees charged or collected by Defendants from Subject Fund Plan Investors for or in connection with the management of the Subject Funds.

25.     All documents concerning losses during any monthly, quarterly or annual period during 2006 or 2007 in any Subject Fund.

26.     All documents discussing, explaining or analyzing Defendants' use of the terms "enhanced index fund" or "actively managed index fund" in connection with any of the Subject Funds.

27.     All documents concerning Defendants' potential, proposed, contemplated or actual use of, reliance on or investment in any securities or investments related to or purportedly based on an ABX Index (or derivatives based on an ABX Index) in connection with the Subject Funds.

28.     All documents concerning any evaluation, consideration or discussion of the type, quality or classification of ABX Index (such as the AAA, AA, A, BBB or BBB-minus tranches) or ABX Index-based securities or investments, that would be appropriate or consistent with (or inappropriate or inconsistent with) the investment policies and goals of the Subject Funds.

29.     All documents concerning any evaluation, consideration or discussion of what magnitude (total dollar amount) of investments in securities, derivatives or other financial instruments concerning any type, quality or classification of ABX Index (such as the AAA, AA, A, BBB or BBB-minus tranches) would be appropriate or consistent with (or inappropriate and inconsistent with) the investment policies and goals of the Subject Funds.

30.     Documents sufficient to show, on a daily basis for each Subject Fund separately from June 30, 2005 on, (a) the itemized asset (i.e., individual security and/or financial instrument) holdings of each of the Subject Funds, (b) the itemized liabilities of each the Subject Funds, (c) any long or short positions of each the Subject Funds in any security or other financial derivative not accounted for in (a) and (b) above, (d) all value(s), price(s) and/or "mark(s) to market" assigned to or internally recorded for each such asset, liability, long position or short position (and identifying the source(s) of each such valuation, price or "mark-to-market"), and (e) the NRSRO rating(s), if any, for each such asset, liability, long position or short position (and identifying the source(s) of each such NRSRO rating.

31.    Documents sufficient to show, on a daily basis for each Subject Fund separately from June 30, 2005 on, (a) all unit or share price(s), value(s) and/or "mark(s) to market" assigned to or internally maintained for each Mortgage-Backed Security or Mortgage-Backed Derivative (including, without limitation, each security or or other asset based on one or more ABX Indices or "tranches" thereof) (and identifying the source(s) of each such valuation, price or "mark-to-market") that was held by any of the Subject Funds, and (b) the NRSRO rating(s), if any, for each such Mortgage-Backed Security or Mortgage-Backed Derivative (and identifying the source(s) of each such NRSRO rating).

32.    All documents concerning to the permissibility, suitability or appropriateness under the Operative Documents, or any of Defendants' investment policies, guidelines or compliance standards, of any investment in derivatives made by any of the Subject Funds.

33.    All documents concerning the permissibility, suitability or appropriateness, under the Operative Documents or any of Defendants' investment policies, guidelines or compliance standards, of any investment by the Subject Funds in other funds managed by Defendants, including but not limited to investments between and among the Subject Funds.

34.    All documents concerning any formal or informal investigation, inquiries or reviews undertaken by or for Defendants or Defendant Management since January 1, 2006, concerning (a) losses incurred in any Subject Fund; (b) investments by the Subject Funds in Mortgage-Backed Securities or Mortgage-Backed Derivatives; (c) potential, suspected or actual conflicts of interest; (d) any Subject Fund's investment practices or performance; (e) the nature, extent and appropriateness of any disclosure policy or practice, or of disclosures, directly or indirectly, to Subject Fund Plan Investors, Defendant Management or others (including, without limitation, disclosures concerning (a) through (d) above).

35.    All documents concerning Defendants' "systematic review of the risk, compliance and control infrastructure across the broad array of SSgA's products and it operations," referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008, or concerning the conclusions and findings of that review.

36.    All documents concerning Defendants' review, analysis, internal investigation or inquiry of all fixed income investments and strategies that were exposed to subprime investments, as referred to by Ronald E. Logue, Defendants' Chairman of the Board and Chief Executive Officer, during Defendants' conference call and webcast on January 3, 2008, or concerning the resulting conclusions and findings.

37.    All documents concerning Defendants' "review and ongoing discussions with customers who invested in" Defendants' fixed income strategies employing subprime investments that were the basis for Defendants' determination to establish a reserve of approximately $618 million to address legal exposure, as referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

38.    All documents concerning Defendants' decision "to close certain funds" and Defendants' modification of investment policies of the active fixed income strategies that were exposed to subprime markets and suffered significant losses during the third quarter of 2007, referred to by Ronald E. Logue during Defendants' conference call and webcast on January 3, 2008.

39.    All documents concerning the "risk and compliance process to insure that . . . [the] investment decisions [made by Defendants' portfolio managers] are proper and consistent with customer guidelines," referred to by Edward R. Resch, Defendants' Chief Financial Officer, during Defendants' conference call and webcast on January 3, 2008.

40.    All documents concerning Defendants' establishment of a reserve of approximately $618 million announced by Defendants on or about January 3, 2008 (including but not limited to memoranda, draft memoranda, accountants' calculations, and accountant working papers).

41.    Any documents provided to in-house or outside accountants, consultants or others in connection with the process that led to Defendants' decision to establish a reserve of approximately $618 million, announced by Defendants on or about January 3, 2008.

42.    All documents created on or after January 1, 2005, concerning Defendants' financial or legal exposure or the Subject Funds' financial or legal exposure in connection with subprime Mortgage-Backed Securities or Mortgage-Backed Derivatives, including any communications between Defendants' money market desk or department(s) or division(s) and Defendants' fixed income desk or department(s) or division(s).

43.    All documents concerning Defendants' communications on or after January 1, 2005, with any federal, state, or local government agency, or any self-regulatory agency or authority, relating to Mortgage-Backed Securities or Mortgage-Backed Derivatives, including communications relating to actual or possible losses arising from investments in securities or financial instruments concerning subprime residential mortgages.

44.    All documents concerning any formal or informal investigations, inquiries, reviews, subpoenas or enforcement actions since January 1, 2006 by any federal, state, local or self-regulatory agency or authority concerning (a) the investment, investment management, or portfolio management practices or performance of the Defendants; (b) the performance or management of the Subject Funds (including but not limited to any losses incurred in any Subject Fund); (c) investments by the Subject Funds in Mortgage-Backed Securities or

Mortgage-Backed Derivatives; (d) potential, suspected or actual conflicts of interest; or (e) the nature, extent and appropriateness of any disclosure policy or practice, or of disclosures to Subject Fund Plan Investors, Defendant Management or others (including, without limitation, disclosures concerning (a) through (d) above.)

45.    All documents produced or provided to any federal, state, local or self-regulatory agency or authority in connection with any reviews, enforcement actions, subpoenas, investigations or inquiries referred to in the previous paragraph.

46.    Documents sufficient to identify the names and the qualifications of persons who (a) were portfolio managers for any Subject Fund; or (b) supervised or oversaw, directly or indirectly, any of the day-to-day portfolio managers for any Subject Fund.

47.    Documents sufficient to set forth the management and committee reporting relationships and supervisory structure in place with respect to each person who served in a management or day-to-day portfolio management role for any Subject Fund, including but not limited to all relevant organizational charts.

48.    Documents sufficient to identify the names and titles of (a) Defendants' sales, marketing and relationship-management personnel with responsibility for clients that invested in any Subject Fund at any time on or after June 30, 2005; and (b) the persons who supervised or oversaw, directly or indirectly, the persons identified in sub-part (a) of this request.

49.    All Documents concerning any Mortgage-Backed Security or Mortgage-Backed Derivative that was invested in by any Subject Fund and that was also underwritten, created, sponsored, packaged, marketed or promoted by Defendants.

50.    Documents showing the itemized assets and liabilities, on a daily basis, of State Street Target Date Funds or any State Street Pension Plans that were invested in or whose assets

were invested in any Subject Fund at any time on or after January 1, 2006, including off-balance sheet long or short positions in financial derivative instruments, on both an invested capital and a notional basis.

51.    All documents concerning any decision about or consideration of, on or after January 1, 2005, (a) reducing or eliminating holdings by any State Street Target Date Fund in any Subject Fund; or (b) any strategy or policy that would have the effect of reducing or eliminating such holdings.

52.    All documents created, or provided to Defendants, by any Nationally Recognized Statistical Rating Organization concerning any Mortgage-Backed Securities or Mortgage-Backed Derivatives that were invested in by any Subject Funds.

53.    All documents concerning credit ratings of securities invested in by Subject Funds.

54.    Documents sufficient to identify and quantify (by value and by shares or units held) the investments by each Subject Fund in any other Subject Fund, on both an invested capital and notional basis, as of (a) the close of business on the last business day of each calendar quarter from January 1, 2005 to fourth quarter of 2007; and (b) the close of business on each business day on or after June 30, 2005.

55.    Documents sufficient to show the dollar and share (or unit) amounts, on a daily basis, of cross-ownership among Subject Funds on a daily basis since January 1, 2007 (including the amounts by which any Subject Fund was invested in any other Subject).

56.    Documents sufficient to identify and quantify (by value and by shares or units held) the investment positions of each Subject Fund, the acquisition price of each such holding, the net asset value of each Subject Fund, and the value of each unit of each Subject Fund, as of

(a) the close of business on the last business day of each calendar quarter from the inception of

each Subject Fund, (b) the close of business on the last business day of each month in 2005, 2006

and 2007, and (c) the close of business on each business day on or after January 1, 2006.

57.    To the extent that defendants' responses to the previous Request identifies assets

held by any Subject Fund only as shares or units of some other fund, trust or similar pooled

investment vehicle, produce documents sufficient to identify the underlying investment positions

held by those investment vehicles as of (a) the close of business on the last business day of each

calendar quarter from the inception of each Subject Fund; (b) the close of business on the last

business day of each month in 2005, 2006 and 2007; and (c) the close of business on each

business day on or after January 1, 2006.

58.    All documents that reflect or reveal the performance of each Subject Fund relative

to any Benchmark Indices, as of (a) the close of business on the last business day of each

calendar quarter; (b) the close of business on the last business day of each month in 2005, 2006

and 2007; and (c) the close of business on each business day after January 1, 2006.

59.    All documents concerning any Fund Suspensions.

60.    All documents concerning the policies or procedures of Defendants regarding

potential or actual conflicts of interest in discharging Defendants' duties pursuant to the

Operative Documents or under ERISA, including policies or procedures relating to (a) methods

of pricing or valuing the securities held in any of the Subject Funds; (b) the management of

sensitive information, including the use of "Chinese Walls"; (c) the allocation of buy and sell

orders among customers, clients or trusts; (d) the allocation among different customers, clients or

trusts of market liquidity in selling or otherwise reducing holdings in Mortgage-Backed

Securities or Mortgage-Backed Derivatives; (e) front-running, twisting or scalping, with respect

to both trading by portfolio managers for personal accounts and trading for accounts and commingled vehicles created or advised by defendants; (f) cross-trading; (g) best-price execution; (h) correction of errors in the establishment of unit values and/or the pricing of securities or other instruments held in an investment portfolio; (i) charging depositing or departing investors with certain costs; and (j) complying with ERISA.

61.    All documents concerning the application or implementation with respect to the Subject Funds of any policies or procedures regarding managing conflicts of interest.

62.    All documents concerning any actual, suspected, alleged or potential violation of any of Defendants' policies or procedures regarding (a) potential or actual conflicts of interest; (b) ERISA compliance; (c) investment of Subject Fund assets.

63.    Documents sufficient to identify all trades, exchanges, or contracts to which the Defendants or a Subject Fund was a party and to which a Subject Fund was a counter-party.

64.    Documents sufficient to identify all directed trading in connection with any of the Subject Funds.

65.    All documents concerning the establishment or review of prices or values reported for portfolio assets and liabilities in any Subject Fund, including all documents concerning the pricing or valuation of any Mortgage-Backed Security or Mortgage-Backed Derivative held by any Subject Fund.

66.    All documents revealing or reflecting calculations conducted on or after June 30, 2005, by Defendants of the unit values of any of the Subject Funds as of the close of each business day.

67.    All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, at any time after January 1, 2006, held

direct or indirect authority over Defendants' investment policies or investment decisions with respect to the Subject Funds, including but not limited to Sean Flannery, Paul Greff, Michael O'Hara, Michael Wands, Robert Pickett, Susan Reigel, Frank Gianatasio, Brian Kinney, and William Hunt.

68.    All documents concerning the job performance, compensation, discipline or job termination of any employee of the Defendants who, on or after January 1, 2006, had decision-making authority with respect to regulatory or legal compliance matters affecting the Subject Funds.

69.    Any insurance policy or agreement (together with endorsements, riders, amendments and renewals) that will or might provide coverage for any Defendants' costs or liabilities in connection with this action, including the costs of an adverse judgment or settlement.

70.    All documents concerning communications between Defendants and any individual, company, entity, plan, plan sponsor or any other person regarding losses suffered by investors in the Subject Funds, including without limitation, all communications, including all drafts of the settlement entered into on or about December 20, 2007 between Defendants and the State of Alaska and the Alaska Retirement Management Board.

71.    All documents reflecting common or uniform (or substantially common or uniform) communications, directly or indirectly and whether periodic and/or regular or not, between Defendants and Subject Fund Plan Investors.

72.    All documents concerning (including, without limitation, drafts of or documents discussing) common or uniform (or substantially common or uniform) communications, directly

or indirectly and whether periodic and/or regular or not, between Defendants and Subject Fund Plan Investors.

73.    For each Subject Fund separately, documents sufficient to identify, by date, client (which may include, without limitation, other Subject Funds), amount, number of shares or units, price and total transaction value (a) all purchases of and (b) all redemptions of each Subject Fund.

74.    All documents concerning the stated, actual, alleged, potential or suspected reasons for each purchase or redemption of a Subject Fund by another Subject Fund from January 1, 2006 to the present.

75.    All documents referenced in Defendants' Initial Disclosures dated February 1, 2008.

76.    To the extent not otherwise requested here, all documents requested by any other plaintiff in the actions that have been or may be consolidated into this consolidated action.

77.    All documents concerning Defendants' document retention and destruction policies or the actual, suspected or potential destruction of any documents that, if not destroyed, would be responsive to any of Plaintiffs' requests.

78.    Documents sufficient to identify all of Defendants' information systems (including electronic systems and software) concerning the Subject Funds.

Dated: February 8, 2008

_____/s/ William C. Fredericks_____
William C. Fredericks (WF-1576)
Jonathan Harris (JH-3047)
Jerald D. Bien-Willner
BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP
1285 Avenue of the Americas
New York, New York 10019
Phone:  (212) 554-1400
Fax:  (212) 554-1444

Lynn L. Sarko (LS-3700)
Derek W. Loeser (DL-6712)
Karin B. Swope (KS-3369)
Tyler L. Farmer (TF-6398)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Phone:  (206) 623-1900
Fax:  (206) 623-3384

Jeffrey C. Block (JCB 0387)
Patrick T. Egan
Kristen D. Tremble
BERMAN, DEVALERIO PEASE
TABACCO BURT & PUCILLO
One Liberty Square
Boston, Massachusetts 02109
Phone:  (617) 542-8300
Fax:  (617) 542-1194

-and-

Anne F. O'Berry, Esq. (AO-0148)
BERMAN, DEVALERIO PEASE
TABACCO BURT & PUCILLO
Esperante Building
222 Lakeview Avenue
Suite 900
West Palm Beach, FL 33401
Phone:  (561) 835-9400
Fax:  (561) 835-0322

*Attorneys for the Class Action Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury under the laws of the State of Washington that on this date I emailed and mailed a copy of **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS,** properly addressed and postage prepaid, to the parties listed on the attached service list:

DATED this 8th day of February, 2008.

_____
Florine Fujita

## SERVICE LIST

Jerome C. Katz
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
jerome.katz@ropesgray.com


Harvey J. Wolkoff
Robert A. Skinner
Olivia S. Choe
ROPES & GRAY LLP
One International Place
Boston, MA  02110-2624
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
olivia.choe@ropesgray.com

Barry Sher
Daniel B. Goldman
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
75 East 55th Street
New York, NY  10022-3205
barrysher@paulhastings.com
dangoldman@paulhastings.com

**EXHIBIT P**

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Barry Sher (BS-4252)
Daniel B. Goldman (DG-4503)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000
*Counsel for Defendants State Street Bank and Trust Company*
*and State Street Global Advisors, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PRUDENTIAL RETIREMENT INSURANCE
AND ANNUITY COMPANY,

                              Plaintiff,

              - vs -

STATE STREET BANK AND TRUST
COMPANY and STATE STREET GLOBAL
ADVISORS, INC.,

                              Defendants.

Index No. 07-CV-8488 (RJH)

---

## DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants State Street

Bank and Trust Company and State Street Global Advisors[1] (collectively, "State Street") hereby

request that Plaintiff Prudential Retirement Insurance and Annuity Company ("Plaintiff")

produce for inspection and copying the following documents.

---

[1] State Street notes that State Street Global Advisors, Inc. is erroneously named as a defendant. State Street Global Advisors, Inc. is a Delaware holding company with no employees and no operations, and has nothing to do with Prudential or the Funds. "State Street Global Advisors," a different entity, is a division of State Street Bank and Trust Company.

# INSTRUCTIONS

The following instructions apply to this First Request for Production of Documents (the "Requests"):

1.      Responsive documents should be produced at the offices of Paul, Hastings, Janofsky & Walker, LLP, 75 East 55th Street, New York, NY 10022, Attention: Barry Sher, Esq., within thirty (30) days after service of the Requests.

2.      Responsive documents should be produced as they have been kept in the ordinary course of business or shall be organized and labeled to correspond with the Requests to which they are responsive.  All attachments and appended or embedded links or files should be produced if any one of them is responsive to any of the Requests.  If Plaintiff is not producing documents with respect to any of the Requests, Plaintiff should so state in writing.

3.      In producing documents pursuant to the Requests, Plaintiff should furnish all documents that are in its possession, custody or control, regardless of whether such documents are possessed by Plaintiff or by any of its agents, attorneys, investigators, representatives, financial advisors, consultants, employees or any other person or entity under its control or acting on its behalf.

4.      These Requests should be deemed to be continuing, so as to require prompt supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure if further documents called for herein are obtained or discovered after Plaintiff responds to the Requests.

5.      If any documents or parts of documents called for by the Requests are withheld or redacted under an assertion of privilege or work-product protection, Plaintiff should comply with the requirements of Rule 26.2 of the Civil Rules of this Court (the "Local Rules").

6.      If any documents or parts of documents called for by these Requests have been destroyed, discarded, or otherwise disposed of, Plaintiff should provide a list setting forth as to each such document the following information: (a) the nature of the document, e.g.: letter, memorandum, e-mail, etc.; (b) the name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition of the document; (f) a statement of the reason(s) for destruction or other disposition of the document; (g) the name, address, occupation, title, and business affiliation of each person who authorized destruction or other disposition of the document; (h) the name, address, occupation, title, and business affiliation of each person who destroyed or disposed of the document; and (i) the Request(s) to which the document is responsive.

7.      All electronically stored information should be produced in the form in which it ordinarily is maintained, with the exception of e-mail as set forth below.  All such electronically stored information should include any and all associated metadata and any and all associated files, including but not limited to attachments or hyperlinked files.

8.      All e-mail should be produced in electronic form in a manner that preserves the relationship between the e-mail and all of its attachments.  Information from each e-mail header field should be produced in a separate database field.  Any attachments to an e-mail should be produced in the electronic form in which it ordinarily is maintained.

9.      All digital or other recordings, including of telephone conversations, should be produced.

10.    Each Request herein should be construed independently and not by reference to any other Request herein for purposes of limitation.

11.     Unless otherwise specified, Documents should only be considered responsive to these Requests if they fall within the Relevant Period.  The Relevant Period for these Requests commences on April 1, 2004 and extends through and including the date of Plaintiffs' response.

## DEFINITIONS

The uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules are incorporated herein by reference.  All capitalized terms used but not defined herein have the definitions (if any) given to them in the Complaint.  In addition, the following definitions apply to these Requests:

1.     The term "ABX Index" refers to any index created by the London-based Markit Group that is based on a basket of specified tranches of specified issuances of residential mortgage-backed securities.

2.     The term "Benchmark Indices" refers to the Lehman Brothers Intermediate U.S. Government/Credit Index, the Lehman Brothers U.S. Government/Credit Index and the J.P. Morgan 1 Month LIBOR Index.

3.     The term "CIGNA" refers to CIGNA Corporation and the Connecticut General Life Insurance Company, together with their parent companies, subsidiaries, affiliates, predecessors, successors, divisions, employees, agents, representatives, officers, directors or any other person(s) acting on their behalf, including attorneys.

4.     The term "Investment Management Agreement" refers to the Second Amended and Restated Investment Management Agreement dated on or about June, 2003, between "State Street Global Advisors, a division of State Street Bank and Trust Company" and Connecticut General Life Insurance Company, as well as any related written or oral contract, understanding,

promise, agreement or agreement in principle, all exhibits or other documents ancillary thereto or referred to therein, and all drafts of and amendments to or restatements of the foregoing documents.

5.       The term "Mortgage-Backed Derivatives" refers to swaps, options, swaptions, futures or other derivatives, the value of which or the obligation of a party under which is dependant on or is derived from, in whole or in part, home equity loans or mortgages, including but not limited to the ABX Index.

6.       The term "Mortgage-Backed Securities" refers to securities (whether referred to as mortgage-backed securities, asset-backed securities, collateralized debt obligations, or another term) that are collateralized by, or consist of assets deriving their value directly or indirectly from, residential home equity loans or mortgages.

7.       The term "Operative Documents" refers to the Investment Management Agreement, the Original Agreements, the Trust Declaration, the Subject Fund Declarations, and the Subject Fund Class Descriptions.

8.       The term "Original Agreements" has the meaning given to it in the Investment Management Agreement.

9.       Unless otherwise specified, the term "Plans" refers to all "pension plans," within the meaning of the term under ERISA, that had or have investments in the Intermediate Bond Fund or the Government Bond Fund through Prudential Separate Accounts that were or are held by Prudential or by any of Prudential's clients through a Prudential account.  The term "Plan" refers individually to any such plan.

10.    The term "Prudential" refers to Prudential Retirement Insurance and Annuity Company together with its past and present parent companies, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, employees, agents, representatives, officers, directors or any other person(s) acting on its behalf, including attorneys (including specifically without limitation Prudential Securities, Prudential Financial, Prudential Investment Management, Prudential Fixed Income and JennisonDryden).

11.    The term "Prudential Management" refers collectively to the employees of Prudential who had decision-making authority with respect to Prudential's Alliance Fund program or with respect to any investment(s) by the Plans in the Subject Funds.

12.    Unless otherwise specified, the term "Prudential Separate Accounts" refers collectively to the separate accounts through which Prudential made available to the Plans or to Plan Participants the Intermediate Bond Fund and the Government Credit Bond Fund.

13.    Unless otherwise specified, the term "the Subject Funds" refers collectively to the Intermediate Bond Fund and the Government Credit Bond Fund.

14.    The term "Subject Fund Class Descriptions" refers to all Class Descriptions relating to the issuance of units in any class of the trust (or trusts) established pursuant to the Trust Declaration with respect to any Subject Fund.

15.    The term "Subject Fund Declarations" refers to all Fund Declarations and amended or restated Fund Declarations relating to the establishment or continuance of any of the Subject Funds.

16.    The term "Subject Strategies" refers to the Intermediate Bond Strategy and the Government Bond Strategy.

17.      The term "Trust" refers to trust(s), sub-accounts and portfolios created pursuant to the Trust Declaration, including sub-accounts and portfolios that have been closed, frozen, liquidated or otherwise terminated.

18.      The term "Trust Declaration" refers to the Declaration of Trust, dated on or about February 21, 1991, establishing the State Street Bank and Trust Company Investment Funds for Tax Exempt Retirement Plans, together with all amendments and restatements of such declaration, including but not limited to the Fourth Trust Declaration.

<u>**REQUESTED DOCUMENTS**</u>

1.      For the period January 1, 2007 to present, all documents and communications concerning any payment, loan or transfer of value of any kind (whether permanent or temporary) to or from Prudential, Prudential Separate Accounts or the Plans (or any individual Plan or Prudential Separate Account) relating in any way to the losses alleged in the Complaint to have been suffered by any Plans or Prudential Separate Accounts, including but not limited to the following:

(a)      All documents concerning the amounts, terms and conditions of any such payment(s), loan(s) or transfer(s) of value of any kind (whether permanent or temporary) to or from Prudential, Prudential Separate Accounts or the Plans (or any individual Plan or Prudential Separate Account);

(b)      All documents and communications identifying the Plans or Prudential Separate Accounts, if any, that have authorized Prudential to proceed on their behalf in this action; and

(c)     All documents and communications identifying the Plans or Prudential Separate Accounts, if any, that have not authorized Prudential to proceed on their behalf in this action.

2.     For the period January 1, 2007 to present, all documents and communications concerning the process described in the following statement by Prudential Financial, Inc. in its form 8-K dated October 1, 2007: "PRIAC is…implementing a process under which affected plan clients that authorize PRIAC to proceed on their behalf will receive payments from funds provided by PRIAC for [their] losses [attributable to certain investment funds sold by SSgA]."

3.     For the period January 1, 2007 to present, all documents and communications concerning the $81 million charge that was described as "reflecting payments to be made to clients who authorize us to proceed on their behalf to pursue remedies associated with losses attributable to certain investment funds managed by State Street Global Advisors, Inc." in Prudential Financial, Inc's third quarter 2007 earnings news release dated October 31, 2007 and that was reflected in Prudential Financial, Inc.'s form 10-Q for the quarterly period ending September 30, 2007.

4.     Except to the extent that they are responsive to document requests numbers 1 - 3, for the period January 1, 2007 to present, all documents and communications concerning any plan or proposal (whether or not actually carried out) concerning any payment, loan or transfer of value of any kind (whether permanent or temporary) to or from Prudential, Prudential Separate Accounts or the Plans (or any individual Plan or Prudential Separate Account) and relating in any way to the losses alleged in the Complaint to have been suffered by any Plans or Prudential Separate Accounts.

5.      All documents and communications concerning the Plans or any other Prudential clients invested in the Subject Funds.

6.      Documents reflecting, on a monthly basis, (i) the investments of the Plans, and (ii) the investment returns of the Plans.

7.      All documents and communications concerning the Prudential Separate Accounts.

8.      All documents and communications concerning the Plan participants or beneficiaries.

9.      Without time limitation, the Operative Documents and any other agreements (whether written or oral) concerning the Plans, the Prudential Accounts or the Subject Funds, between (i) State Street and Prudential or (ii) State Street and CIGNA, together with any amendments, supplements or modifications of all such agreements.

10.     Without time limitation, all documents and communications concerning the Operative Documents and any other agreements (whether written or oral) concerning the Plans, the Prudential Accounts or the Subject Funds, between (i) State Street and Prudential or (ii) State Street and CIGNA.

11.     Without time limitation, all documents and communications concerning the creation, modification, amendment, supplementation or restatement of any of the Operative Documents or of any other agreement responsive to the preceding two requests.

12.     Without time limitation, all agreements between Prudential or CIGNA and the Plans or any other client invested in the Subject Funds.

13.     Without time limitation, all documents and communications concerning any agreements between Prudential or CIGNA and the Plans or any other client invested in the Subject Funds.

14.     From January 1, 2001 to the present, all documents concerning marketing by Prudential or CIGNA of the Alliance Fund program (or of any similar or predecessor program), including marketing materials, pitches and presentations.

15.     From January 1, 2001 to the present, all documents concerning marketing by Prudential or CIGNA to the Plans or to any other client invested in the Subject Funds, including marketing materials, pitches and presentations.

16.     From January 1, 2001 to the present, all documents and communications concerning the decision of any Plan (or any other Prudential or CIGNA client invested in the Subject Funds) to invest in any Subject Fund or to redeem its investment in any Subject Fund.

17.     From January 1, 2001 to the present, all documents and communications concerning the Subject Funds.

18.     From January 1, 2001 to the present, all documents and communications concerning any Subject Strategy.

19.     All documents and communications concerning Prudential's investment, whether directly or through any other fund, account or pooled investment vehicle, in any Subject Fund or Subject Strategy.

20.     All communications between Prudential and the Plans (or any other client invested in the Subject Funds), and all documents concerning any such communications.

21.    All communications between the Prudential Separate Accounts and the Plans (or any other Prudential client invested in the Subject Funds), and all documents concerning any such communications.

22.    All communications between Prudential and the Prudential Separate Accounts, and all documents concerning any such communications.

23.    All documents and communications between Prudential and State Street concerning the Trust, the Plans (or any other Prudential client invested in the Subject Funds), the Subject Funds, the Prudential Separate Accounts or any Subject Strategy.

24.    All documents and communications concerning the August-September 2007 termination of the investments of the Plans and/or the Separate Accounts in the Subject Funds.

25.    All documents and communications concerning Prudential's calculation(s) of damages in this Action, whether claimed on its own behalf or on behalf of any other person or entity.

26.    All documents and communications concerning any Plan's (or any other Prudential client invested in the Subject Funds), Plan Participant's or Separate Account's alleged losses or underperformance relating to any events or actions alleged in the Complaint.

27.    Documents sufficient to show the identities of the investment managers who participate in Prudential's Alliance Fund program (or any similar or predecessor program).

28.    Documents sufficient to show the identities of any parties with whom Prudential has entered into investment management agreements relating to Prudential's ERISA clients.

29.     All documents concerning the investment styles, strategies, holdings and performance of any managers identified in response to document requests numbers 27 and 28 who had fixed income investments at any time during the Relevant Period, including without limitation fact sheets, manager commentaries, performance reports or summaries, holdings reports or analyses, and any similar documents.

30.     All documents and communications concerning Prudential's review, evaluation, due diligence and/or compliance practices, procedures or standards with respect to the managers identified in response to document requests numbers 27 and 28.

31.     All documents and communications concerning any review, evaluation or due diligence by Prudential concerning any manager identified in response to document requests numbers 27 and 28.

32.     From January 1, 2001 to the present, all documents and communications concerning CIGNA's review, evaluation, due diligence and/or compliance practices, procedures or standards with respect to the Subject Funds or the Plans.

33.     From January 1, 2001 to the present, all documents and communications concerning any review, evaluation or due diligence by CIGNA concerning the Subject Funds or the Plans.

34.     All documents and communications concerning Prudential's review, evaluation, due diligence and/or compliance practices, procedures or standards with respect to the Subject Funds or the Plans.

35.     All documents and communications concerning any review, evaluation or due diligence by Prudential concerning the Subject Funds or the Plans.

36.    Without time limitation, all documents and communications concerning any due diligence (or similar review) of the Subject Funds or the Plans (or any other client invested in the Subject Funds) relating to Prudential's 2004 acquisition of CIGNA Retirement.

37.    Without time limitation, all documents and communications concerning the "Due Diligence Advisor Program" referenced on Prudential Fund fact sheets, such as the Prudential First Quarter 2007 fact sheet entitled "State Street Global Advisors Passive Intermediate Bond Index SL Series Fund" (Declaration of Daniel B. Goldman dated February 4, 2008, Exhibit 7).

38.    Without time limitation, all documents and communications concerning any patent (actual or pending) or patent application relating to the "Due Diligence Advisor Program" referenced in the preceding request.

39.    All documents and communications concerning or supporting the following statements by John R. Strangfeld, Vice Chairman of Prudential Financial, on Prudential's August 2, 2007 Second Quarter 2007 Earnings Conference Call (the "2Q 2007 Earnings Call"): "I think one of the things we recognize is that this is not one market. You have got different levels of collaterals, seasoning, subordination, and alike. And so not surprisingly, we have different points of view regarding different phases of the capital structures in these securities. So, what I mean by that is we believe the credit problems are in the subprime securitizations, even excluding the CDOs are largely related to securities below the AA level. We think there are liquidity issues in the higher grade securities. I am referring to there the AAs and the AAAs, and that in turn can create investment opportunities."

40.    All documents and communications concerning Prudential's decision as of August 2, 2007 to continue buying subprime securities, as referred to by Richard J. Carbone,

Senior Vice President and Chief Financial Officer of Prudential Financial, on the 2Q 2007 Earnings Call.

41.     All documents and communications concerning or supporting the following statement by Richard J. Carbone on the 2Q 2007 Earnings Call: "[I]n the very high ended, the AAAs and the AAs…we see [prices] disproportionate to the underlying risks and we think are primarily liquidity driven. And as a consequence, we see selective opportunities to take advantage of that."

42.     All documents and communications concerning or supporting the following statement by John R. Strangfeld on the 2Q 2007 Earnings Call: "there are segments in this market where we can be opportunistic in the short term."

43.     All documents and communications concerning or supporting the following statement by John R. Strangfeld on the 2Q 2007 Earnings Call: "We are not really focused on the credit ratings, we are focused on the recovery rate."

44.     All documents and communications concerning Prudential's "complete independent credit evaluation of these [subprime] securities", Prudential's "internal ratings and … independent credit analysis of these [subprime] portfolios", and Prudential's "thorough independent review of the underlying collateral and structure [of subprime securities]", referred to by Mark B. Grier, Vice Chairman of Prudential Financial, on the 2Q 2007 Earnings Call.

45.     All documents and communications concerning risk management models, guidelines, procedures, methods, metrics or measures (including without limitation expected/target risk levels, expected/target tracking error, volatility, value at risk, expected shortfall, risk budgets, or any other measure of risk or uncertainty) utilized by Prudential with respect to fixed income investments, including without limitation any such models, guidelines,

procedures, methods, metrics or measures employed by Prudential for investments on its own account or for investments for which it serves as a fiduciary or investment manager.

46.     All documents and communications concerning Prudential's policies or practices (including without limitation investment or risk policies or practices) with respect to investments or assets governed by ERISA for which Prudential acts as a fiduciary or investment manager.

47.     All documents and communications concerning Prudential's policies or practices with respect to liquidity in any pooled investment vehicles for which Prudential acts as a fiduciary or investment manager.

48.     All documents and communications concerning Prudential's policies or practices with respect to investment in Mortgage-Backed Derivatives or Mortgage-Backed Securities in any funds or pooled investment vehicles for which Prudential acts as a fiduciary or investment manager.

49.     All documents and communications concerning Prudential's policies or practices with respect to the reporting of investment in Mortgage-Backed Derivatives or Mortgage-Backed Securities in any funds or pooled investment vehicles for which Prudential acts as a fiduciary or investment manager.

50.     All documents and communications concerning Prudential's valuation policies and practices for marking to market investments in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager, including but not limited to valuation policies and practices concerning the marking to market of Mortgage-Backed Securities and Mortgage-Backed Derivatives.

51.     All documents and communications concerning Prudential's policies and practices with respect to the use of leverage in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager, including but not limited to such policies and practices with respect to Mortgage-Backed Securities and Mortgage-Backed Derivatives.

52.     All documents and communications concerning Prudential's policies and practices with respect to the reporting of leverage in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager, including but not limited to policies and practices with respect to the reporting of leverage with respect to Mortgage-Backed Securities and Mortgage-Backed Derivatives.

53.     All documents and communications concerning Prudential's policies and practices with respect to the diversification or concentration of investments in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager.

54.     All documents and communications concerning Prudential's policies and practices with respect to the reporting of diversification or concentration of investments in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager.

55.     All documents and communications concerning Prudential's policies and practices with respect to the use of derivatives in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager.

56.     All documents and communications concerning Prudential's policies and practices with respect to the reporting of derivatives in funds or pooled investment vehicles for which it acts as a fiduciary or investment manager.

57.     All documents and communications concerning any analysis of the Benchmark Indices.

16

58.    All documents and communications concerning comparison of the performance of any investment strategy to any Benchmark Index, or concerning analysis of the performance of any investment strategy in relation to any Benchmark Index.

59.    All documents and communications concerning Mortgage-Backed Derivatives or Mortgage-Backed Securities.

60.    All documents and communications concerning the markets in Mortgage-Backed Derivatives or Mortgage-Backed Securities (including without limitation any ABX Indices or derivatives based upon any ABX Index), including without limitation documents and communications concerning risk and volatility in the markets in Mortgage-Backed Derivatives and Mortgage-Backed Securities.

61.    All documents and communications concerning market analysis or commentary regarding the fixed income markets.

62.    All documents and communications concerning any Plan investments in or exposure to Mortgage-Backed Derivatives or Mortgage-Backed Securities.

63.    All documents and communications concerning investments in or exposure to Mortgage-Backed Derivatives or Mortgage-Backed Securities by any ERISA plan for which Prudential acts or has acted as a fiduciary.

64.    All documents and communications concerning the ABX Indices or derivatives based on an ABX Index.

65.    All documents and communications concerning potential or actual use of an ABX Index (or derivatives based on an ABX Index) in connection with any funds or pooled investment vehicles for which Prudential acts as a fiduciary or investment manager.

66.     All documents and communications concerning analysis or commentary in any form (including without limitation internal and external research, reports, studies, market updates, or analysis or commentary in any form) by JennisonDryden, Prudential Fixed Income, Prudential Investment Management, Prudential Financial or any other Prudential entity concerning (i) the fixed income markets, (ii) subprime securities, (iii) Mortgage-Backed Derivatives of Mortgage-Backed Securities, (iv) ABX Indices (or any derivatives based on an ABX Index), (v) subprime mortgages or the subprime mortgage markets, (vi) home equity or the home equity markets, or (vii) fixed income derivatives (including without limitation futures, swaps, options or swaptions).

67.     All documents and communications concerning analysis or commentary in any form (including without limitation internal and external research, reports, studies, market updates, or analysis or commentary in any form) by JennisonDryden, Prudential Fixed Income, Prudential Investment Management, Prudential Financial or any other Prudential entity concerning "alpha" or "portable alpha" in the context of fixed income investment.

68.     All documents concerning the investment styles, strategies, holdings and performance of any fixed income fund or pooled investment vehicle managed by Prudential (including without limitation JennisonDryden, Prudential Fixed Income, Prudential Investment Management or Prudential Financial), including without limitation fact sheets, manager commentaries, performance reports or summaries, holdings reports or analyses, and any similar documents.

69.     All documents and communications concerning fees charged by Prudential in connection with the Plans or Subject Funds.

70. All documents and communications concerning any revenues other than fees earned by Prudential in connection with the Plans or Subject Funds.

71. All documents and communications concerning any role or conduct or Prudential in financing (through any means), underwriting, creating, sponsoring, packaging, marketing, managing or promoting any Mortgage-Backed Securities or Mortgage-Backed Derivatives.

72. All documents and communications concerning any allegations in the Complaint, including without limitation any notes, notebooks, recordings or other records.

73. All documents and communications upon which Prudential intends to rely in support of any allegations in the Complaint or in support of any claims or defenses in this action.

74. Documents sufficient to identify the names and functions of the persons comprising Prudential Management.

75. Documents sufficient to identify the names and functions of Prudential's sales, marketing and relationship-management personnel with responsibility for the Plans.

Dated: New York, New York
February 15, 2008

By: _____/s/ Daniel B. Goldman_____
Barry Sher (BS-4252)
Daniel B. Goldman (DG-4503)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000
Counsel for Defendants State Street Bank and Trust Company and State Street Global Advisors, Inc.

**EXHIBIT Q**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MEMORIAL HERMANN                    §
HEALTHCARE SYSTEM                   §
                                    §
            Plaintiff,              §
                                    §
v.                                  §
                                    §    Case No. 07-4089
STATE STREET BANK AND TRUST         §
COMPANY; STATE STREET GLOBAL        §
ADVISORS, INC.; and CAMBRIDGE       §
FINANCIAL SERVICES, INC.            §    JURY TRIAL DEMANDED
                                    §
            Defendants.             §

## ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

The Court has reviewed the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 filed

by Defendants State Street Bank and Trust Company and State Street Global Advisors, Inc.

Having considered the Motion, Response, admissible evidence, and applicable law, the Court

concludes that Defendants' Motion to Transfer Venue should be, and hereby is, in all things

DENIED.

SIGNED this 25th day of _____February____, 2008.

_____
PRESIDING JUDGE

1087.00002/355750.1