UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
:
IN RE STATE STREET BANK AND TRUST    :
CO. ERISA LITIGATION                 :
:
This document relates to:            :   07 Civ. 8488 (RJH)
:
07 Civ. 8488                         :
:
----------------------------------------------------------X

**REPY IN SUPPORT OF STATE STREET'S MOTION TO
DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendants State Street Bank and Trust Company and State Street Global Advisors (together, "State Street") hereby respectfully submit this reply in support of their Motion to Dismiss or in the Alternative for Summary Judgment.

**I.   THE COURT SHOULD DISMISS PRUDENTIAL'S COMPLAINT FOR LACK OF STANDING**

**A.   A Motion to Dismiss for Lack of Standing is Properly Brought Pursuant to Rule 12(b)(1).**

The proper procedural route for challenges to a plaintiff's Article III standing is a motion to dismiss under Fed. R. Civ. P. 12(b)(1). *Alliance for Envtl. Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006). Similarly, challenges to a plaintiff's standing to sue under ERISA implicate the court's subject matter jurisdiction. *Toussaint v. JJ Weiser & Co.*, No. 04 Civ. 2592 (MBM), 2005 WL 356834, at *4 (S.D.N.Y. Feb. 13, 2005) (citing *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999) (holding that failure to satisfy statutory standing requirements is grounds for dismissal due to lack of subject matter jurisdiction rather than for failure to state a claim)); *see also Bona v. Barasch,* No. 01 Civ. 2289

(MBM), 2003 WL 1395932, at *9 (S.D.N.Y. Mar. 20, 2003) (holding that motion to dismiss for lack of standing under ERISA arises under Rule 12(b)(1)).

Accordingly, State Street's motion to dismiss for lack of Article III standing and statutory standing under ERISA is properly brought pursuant to Rule 12(b)(1), and the burden is on Prudential Retirement Insurance and Annuity Company ("Prudential") to establish the Court's subject matter jurisdiction. In deciding this key question, the Court may properly consider factual materials beyond the scope of the pleadings – including the details of Prudential's offer to make "Total Make Whole" payments to the retirement plans that invested in the actively managed State Street funds at issue (the "Plans"). *See* Memorandum of Law in Support of Defendants' Motion to Dismiss and In the Alternative for Summary Judgment ("Opening Mem.") 7 (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### B. Prudential Lacks Article III Standing to Sue on Behalf of the Plans Because the Plans Have Suffered No Injury-in-Fact.

Prudential argues that cases cited by State Street demonstrating Prudential's lack of Article III standing are inapposite because the plan participants in those cases did not suffer any injury. *Compare* Opening Mem. 8, *with* Prudential's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or for Summary Judgment ("Opp.") 12. To the contrary, the cases cited are directly analogous precisely because they involved plan participants who suffered no injury.

After Prudential made the Plans whole by agreeing to reimburse their losses, the Plans had no economic injury. Prudential itself described its offer as "Total Make Whole Amount[s]" to cover "the losses caused by State Street." *See* Declaration of Daniel Goldman in Support of Defendants' Motion to Dismiss and in the Alternative for Summary Judgment, Exhs. 4, 5 and 6, at 1-3 of each Exhibit. Prudential now tries to repudiate its very own words by

claiming that those payments did not make the Redeemed Plans "whole." Prudential cannot have it both ways. It cannot represent to the Plans that they have been made whole (and thus have no losses) for its own business purposes, while simultaneously telling the Court that it seeks compensation for the Plans' losses on the Plans' behalf.

Prudential's self-serving characterization of its payments to the Redeemed Plans alternatively as "loans" or "advancements" does not cure its lack of standing because such payments are, at most, "loans" in name only. There is no set of facts under which the Redeemed Plans would have an obligation to repay Prudential for the reimbursements. Prudential cannot turn these payments into "loans" by its own *ipse dixit* declaration.

Prudential claims that it can first reimburse the Plans and then turn around and seek damages from State Street on the Plans' behalf. *See* Opp. 15-16. The cases Prudential cites, however, do not support its position. First, Prudential relies upon an insurance case in which the Court allowed an insurer to sue a third party on behalf of an insured after entering into a loan receipt agreement with the insured repayable to the extent of recovery from the third party. *See id.* at 15 (citing *Luckenbach v. W.J. McCahan Sugar Refining Co.*, 248 U.S. 139 (1918)). But Prudential's reliance on *Luckenbach* is misplaced. There, the insurer's potential liability to the insured was contingent upon the non-liability of a third party. In other words, the insurer's advance truly was a loan because the insurer was obligated to pay the insured's loss only if it was established that the third party was not liable. The insurer's loan was made in consideration of the insured's turning over the direction and control of its lawsuit. The Court upheld the arrangement in order to protect the insurer's interest in the suit to establish the third party's liability. *Luckenbach*, 248 U.S. at 149.

3

Here, by contrast, no similar arrangement renders Prudential potentially liable, contingent upon State Street being found not liable for any losses. Instead, Prudential paid the Redeemed Plans $79 million for business reasons. Accordingly, no similar basis exists for allowing Prudential to sue State Street for losses that have already been reimbursed by Prudential. The only party who has any real interest in having State Street pay Prudential $79 million is Prudential, not the Plans.

Prudential also relies upon an inapplicable case concerning assignment that has been rejected by another circuit court. Opp. 18 (citing *Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210 (5th Cir. 1997)). First, no "assignment" of the claims against State Street ever occurred. Therefore, any case law dealing with assignments is irrelevant. Moreover, even if an assignment had occurred, that assignment would likely have been in violation of ERISA. While the Fifth Circuit in *Texas Life* held that pension plan claims were assignable, the Seventh Circuit has since soundly rejected that holding. *See Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002). In *Morlan*, the Seventh Circuit disagreed with the Fifth Circuit's reasoning that benefits and a claim for breach of the plan administrator's fiduciary obligations "are different animals, so that the statutory anti-assignment provision is interpretable as forbidding assignment of benefits but not of benefit claims that have matured into causes of action." *Id.* at 615. Declining to follow *Texas Life*, the Seventh Circuit observed that ERISA's requirement that pension plans include a provision forbidding the assignment or alienation of pension plan benefits, *see* 29 U.S.C. § 1056(d)(1), applied equally to claims for pension plan benefits. *Morlan*, 298 F.3d at 615 (noting that the ground of the *Texas Life* decision was "one we have difficulty understanding").

4

Prudential argues that it at least had Article III standing at the time the Complaint was filed on October 1, 2007 because the Plans had until December 1, 2007 to decide whether to accept Prudential's reimbursement offer. *See* Opp. 10-12. Whether a Plan accepted Prudential's offer to reimburse it for its losses before October 1, 2007 is irrelevant. Prudential publicly offered to make the Plans whole by reimbursing their alleged losses at the same time that it filed this lawsuit against State Street. *See* Opening Mem. 3-4 (citing Prudential's SEC filing dated October 1, 2007 stating that it will pay approximately $80 million to the Plans). As soon as Prudential made its offer, the Plans had the legal right and ability to be made whole, and thus had no injury-in-fact. *See* Opening Mem. 7-9. Accordingly, even at the time it filed the Complaint on October 1, 2007, Prudential did not have Article III standing to sue State Street on behalf of the Plans because the Plans had no economic injury.[1] *See Granite State Outdoor Adver. Inc. v. Zoning Bd. of the City of Stamford*, 38 Fed. Appx. 680, 684 (2d Cir. 2002).

### C. Prudential Lacks Standing to Sue Under ERISA Because it is Seeking Damages That Will Not Benefit the Plans as a Whole.

As explained in State Street's Opening Memorandum, Prudential lacks statutory standing under ERISA to bring a § 502(a)(2) claim because it is not suing on behalf of the Plans. The reality is that Prudential is suing State Street on its own behalf in an attempt to recover the

---

[1] Although Prudential also brings this action on behalf of 20 plans that did not redeem, of those 20 plans, only two were invested in the active fixed income funds at issue during the time period used by Prudential to calculate the Plans' purported losses. Accordingly, the 18 plans that were not invested in the funds during that period did not suffer any of the losses that Prudential alleges were caused by State Street. *See* Declaration of Matthew D. Siegel in Opposition to Defendants' Motion to Dismiss or for Summary Judgment, Exh. D. The two plans that were invested in the relevant funds during that period failed to mitigate their damages by rejecting Prudential's offer to make them whole and therefore have no viable claim against State Street for losses. *See* Restatement (Second) of Contracts § 350 (1981) ("[D]amages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.").

5

$79 million that Prudential paid to the Redeemed Plans. *See* Opening Mem. 9-11 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)).

In essence, Prudential is seeking contribution or indemnification from State Street without first having its own level of responsibility established. In *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, the Second Circuit explained that the right to contribution among ERISA co-fiduciaries is "a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses." 939 F.2d 12, 15-16 (2d Cir. 1991); *see also* Restatement (Second) of Trusts § 258 (1959) ("(1) Except as stated in Subsection (2) [dealing with bad faith], where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that (a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him.").

Here, Prudential is attempting to force State Street to reimburse Prudential for the payments Prudential voluntarily decided to make to the Redeemed Plans, without having Prudential's own culpability established by a trier-of-fact. This suit is clearly brought for Prudential's benefit. Prudential cannot compensate the Plans for their alleged losses and then purport to sue State Street under ERISA on behalf of the Plans for the actual purpose of recovering its own business expenses.

Apparently recognizing that Prudential cannot pursue claims on behalf of the Plans because those Plans were "made whole," Prudential argues that it has standing to sue under ERISA because it is also seeking other monetary damages and equitable relief in addition to the $79 million it paid the Redeemed Plans. Opp. 12. To begin with, Prudential has no viable claim for equitable relief. *See* Opening Mem. 14-17. As to additional monetary damages, the Plans

6

Case 1:07-cv-08488-RJH    Document 71    Filed 04/07/2008    Page 7 of 11

suffered none. Again, Prudential offered to make the Plans whole, and they therefore had the legal right and ability to be made whole. And in any event, the obvious and stated purpose of this suit is to recover the $79 million that Prudential paid to the Plans. Prudential may not sustain this suit to recover the $79 million it paid to the Plans by asserting a de minimis, if not nonexistent, claim of damages on behalf of the Plans. Courts consistently dismiss claims in which participants or fiduciaries seek damages on their own behalf and not *only* on behalf of a plan. *See Snyder v. Elliot W. Dann Co.*, 854 F. Supp. 264, 274 (S.D.N.Y. 1994) (concluding that a suit for breach of fiduciary duty under ERISA "can only be maintained on behalf of the plan itself"); *Donnelly v. Bank of N.Y. Co.*, 801 F. Supp. 1247, 1253-54 (S.D.N.Y. 1992) ("[A] suit for breach of fiduciary duties . . . can be maintained only on behalf of the plan itself."), *aff'd* 2 F.3d 403 (2d Cir. 1993). Prudential cannot circumvent this well-established rule by adding incidental claims for damages on behalf of the Plans to its own claim for millions of dollars in alleged damages. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (construing *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 139-44 (1985), as barring individual plan participants from seeking damages under § 502(a)(2) on their own behalf rather than on behalf of their plan). Moreover, the relief sought is not available as a matter of law. *See* pages 7-8, *infra*.

For the foregoing reasons, the Court should dismiss the Complaint because Prudential does not have standing under Article III or ERISA.

## II.   ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF STATE STREET ON PRUDENTIAL'S CLAIMS ON BEHALF OF THE REDEEMED PLANS

In the alternative, the Court should grant summary judgment in favor of State Street with respect to Prudential's claims on behalf of the Redeemed Plans because the Redeemed Plans have been made whole and therefore do not have any losses. *See* Opening Mem. 11-13.

Prudential contends that partial summary judgment would be inappropriate because State Street "is seeking summary judgment on an issue rather than on a claim or defense." Opp. 20. This argument overlooks the legal principle that summary judgment on claims for certain damages is appropriate. In *S.E.C. v. Thrasher*, upon which Prudential relies, the Court denied partial summary judgment on individual elements of a claim for insider trading. 152 F. Supp. 2d 291, 296 (S.D.N.Y. 2001). State Street, however, is not seeking summary judgment on any element of Prudential's claim for violations of ERISA. Rather, State Street is seeking to foreclose recovery of damages to which Prudential is not as a matter of law entitled. It is hardly unusual for courts to grant summary judgment on claims for damages where warranted. *See* Opening Mem. 11-12 (citing cases).

Accordingly, the Court should grant summary judgment in favor of State Street with respect to Prudential's claims on behalf of the Redeemed Plans, or alternatively grant partial summary judgment in favor of State Street and bar Prudential from recovering any of the $79 million it paid to the Redeemed Plans.

### III. THE COURT SHOULD DISMISS PRUDENTIAL'S CLAIM FOR EQUITABLE RELIEF PURSUANT TO ERISA SECTION 502(a)(3)

Prudential is not entitled to equitable relief under ERISA § 502(a)(3). *See* Opening Mem. 14-17. Because Prudential lacks standing to sue under § 502(a)(2), *see* Section I, *supra*, the Court should determine whether Prudential has stated a claim under ERISA § 502(a)(3). It has not.

The Supreme Court's decisions in *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), and *Great-West. Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), preclude the recovery of compensatory damages under § 502(a)(3). *See* Opening Mem. 14-15. Additionally, Prudential's request for an injunction is improper as the request is too overbroad

8

and does little more than command that State Street obey the law.  *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996).  Accordingly, the Court should dismiss Prudential's claim for equitable relief.

## IV.    THE COURT SHOULD NOT GRANT PRUDENTIAL LEAVE TO AMEND

The Court should not grant Prudential leave to amend as there is no indication that Prudential can state a valid claim against State Street, and therefore amendment would be futile. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc*., 106 F.3d 11, 18 (2d Cir.1997).  Moreover, to the extent the Plans suffered any losses, a claim should be brought by a plaintiff that can act solely on behalf of the Plans.  *See Russell*, 473 U.S. 134.

**CONCLUSION**

For the foregoing reasons, State Street respectfully requests that the Court enter an order:

(i) dismissing Plaintiff's claims on behalf of the Redeemed Plans; or

(i) granting summary judgment in favor of State Street with respect to Prudential's claims on behalf of the Redeemed Plans; or

(iii) granting partial summary judgment in favor of State Street and barring Prudential from recovering any of the $79 million it paid to the Redeemed Plans; and

(iv) dismissing Prudential's claim for equitable relief pursuant to ERISA § 502(a)(3).

Dated:  April 7, 2008

ROPES & GRAY LLP

/s/ Harvey J. Wolkoff _____
Harvey J. Wolkoff
Robert A. Skinner
Olivia S. Choe
One International Place
Boston, MA  02110
Tel: (617) 951-7000
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
olivia.choe@ropesgray.com

Jerome C. Katz
1211 Avenue of the Americas
New York, New York, 10036-8704
Tel: (212) 841-5700
Fax: (212) 841-5725
jerome.katz@ropesgray.com

*Attorneys for Defendants State Street Bank and Trust Company and State Street Global Advisors, Inc.*

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on this 7th day of April, 2008, a true and correct copy of the foregoing Reply in Support of State Street's Motion to Dismiss or in the Alternative for Summary Judgment has been filed electronically using the Court's Electronic Case Filing System and, therefore, has been served upon all counsel who are Filing Users pursuant to Fed. R. Civ. P. 5(b)(3), Local Rule 5.2, and the Court's Procedures for Electronic Case Filing (No. 9).

/s/ Olivia S. Choe
Olivia S. Choe
