UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | ) ) ) ) | No. 08 MD 1945 (RJH) |
| This document relates to: | ) ) | **ANSWER AND COUNTERCLAIM** |
| 07 Civ. 9319 07 Civ. 9687 08 Civ. 0265 | ) ) ) ) ) | |

Defendants and counterclaimants State Street Bank and Trust Company ("SSBT") and State Street Global Advisors, Inc. (collectively, "State Street") for their Answer and Counterclaim to Plaintiffs' Consolidated Amended Complaint (the "Complaint"), hereby state as follows:

1.      The allegations of paragraph numbered 1 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

2.      Denied.

3.      State Street says that the language quoted in paragraph numbered 3 comes from a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 3.

4.      State Street admits that the market for home equity asset-backed securities experienced unprecedented volatility and illiquidity during parts of 2007, and that during the third quarter of 2007, certain active fixed income funds managed by State Street performed below their respective benchmarks, but otherwise denies the remaining allegations of paragraph numbered 4.

5.      Denied.

6.      Denied in the form and manner alleged.

7.      Denied in the form and manner alleged.

8.      State Street says that the Annual Report for the Year Ending December 31, 2007 for State Street Corporation referenced in paragraph numbered 8 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 8.

9.      Denied.

10.     Denied.

11.     The allegations in paragraph numbered 11 constitute legal conclusions and characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that the Plans were subject to, or affected by, State Street's alleged conduct "in the same manner and with the same general effect" and further denies that any basis for a class action exists here.

12.     The allegations in paragraph numbered 12 constitute legal conclusions and characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that there is any basis for a class action here, and thus denies any allegations concerning a "Class Period."

13.     State Street denies the first sentence of paragraph numbered 13, and says that the remaining allegations in paragraph numbered 13 are not factual allegations and therefore no answer is required, but to the extent an answer is required, denied.

14.     The allegations in paragraph numbered 14 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

15.     The allegations in paragraph numbered 15 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

16.     State Street admits that Warren Cohen is a trustee and fiduciary of the Unisystems, Inc. Employees Profit Sharing Plan (the "Unisystems Plan"), says that the January 31, 2008 Order of the Court and the May 1, 2000 Unisystems, Inc. Employees' Profit Sharing Plan document referenced in paragraph numbered 16 are written and speak for themselves, and is otherwise without knowledge or information sufficient to form a belief as to the allegations of paragraph numbered 16.

17.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 17.

18.     State Street admits that for a certain period the Unisystems Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the Intermediate Bond Fund for Employee Trusts, says that the relationship between State Street and the Unisystems Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 18.

19.     State Street admits that Alan Kober is a trustee and fiduciary of the Andover Companies Employees' Savings and Profit Sharing Plan (the "Andover Plan"), says that the January 31, 2008 Order of the Court and January 1, 2989 Trust Agreement referenced in paragraph numbered 19 are written and speak for themselves, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 19.

20.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 20.

21.     State Street admits that for a certain period the Andover Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Enhanced Intermediate Bond Fund, says that the relationship between State Street and the Andover Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 21.

22.     State Street admits that John L. Patenaude and Margaret Callan are fiduciaries of the two ERISA plans referenced in paragraph numbered 22 (the "Nashua Plan"), says that the January 13, 2008 Order of the Court referenced in paragraph numbered 22 is written and speaks for itself, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 22.

23.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 23.

24.     State Street admits that for a certain period, the Nashua Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the Bond Market Fund, says that the relationship between State Street and the Nashua Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 24.

25.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 25.

26.     State Street admits that for a certain period, the AGMA Health Funds invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Intermediate Bond CTF Fund, admits that for a certain period the AGMA Retirement Plans invested in an active fixed income fund managed by State Street that the Complaint denominates

the SSgA Intermediate Bond NL Fund, says that the relationship between State Street and the AGMA Plans is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 26.

27.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 27.

28.     State Street admits that for a certain period, the R.I. Carpenters Plans invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Bond Market Fund, admits that the R.I. Carpenters Plans incurred certain losses in connection with their investments in this fund, says that the relationship between State Street and the R.I. Carpenters Plans is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 28.

29.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 29.

30.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph numbered 30, admits that for a certain period of time, the ERISA plan referenced in paragraphs numbered 29 and 30 (the "Kodak Plan") invested in an active fixed income fund managed by State Street that the Complaint denominates the Daily Bond Market Fund, says that the relationship between State Street and the Kodak Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 30.

31.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 31.

32.     State Street admits that for a certain period, the Electrical Workers Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the State Street Short Term Bond CTF, says that the relationship between State Street and the Electrical Workers Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 32.

33.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 33.

34.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph numbered 34, admits that for a certain period of time, the ERISA plan referenced in paragraphs numbered 33 and 34 (the "Waste Management Plan") invested in an active fixed income fund managed by State Street that the Complaint denominates the Bond Market Non-Lending Fund, says that the relationship between State Street and the Waste Management Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 34.

35.     The allegations of paragraph numbered 35 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

36.     State Street says that SSBT is a chartered Massachusetts trust company with its principal place of business in Boston, Massachusetts, which maintains an office in New York, and otherwise denies the remaining allegations of paragraph numbered 36.

37.     State Street says that named defendant State Street Global Advisors, Inc., is a wholly-owned subsidiary of State Street Corporation that has no connection to the investment management services at issue in the Complaint, further says that State Street Global Advisors ("SSgA") is the unincorporated investment management division of SSBT, and is different from

State Street Global Advisors, Inc., and otherwise denies the remaining allegations of the first two sentences of paragraph numbered 37, and says that the allegations of the third sentence of paragraph numbered 37 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

38.     Paragraph numbered 38 contains no factual allegations and therefore no answer is required, except that State Street says that the deadline for amending the Complaint has passed.

39.     The allegations in paragraph numbered 39 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that any basis for a class action exists here, and incorporates by reference its answers to paragraphs numbered 48 through 60 concerning the alleged "Bond Funds."

40.     The allegations in paragraph numbered 40 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that any basis for a class action exists here.

41.     The allegations in paragraph numbered 41 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that assets invested in various of its actively managed fixed income funds are "pooled" with assets invested in other funds, denies that State Street's alleged conduct "affected all plans" in the putative class "in the same manner," and further denies that any basis for a class action exists here.

42-47.  The allegations in paragraphs numbered 42 through 47 constitute legal conclusions or characterizations of plaintiffs' claims to which no answers are required, but to the

extent answers are required, denied, and State Street specifically denies that any basis for a class action exists here.

48.     State Street says that the fund that the Complaint denominates the Intermediate Bond Fund for Employee Trusts was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 48.

49.     State Street says that the fund that the Complaint denominates the SSgA Enhanced Intermediate Bond Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and that the Form 5500 referenced in footnote 1 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 49.

50.     State Street says that the fund that the Complaint denominates the SSgA Intermediate Bond CTF was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 50.

51.     State Street hereby incorporates by reference its answer to paragraph numbered 48.

52.     State Street says that the fund that the Complaint denominates the Daily Bond Market Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 52.

53.     State Street says none of the funds that it manages are denominated the "Daily Corporate/Government Bond Fund," and otherwise denies the remaining allegations of paragraph numbered 53.

54.     State Street says that the fund that the Complaint denominates the SSgA Government Credit Bond Non-Lending Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 54.

55.     State Street says that the fund that the Complaint denominates the SSgA Yield Plus Fund was an actively managed registered mutual fund which was not managed by SSBT or SSgA, further says that the fund's investment objective was set forth in written documents that speak for themselves, denies that the Yield Plus Fund falls within the proposed class definition set forth in paragraph numbered 39, and otherwise denies the allegations of paragraph numbered 55.

56.     State Street says none of the funds that it manages are denominated the Total Bond Market Fund, and otherwise denies the remaining allegations of paragraph numbered 56.

57.     State Street says that the SSgA Bond Market Fund is an actively managed registered fund in which ERISA plans invested, but which is not managed by SSBT or SSgA, further says that the fund's investment objectives are set forth in written documents that speak for themselves, denies that the SSgA Bond Market Fund falls within the proposed class definition set forth in paragraph numbered 39, and otherwise denies the remaining allegations of paragraph numbered 57, but further says that to the extent that plaintiffs intend to refer to the fund in which the R.I. Carpenters invested (*see, e.g.*, Compl. ¶ 28), State Street says that the R.I.

Carpenters invested in the fund referred to herein as the Bond Market Fund and hereby incorporates by reference its answer to paragraph numbered 52.

58.     State Street says that the fund that the Complaint denominates the Limited Duration Bond Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 58.

59.     State Street says that paragraph numbered 59 refers to two different funds that are referred to herein as the Bond Market Fund and the Intermediate Bond Fund and hereby incorporates by reference its answers to paragraphs 48 and 52.

60.     State Street says that the fund that the Complaint denominates the State Street Short Term Bond CTF was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 60.

61.     The Declaration of Trust referenced in paragraph numbered 61 is written and speaks for itself, and State Street otherwise denies the allegations of paragraph numbered 61, and specifically denies that all the funds alleged in paragraphs numbered 48 through 60 were established pursuant to the referenced Declaration of Trust.

62.     State Street says that the terms of the Trust are set forth in a written document that speaks for itself, and to the extent that the written document differs from the allegations of paragraph numbered 62, State Street denies the same, admits that ERISA plans have invested in certain actively managed fixed income funds managed by State Street, further says that the allegation that State Street was an "Investment Manager under ERISA" is a legal conclusion to

which no answer is required, and otherwise denies the remaining allegations of paragraph numbered 62.

63.     State Street says that the terms of the active fixed income funds that it manages and offers to ERISA plans are set forth in written documents that speak for themselves, and further says that the allegations in paragraph numbered 63 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

64.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph numbered 64, admits that millions of dollars were invested in State Street's active fixed income funds, and otherwise denies the remaining allegations of paragraph numbered 64.

65.     Denied.

66.     Denied.

67.     The January 17, 2008 Report of State Street Corporation referenced in paragraph numbered 67 is written and speaks for itself, and State Street otherwise denies the remaining allegations of paragraph numbered 67.

68.     State Street admits that it announced the resignation of William Hunt on or about January 3, 2008, says that the Boston Globe article referenced in paragraph numbered 68 is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 68.

69.     State Street says that the allegations in paragraph numbered 69 come from the referenced Reuters article, which is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 69.

70.     State Street says that its Initial Disclosures are written and speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 70.

71-73.  The allegations in paragraph numbered 71 through 73 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

74.     State Street says that any purported "governing documents for the specific plans identified" in the Complaint are written and therefore speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 74.

75.     State Street says that the terms and duties governing its relationships with other investors in its active fixed income are set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 75.

76.     Denied in the form and manner alleged.

77.     State Street says that the language quoted in paragraph numbered 77 comes from a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 77.

78.     Denied.

79.     State Street says that the communications referenced and language quoted in paragraph numbered 79 come from written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 79

80.     State Street says that as of January 1, 2007, the Andover Plan invested approximately $3 million in one of the active fixed income funds managed by State Street, that such investment terminated on or about September 7, 2007, and otherwise denies the remaining allegations of paragraph numbered 80.

81.     Denied in the form and manner alleged.

82.    Denied.

83.    State Street says that the percentages set forth in paragraph numbered 83 come from written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 83 in the form and manner alleged.

84.    Denied in the form and manner alleged.

85.    State Street denies the allegations of paragraph numbered 85 as setting forth broad generalizations that are in certain instances untrue as to timing and in others are out of context.

86.    Denied.

87.    Denied in the form and manner alleged.

88.    Denied.

89.    State Street says that the quoted language in paragraph numbered 89 comes from a written document that speak for itself, and to the extent that the written document differs from the allegations of paragraph numbered 89, State Street denies the same, and otherwise denies the remaining allegations of paragraph numbered 89.

90.    State Street says that the letter referenced in paragraph numbered 90 is a written document and therefore speaks for itself, and to the extent the written document differs from the allegations of paragraph numbered 90, State Street denies the same, and otherwise denies the remaining allegations of paragraph numbered 90.

91.    Denied in the form and manner alleged.

92.    State Street admits the second sentence of paragraph numbered 92, but says that those allegations are based upon a selective timeframe and that, for example, the Limited Duration Bond Fund increased in value after August 21, 2007, further says that the allegations of

the fourth sentence of paragraph numbered 92 do not specify a timeframe, and otherwise denies the remaining allegations of paragraph numbered 92.

93.     Denied.

94.     Denied.

95.     Denied.

96-103. The allegations in paragraphs numbered 96 through 103 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

104.    The allegations in paragraph numbered 104 constitute characterizations of plaintiffs' claims that require no response, but to the extent a response is required, denied.

105-108.  The allegations in paragraphs numbered 105 through 108 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

109.    State Street incorporates by reference its answers to each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110-117.  The allegations in paragraphs numbered 110 through 117 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

118.  The allegations in paragraph numbered 118 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

119.  Denied.

120.  Denied.

121-125.  The allegations in paragraphs numbered 121 through 125 constitute legal conclusions or characterizations of plaintiffs' claims to which no answers are required, but to the extent answers are required, denied.

State Street denies each and every allegation of the Complaint to which it has not specifically admitted or otherwise responded herein.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by breaches of fiduciary duty by certain plaintiffs.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, laches, and estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto*.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred insofar as they have named the wrong party – State Street Global Advisors, Inc. – as a defendant in this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs are not as a matter of law entitled to the forms of relief they seek in this action.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because State Street did not breach any duties or obligations it allegedly owed under ERISA or any other applicable law.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because they suffered no damages as a result of State Street's alleged breaches of fiduciary duty.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because they and the putative class members have failed, refused and/or neglected to mitigate or avoid damages they allegedly incurred as a result of State Street's alleged breaches of fiduciary duty.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because State Street is not liable for the alleged losses of some or all of the putative class members pursuant to ERISA § 404(c).

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because State Street has not received any benefit or enrichment as a result of the alleged breaches.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because State Street has complied with all disclosure requirements under all applicable laws.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because they did not rely upon State Street's alleged failures to disclose or alleged misrepresentations.

**THIRTEENTH AFFIRMATIVE DEFENSE**

To the extent that plaintiffs challenge discretionary decisions made by State Street, their claims are barred, in whole or in part, because State Street committed no abuse of discretion, and its challenged conduct and activities were lawful and appropriate as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that the Complaint purports to state claims on behalf of a class, plaintiffs' claims are barred, in whole or in part, because this action may not properly be maintained as a class action.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent that the Complaint purports to state claims on behalf of a class, plaintiffs' claims are barred, in whole or in part, because some or all of the putative class members lack standing to maintain this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent plaintiffs' allegations are based on settlements and settlement negotiations with other persons or entities, or are based on any reserve(s) that State Street may have established, then those allegations are barred by, in the case of settlement negotiations, Federal Rule of Evidence 408, and otherwise by applicable rules of evidence and public policy barring the admission into evidence of such allegations.

State Street reserves the right to assert additional affirmative defenses.

## COUNTERCLAIM

State Street incorporates paragraphs 1 through 125 above as if fully set forth herein. Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, Defendant and Counterclaimant State Street Bank and Trust Company ("State Street"), for its claims against Plaintiffs and Counterdefendants Alan Kober, Warren Cohen, John L. Patenaude, Margaret Callan, Alan Gordon, and Glenn Kingsbury and each of the as yet unidentified fiduciaries of the ERISA plans that comprise the purported class (together, the "Trustee Counterdefendants" or the "Counterdefendants"), hereby alleges as follows:

## SUMMARY

1.      This counterclaim arises out of the Trustee Counterdefendants' failure to fulfill their fundamental duties as fiduciaries under ERISA.  As fiduciaries, the Trustee Counterdefendants were responsible for making informed investment decisions, which required – at a minimum – monitoring investments made on behalf of their respective ERISA plans (the "Plans").  The Counterdefendants' fiduciary obligations thus required them to understand the nature, risks, and strategies of plan investments, including the active fixed income funds managed by State Street at the center of this litigation (the "Plan Funds").

2.      Throughout the relevant period, the Trustee Counterdefendants failed either to monitor the Plans' investments in State Street funds or overall market conditions.  As a result of this breach of fiduciary duty, the Plans continued to invest in State Street funds well into the third quarter of 2007 without appropriately taking into account, or informing their participants and beneficiaries of, the Plan Funds' risks.

3.      Because the Trustee Counterdefendants failed to pay heed to information they received about the Plan Funds and their risks, the Plans experienced significant investment losses

in the third quarter of 2007.  These losses are the direct result of the Trustee Counterdefendants'
fiduciary failures, requiring them to contribute to any damages awarded to the Plans.

## PARTIES

4.      Counterclaimant State Street Bank and Trust Company ("SSBT") is a
Massachusetts trust company and wholly owned subsidiary of State Street Corporation with its
principal place of business in Boston, Massachusetts.  State Street Global Advisors ("SSgA") is
the investment management division of SSBT.  SSBT and its division SSgA are referred to
herein as "State Street."

5.      Counterdefendant Alan Kober is Vice President of the Merrimack Mutual Fire
Insurance Company ("Merrimack"), one of the Andover Companies.  At all material times, Mr.
Kober was a trustee of the Andover Companies Employees' Savings and Profit Sharing Plan (the
"Andover Plan"), an ERISA plan offered by Merrimack.  The Andover Plan invested in a
commingled fund managed by State Street named the Intermediate Bond Fund from as early as
2001 until 2007.  During the relevant period, Mr. Kober was involved in decisions concerning
what investments to select and maintain for the Andover Plan.  As such, at all material times, Mr.
Kober was an ERISA fiduciary of the Andover Plan.

6.      Counterdefendant Warren Cohen is Executive Vice President and Chief Financial
Officer of Unisystems, Inc.  At all material times, Mr. Cohen was a trustee of the Unisystems,
Inc. Employees' Profit Sharing Plan (the "Unisystems Plan"), an ERISA plan offered by
Unisystems, Inc.  The Unisystems Plan invested in the Intermediate Bond Fund from 2003 until
2007.  During the relevant period, Mr. Cohen decided what investments to select and maintain
for the Unisystems Plan.  As such, at all relevant times, Mr. Cohen was an ERISA fiduciary of
the Unisystems Plan.

7.     Counterdefendant John L. Patenaude is Vice President, Chief Financial Officer, and Treasurer of the Nashua Corporation ("Nashua").  Mr. Patenaude was at all material times a member of the Nashua Corporation Pension Plan Committee (the "Nashua Committee"), which oversees the Nashua Corporation Retirement Plan for Salaried Employees and the Nashua Corporation Hourly Employees Retirement Plan (together, the "Nashua Plan"), both of which are ERISA plans offered by Nashua.  The Nashua Plan invested in a State Street commingled fund referred to herein as the Bond Market Fund from 1999 to 2007.  During the relevant period, Mr. Patenaude was involved in decisions concerning what investments to select and maintain for the Nashua Plan.  As such, at all material times, Mr. Patenaude was an ERISA fiduciary of the Nashua Plan.

8.     Counterdefendant Margaret M. Callan is Corporate Controller and Chief Accounting Officer of Nashua, and at all material times, was also a member of the Nashua Committee.  During the relevant period, Ms. Callan was involved in decisions concerning what investments to select and maintain for the Nashua Plan.  As such, at all material times, Ms. Callan was a fiduciary of the Nashua Plan.

9.     Counterdefendant Alan Gordon is National Executive Director of the American Guild of Musical Artists ("AGMA").  At all material times, Mr. Gordon was a trustee of the AGMA Retirement Plan and the AGMA Health Fund (the "AGMA Plan"), which are ERISA plans offered by AGMA.  The AGMA Plan invested in the Intermediate Bond Fund and a State Street commingled fund referred to herein as the Intermediate Bond CTF from 2003 until 2007.  During the relevant period, Mr. Gordon was involved in decisions concerning what investments to select and maintain for the AGMA Plan.  As such and at all material times, Mr. Gordon was an ERISA fiduciary of the AGMA Plan.

10.     Counterdefendant Glenn Kingsbury is Manager of the Boston Chapter of the National Electrical Contractors Association.  Mr. Kingsbury is a Trustee of the New England Electrical Workers Benefit Fund (the "Electrical Workers Plan"), an ERISA plan.  The Electrical Workers Plan invested in a State Street commingled fund referred to herein as the Short Term Bond CTF from 2003 to 2007.  During the relevant period, Mr. Kingsbury was involved in decisions concerning what investments to select and maintain for the Electrical Workers Plan. As such and at all material times, Mr. Kingsbury was an ERISA fiduciary of the Electrical Workers Plan.

11.     Counterdefendants Does 1-100 are fiduciaries of the other ERISA plans that comprise the putative class.

## JURISDICTION

12.     This Court has jurisdiction over State Street's counterclaim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the counterclaim arises under ERISA and forms part of the same case or controversy asserted by the Trustee Counterdefendants in the Complaint.

## THE TRUSTEES' FIDUCIARY DUTIES UNDER ERISA

13.     At all relevant times, the Trustee Counterdefendants were fiduciaries of the Plans within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

14.     As fiduciaries, the Trustee Counterdefendants owed the Plans the highest standards of fiduciary responsibility and loyalty, including a duty of care and diligence with respect to the selection, evaluation and monitoring of the Plans' investments.

15.     Pursuant to ERISA Section 404, 29 U.S.C. § 1104, the Trustee Counterdefendants were required to discharge their responsibilities with the care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct

of an enterprise of like character and with like aims.  At a minimum, the Trustee

Counterdefendants were required to monitor the Plans' investments, including their investments

in the Plan Funds.

16.     Indeed, trustees of ERISA plans bear ultimate decision-making authority and

responsibility for plan investments.  As the Second Circuit has recognized, the duties of an

ERISA trustee are "the highest known to law."  *See Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8

(2d Cir. 1982).  Though a trustee may seek independent advice from outside experts, his duty to

engage in independent inquiry into the prudence of investments remains undiminished.  Failure

to monitor or evaluate plan investments is a breach of a trustee's fiduciary obligation to his plan

and plan participants.

### THE TRUSTEES' FAILURE TO MONITOR THE PLANS' INVESTMENTS IN THE PLAN FUNDS

17.     As their own Complaint makes clear, the Trustee Counterdefendants failed to

satisfy their duty to monitor their investments in the Plan Funds.  Indeed, the Counterdefendants

apparently lacked any fundamental understanding of the Plan Funds' investment strategies.

18.     The Complaint indicates, for example, that the Trustee Counterdefendants

believed that the Plan Funds were essentially index funds and were not knowledgeable about

important components of the Funds' investment strategies, such as their investments in

mortgage-related securities and derivative instruments.

19.     Thus, the Trustee Counterdefendants contend that State Street represented that the

Plan Funds were tantamount to index funds, complain that Funds' underperformed their

benchmarks, and suggest that the Funds' investment profiles should have matched the profiles of

their benchmark indices.  Compl. ¶¶ 1, 4, 76-78.

20.     The Trustee Counterdefendants further assert that State Street breached its fiduciary duty by investing the Plan Funds in investment vehicles such as asset-backed and other mortgage-related securities, as well as derivative instruments such as futures, options, and swaps, which the Counterdefendants contend were "improper[]" and "contrary" to State Street's representations.  *E.g.*, Compl. ¶¶ 1-2.

21.     These allegations sharply underscore the Counterdefendants' own fiduciary failings.

22.     In fact and as set forth below, State Street disclosed information concerning the Plan Funds and their active investment strategies to the Trustee Counterdefendants and the investment advisors who received information on their behalf.  The Counterdefendants also had access to additional information about the Plan Funds.

23.     As ERISA trustees, the Counterdefendants had a fiduciary duty not only to review and evaluate the information regularly provided to them by State Street, but also actively to seek any additional information they needed to monitor and evaluate the Plan Funds – including information that State Street made reasonably accessible to the Trustees.

24.     Given the range and extent of State Street's disclosures concerning the Plan Funds, the Trustee Counterdefendants should have been fully aware of the Funds' investment strategies and any attendant risks by early 2007.  Their failure to monitor or understand the Plan Funds led directly to their Plans' losses and constituted an inexcusable breach of fiduciary duty.

**I.     State Street Provided Disclosures Concerning the Plan Funds**

25.     Throughout the relevant period, State Street provided information concerning the Plan Funds to the Trustee Counterdefendants and their investment advisors, including regular reporting, in-person presentations, and access to fund information.

A.     *The Plan Funds' Active Nature*

26.     The information State Street provided to the Trustee Counterdefendants disclosed the active nature of the Plan Funds.

27.     For example, client presentations stated the Funds' active investment objectives. Between 2003 and 2006, State Street made four such presentations to one of the Trustee Counterdefendants, all of which stated that the investment objective of the Intermediate Bond Fund in which his Plan invested was to "exceed" or "outperform" the return of its benchmark index.

28.     Indeed, in November 2004, State Street presented that same Counterdefendant with several alternative investment options for his Plan – ranging from investments in all passive funds to more moderate active portfolios to an "All Active" portfolio. The Trustee Counterdefendant selected the most aggressive "All Active" portfolio.

29.     Other trustees received similar presentations from State Street, which stated that the Plan Funds in which their Plans invested were "Active" fixed income strategies that aimed to "outperform" their benchmarks.

30.     The Trustee Counterdefendants and their consultants also received monthly or otherwise periodic performance reports from State Street. These performance reports frequently showed significant deviation from the Plan Funds' benchmarks – again clearly signaling their active status. For example, the September 2006 report received by one Trustee Counterdefendant showed that over the preceding 12 months, the Short Term Bond CTF had outperformed the benchmark by 52 basis points. Reports received by other Counterdefendants similarly showed significant deviation from the benchmark in the Plan Funds' performance over time.

### B.   The Plan Funds' Sector Allocation and Performance

31.    Throughout the relevant period, State Street also provided information to the Counterdefendants setting forth the Plan Funds' investment strategies.  Well before the summer of 2007, State Street's disclosures stated that the Plan Funds' active strategies involved material exposure to mortgage-related securities and derivatives.

32.    For example, the Trustee Counterdefendants received communications from State Street regarding the Plan Funds' exposure to mortgage-related investments:

> a.    One Counterdefendant received a presentation from State Street on or about October 19, 2006, which reported that as of September 30, 2006, the Intermediate Bond Fund had a 46.2% allocation to asset-backed securities, while stating that the Fund's benchmark consisted only of "US treasury, corporate, agency and supranational securities";

> b.    Similarly, State Street reported to other Counterdefendants that between January and June 2007, the Bond Market Fund's allocation to asset-backed securities had increased from 18.88% to 37.99%, as compared to the benchmark's allocation, which had decreased from 1.19% to 0.98%.

33.    State Street also made information about the Plan Funds reasonably accessible to the Counterdefendants.

34.    For example, all of the Trustee Counterdefendants had access to information about the Plan Funds through State Street's "Client's Corner," an online platform that provided users with performance and transaction data, investment commentary, and fund strategy information.

35.     Similarly, State Street's Fact Sheets – which were frequently distributed to clients and consultants and were always available upon request – also reflected material exposure to mortgage-related securities throughout the relevant period.  For example,

a.      The March 2006, September 2006, and March 2007 Fact Sheets for the Intermediate Bond strategy – in which, for example, the Unisystems, Andover, and AGMA Plans invested – showed allocations of 19.71%, 54.25%, and 23.79%, respectively, to asset-backed securities, which typically consisted primarily of debt obligations backed by residential mortgages and home equity loans.

b.      Fact Sheets for the same periods for the Bond Market Fund – in which, for example, the Nashua Plan invested – reflected 19.81%, 24.37%, and 24.33% exposure, respectively, to asset-backed securities, and 33.68%, 25.48% and 45.45% exposure to mortgage-backed securities;

c.      Similarly, Fact Sheets for the Short Term Bond strategy, in which, for example, the Electrical Workers Plan invested, indicated an asset-backed securities allocation of 9.92% in March 2006, 44.85% in December 2006 and 40.95% in March 2007.

36.     The information regularly provided to the Trustee Counterdefendants as well as readily accessible information thus clearly reflected the Plan Funds' significant exposure to housing-related assets and their non-benchmark strategies.

37.     The Trustee Counterdefendants and their consultants also regularly received information concerning the Plan Funds' performance, which clearly reflected underperformance in the Plan Funds prior to the summer of 2007.

38. For example, the Intermediate Bond Fund – in which the Unisystems, Andover, and AGMA Plans invested – underperformed its benchmark by over 60 bps during the first quarter of 2007.

39. The Bond Market Fund – in which the Nashua Plan invested – underperformed its benchmark by over 50 bps during the same period, and the Short Term Bond Market Fund – in which the Electrical Workers Plan invested – underperformed its benchmark by over 40 bps during the same period.

40. Not only did the Trustee Counterdefendants receive reporting information showing underperformance in the Plan Funds, State Street also informed clients and their consultants before the summer of 2007 that the source of underperformance in the Plan Funds resulted from exposure to the "subprime mortgage market."  For example:

    a.    In April 2007, State Street sent one of the Trustee Counterdefendants a letter discussing the "situation in the subprime sector and its effects on our active fixed income strategies."  The letter stated that "credit exposure to the investment grade, secured-debt markets, specifically the sub-prime home equity market" was an "alpha driver[]" for its fixed income funds and noted that the Intermediate Bond strategies in which the trustee's plan was invested had underperformed their benchmarks during the first quarter of 2007 by over 60 basis points.  The letter further emphasized that State Street remained "confident in the underlying fundamentals" of housing-related securities.

    b.    Also in April 2007, State Street sent a similar notification to the consultant for one of the Trustee Counterdefendants.  The letter included similar

disclosures concerning underperformance in the Short Term Bond CTF, and added that the Fund in particular had been affected by "turmoil in the subprime sector," which caused it to underperform its benchmark by 47 basis points for the first quarter of 2007.

c.   Similarly, in early June 2007, State Street sent commentary discussing State Street's "active fixed income strategies and the subprime sector" to the investment advisor for another Counterdefendant.  The commentary explained that "one of the alpha drivers" for State Street's active fixed income strategies had been exposure to "the sub-prime home equity market" and discussed illiquidity in the asset-backed securities market.

41.   Indeed, State Street posted information concerning underperformance in its actively managed fixed income strategies on its website, including on the Client's Corner platform created specifically for the use of clients like the Trustee Counterdefendants.  For example, website commentary on the Bond Market Fund's performance during the first quarter of 2007 expressly stated that underperformance "reflect[ed] the impact of the turmoil that has occurred in the sub-prime mortgage industry" and attributed that underperformance to "residential mortgage exposure."  At the same time, State Street's website stated that it had "increased our AAA and AA residential mortgage exposure" and that "[l]ooking forward, we will continue to hold our asset-backed securities."

42.   Such disclosures clearly reflected that the Plan Funds were materially invested in mortgage-related securities, including so-called "subprime" assets, and that State Street remained committed to investing in these securities.

C.   **State Street's Broad Investment Discretion**

43.     Rather than being "improper," State Street's investment strategies were at all relevant times expressly permitted by the documents governing the Plan Funds, and the Counterdefendants should thus have been aware of State Street's broad authority in managing the Funds, as well as the accompanying risks.

44.     For example, at all relevant times, the Fourth Amended and Restated Declaration of Trust for Investment Funds for Tax Exempt Retirement Plans, effective October 1, 2005 (the "Tax Exempt Declaration"), governed the Intermediate Bond Fund and the Bond Market Fund. Article 6.1(a) of the Tax Exempt Declaration expressly authorized concentration of Fund investments "without regard to any proportion any such property or interest may bear to the entire amount of . . . any Fund," permitted State Street to invest in "futures contracts and options thereon of any type," "stock options and option contracts of any type," "mortgage-backed securities," and "asset-backed securities," and allowed State Street "to borrow money, with or without security, for a Fund."

45.     Similarly, the First Amended and Restated Declaration of Trust for State Street's Global Managed Common Trust Funds (the "CTF Declaration") governed the Intermediate Bond CTF and the Short Term Bond CTF.  Article 7, Section 3 of the CTF Declaration expressly authorized State Street to "invest and reinvest any assets at any time forming part of a Fund in any securities and other instruments," and further specified that State Street's "determination . . . as to whether or not any securities and other instruments are of a type which may be purchased or held by the Fund shall be conclusive."

46.     The Fund Declarations that governed each Plan Fund also authorized a wide range of permissible investments.  Paragraph 4 of each Declaration expressly permitted investments in

"mortgage-backed" and "asset-backed" securities, as well as "derivative securities including, but not limited to, options, futures and swaps."

## II.   State Street Provided Additional Fund Information to the Plans' Consultants

47.     During the relevant period, a number of the Trustee Counterdefendants relied upon external investment consultants or advisors to their plans for investment advice and recommendations.

48.     State Street regularly provided reporting and commentary to these consultants or advisors in their capacity as agents and representatives of the Plans.  The consultants thus served as yet another source of information for the Trustee Counterdefendants about their investments in the Plan Funds.

49.     These consultants also had access to State Street's online "Consultant's Corner" platform, which – like Client's Corner – provided consultants with access to a full range of performance and transaction data, investment commentary, and fund strategy information.  In 2007, for example, representatives from one consulting firm logged in to Consultant's Corner over 60 times, presumably for the purpose of obtaining fund information to analyze and provide to its clients.

50.     State Street also conveyed information about the Plan Funds' investment strategies directly to consultants, who at times served as a conduit between State Street and the Counterdefendants.  For example, on or about April 23, 2004, State Street made a presentation to the consultant for one Counterdefendant, expressly describing State Street's use of structured products, including asset-backed and mortgage-backed securities, to drive excess return in its core active fixed income strategies, such as the Bond Market Fund.

**III.** **The Trustee Counterdefendants Also Did Not Make Themselves Knowledgeable About The Market**

51.     Of course, the Trustee Counterdefendants had access not only to information from State Street and their consultants, but also to publicly available information about the fixed income markets.

52.     During late 2006 and early 2007, the residential mortgage market became increasingly volatile.  In December 2006, for example, the Mortgage Bankers Association reported that delinquency and foreclosure rates were increasing and were expected to increase into the next year.

**THE TRUSTEE COUNTERDEFENDANTS' FIDUCIARY BREACHES
LED DIRECTLY TO THEIR PLANS' LOSSES**

53.     As set forth above, State Street's disclosures and reporting provided the Trustee Counterdefendants with sufficient information about the Plan Funds' investment strategies, their exposure to mortgage-related securities, and the associated risks of underperformance.

54.     As ERISA trustees with ultimate investment decision-making authority for their Plans, the Counterdefendants had a fiduciary duty to review and evaluate the information that State Street provided.

55.     As ERISA trustees, the Counterdefendants were obliged not only to monitor the information they received from State Street, but also to seek further information about the Plan Funds and to actively inquire about their strategies and performance in order to assess the prudence of their Plans' continuing investments.

56.     Indeed, State Street made such additional information about the Plan Funds readily accessible to the Counterdefendants by placing information and commentary on its Client's Corner platform and by making fund information available upon request.

57.     By the spring of 2007, the Counterdefendants should have been well aware that the Plan Funds had extensive exposure to the troubled residential mortgage market and that it had been a source of underperformance in the Funds.

58.     Moreover, by the spring of 2007, the Counterdefendants should have been aware that State Street remained committed to investing in mortgage-related securities and intended to increase or at least maintain its exposure to such investments.

59.     The Trustee Counterdefendants, who had an ongoing fiduciary duty to monitor Plan investments as well as ultimate authority over investment decisions, failed to pay heed to the available facts and took no action regarding their Plans' investments.

60.     Indeed, the Counterdefendants failed to gain any basic understanding of the Plan Funds, let alone to develop an understanding of their investment strategies, their exposure to mortgage-related securities, or State Street's ongoing commitment to that investment sector – as their fiduciary status required them to do.  In light of the information directly provided or readily available to them, the Counterdefendants' ignorance and failure to act constituted a breach of their fiduciary obligations.

61.     Some Counterdefendants even failed to act when given explicit updates by State Street about the Plan Funds.

62.     Specifically, several Trustee Counterdefendants received explicit statements from State Street about underperformance in the Plan Funds due to subprime exposure in late July 2007 and early August 2007.  These Counterdefendants took no action for a period of weeks, resulting in significant additional losses to their plans in the third quarter of 2007.

a.     Specifically, on July 31, 2007, a State Street representative telephoned one of the Trustee Counterdefendants, informed him about the

underperformance of the Intermediate Bond Fund in which his Plan was invested as a result of the Fund's exposure to mortgage-related securities, and recommended that the Plan move to a passive investment option as soon as possible.  For two weeks, the Trustee Counterdefendant failed to take any action or to respond to State Street's follow-up communications.

b.       Finally, on August 14, 2007, the Trustee Counterdefendant sent State Street a letter of direction, instructing State Street to transfer all of the Plan's funds from the Intermediate Bond Fund to the passive investment alternative recommended by State Street two weeks earlier.

c.       During the third quarter of 2007, that Counterdefendant's Plan experienced approximately $114,969.26 in investment losses in the Intermediate Bond Fund.  Approximately 54.7% of those losses – or $62,984.77 – occurred during the two-week period in which the Counterdefendant failed to take action.

d.       Similarly, in early August 2007, another Trustee Counterdefendant was directly informed about underperformance in the Intermediate Bond Fund in which his Plan was invested, as well as its exposure to mortgage-related securities.  The Counterdefendant failed to take any action for several weeks.  His Plan's investment in the Fund was ultimately terminated as a result of State Street's closure of the Fund on August 31, 2007.

e.       During the period of that Trustee Counterdefendant's inaction, and as a direct result, his Plan experienced approximately 75% of its third quarter losses in the Intermediate Bond Fund.

    f.       Other Counterdefendants were repeatedly informed about underperformance in the Bond Market Fund in which their Plan was invested, as well as the Fund's exposure to housing-related asset-backed securities.  State Street contacted those fiduciaries and their consultant on a number of occasions starting at the end of July 2007, but received no response until August 29, 2007.

    g.       During the period of those Counterdefendants' inaction, and as a direct result, their Plan experienced approximately 80% of its third quarter losses in the Bond Market Fund.

    h.       State Street also communicated with the consultant for a Counterdefendant on August 2, 2007, explaining that the Plan's investment in the Short Term Bond CTF had been significantly impacted by the subprime market turmoil.  The Plan, however, did not withdraw from the Plan Fund until September 14, 2007, resulting in approximately 75% of the Plan's third quarter losses.

63.    Had any of the Counterdefendants taken action prior to July 2007, they would have avoided most of the losses eventually incurred by the Plans in the third quarter of 2007.

64.    The Trustee Counterdefendants' breaches of fiduciary duty make them liable for contribution and/or indemnification to State Street for any damages awarded to the Plans and Plan members under the allegations of the Complaint.

## FIRST COUNTERCLAIM
### (Claim for Contribution and/or Indemnification)

65.    State Street hereby repeats and realleges as if fully set forth herein each of the allegations contained in paragraphs numbered 1 through 64.

66.     State Street denies the material allegations of the Complaint.  Nevertheless, if there is any finding of liability on the part of State Street to the Plans, or for restitution for any of their alleged damages, then, under the facts alleged herein, the Trustee Counterdefendants' violations of fiduciary duty make them substantially more at fault than State Street for any harm to the Plans.  The Trustee Counterdefendants are therefore liable to State Street for complete indemnification for any liability, including fees and costs, suffered by State Street in connection with the claims asserted in the Complaint.

67.     Even if State Street and the Trustee Counterdefendants are jointly liable by virtue of their status as fiduciaries within the meaning of ERISA, both State Street and the Trustee Counterdefendants are obligated to contribute to the payment or repayment of any damages or restitution according to their respective shares of fault.  State Street will therefore suffer harm to the extent it is required to pay more than its proportionate share of liability on the claims asserted in the Complaint.

68.     Accordingly, the Trustee Counterdefendants are liable to State Street for contribution and/or indemnification in the amount of any payment by State Street in excess of its share of liability, including fees and costs, on the claims asserted in the Complaint.


WHEREFORE, State Street respectfully requests the following relief:

(i)     A declaration that any injuries or damages sustained by the Plans were proximately caused, in whole or in part, by the acts or omissions of the Trustee Counterdefendants;

(ii)    A declaration (a) that the Trustee Counterdefendants are obligated to completely indemnify State Street for any judgment or award of damages or restitution resulting from the Complaint, or (b) of the amount that the Trustee Counterdefendants are obligated to contribute if State Street is compelled to pay any sum as a result of any judgment or award of damages or restitution resulting from the Complaint, and payment of such amounts;

(iii)    Reasonable attorneys' fees and costs; and

(iv)    Such other and further relief as the Court deems just and proper.

Dated: October 17, 2008                Respectfully submitted,

                                       ROPES & GRAY LLP

                                       By:/s/ Harvey J. Wolkoff
                                       Harvey J. Wolkoff
                                       Robert A. Skinner
                                       Olivia S. Choe
                                       One International Place
                                       Boston, MA 02110
                                       Tel: 617-951-7000
                                       Fax: 617-951-7050
                                       Harvey.Wolkoff@ropesgray.com
                                       Robert.Skinner@ropesgray.com
                                       Olivia.Choe@ropesgray.com

                                       *Attorneys for Defendants*
                                       *State Street Bank and Trust Company and*
                                       *State Street Global Advisors, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2008, I caused a true and correct copy of the foregoing document to be served upon all registered users through the Court's Electronic Case Filing system and upon the following counsel of record by e-mail.


Edwin G. Schallert
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

Derek W. Loeser
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

William C. Fredericks
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019

Jeffrey C. Block
BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO
One Liberty Square
Boston, MA 02109

Richard B. Walsh, Jr.
LEWIS, RICE, FINGERSH LC
500 N. Broadway, Suite 2000
St. Louis, MO 63102

Douglas K. Spaulding
REED SMITH LLP
1301 K Street NW
Suite 1100 - East Tower
Washington, DC 20005

Robert R. Burford
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

John R. Nelson
LOCKE LORD BISSELL & LIDDELL LLP
100 Congress, Suite 300
Austin, TX 78701

George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103

Samuel H. Rudman
COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747

Peter Simshauser
SKADDEN, ARPS, SLATE, MEAGHER, &
FLOM LLP
1 Beacon Street
Boston, MA 02108


/s/ <u>Olivia S. Choe</u>
Olivia S. Choe