FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE STATE STREET BANK AND TRUST CO. :
FIXED INCOME FUNDS INVESTMENT          :
LITIGATION,                            :   No. 08 MD 1945 (RJH)
                                       :
This document relates to:              :   REPLY TO COUNTERCLAIMS
                                       :
07 Civ. 8488                           :
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC") by

and through its undersigned attorneys, Debevoise & Plimpton LLP, replies to the

counterclaims contained in the Answer and Counterclaim served on October 15, 2008,

(the "Counterclaims") by defendants State Street Bank and Trust Company and State

Street Global Advisors, Inc. (together, "State Street"), as follows:

### SUMMARY

      1.     PRIAC admits that at all relevant times PRIAC was a fiduciary as defined

by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for

the selection and monitoring of certain funds offered to its clients, including the State

Street Intermediate Bond Fund and State Street Government Credit Bond Fund (together,

the "Bond Funds"), which were offered to PRIAC's clients through PRIAC separate

accounts.  Except as stated herein, PRIAC denies the allegations contained in Paragraph

1.

2.      Paragraph 2 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations in Paragraph 2, except admits that it used the quotations included in that paragraph in the Quarterly Reports of the Prudential Due Diligence Advisor Program, which reports were provided to certain PRIAC clients.

3.      PRIAC admits that it listed the Intermediate Bond Fund as the "State Street Global Advisors Passive Intermediate Bond Index SL Series Fund" in Prudential Due Diligence Advisor Program Quarterly Reports for the fourth quarter of 2005 through the first quarter of 2007, inclusive, and in the Fund Fact Sheets (previously called "Performance Updates") for the third quarter of 2005 through the first quarter of 2007, inclusive, and admits that these documents were sent to PRIAC clients.  PRIAC states that these communications with clients were subsequent to PRIAC's receipt of a "Summary of Changes to SSgA Commingled Funds" from State Street, in which State Street stated that the fund that had previously been named "Intermediate Bond Securities Lending Fund – Series A" would, effective October 1, 2005, have the new name "Passive Intermediate Bond Index Securities Lending Series Fund – Class A."  PRIAC admits that State Street regularly sent PRIAC monthly reports, and that for the months January 2006 through August 2008, inclusive, these monthly reports showed (i) for the Government Credit Bond Fund, overweights in the "Mortgage Backed" and the "Asset Backed" sectors, and (ii) for the Intermediate Bond Fund, (a) underweights in the "Mortgage Backed" sector for three months, (b) index-equal weights (*i.e.*, zero weights) in both the

2

"Mortgage Backed" and "Asset Backed" sectors for one month, and (c) overweights in each of these sectors for all remaining months.  PRIAC states that these monthly reports omitted to state that the "Asset Backed" sector was largely composed of sub-prime mortgage-related securities.  Except as stated herein, PRIAC denies the allegations contained in Paragraph 3.

4.     PRIAC denies the allegations contained in Paragraph 4.

5.     Paragraph 5 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 5.

## THE PARTIES

6.     PRIAC admits that State Street Bank and Trust Company is a wholly owned subsidiary of State Street Corporation with its principal place of business in Boston, Massachusetts, but otherwise denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 6.

7.     PRIAC admits the allegations contained in Paragraph 7.

## JURISDICTION

8.     Paragraph 8 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 8.

9.      Paragraph 9 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 9.

10.     Paragraph 10 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 10.

## PRIAC'S ROLE AS A PROVIDER OF RETIREMENT PRODUCTS AND SERVICES

11.     PRIAC admits that some promotional materials have described PRIAC as a "leader" in providing certain services, and that some promotional materials have described certain services of PRIAC as "state-of-the-art" or "innovative."  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 11.

12.     PRIAC denies knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 12.

13.     PRIAC admits the allegations contained in Paragraph 13.

14.     PRIAC admits the allegations contained in Paragraph 14.

15.     PRIAC admits the allegations contained in Paragraph 15.

**PRIAC'S FIDUCIARY DUTY TO INVESTORS IN THE BOND FUNDS**

16.    PRIAC admits that it acknowledged a fiduciary duty under ERISA for the selection and monitoring of the Bond Funds to investors in these funds, and otherwise denies the allegations contained in Paragraph 16.

17.    PRIAC admits that it stated that it "acts as a fiduciary within the meaning of ERISA" with respect to oversight of the Alliance Funds.  PRIAC further admits that it agreed to indemnify certain plan sponsors whose plans were PRIAC clients in the event that PRIAC breached its fiduciary duties.  Except as stated herein, Paragraph 17 alleges legal conclusions for which no response is required.  To the extent a response is required, PRIAC denies the allegations contained in Paragraph 17.

18.    PRIAC admits that a PRIAC employee included the quotation contained in Paragraph 18 in an internal email, but otherwise denies the allegations contained in Paragraph 18.

19.    PRIAC admits that it offered a program called the Due Diligence Advisor Program, described in some promotional materials, in part, as "an opportunity to . . . ensure a quality selection of best-in-class financial options."  Except as state herein, PRIAC denies the allegations contained in Paragraph 19.

20.    PRIAC admits that at all relevant times the Alliance Funds, including the Bond Funds, were part of the Due Diligence Advisor Program, and otherwise denies the allegations contained in Paragraph 20.

21.     PRIAC admits that the several quotations included in Paragraph 21 were included in different PRIAC marketing materials involving the Due Diligence Advisor Program, but otherwise denies the allegations contained in Paragraph 21.

22.     Paragraph 22 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 22.

23.     Paragraph 23 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 23.

### PRIAC'S FAILURE TO MONITOR THE BOND FUNDS

24.     PRIAC admits the allegations contained in Paragraph 24.

25.     PRIAC denies the allegations contained in Paragraph 25.

26.     PRIAC denies the allegations contained in Paragraph 26.

27.     PRIAC admits that in June 2005, PRIAC asked State Street to review the Q1 2005 Fact Sheet for the Intermediate Bond Fund.  PRIAC further admits that Fund Fact Sheets are disseminated to clients.  PRIAC states that on July 18, 2007, State Street informed PRIAC in writing that State Street had "inadvertently added 'Passive' in the name of the SSgA Intermediate Bond Fund" in September 2005.  PRIAC admits that on July 30, 2007, PRIAC asked State Street to review the Fund Fact Sheet for the

Intermediate Bond Fund for the first quarter of 2007.  Except as set forth herein, PRIAC

denies the allegations contained in Paragraph 27.

28.    PRIAC admits that it listed the Intermediate Bond Fund as the "State

Street Global Advisors Passive Intermediate Bond Index SL Series Fund" in the Fund

Fact Sheets (previously called "Performance Updates") for the third quarter of 2005

through the first quarter of 2007, inclusive, and admits that these documents were sent to

PRIAC clients.  PRIAC states that these Fund Fact Sheets were created subsequent to

PRIAC's receipt of a "Summary of Changes to SSgA Commingled Funds" from State

Street, in which State Street stated that the fund that had previously been named

"Intermediate Bond Securities Lending Fund – Series A" would, effective October 1,

2005, have the new name "Passive Intermediate Bond Index Securities Lending Series

Fund – Class A."  PRIAC admits that during the period when the title "State Street

Global Advisors Passive Intermediate Bond Index SL Series Fund" was used in the Fund

Fact Sheets, the two-page version of each Fund Fact Sheet for the Intermediate Bond

Fund said that "State Street employs a unique, active fixed income trading strategy," and

also said that "active sector and issue selection techniques" were used in relation to the

fund.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph

28.

29.    PRIAC denies the allegations contained in Paragraph 29.

## PRIAC'S FALSE AND MISLEADING STATEMENTS

30.     PRIAC admits that in the summer of 2007, certain PRIAC clients and consultants raised questions about underperformance in the Bond Funds, and otherwise denies the allegations contained in Paragraph 30.

31.     PRIAC admits that more than one client or consultant inquired about the fact that the Intermediate Bond Fund under-performed its index, and otherwise denies the allegations contained in Paragraph 31.

32.     PRIAC denies the allegations contained in Paragraph 32.

33.     PRIAC denies the allegations contained in Paragraph 33.

34.     PRIAC denies the allegations contained in Paragraph 34.

35.     PRIAC denies the allegations contained in Paragraph 35.

**I.      The "Passive" Intermediate Bond Fund**

36.     PRIAC reasserts its replies to the allegations contained in Paragraphs 3 and 28, and otherwise denies the allegations contained in Paragraph 36.

37.     PRIAC admits that in the summer of 2007, one of its clients expressed concern that State Street's commentary referred to the Intermediate Bond Fund as an active fund, while its name appeared on certain documents as "State Street Global Advisors Passive Intermediate Bond Index SL Series Fund."  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 37.

8

38.     PRIAC admits that a client sent an email to PRIAC on August 16, 2007, regarding the Intermediate Bond Fund, stating that "your nomenclature, marketing materials and performance reports on this account appear to grossly understate the risks being taken," and that "we were dealing directly with State Street because we were having great difficulty in getting timely performance explanations which made any sense from your organization."  PRIAC states that as of the date when it received this communication, PRIAC was also having great difficulty getting timely information from State Street regarding the Bond Funds.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 38.

39.     PRIAC admits that a client's consultant wrote to PRIAC using, among other things, the language quoted in Paragraph 39, and otherwise denies the allegations contained in Paragraph 39.

40.     PRIAC admits that in documents for PRIAC's plan-sponsor clients, PRIAC used the language quoted in Paragraph 40, subparagraphs a, b, and c, but otherwise denies the allegations contained in Paragraph 40.

41.     PRIAC denies the allegations contained in Paragraph 41.

42.     Except as set forth herein, PRIAC denies the allegations contained in Paragraph 42, including each sub-paragraph thereof.

a.      With respect to subparagraph 42a, PRIAC admits that on July 14, 2005, a State Street employee referred to the Intermediate Bond Fund as the

"active intermediate bond fund" in an email that also spoke of PRIAC's using "our active strategy."  PRIAC states that this email was sent approximately two months prior to a September 21, 2005, email transmission from State Street to PRIAC, which informed PRIAC that there would be a "Minor Name Change" of the Intermediate Bond Securities Lending Fund Series A to the "New Name Effective October 1, 2005," which new name was specified by State Street as the "Passive Intermediate Bond Index Securities Lending Series Fund – Class A."

b.      With respect to subparagraph 42b, PRIAC admits that a PRIAC employee sent an email to State Street in May 2007, using the language quoted in subparagraph 42b.

c.      With respect to subparagraph 42c, PRIAC admits that PRIAC received monthly reports that showed the performance of both the Intermediate Bond Fund and its benchmark index.  PRIAC respectfully refers the Court to these reports for the contents thereof, and denies any allegations inconsistent with those contents.

d.      With respect to subparagraph 42d, PRIAC admits that it received quarterly investment commentary, including for each quarter from the third quarter of 2005 through the first quarter of 2007, inclusive (the "Incorrect Name Period").  PRIAC further admits that during the Incorrect Name Period,

State Street's quarterly investment commentary referred to the
Intermediate Bond Fund as the "Active Intermediate Bond Fund" in 4Q
2006 and 1Q 2007.  PRIAC states that this commentary referred to the
fund as the "Core Intermediate Fund" and as the "Intermediate Fund" in
3Q 2005; as the "Core Intermediate Fund" in 4Q 2005; as the
"Intermediate Bond Fund" in 2Q 2006; and not at all in 1Q 2006.  PRIAC
admits that, of the investment commentary it received from State Street for
the Incorrect Name Period, the investment commentary for 2Q 2006 and
1Q 2007 only used the term "active exposures," and used such term to
describe exposures of State Street's active fixed-income strategy
generally, not those of the Intermediate Bond Fund in particular.  PRIAC
further admits that during the same period, the State Street commentary
for every quarter other than 4Q 2006 and 1Q 2007 referred to
"overweights" held by State Street's active fixed-income strategy
generally, though no commentaries used this term with respect to the
Intermediate Bond Fund in particular.  PRIAC further admits that the
"overweights" discussed in the commentaries were, in some cases,
discussed in connection with the "securitized debt" and "home-equity
market" sectors.  PRIAC further admits that the investment commentary it
received from State Street for the Incorrect Name Period discussed
differences between the performance of the Intermediate Bond Fund and
that of its benchmark index, and discussed the reasons for the differences

between the performance of State Street's fixed-income strategies generally and that of the target indexes of such strategies.

e.      With respect to subparagraph 42e, PRIAC admits that in May 2007, two consultants to clients asked PRIAC for more information about the Intermediate Bond Fund's underperformance in the first quarter of 2007 relative to its benchmark index.  PRIAC further admits that internal PRIAC emails quote State Street's investment commentary to help explain this underperformance, and that these State Street quotations refer to the "exposure [of State Street's active fixed-income strategies] in the triple B asset-backed securities market," and also say that "[a]ctive exposures that worked for the quarter included curve steepening exposures, selling volatility and Eurodollar curve trades."

f.      With respect to subparagraph 42f, PRIAC admits that on or about August 22, 2007, a client's consultant sent an email to PRIAC, in which the consultant wrote (in reference to the name of the Intermediate Bond Fund), "You may recall that I have even protested at paying 35 BPS for an index fund . . . ."  PRIAC further admits that on or about March 13, 2007, another client's consultant asked why the client was paying 35 basis points for an investment in the Intermediate Bond Fund, when "the same index is available through Vanguard for 11 basis points . . . ."

g.    With respect to subparagraph 42g, PRIAC admits that the two-page

versions of PRIAC's quarterly Fact Sheets for the Intermediate Bond Fund

said that State Street achieved incremental returns through an investment

process that seeks to emphasize criteria including the following: "Superior

portfolio structure: Utilizing active sector and issue selection techniques,

only those securities which represent relative value are purchased."

PRIAC further admits that the two-page versions of these quarterly Fact

Sheets say that "State Street employs a unique, active fixed income trading

strategy."

43.    PRIAC denies the allegations contained in Paragraph 43.

44.    PRIAC denies the allegations contained in Paragraph 44.

45.    PRIAC denies the allegations contained in Paragraph 45.

46.    PRIAC denies the allegations contained in Paragraph 46.

47.    PRIAC denies the allegations contained in Paragraph 47.

## II.    The Bond Funds' Investment Strategies

48.    PRIAC admits that in the summer of 2007, PRIAC clients and their

consultants raised questions about underperformance in the Bond Funds, and otherwise

denies the allegations contained in Paragraph 48.

49.     PRIAC admits that on August 22, 2007, it received an email from a client's consultant, stating that "[w]e have received minimal additional information from Prudential related to the astounding losses generated by the SSgA Gov't Credit Fund." PRIAC states that this email refers to the "active bond strategies & limited duration bond strategies" revealed in a State Street letter dated August 14, noting that "I am not sure how that correlates to the risk controlled 'enhanced index strategy'" that the consultant's client had invested in.  PRIAC admits that this email also states that the Government Credit Bond Fund's "exposure to non benchmark related investment sectors and in particular large sub-prime component" was not identified in the consultant's regular quarterly investment updates with PRIAC.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 49.

50.     PRIAC admits that the quotations set forth in subparagraphs a, b and c of Paragraph 50 appeared in PRIAC's client communications regarding the Intermediate Bond Fund, and otherwise denies the allegations contained in Paragraph 50.

51.     PRIAC admits that State Street regularly sent PRIAC monthly reports, and that these reports included certain sector-weight information for each of the Bond Funds and their respective target indexes.  PRIAC states that these sector weights included the terms "Mortgage Backed" and "Asset Backed," in addition to other sector names.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 51.

52.     PRIAC admits that in April 2007, State Street provided PRIAC with a one-page commentary with respect to "The Active Core U.S. Government/Credit Fund," "The Active Intermediate Bond Fund," and the "U.S. Aggregate Index Fund," that included the quotations in Paragraph 52.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 52.

53.     PRIAC admits that State Street referred to "overweight" and "underweight" sector allocations in certain quarterly fixed-income commentaries, and admits that the commentaries referred to in subparagraphs a, b, c, d, e, f, g and h of Paragraph 53 include the language quoted in those respective sub-paragraphs.  PRIAC states that the "overweights and underweights to different mortgage-backed sectors" referred to in subparagraph 53b refer, in the commentary at issue, to "an overweight position to the 30 year sector" and "underweight position to the 15 year sector," within the "Mortgage Backed sector[]."  PRIAC further states that the second quotation in subparagraph 53d, in context, should read that "[t]he only other significant active positions are an overweight to the asset backed sector and a modest underweight to the MBS sector versus Treasuries."  PRIAC denies that the phrase "to increase our exposure here" in subparagraph 53e refers to overweight positions to the long triple B securitized debt sector, and states that it refers instead to "triple B home equity exposure" in particular.  PRIAC states that the quotation "active exposures" in subparagraph 53f is, in the referenced commentary, used in the sentence, "All in all, we believe that our active exposures are still prudent," and does not refer in particular to mortgage-related securities

or to asset-backed securities.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 53.

54.    To the extent that Paragraph 54 of the Counterclaims incorporates the statements quoted in subparagraphs a, b, c, d, e, f, g or h of Paragraph 53 of the Counterclaims, PRIAC incorporates by reference its responses to such subparagraphs, which responses are stated in paragraph 53 of this Reply to Counterclaims.  PRIAC states that the statements quoted in Paragraph 53 of the Counterclaims are excerpts from investment commentary, and respectfully refers the Court to the documents for the contents thereof, and denies any allegations inconsistent with those contents.  PRIAC admits that the Bond Funds produced positive returns for certain years prior to the third quarter of 2007.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 54.

55.    PRIAC admits that, in addition to investment commentary relating to State Street's active fixed-income strategies, PRIAC received monthly reports from State Street.  PRIAC respectfully refers the Court to such reports for the contents thereof, and denies any allegations inconsistent with those contents.  Except as stated herein, PRIAC denies the allegations contained in Paragraph 55.

56.    PRIAC admits that the October 2006 and November 2006 monthly reports show the ABS exposures set forth in subparagraphs a and b of Paragraph 56.  PRIAC further admits that these monthly reports generally reported the sector weights for "Asset

Backed" and "Mortgage Backed," in each of the Bond Funds and in their respective target indexes.  PRIAC states that these monthly reports did not disclose the portion of the "Asset Backed" exposure that comprised sub-prime mortgage-related securities. Except as set forth herein, PRIAC denies the allegations contained in Paragraph 56.

57.     With respect to subparagraph 57a, PRIAC admits that in 2005 State Street responded to questions by PRIAC employees regarding a sector/industry allocation reported by State Street as of December 31, 2004, for the Government Credit Bond Fund, in which the allocation amounts totaled to 116.83%.  PRIAC further admits that State Street's response stated that "the Sector weighting includes the leverage component of the fund in which we may hold a future or a swap," and explained that "a percentage of the valuation of [a] Future/Swap is used as collateral" and that "[t]he remaining dollars can be reinvested in other asset classes."  With respect to subparagraph 57b, PRIAC admits that on or about June 29, 2007, PRIAC received a characteristics report for the Intermediate Bond Fund for May 2007.  Except as set forth herein, PRIAC denies the allegations contained in Paragraph 57.

58.     PRIAC denies the allegations contained in Paragraph 58.

59.     PRIAC denies the allegations contained in Paragraph 59.

60.     PRIAC denies the allegations contained in Paragraph 60.

## FIRST COUNTERCLAIM

61.     PRIAC repeats and realleges each and every response in Paragraphs 1 through 60 above as if fully set forth herein.

62.     Paragraph 62 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 62.

63.     Paragraph 63 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 63.

64.     Paragraph 64 alleges legal conclusions for which no response is required. To the extent that a response is required, PRIAC denies the allegations contained in Paragraph 64, and PRIAC denies that State Street is entitled to the relief requested in its First Counterclaim.

## SECOND COUNTERCLAIM

65.     PRIAC repeats and realleges each and every response in Paragraphs 1 through 64 above as if fully set forth herein.

66.     PRIAC denies the allegations contained in Paragraph 66.

67.     PRIAC denies the allegations contained in Paragraph 67.

68.     PRIAC denies the allegations contained in Paragraph 68.

69.     PRIAC denies the allegations contained in Paragraph 69.

70.     Paragraph 70 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 70.

71.     Paragraph 71 alleges legal conclusions for which no response is required. To the extent that a response is required, PRIAC denies the allegations contained in Paragraph 71, and PRIAC denies that State Street is entitled to the relief requested in its Second Counterclaim.

## THIRD COUNTERCLAIM

72.     PRIAC repeats and realleges each and every response in Paragraphs 1 through 71 above as if fully set forth herein.

73.     PRIAC denies the allegations contained in Paragraph 73.

74.     PRIAC denies the allegations contained in Paragraph 74.

75.     PRIAC denies the allegations contained in Paragraph 75.

76.     Paragraph 76 alleges legal conclusions for which no response is required. To the extent a response is required, PRIAC denies the allegations contained in Paragraph 76.

77.     Paragraph 77 alleges legal conclusions for which no response is required. To the extent that a response is required, PRIAC denies the allegations contained in Paragraph 77, and PRIAC denies that State Street is entitled to the relief requested in its Third Counterclaim.

### FIRST AFFIRMATIVE DEFENSE

The Counterclaims fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

PRIAC did not breach its fiduciary duty under ERISA or other applicable law.

### THIRD AFFIRMATIVE DEFENSE

State Street is not as a matter of law entitled to contribution or indemnification.

### FOURTH AFFIRMATIVE DEFENSE

The allegedly defamatory statements were substantially true, so State Street cannot meet its burden of proving the statements were false.

### FIFTH AFFIRMATIVE DEFENSE

The allegedly defamatory statements were privileged as statements on matters of common interest to the speakers and recipients.

### SIXTH AFFIRMATIVE DEFENSE

The allegedly defamatory statements were absolutely privileged as formal pleadings in a judicial proceeding.

## SEVENTH AFFIRMATIVE DEFENSE

PRIAC did not affirmatively or unnecessarily disseminate or publish the allegedly defamatory statements.

## EIGHTH AFFIRMATIVE DEFENSE

State Street was libel-proof at the time the allegedly defamatory statements were made.

## NINTH AFFIRMATIVE DEFENSE

The Counterclaims fail to plead defamation with the particularity required by the law.

## TENTH AFFIRMATIVE DEFENSE

The Counterclaims are barred in whole or in part by the doctrine of incremental harm.

## ELEVENTH AFFIRMATIVE DEFENSE

The alleged defamatory statements and unfair method of competition or the unfair or deceptive trade practice occurred outside of Massachusetts.

## TWELFTH AFFIRMATIVE DEFENSE

The allegedly unfair or deceptive trade practice was authorized by federal law.

PRIAC reserves the right to assert additional affirmative defenses.

**WHEREFORE**, PRIAC respectfully requests judgment (a) dismissing the Counterclaims in their entirety with prejudice; (b) awarding PRIAC costs and fees, including attorneys' fees, associated with the Counterclaims; and (c) granting such other and further relief as the Court deems just and proper.

Dated: November 26, 2008
    New York, New York

                                        Respectfully submitted,


                                        By: /s/ Edwin G. Schallert
                                            Edwin G. Schallert

                                        Debevoise & Plimpton LLP
                                        919 Third Avenue
                                        New York, New York 10022
                                        Tel: (212) 909-6000
                                        Fax: (212) 909-6836
                                        egschallert@debevoise.com

                                        *Attorneys for Plaintiff/Counterclaim*
                                        *Defendant Prudential Retirement*
                                        *Insurance and Annuity Company*

                                                        22866541v1