UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE STATE STREET BANK AND
TRUST CO. FIXED INCOME FUNDS          MDL No. 1945
INVESTMENT LITIGATION

---

IN RE STATE STREET BANK AND
TRUST CO. ERISA LITIGATION            No. 07 Civ. 8488 (RJH)

This document relates to:

07 Civ. 9319                          **ANSWER AND**
07 Civ. 9687                          **AMENDED COUNTERCLAIM**
08 Civ. 0265

---

Defendant and counterclaimant State Street Bank and Trust Company ("SSBT") and

defendant State Street Global Advisors, Inc. (collectively, "State Street") for their Answer and

Amended Counterclaim to Plaintiffs' Consolidated Amended Complaint (the "Complaint"),

hereby state as follows:

1.      The allegations of paragraph numbered 1 constitute legal conclusions to which no

answer is required, but to the extent an answer is required, denied.

2.      Denied.

3.      State Street says that the language quoted in paragraph numbered 3 comes from a

written document that speaks for itself, and otherwise denies the remaining allegations of

paragraph numbered 3.

4.      State Street admits that the market for home equity asset-backed securities

experienced unprecedented volatility and illiquidity during parts of 2007, and that during the

third quarter of 2007, certain active fixed income funds managed by State Street performed

below their respective benchmarks, but otherwise denies the remaining allegations of paragraph numbered 4.

5.      Denied.

6.      Denied in the form and manner alleged.

7.      Denied in the form and manner alleged.

8.      State Street says that the Annual Report for the Year Ending December 31, 2007 for State Street Corporation referenced in paragraph numbered 8 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 8.

9.      Denied.

10.     Denied.

11.     The allegations in paragraph numbered 11 constitute legal conclusions and characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that the Plans were subject to, or affected by, State Street's alleged conduct "in the same manner and with the same general effect" and further denies that any basis for a class action exists here.

12.     The allegations in paragraph numbered 12 constitute legal conclusions and characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that there is any basis for a class action here, and thus denies any allegations concerning a "Class Period."

13.     State Street denies the first sentence of paragraph numbered 13, and says that the remaining allegations in paragraph numbered 13 are not factual allegations and therefore no answer is required, but to the extent an answer is required, denied.

14.     The allegations in paragraph numbered 14 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

15.     The allegations in paragraph numbered 15 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

16.     State Street admits that Warren Cohen is a trustee and fiduciary of the Unisystems, Inc. Employees Profit Sharing Plan (the "Unisystems Plan"), says that the January 31, 2008 Order of the Court and the May 1, 2000 Unisystems, Inc. Employees' Profit Sharing Plan document referenced in paragraph numbered 16 are written and speak for themselves, and is otherwise without knowledge or information sufficient to form a belief as to the allegations of paragraph numbered 16.

17.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 17.

18.     State Street admits that for a certain period the Unisystems Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the Intermediate Bond Fund for Employee Trusts, says that the relationship between State Street and the Unisystems Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 18.

19.     State Street admits that Alan Kober is a trustee and fiduciary of the Andover Companies Employees' Savings and Profit Sharing Plan (the "Andover Plan"), says that the January 31, 2008 Order of the Court and January 1, 2989 Trust Agreement referenced in paragraph numbered 19 are written and speak for themselves, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 19.

20.    State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 20.

21.    State Street admits that for a certain period the Andover Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Enhanced Intermediate Bond Fund, says that the relationship between State Street and the Andover Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 21.

22.    State Street admits that John L. Patenaude and Margaret Callan are fiduciaries of the two ERISA plans referenced in paragraph numbered 22 (the "Nashua Plan"), says that the January 13, 2008 Order of the Court referenced in paragraph numbered 22 is written and speaks for itself, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 22.

23.    State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 23.

24.    State Street admits that for a certain period, the Nashua Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the Bond Market Fund, says that the relationship between State Street and the Nashua Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 24.

25.    State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 25.

26.    State Street admits that for a certain period, the AGMA Health Funds invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA

Intermediate Bond CTF Fund, admits that for a certain period the AGMA Retirement Plans invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Intermediate Bond NL Fund, says that the relationship between State Street and the AGMA Plans is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 26.

27.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 27.

28.     State Street admits that for a certain period, the R.I. Carpenters Plans invested in an active fixed income fund managed by State Street that the Complaint denominates the SSgA Bond Market Fund, admits that the R.I. Carpenters Plans incurred certain losses in connection with their investments in this fund, says that the relationship between State Street and the R.I. Carpenters Plans is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 28.

29.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 29.

30.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph numbered 30, admits that for a certain period of time, the ERISA plan referenced in paragraphs numbered 29 and 30 (the "Kodak Plan") invested in an active fixed income fund managed by State Street that the Complaint denominates the Daily Bond Market Fund, says that the relationship between State Street and the Kodak Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 30.

31.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 31.

32.     State Street admits that for a certain period, the Electrical Workers Plan invested in an active fixed income fund managed by State Street that the Complaint denominates the State Street Short Term Bond CTF, says that the relationship between State Street and the Electrical Workers Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 32.

33.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 33.

34.     State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph numbered 34, admits that for a certain period of time, the ERISA plan referenced in paragraphs numbered 33 and 34 (the "Waste Management Plan") invested in an active fixed income fund managed by State Street that the Complaint denominates the Bond Market Non-Lending Fund, says that the relationship between State Street and the Waste Management Plan is set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 34.

35.     The allegations of paragraph numbered 35 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

36.     State Street says that SSBT is a chartered Massachusetts trust company with its principal place of business in Boston, Massachusetts, which maintains an office in New York, and otherwise denies the remaining allegations of paragraph numbered 36.

37.     State Street says that named defendant State Street Global Advisors, Inc., is a wholly-owned subsidiary of State Street Corporation that has no connection to the investment

management services at issue in the Complaint, further says that State Street Global Advisors ("SSgA") is the unincorporated investment management division of SSBT, and is different from State Street Global Advisors, Inc., and otherwise denies the remaining allegations of the first two sentences of paragraph numbered 37, and says that the allegations of the third sentence of paragraph numbered 37 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

38.     Paragraph numbered 38 contains no factual allegations and therefore no answer is required, except that State Street says that the deadline for amending the Complaint has passed.

39.     The allegations in paragraph numbered 39 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that any basis for a class action exists here, and incorporates by reference its answers to paragraphs numbered 48 through 60 concerning the alleged "Bond Funds."

40.     The allegations in paragraph numbered 40 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that any basis for a class action exists here.

41.     The allegations in paragraph numbered 41 constitute legal conclusions or characterizations of plaintiffs' claims to which no answer is required, but to the extent an answer is required, denied, and State Street specifically denies that assets invested in various of its actively managed fixed income funds are "pooled" with assets invested in other funds, denies that State Street's alleged conduct "affected all plans" in the putative class "in the same manner," and further denies that any basis for a class action exists here.

42-47.  The allegations in paragraphs numbered 42 through 47 constitute legal conclusions or characterizations of plaintiffs' claims to which no answers are required, but to the extent answers are required, denied, and State Street specifically denies that any basis for a class action exists here.

48.     State Street says that the fund that the Complaint denominates the Intermediate Bond Fund for Employee Trusts was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 48.

49.     State Street says that the fund that the Complaint denominates the SSgA Enhanced Intermediate Bond Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and that the Form 5500 referenced in footnote 1 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 49.

50.     State Street says that the fund that the Complaint denominates the SSgA Intermediate Bond CTF was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 50.

51.     State Street hereby incorporates by reference its answer to paragraph numbered 48.

52.     State Street says that the fund that the Complaint denominates the Daily Bond Market Fund was an actively managed fixed income fund in which ERISA plans invested,

further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 52.

53. State Street says none of the funds that it manages are denominated the "Daily Corporate/Government Bond Fund," and otherwise denies the remaining allegations of paragraph numbered 53.

54. State Street says that the fund that the Complaint denominates the SSgA Government Credit Bond Non-Lending Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 54.

55. State Street says that the fund that the Complaint denominates the SSgA Yield Plus Fund was an actively managed registered mutual fund which was not managed by SSBT or SSgA, further says that the fund's investment objective was set forth in written documents that speak for themselves, denies that the Yield Plus Fund falls within the proposed class definition set forth in paragraph numbered 39, and otherwise denies the allegations of paragraph numbered 55.

56. State Street says none of the funds that it manages are denominated the Total Bond Market Fund, and otherwise denies the remaining allegations of paragraph numbered 56.

57. State Street says that the SSgA Bond Market Fund is an actively managed registered fund in which ERISA plans invested, but which is not managed by SSBT or SSgA, further says that the fund's investment objectives are set forth in written documents that speak for themselves, denies that the SSgA Bond Market Fund falls within the proposed class definition set forth in paragraph numbered 39, and otherwise denies the remaining allegations of

paragraph numbered 57, but further says that to the extent that plaintiffs intend to refer to the fund in which the R.I. Carpenters invested (*see, e.g.*, Compl. ¶ 28), State Street says that the R.I. Carpenters invested in the fund referred to herein as the Bond Market Fund and hereby incorporates by reference its answer to paragraph numbered 52.

58.     State Street says that the fund that the Complaint denominates the Limited Duration Bond Fund was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 58.

59.     State Street says that paragraph numbered 59 refers to two different funds that are referred to herein as the Bond Market Fund and the Intermediate Bond Fund and hereby incorporates by reference its answers to paragraphs 48 and 52.

60.     State Street says that the fund that the Complaint denominates the State Street Short Term Bond CTF was an actively managed fixed income fund in which ERISA plans invested, further says that the fund's investment objective was set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 60.

61.     The Declaration of Trust referenced in paragraph numbered 61 is written and speaks for itself, and State Street otherwise denies the allegations of paragraph numbered 61, and specifically denies that all the funds alleged in paragraphs numbered 48 through 60 were established pursuant to the referenced Declaration of Trust.

62.     State Street says that the terms of the Trust are set forth in a written document that speaks for itself, and to the extent that the written document differs from the allegations of paragraph numbered 62, State Street denies the same, admits that ERISA plans have invested in certain actively managed fixed income funds managed by State Street, further says that the

allegation that State Street was an "Investment Manager under ERISA" is a legal conclusion to which no answer is required, and otherwise denies the remaining allegations of paragraph numbered 62.

63.    State Street says that the terms of the active fixed income funds that it manages and offers to ERISA plans are set forth in written documents that speak for themselves, and further says that the allegations in paragraph numbered 63 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

64.    State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph numbered 64, admits that millions of dollars were invested in State Street's active fixed income funds, and otherwise denies the remaining allegations of paragraph numbered 64.

65.    Denied.

66.    Denied.

67.    The January 17, 2008 Report of State Street Corporation referenced in paragraph numbered 67 is written and speaks for itself, and State Street otherwise denies the remaining allegations of paragraph numbered 67.

68.    State Street admits that it announced the resignation of William Hunt on or about January 3, 2008, says that the Boston Globe article referenced in paragraph numbered 68 is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 68.

69.    State Street says that the allegations in paragraph numbered 69 come from the referenced Reuters article, which is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 69.

70.     State Street says that its Initial Disclosures are written and speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 70.

71-73.  The allegations in paragraph numbered 71 through 73 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

74.     State Street says that any purported "governing documents for the specific plans identified" in the Complaint are written and therefore speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 74.

75.     State Street says that the terms and duties governing its relationships with other investors in its active fixed income are set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 75.

76.     Denied in the form and manner alleged.

77.     State Street says that the language quoted in paragraph numbered 77 comes from a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 77.

78.     Denied.

79.     State Street says that the communications referenced and language quoted in paragraph numbered 79 come from written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 79

80.     State Street says that as of January 1, 2007, the Andover Plan invested approximately $3 million in one of the active fixed income funds managed by State Street, that such investment terminated on or about September 7, 2007, and otherwise denies the remaining allegations of paragraph numbered 80.

81.     Denied in the form and manner alleged.

82.     Denied.

83.     State Street says that the percentages set forth in paragraph numbered 83 come from written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 83 in the form and manner alleged.

84.     Denied in the form and manner alleged.

85.     State Street denies the allegations of paragraph numbered 85 as setting forth broad generalizations that are in certain instances untrue as to timing and in others are out of context.

86.     Denied.

87.     Denied in the form and manner alleged.

88.     Denied.

89.     State Street says that the quoted language in paragraph numbered 89 comes from a written document that speak for itself, and to the extent that the written document differs from the allegations of paragraph numbered 89, State Street denies the same, and otherwise denies the remaining allegations of paragraph numbered 89.

90.     State Street says that the letter referenced in paragraph numbered 90 is a written document and therefore speaks for itself, and to the extent the written document differs from the allegations of paragraph numbered 90, State Street denies the same, and otherwise denies the remaining allegations of paragraph numbered 90.

91.     Denied in the form and manner alleged.

92.     State Street admits the second sentence of paragraph numbered 92, but says that those allegations are based upon a selective timeframe and that, for example, the Limited Duration Bond Fund increased in value after August 21, 2007, further says that the allegations of

the fourth sentence of paragraph numbered 92 do not specify a timeframe, and otherwise denies the remaining allegations of paragraph numbered 92.

93.    Denied.

94.    Denied.

95.    Denied.

96-103. The allegations in paragraphs numbered 96 through 103 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

104.    The allegations in paragraph numbered 104 constitute characterizations of plaintiffs' claims that require no response, but to the extent a response is required, denied.

105-108.  The allegations in paragraphs numbered 105 through 108 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

109.    State Street incorporates by reference its answers to each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110-117.  The allegations in paragraphs numbered 110 through 117 constitute legal conclusions to which no answers are required, but to the extent answers are required, denied.

118.  The allegations in paragraph numbered 118 constitute legal conclusions to which no answer is required, but to the extent an answer is required, denied.

119.  Denied.

120.  Denied.

121-125.  The allegations in paragraphs numbered 121 through 125 constitute legal conclusions or characterizations of plaintiffs' claims to which no answers are required, but to the extent answers are required, denied.

State Street denies each and every allegation of the Complaint to which it has not specifically admitted or otherwise responded herein.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by breaches of fiduciary duty by certain plaintiffs.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, laches, and estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands and *in pari delicto*.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred insofar as they have named the wrong party – State Street Global Advisors, Inc. – as a defendant in this action.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs are not as a matter of law entitled to the forms of relief they seek in this action.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because State Street did not breach any duties or obligations it allegedly owed under ERISA or any other applicable law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they suffered no damages as a result of State Street's alleged breaches of fiduciary duty.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they and the putative class members have failed, refused and/or neglected to mitigate or avoid damages they allegedly incurred as a result of State Street's alleged breaches of fiduciary duty.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because State Street is not liable for the alleged losses of some or all of the putative class members pursuant to ERISA § 404(c).

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because State Street has not received any benefit or enrichment as a result of the alleged breaches.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because State Street has complied with all disclosure requirements under all applicable laws.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they did not rely upon State Street's alleged failures to disclose or alleged misrepresentations.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that plaintiffs challenge discretionary decisions made by State Street, their claims are barred, in whole or in part, because State Street committed no abuse of discretion, and its challenged conduct and activities were lawful and appropriate as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent that the Complaint purports to state claims on behalf of a class, plaintiffs' claims are barred, in whole or in part, because this action may not properly be maintained as a class action.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent that the Complaint purports to state claims on behalf of a class, plaintiffs' claims are barred, in whole or in part, because some or all of the putative class members lack standing to maintain this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent plaintiffs' allegations are based on settlements and settlement negotiations with other persons or entities, or are based on any reserve(s) that State Street may have established, then those allegations are barred by, in the case of settlement negotiations, Federal Rule of Evidence 408, and otherwise by applicable rules of evidence and public policy barring the admission into evidence of such allegations.

State Street reserves the right to assert additional affirmative defenses.

## AMENDED COUNTERCLAIM

State Street incorporates paragraphs 1 through 125 above as if fully set forth herein. Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, Defendant and Counterclaimant State Street Bank and Trust Company ("State Street"), for its claims against Plaintiffs and Counterclaim Defendants Alan Kober, Warren Cohen, John L. Patenaude, Margaret Callan, Alan Gordon, and Glenn Kingsbury and each of the as yet unidentified fiduciaries of the ERISA plans that comprise the purported class ("Does 1-100") (together, the "Trustee Counterclaim Defendants" or the "Counterclaim Defendants"),[1] hereby alleges as follows:

### SUMMARY

1.      This counterclaim arises out of the Trustee Counterclaim Defendants' breach of their fiduciary duties under ERISA.  As fiduciaries, the Trustee Counterclaim Defendants bore the responsibility for making the investment decisions for their respective ERISA plans (the "Plans"), and were obligated to select investment vehicles appropriate for the specific investment objectives, risk tolerances, and overall portfolio characteristics unique to their particular Plans.

2.      Each Counterclaim Defendant chose to invest and to continue investing part of their Plans' assets in actively managed bond funds managed by State Street (the "Plan Funds").

3.      At no time did State Street bear any responsibility for making investment decisions for the Plans, nor was any Trustee Counterclaim Defendant or Plan required at any time to invest in or continue investing in State Street's funds.

4.      In the exercise of its duties, State Street provided the Trustee Counterclaim Defendants with information about the active investment strategies being pursued by the Plan Funds, including *inter alia* the Funds' investments in and exposure to mortgage-related

---

[1] The fiduciaries of ERISA Plans whose assets remain invested in funds managed by State Street are referred to herein as "Current Trustee Counterclaim Defendants."

securities.  The Trustee Counterclaim Defendants were required, at a minimum, to evaluate this information and use it in deciding whether to invest any of their Plans' assets in the Plan Funds and, if so, how much; to monitor their investments in the Plan Funds; and to take action in the event they determined that those Funds were no longer suitable and appropriate for their Plans' specific investment objectives.  State Street had no authority to change or control the Plans' investments.

5.      Throughout the relevant period, the Trustee Counterclaim Defendants breached their duties to their Plans by investing and continuing to invest in State Street's actively managed bond funds, which, according to the Counterclaim Defendants – albeit after the fact – apparently were not suitable for their respective Plans' investment objectives or levels of risk tolerance. The Trustee Counterclaim Defendants also breached their duties to the Plans by failing to monitor the Plans' investments, evaluate the information State Street provided about the actively managed bond funds, or analyze the continued prudence and suitability of the Plan Funds for their particular Plans' portfolios.

6.      As a result of these breaches of fiduciary duty, the Plans invested in and continued to invest in the State Street bond funds well into the third quarter of 2007 without duly considering or informing their participants and beneficiaries of the Plan Funds' risks.

7.      The Trustee Counterclaim Defendants' fiduciary failings led directly to the investment losses experienced by the Plans in 2007, losses for which State Street was not substantially more responsible than the Counterclaim Defendants.  To the contrary, as fiduciaries with the responsibility for prudently investing Plan assets, the Counterclaim Defendants bear substantially more responsibility than State Street for the investment losses resulting from investments in the Plan Funds.  Under ERISA, the Counterclaim Defendants are therefore

obligated to contribute to or indemnify State Street for any damages awarded to the Plans arising from these investment losses.

## PARTIES

8.      Counterclaim Plaintiff State Street Bank and Trust Company ("SSBT") is a Massachusetts trust company and wholly owned subsidiary of State Street Corporation with its principal place of business in Boston, Massachusetts.  State Street Global Advisors ("SSgA") is the investment management division of SSBT.  SSBT and its division SSgA are referred to herein as "State Street."

9.      Counterclaim Defendant Alan Kober is Vice President of the Merrimack Mutual Fire Insurance Company ("Merrimack"), one of the Andover Companies.  At all material times, Mr. Kober was a trustee of the Andover Companies Employees' Savings and Profit Sharing Plan (the "Andover Plan"), an ERISA plan offered by Merrimack.  The Andover Plan invested in a commingled fund managed by State Street named the Intermediate Bond Fund from as early as 2001 until 2007.  During the relevant period, Mr. Kober was responsible for making and was involved in decisions about the investments to select and maintain for the Andover Plan.  As such, at all material times, Mr. Kober was an ERISA fiduciary of the Andover Plan.

10.     Counterclaim Defendant Warren Cohen is Executive Vice President and Chief Financial Officer of Unisystems, Inc. ("Unisystems").  At all material times, Mr. Cohen was a trustee of the Unisystems, Inc. Employees' Profit Sharing Plan (the "Unisystems Plan"), an ERISA plan offered by Unisystems.  The Unisystems Plan invested in the Intermediate Bond Fund from 2003 until 2007.  During the relevant period, Mr. Cohen was responsible for determining the investments to select and maintain for the Unisystems Plan.  As such, at all relevant times, Mr. Cohen was an ERISA fiduciary of the Unisystems Plan.

11.     Counterclaim Defendant John L. Patenaude is Vice President of Finance, Chief Financial Officer, and Treasurer of the Nashua Corporation ("Nashua").  Mr. Patenaude was at all material times a member of the Nashua Corporation Pension Plan Committee (the "Nashua Committee"), which oversees the Nashua Corporation Retirement Plan for Salaried Employees and the Nashua Corporation Hourly Employees Retirement Plan (together, the "Nashua Plan"), both of which are ERISA plans offered by Nashua.  The Nashua Plan invested in a State Street commingled fund referred to herein as the Bond Market Fund from 1999 to 2007.  During the relevant period, Mr. Patenaude was involved in decisions concerning the investments to select and maintain for the Nashua Plan.  As such, at all material times, Mr. Patenaude was an ERISA fiduciary of the Nashua Plan.

12.     Counterclaim Defendant Margaret M. Callan is Corporate Controller and Chief Accounting Officer of Nashua, and at all material times, was also a member of the Nashua Committee.  During the relevant period, Ms. Callan was involved in decisions concerning the investments to select and maintain for the Nashua Plan.  As such, at all material times, Ms. Callan was a fiduciary of the Nashua Plan.

13.     Counterclaim Defendant Alan Gordon is National Executive Director of the American Guild of Musical Artists ("AGMA").  At all material times, Mr. Gordon was a trustee of the AGMA Retirement Plan and the AGMA Health Fund (together, the "AGMA Plan"), which are ERISA plans offered by AGMA.  The AGMA Plan invested in the Intermediate Bond Fund and a State Street commingled fund referred to herein as the Intermediate Bond CTF from 2003 until 2007.  During the relevant period, Mr. Gordon was involved in decisions concerning the investments to select and maintain for the AGMA Plan.  As such and at all material times, Mr. Gordon was an ERISA fiduciary of the AGMA Plan.

14.     Counterclaim Defendant Glenn Kingsbury is Manager of the Boston Chapter of the National Electrical Contractors Association.  Mr. Kingsbury is a Trustee of the New England Electrical Workers Benefit Fund (the "Electrical Workers Plan"), an ERISA plan.  The Electrical Workers Plan invested in a State Street commingled fund referred to herein as the Short Term Bond CTF from 2003 to 2007.  During the relevant period, Mr. Kingsbury was involved in decisions concerning the investments to select and maintain for the Electrical Workers Plan.  As such and at all material times, Mr. Kingsbury was an ERISA fiduciary of the Electrical Workers Plan.

15.     Counterclaim Defendants Does 1-100 are fiduciaries of the other ERISA plans that comprise the putative class.

## JURISDICTION

16.     This Court has jurisdiction over State Street's counterclaims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the counterclaims arise under ERISA and form part of the same case or controversy asserted by the Trustee Counterclaim Defendants in the Complaint.

## THE COUNTERCLAIM DEFENDANTS' FIDUCIARY DUTIES UNDER ERISA AND OBLIGATION TO INVEST THE PLANS' ASSETS PRUDENTLY

17.     At all relevant times, the Trustee Counterclaim Defendants were fiduciaries of the Plans within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

18.     As Trustees, each of the Counterclaim Defendants (and their co-trustees) bore the responsibility for deciding how to invest Plan assets.  All decisions concerning investment of Plan assets were made solely by the Trustees, who alone were empowered under ERISA to make investment decisions on behalf of their respective Plans.

19.     As fiduciaries, the Trustee Counterclaim Defendants owed the Plans the highest standards of fiduciary responsibility and loyalty, including a duty of prudence, care and diligence with respect to the investment, evaluation and monitoring of the Plans' assets.

20.     As the Second Circuit has recognized, the duties of an ERISA trustee are "the highest known to law." *See Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). Though a trustee may seek independent advice from outside experts, his duty to engage in independent inquiry into the prudence of investments remains undiminished.

21.     At no time did State Street have any authority to decide which investment vehicles were appropriate or suitable for any of the Plans.  On the contrary, each of the Counterclaim Defendants, as a plan trustee or fiduciary, was empowered to choose from among investment managers and investment products; none was required to invest any Plan assets with State Street, or to invest in any particular State Street fund, or to maintain any investment in a given fund if and when the Trustee determined it was no longer a prudent or suitable choice for the Plan's specific portfolio.  The Trustee Counterclaim Defendants had the power and duty to determine on an ongoing basis which investment managers and which investment vehicles were most appropriate and suitable for their respective Plans, and could have terminated their investments in the Plan Funds at any time.  The Trustees had the sole responsibility to invest their Plans' assets prudently based on the unique investment objectives, characteristics, risk tolerance, and overall portfolio of their Plans.

22.     At a minimum, Section 404 of ERISA, 29 U.S.C. § 1104, required the Trustee Counterclaim Defendants to understand the nature of the investment vehicles in which they placed Plan assets, to evaluate information that they received concerning such investment

vehicles, and to take action when appropriate to ensure that their Plans' assets were invested in vehicles suitable and prudent for the individualized characteristics and needs of their Plans.

23.    A number of the Trustee Counterclaim Defendants in fact engaged third-party consultants and investment advisors to assist them in carrying out these duties, underscoring that decision-making on behalf of the Plans was a duty of the Trustees, not of State Street.

**THE TRUSTEE COUNTERCLAIM DEFENDANTS'**
**BREACH OF THEIR FIDUCIARY DUTIES**

24.    The Trustee Counterclaim Defendants assert in their Consolidated Amended Complaint that their investments in the Plan Funds were imprudent and inconsistent with their Plans' investment objectives and risk tolerances.

25.    The Complaint also indicates that the Trustee Counterclaim Defendants did not view actively managed bond funds invested in asset-backed securities as suitable or prudent investments for their Plans.  Further, the Complaint indicates that a number of the Counterclaim Defendants believed that the Plan Funds were essentially index funds, and that they failed to educate themselves about important components of the Funds' investment strategies, such as exposure to mortgage-related securities and derivative instruments.

26.    Thus, the Trustee Counterclaim Defendants allege that State Street represented that the Plan Funds were essentially index funds, complain that Funds' underperformed their benchmarks, and suggest that the Funds' investment profiles should have matched the profiles of their benchmark indices.  Compl. ¶¶ 1, 4, 76-78.

27.    The Trustee Counterclaim Defendants further assert that State Street breached its fiduciary duty by investing the Plan Funds in investment vehicles such as asset-backed and other mortgage-related securities, as well as derivative instruments such as futures, options, and swaps,

which the Counterclaim Defendants contend were "improper[]" and "contrary" to State Street's representations.  *E.g.*, Compl. ¶¶ 1-2.

28.     These allegations sharply underscore the Counterclaim Defendants' own fiduciary failings.

29.     In fact and as set forth below, State Street disclosed material information concerning the Plan Funds and their active investment strategies to the Trustee Counterclaim Defendants and the investment advisors who received the information on their behalf.  Given the range and extent of State Street's disclosures concerning the Plan Funds, the Trustee Counterclaim Defendants should have been fully aware of the Funds' investment strategies and any attendant risks throughout the relevant period.  Their selection of investment products that were apparently not suitable for their Plans, and their failure to meaningfully evaluate whether the Plan Funds remained prudent investments for the Plans led directly to their Plans' losses and constituted an inexcusable breach of fiduciary duty.

I.     ***The Counterclaim Defendants decided to invest their Plans' assets in Plan Funds, which they knew or should have known were exposed to subprime securities.***

30.     The Trustee Counterclaim Defendants received communications from State Street that informed them of the Plan Funds' exposure to mortgage-related investments.  For example:

       a.     One Counterclaim Defendant received a presentation from State Street on or about October 19, 2006, which reported that as of September 30, 2006, the Intermediate Bond Fund had a 46.2% allocation to asset-backed securities, which typically consisted primarily of debt obligations backed by residential mortgages and home equity loans, compared to the Fund's benchmark, which consisted only of "US treasury, corporate, agency and supranational securities";

- 25 -

b.     Similarly, State Street reported to other Counterclaim Defendants that between January and June 2007, the Bond Market Fund's allocation to asset-backed securities had increased from 18.88% to 37.99%, as compared to the benchmark's allocation, which had decreased from 1.19% to 0.98%.

31.     Similarly, State Street's Fact Sheets – which were frequently distributed to clients and consultants and were always available upon request – also reflected material exposure to mortgage-related securities throughout the relevant period.  For example:

a.     The March 2006, September 2006, and March 2007 Fact Sheets for the Intermediate Bond strategy – in which, for example, the Unisystems, Andover, and AGMA Plans invested – showed allocations of 19.71%, 54.25%, and 23.79%, respectively, in asset-backed securities.

b.     Fact Sheets for the same periods for the Bond Market Fund – in which, for example, the Nashua Plan invested – reflected 19.81%, 24.37%, and 24.33% exposure, respectively, to asset-backed securities, and 33.68%, 25.48% and 45.45% exposure to mortgage-backed securities;

c.     Similarly, Fact Sheets for the Short Term Bond strategy, in which, for example, the Electrical Workers Plan invested, indicated an asset-backed securities allocation of 44.85% in December 2006 and 40.95% in March 2007.

32.     The Trustee Counterclaim Defendants and their consultants also received material information about the Plan Funds' performance, which clearly reflected underperformance in the Plan Funds as compared to their relevant benchmarks prior to the summer of 2007.

33.     For example, State Street reported that the Intermediate Bond Fund – in which the Unisystems, Andover, and AGMA Plans invested – had underperformed its benchmark by over 60 basis points during the first quarter of 2007.

34.     Similarly, State Street reported that the Bond Market Fund – in which the Nashua Plan invested – had underperformed its benchmark by over 50 bps during the same period, while the Short Term Bond CTF – in which the Electrical Workers Plan invested – had underperformed its benchmark by over 40 basis points during the same period.

35.     State Street also informed the Trustee Counterclaim Defendants and their consultants before the summer of 2007 that the source of underperformance in the Plan Funds resulted from exposure to the "subprime mortgage market."  For example:

a.      In April 2007, State Street sent one of the Trustee Counterclaim Defendants a letter discussing the "situation in the subprime sector and its effects on our active fixed income strategies."  The letter stated that "credit exposure to the investment grade, secured-debt markets, specifically the sub-prime home equity market" was an "alpha driver[]" for its fixed income funds and noted that the Intermediate Bond strategies in which the trustee's plan was invested had underperformed their benchmarks during the first quarter of 2007 by over 60 basis points.  The letter further emphasized that State Street remained "confident in the underlying fundamentals" of housing-related securities.

b.      Also in April 2007, State Street sent a similar notification to the consultant for one of the Trustee Counterclaim Defendants.  The letter included similar disclosures concerning underperformance in the Short Term Bond

CTF, and added that the Fund in particular had been affected by "turmoil in the subprime sector," which caused it to underperform its benchmark by 47 basis points for the first quarter of 2007.

c.    Similarly, in early June 2007, State Street sent commentary discussing State Street's "active fixed income strategies and the subprime sector" to the investment advisor for another Counterclaim Defendant.  The commentary explained that "one of the alpha drivers" for State Street's active fixed income strategies had been exposure to "the sub-prime home equity market" and discussed illiquidity in the asset-backed securities market.

36.    Indeed, State Street posted information concerning its bond funds' underperformance and the reasons underlying that underperformance on its website, including the Client's Corner website platform created specifically for the use of clients like the Trustee Counterclaim Defendants.  For example, website commentary posted on Client's Corner in the spring of 2007 expressly stated that underperformance of the Bond Market Fund during the first quarter of 2007 "reflect[ed] the impact of the turmoil that has occurred in the sub-prime mortgage industry" and attributed that underperformance to "residential mortgage exposure."  At the same time, State Street's website stated that it had "increased our AAA and AA residential mortgage exposure" and that "[l]ooking forward, we will continue to hold our asset-backed securities."

37.    Such disclosures clearly reflected that the Plan Funds were actively managed, were underperforming, and were materially invested in mortgage-related securities, including so-

called "subprime" assets, and further reflected State Street's continued commitment to investing in such securities.

38.     During the relevant period, in the exercise of their fiduciary duties, a number of the Trustee Counterclaim Defendants consulted with their external investment consultants or advisors to aid them in making investment decisions for their Plans.  In its role as investment manager, State Street also provided reporting and commentary to these consultants or advisors in their capacity as agents and representatives of the Plans.  The consultants thus served as yet another source of information for the Trustee Counterclaim Defendants about their investments in the Plan Funds.

39.     These consultants had access to State Street's online "Consultant's Corner" platform, which – like Client's Corner – provided consultants with access to a full range of performance and transaction data, investment commentary, and fund strategy information.  In 2007, for example, representatives from one consulting firm logged in to Consultant's Corner over 60 times, presumably for the purpose of obtaining fund information to analyze and provide to its clients.

40.     State Street also conveyed information about the Plan Funds' investment strategies directly to the Counterclaim Defendants' consultants.  For example, as far back as April 2004, State Street made a presentation to the consultant for one Counterclaim Defendant, describing State Street's use of structured products, including asset-backed and mortgage-backed securities, to drive excess return in its core active fixed income strategies, such as the Bond Market Fund.

41.     As ERISA fiduciaries responsible for making prudent and informed investment decisions on behalf of their Plans, the Trustee Counterclaim Defendants were required to

evaluate information that they received about the Plan Funds' investment strategies – including information and advice received from their external consultants – to determine whether the Plan Funds were and/or continued to be prudent investments for their specific Plans, and to make investment decisions accordingly.

42.     To the extent that actively managed bond funds with exposure to mortgage-related securities were imprudent, inappropriate or unsuitable investments for all or part of their Plans' portfolios, the Trustee Counterclaim Defendants must bear primary responsibility for investing and continuing to invest their Plans' assets in the Plan Funds.

## II.     *The Trustee Counterclaim Defendants decided to invest their Plans' assets in the Plan Funds, which were expressly authorized to invest in vehicles that the Counterclaim Defendants now allege were "improper."*

43.     Rather than being "improper[]," as the Complaint alleges, Compl. ¶ 2, State Street's investment strategies were at all relevant times expressly permitted by the instruments governing the Plan Funds.

44.     For example, at all relevant times, the Fourth Amended and Restated Declaration of Trust for Investment Funds for Tax Exempt Retirement Plans, effective October 1, 2005 (the "Tax Exempt Declaration"), governed the Intermediate Bond Fund and the Bond Market Fund. Article 6.1(a) of the Tax Exempt Declaration expressly authorized concentration of Fund investments "without regard to any proportion any such property or interest may bear to the entire amount of  . . . any Fund," permitted State Street to invest in "futures contracts and options thereon of any type," "stock options and option contracts of any type," "mortgage-backed securities," and "asset-backed securities," and allowed State Street "to borrow money, with or without security, for a Fund."

45.     Similarly, the First Amended and Restated Declaration of Trust for State Street's Global Managed Common Trust Funds (the "CTF Declaration") governed the Intermediate Bond CTF and the Short Term Bond CTF.  Article 7, Section 3 of the CTF Declaration expressly authorized State Street to "invest and reinvest any assets at any time forming part of a Fund in any securities and other instruments," and further specified that State Street's "determination . . . as to whether or not any securities and other instruments are of a type which may be purchased or held by the Fund shall be conclusive."

46.     The Fund Declarations that governed each Plan Fund also authorized a wide range of permissible investments.  Paragraph 4 of each Declaration expressly permitted investments in "mortgage-backed" and "asset-backed" securities, as well as "derivative securities including, but not limited to, options, futures and swaps."

47.     The governing investment guidelines for the Plan Funds thus expressly permitted State Street to invest in the types and amounts of securities that the Trustee Counterclaim Defendants now allege were "improper."  To the extent that such securities in type or concentration were inappropriate or unsuitable for their Plans' portfolios, the Trustee Counterclaim Defendants must bear primary responsibility for investing their Plans' assets in the Plan Funds.  In no event is State Street substantially more at fault for investment losses arising from investments in such securities than are the Counterclaim Defendants.

### THE TRUSTEE COUNTERCLAIM DEFENDANTS' FIDUCIARY BREACHES LED DIRECTLY TO THEIR PLANS' LOSSES

48.     By the spring of 2007, the Counterclaim Defendants knew or should have been aware that the Plan Funds had material exposure to the troubled residential mortgage market and that such exposure had been a source of underperformance in the Funds.

49.     Moreover, by the spring of 2007, the Counterclaim Defendants knew or should have been aware that State Street remained committed to investing in mortgage-related securities and intended to increase or at least maintain its overall exposure to such investments.

50.     The Trustee Counterclaim Defendants apparently either evaluated this information and determined nonetheless to maintain their Plans' investments in the Plan Funds, or else failed to assess such information and/or the continued suitability and prudence of the Plan Funds as investment vehicles for their Plans.

51.     Several Trustee Counterclaim Defendants even failed to act when State Street provided explicit statements about underperformance in the Plan Funds due to subprime exposure in late July 2007 and early August 2007.  Again, these Counterclaim Defendants took no action for, in many instances, a period of weeks – apparently either because they determined that the Plan Funds remained prudent investments for their Plans, or because they failed to review the information State Street had provided.  Their conduct resulted in significant additional losses to their plans in the third quarter of 2007.  For example:

a.      On July 31, 2007, a State Street representative communicated with one of the Trustee Counterclaim Defendants, informed him about the underperformance of the Intermediate Bond Fund as a result of the Fund's exposure to mortgage-related securities, and recommended that the Plan move to a passive investment option as soon as possible.  The Trustee Counterclaim Defendant failed to take any action or to respond to State Street's follow-up communications for a period of at least two weeks, with the Plan incurring the majority of its losses during this period.

b.       Similarly, in early August 2007, another Trustee Counterclaim Defendant was directly informed about underperformance in the Intermediate Bond Fund in which his Plan was invested, as well as its exposure to mortgage-related securities.  The Counterclaim Defendant failed to take any action for several weeks, incurring approximately 75% of its third quarter losses during this period of inaction.

c.       State Street also communicated with the consultant for a Trustee Counterclaim Defendant on August 2, 2007, explaining that the Plan's investment in the Short Term Bond CTF had been significantly impacted by the subprime market turmoil.  The Counterclaim Defendant responsible for this Plan, however, did not decide to withdraw from the Plan Fund until September 14, 2007, which delay resulted in approximately 75% of the Plan's third quarter losses.

52.     The Trustee Counterclaim Defendants' breaches of fiduciary duty as set forth above make them liable for contribution and/or indemnification to State Street for any damages awarded to the Plans and Plan members under the allegations of the Complaint.

**FIRST COUNTERCLAIM**
**(Claim for Contribution and/or Indemnification**
**Against All Trustee Counterclaim Defendants)**

53.     State Street hereby repeats and realleges as if fully set forth herein each of the allegations contained in paragraphs numbered 1 through 52.

54.     State Street denies the material allegations of the Complaint.  Nevertheless, if there is any finding that State Street is liable to the Plans, or any award of restitution by State Street to the Plans for any of their alleged damages, then, under the facts alleged herein, State

Street was not substantially more at fault than the Trustee Counterclaim Defendants.  To the contrary, the Trustee Counterclaim Defendants' violations of fiduciary duty make them substantially more at fault than State Street for any harm to the Plans.

55.     Specifically, at all relevant times the Trustee Counterclaim Defendants were fiduciaries of the Plans under ERISA.

56.     As fiduciaries, the Trustee Counterclaim Defendants bore the responsibility for making informed and prudent decisions regarding the investment of Plan assets.  The Counterclaim Defendants were required to evaluate information concerning the Plans' investments, including the Plan Funds, and to determine whether investment or continued investment of their Plans' assets in the Plan Funds was prudent, appropriate, and suitable in light of the characteristics of their specific Plans and their investment objectives.

57.     The Trustee Counterclaim Defendants' decisions to invest in the Plan Funds were not prudent, suitable, or appropriate in light of their respective Plans' investment objectives and levels of risk tolerance, in breach of their fiduciary obligations.  The Trustee Counterclaim Defendants also failed to evaluate information that State Street provided concerning the Plan Funds' investment strategies, failed to understand the nature of the Plan Funds, and failed to take action when appropriate based upon this information.  As a direct result, the Plans sustained investment losses in the Plan Funds for which State Street is not substantially more at fault, but rather for which the Counterclaim Defendants are primarily responsible.

58.     The Trustee Counterclaim Defendants are therefore liable to State Street for complete indemnification for any liability, including fees and costs, suffered by State Street in connection with the claims asserted in the Complaint.

59.     Even if State Street and the Trustee Counterclaim Defendants are jointly liable by virtue of their status as fiduciaries within the meaning of ERISA, both State Street and the Trustee Counterclaim Defendants are obligated to contribute to the payment or repayment of any damages or restitution according to their respective shares of fault, and the Trustee Counterclaim Defendants were substantially more at fault than State Street.  Accordingly, State Street will suffer harm to the extent it is required to pay more than its proportionate share of liability on the claims asserted in the Complaint.

60.     The Trustee Counterclaim Defendants are liable to State Street for contribution and/or indemnification in the amount of any payment by State Street in excess of its share of liability, including fees and costs, on the claims asserted in the Complaint.

## SECOND COUNTERCLAIM
### (Claim for Breach of Fiduciary Duty Against Certain Trustee Counterclaim Defendants)

61.     State Street hereby repeats and realleges as if fully set forth herein each of the allegations contained in paragraphs numbered 1 through 60.

62.     State Street is an ERISA fiduciary to those Plans whose assets remain invested in funds managed by State Street.

63.     At all relevant times, the Trustee Counterclaim Defendants for such Plans – referred to herein as the Current Trustee Counterclaim Defendants – were fiduciaries under ERISA.

64.     As fiduciaries, the Current Trustee Counterclaim Defendants bore the responsibility for making informed and prudent decisions regarding the investment of Plan assets, which they breached as set forth above.

65.     Pursuant to ERISA §§ 409, 502(a)(2) and 502(a)(3), the Current Trustee Counterclaim Defendants are therefore liable to restore the losses to the Plans caused by their

breaches of fiduciary duty and to provide other equitable relief as the Court deems appropriate under ERISA.

WHEREFORE, State Street respectfully requests the following relief:

(i)    A declaration that each of the Trustee Counterclaim Defendants breached their respective fiduciary duties under ERISA to the Plans;

(ii)    A declaration that each of the Trustee Counterclaim Defendants is not entitled to the protections of ERISA § 404(c);

(iii)    A declaration that any injuries or damages sustained by the Plans were proximately caused, in whole or in part, by the acts or omissions of the Trustee Counterclaim Defendants;

(iv)    A declaration (a) that the Trustee Counterclaim Defendants are obligated to completely indemnify State Street for any judgment or award of damages or restitution resulting from the Complaint, or (b) of the amount that the Trustee Counterclaim Defendants are obligated to contribute if State Street is compelled to pay any sum as a result of any judgment or award of damages or restitution resulting from the Complaint, and payment of such amounts;

(v)    An order compelling the Current Trustee Counterclaim Defendants to restore to the Plans all losses resulting from the Current Trustee Counterclaim Defendants' breaches of fiduciary duties, including losses to the Plans resulting from imprudent investment of Plan assets in the Plan Funds, and restoration of all profits that the Plans would have had if the Current Trustee Counterclaim Defendants had fulfilled their fiduciary obligations;

(vi)    Reasonable attorneys' fees and costs; and

(vii)    Such other and further relief as the Court deems just and proper.

Dated: December 22, 2008               Respectfully submitted,

ROPES & GRAY LLP

By: /s/ Harvey J. Wolkoff
Harvey J. Wolkoff
Robert A. Skinner
Olivia S. Choe
One International Place
Boston, MA 02110
Tel: 617-951-7000
Fax: 617-951-7050
Harvey.Wolkoff@ropesgray.com
Robert.Skinner@ropesgray.com
Olivia.Choe@ropesgray.com

*Attorneys for Defendant / Counterplaintiff
State Street Bank and Trust Company and
Defendant State Street Global Advisors, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2008, I caused a true and correct copy of the foregoing document to be served upon all registered users through the Court's Electronic Case Filing system and upon the following counsel of record by e-mail.


Edwin G. Schallert
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

Derek W. Loeser
Laura R. Gerber
Karin W. Swope
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

William C. Fredericks
Jonathan Harris
John M. Diaz
Jerald D. Bien-Willner
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019

George M. Gowen III
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103

Douglas K. Spaulding
REED SMITH LLP
1301 K Street NW
Suite 1100 - East Tower
Washington, DC 20005

John R. Nelson
LOCKE LORD BISSELL & LIDDELL LLP
100 Congress, Suite 300
Austin, TX 78701

Robert R. Burford
Caren S. Sweetland
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

Jeffrey C. Block
Patrick T. Egan
Kristen D. Tremble
BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO
One Liberty Square
Boston, MA 02109

Richard B. Walsh, Jr.
LEWIS, RICE, FINGERSH LC
500 N. Broadway, Suite 2000
St. Louis, MO 63102


/s/ Olivia S. Choe
Olivia S. Choe