UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE STATE STREET BANK AND
TRUST CO. FIXED INCOME FUNDS          MDL No. 1945
INVESTMENT LITIGATION

_____

IN RE STATE STREET BANK AND
TRUST CO. ERISA LITIGATION

This document relates to:                     No. 07 Civ. 8488 (RJH)

07 Civ. 9319
07 Civ. 9687
08 Civ. 0265

_____

**STATE STREET'S OPPOSITION TO COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS STATE STREET'S COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................................1

II.  BACKGROUND ..........................................................................................................2

III. STATE STREET'S COUNTERCLAIMS ......................................................................4

    A.   THE COUNTERCLAIM DEFENDANTS WERE RESPONSIBLE FOR
          SELECTING STATE STREET FUNDS ....................................................................5

    B.   STATE STREET WAS AUTHORIZED TO INVEST FUND ASSETS IN
          MORTGAGE-RELATED SECURITIES, AND THE PLAN TRUSTEES
          KNEW OR SHOULD HAVE KNOWN OF THE FUNDS' EXPOSURE TO THIS
          SECTOR ....................................................................................................................6

    C.   PLAINTIFFS CHOSE TO REMAIN IN THE STATE STREET FUNDS DESPITE
          DISCLOSURES REGARDING UNDERPERFORMANCE ATTRIBUTABLE TO
          CONCENTRATED POSITIONS IN ASSET-BACKED SECURITIES ....................8

IV.  ARGUMENT ...............................................................................................................9

    A.   STATE STREET'S FIRST COUNTERCLAIM STATES A VALID CLAIM FOR
          CONTRIBUTION OR INDEMNIFICATION UNDER ESTABLISHED LAW AND
          IS BASED UPON DETAILED FACTUAL ALLEGATIONS OF THE PLAN
          TRUSTEES' BREACH OF THEIR INDEPENDENT FIDUCIARY DUTIES ........10

          1.   The "Substantially More at Fault" Defense Does Not Bar the First
               Counterclaim as a Matter of Law ..................................................................11

          2.   State Street's Counterclaim Is Not A "Reiteration" Of Its Defenses Against
               Plaintiffs' Claims In The Complaint. ............................................................17

    B.   STATE STREET'S SECOND COUNTERCLAIM STATES A VALID CLAIM
          BASED ON DETAILED FACTUAL ALLEGATIONS, AND THE PLAN
          TRUSTEES CANNOT DEFEAT THE COUNTERCLAIM AT THE PLEADING
          STAGE BY RAISING FACTUAL DISPUTES ......................................................19

          1.   The Second Counterclaim Properly Pleads That The Plan Trustees Breached
               their Fiduciary Duties to Plan Participants in their Initial Selection Of
               Investment Options ........................................................................................19

          2.   The Plan Trustees' Breach Continued After the Plans' Investments ..............21

CONCLUSION ............................................................................................................................24

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arista Records, LLC v. Usenet.com, Inc.*,
   No. 07 Civ. 8822(HB), 2008 WL 4974823 ...........................................................18

*Boykin v. KeyCorp*,
   521 F.3d 202 (2d Cir. 2008).................................................................................10

*Chambers v. Time Warner, Inc.*
   282 F.3d 147 (2d Cir. 2002)..................................................................................9

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*,
   939 F.2d 12 (2d Cir. 1991).............................................................................11, 18

*Erickson v. Pardus*,
   551 U.S. 89, 127 S. Ct. 2197 (2007).....................................................................10

*Glennie v. Abitibi-Price Corp.*,
   912 F. Supp. 993 (W.D. Mich. 1996) ....................................................................21

*Haddock v. Nationwide Fin. Servs. Inc.*,
   570 F. Supp. 2d 355 (D. Conn. 2008)...............................................................16, 19

*Harley v. Minn. Mining & Mfg. Co.*,
   42 F. Supp. 2d 898 (D. Minn. 1999).....................................................................23

*Harris Trust & Sav. Banks v. Salomon Bros., Inc.*,
   832 F. Supp. 1169 (N.D. Ill. 1993) ..................................................12, 15, 16, 22

*Harris Trust & Savings Bank v. John Hancock Mut. Life Ins. Co.*,
   122 F. Supp. 2d 444 (S.D.N.Y. 2000)...................................................................16

*In re Unisys Sav. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996)..............................................................................12, 15

*Murphy v. Traveler's Ins. Co.*,
   No. 84 C 502, 1985 WL 1469 (N.D. Ill. May 24, 1985) ........................................18

*Neitzke v. Williams*,
   490 U.S. 319 (1989)............................................................................................9

*Oneida Indian Nation of N.Y. v. New York*,
   194 F. Supp. 2d 104 (N.D.N.Y. 2002)..................................................................18

*Pressman-Gutman Co. v. First Union Nat'l Bank*,
 No. Civ.A. 02-8442, 2004 WL 1091048 (E.D. Pa. May 14, 2004) ........................................15

*Rubin v. Valicenti Advisory Servs., Inc.*,
 326 F. Supp. 2d 427 (W.D.N.Y. 2004) ...................................................................................22

*Smith v. Local 819 I.B.T. Pension Plan*,
 291 F.3d 236 (2d Cir. 2002)..................................................................................................11

*Sunderlin v. First Reliance Standard Life Ins. Co.*,
 235 F. Supp. 2d 222 (W.D.N.Y. 2002) ..................................................................................16

*Whitfield v. Cohen*,
 682 F. Supp. 188 (S.D.N.Y. 1988).........................................................................................22

## STATUTES

29 U.S.C. § 1105(d)(2) ...........................................................................................................22

29 U.S.C. § 1109 ....................................................................................................................19

29 U.S.C. § 1132 ....................................................................................................................19

## OTHER AUTHORITIES

Restatement (Second) of Trusts, § 258 ...................................................................................14

Restatement (Second) of Trusts, § 258, illus. (4) ...................................................................14

Fed. R. Civ. P. 8.....................................................................................................................10

Fed. R. Civ. P. 12(b)(6)..................................................................................................... passim

Fed. R. Civ. P. 13(a) ..............................................................................................................18

Frank J. Fabozzi, *The Handbook of Mortgage-Backed Securities* (6th ed. 2006) .........................3

Defendant and Counterclaimant State Street Bank and Trust Company ("State Street")

respectfully submits this memorandum in opposition to Plan Trustees' Motion to Dismiss State

Street's Counterclaims (the "Motion").

## I.        PRELIMINARY STATEMENT

The underlying complaint in this putative class action accuses State Street of breaching

its fiduciary duties under ERISA by allegedly mismanaging investment funds (the "Funds") held

by certain ERISA plans.  State Street's counterclaims allege that the trustee plaintiffs (the "Plan

Trustees") are in fact responsible for any losses experienced by the ERISA plans they oversee

(the "Plans") because of the Plan Trustees' breaches of their own, independent fiduciary duties to

the Plans.  The counterclaims allege multiple fiduciary breaches by the Plan Trustees, including

(i) failing to select investments that were suitable in light of the Plans' investment objectives and

the descriptions and other information provided to the Trustees about the Funds' investments,

strategies and characteristics; (ii) failing properly to evaluate the information State Street

provided about the Funds with regard to the continued suitability of the investments for the

Plans; and (iii) failing to mitigate the Plans' losses by timely redeeming the investments when

notified of the Funds' declining performance and the reasons for that declining performance

during 2007.  The Plan Trustees move to dismiss the Counterclaims, primarily arguing that this

Court can determine merely on the pleadings that State Street is, as a matter of law,

"substantially more at fault" for the Plans' losses.

The Plan Trustees' Motion to Dismiss the Counterclaims should be denied for an array of

reasons.  Fundamentally, the Motion refuses to accept, as it must, the truth of the facts pled in the

Counterclaim and instead challenges State Street's allegations.  In doing so, the Motion wrongly

conflates the Plan Trustees' fiduciary duty to make informed investment decisions with State

Street's duty to manage the funds in which the Plans invested – arguing only that Plan Trustees

*cannot* have been at fault because management of the Funds was State Street's job.  But the Plan Trustees' Motion misses the fundamental point:  the Plan Trustees had their own fiduciary obligations that they cannot sidestep by simply repeating their allegations against State Street. The Counterclaims detail how the Plan Trustees made the decisions to invest the Plans' assets in these actively managed funds whose stated investment goals were to outperform their relevant benchmarks by appreciable amounts, and to do so through concentrated investments in mortgage-related sectors that, despite being disclosed, the Trustees now claim were inappropriate for their particular Plans' portfolios.

The Plan Trustees do not assert a proper Rule 12(b)(6) argument that the Counterclaims fail on their face to plead a valid claim.  The Court cannot at the pleadings stage weigh the parties' respective factual allegations and determine who was "more at fault" as a matter of law. The Counterclaims more than amply plead viable bases for relief, and the Motion to Dismiss should be denied.

## II.    BACKGROUND

State Street manages through its State Street Global Advisors division ("SSgA") a number of unregistered, commingled investment funds, created as separate trusts under Massachusetts law.  These funds are offered primarily to institutional investors, cover a broad range of asset classes, and are designed to meet varying investment objectives, depending on the Fund.

The Plan Trustees each chose to invest in SSgA's actively managed fixed income strategies, each of whose stated objective was to exceed its benchmarks by varying, but nevertheless significant amounts, and whose stated method of achieving that result was to invest in overconcentrations in a single sector, asset-backed securities.  Asset-backed securities are well known in the bond industry to consist of securitized instruments backed largely by home equity

mortgages, which have recently come to be known as subprime mortgages.[1]  The Plan Trustees

each came to know, albeit at varying times and with varying degrees of information, that the

Funds had high concentrations in AA- and AAA-rated asset-backed securities backed by

subprime mortgages.  Nevertheless, the Plan Trustees chose to invest varying amounts of their

Plans' assets in the Funds and chose to remain invested despite gathering storm clouds hovering

over the subprime mortgage area.  Further, many of the Plan Trustees chose to redeem at varying

stages, some later than others and some never, despite receiving clear indications from State

Street that the funds were being negatively affected by unprecedented volatility and illiquidity in

the ABS Market in the summer of 2007.  As a consequence, SSgA's active fixed income funds

underperformed their respective benchmarks by varying amounts during the third quarter of

2007, and the Plans suffered varying degrees of losses, depending on when they chose to redeem,

if ever.  The Plan Trustees filed this putative class action, seeking to recover those losses on

behalf of the Plans, alleging that State Street breached its fiduciary duties under ERISA as the

manager of the Funds.[2]

---

[1]   A well recognized treatise used in the Chartered Financial Analyst program describes asset-backed securities (or "ABS") as securitized instruments backed primarily by "[f]irst-lien mortgages, mainly to subprime borrowers; second-lien mortgages to prime and subprime borrowers; home equity lines of credit; [and] high-loan-to-value-ratio mortgage loans."  *See* Frank J. Fabozzi, *The Handbook of Mortgage-Backed Securities* 363 (6th ed. 2006).  "Residential ABS are distinguished from the rest of the mortgage market by the purpose of the loans . . . . [M]ost transactions in the residential ABS market today are backed primarily by closed-end first-lien mortgages to subprime borrowers."  *Id.* at 365.

[2] ERISA plan trustees Alan Kober, trustee of The Andover Companies Employees Savings and Profit Sharing Plan ("Andover"), Warren Cohen, trustee of the Unisystems, Inc., Employees' Profit Sharing Plan ("Unisystems"), and John Patenaude and Margaret Callen, trustees of the Nashua Corporation Retirement Plan for Salaried Employees and the Nashua Corporation Hourly Employees Retirement Plan (collectively "Nashua"), filed separate complaints against State Street, seeking to recover the resulting investment losses suffered by their plans.  The three putative class actions were consolidated on February 7, 2008.  A single Consolidated Amended Complaint in this matter was filed on August 22, 2008 by the Andover, Nashua, and Unisystems

### III.   STATE STREET'S COUNTERCLAIMS

State Street's two counterclaims allege that, as fiduciaries, the Plan Trustees were responsible for making investment decisions for their respective ERISA plans, and thus obligated to make informed decisions when selecting investment vehicles that were appropriate for their Plans' specific investment objectives, risk tolerances, and overall portfolio characteristics. Countercl. ¶ 21.  The Counterclaims allege that the Plan Trustees failed to evaluate the information State Street provided about the Plan Funds, failed to select appropriate investments for their Plans, and failed to analyze the continued prudence and suitability of the Plan Funds for their particular Plans' portfolios.  Countercl. ¶ 29.  These failures constituted breaches of the fiduciary duties of ERISA plan trustees, and caused the Plans to invest and to remain invested in State Street's actively managed bond funds, which, as alleged by the Plaintiffs themselves, were not suitable for their respective Plans' investment objectives or levels of risk tolerance.  *See* Compl. ¶ 80 (Plan participants "invested in the Bond Funds as a safe and secure, conservative investment for retirement assets."); Countercl. ¶ 29 ("[T]he [Plan Trustees] should have been fully aware of the Funds' investment strategies and any attendant risks throughout the relevant period.").  As a result, the Plans suffered investment losses directly attributable to the Plan Trustees' investment selections.  *See* Countercl. ¶ 29.

---

Trustees and each of their respective plans, along with the following additional plaintiff Trustees and their respective Plans:  Alan Gordon, trustee of the AGMA Retirement Plan and the AGMA Health Fund (collectively "AGMA"), David Palmisciano, Trustee of the Rhode Island Carpenters Plans ("Rhode Island Carpenters"), and Glenn Kingsbury, trustee of the New England Electrical Workers Benefit Fund ("NEEW").  Participants Albert Massaro of the Eastman Kodak Employees' Savings and Investment Plan ("Eastman Kodak") and William Keye of the Waste Management, Inc. Retirement Savings Plan were also named as additional plaintiffs, along with their respective plans.  As plan participants, Messrs. Massaro and Keye are not named as Counterclaim Defendants, and are not party to the present Motion.

**A.    THE COUNTERCLAIM DEFENDANTS WERE RESPONSIBLE FOR
SELECTING STATE STREET FUNDS**

The Plan Trustees assert in their Consolidated Amended Complaint that investments in the Plan Funds and the resulting exposure to mortgage-related securities were imprudent and inconsistent with their Plans' investment objectives and risk tolerances.  Countercl. ¶¶ 24; see Compl. ¶¶ 87, 91.  The Plan Trustees entirely overlook, however, that it was *their* responsibility to select funds that were consistent with their Plans' objectives and risk tolerances.  *See* Countercl. ¶ 21 ("Each of the Counterclaim Defendants, as a plan trustee or fiduciary, was empowered to choose from among investment managers and investment products; none was required to invest any Plan assets with State Street, or to invest in any particular State Street fund, or to maintain any investment in a given fund if and when the Trustee determined it was no longer a prudent or suitable choice for the Plan's specific portfolio.").  After all, State Street was retained only as a money manager by most of the Plans, not as an investment adviser[3] – a key distinction here that the Plan Trustees seek to eclipse.  As such, the Plan Trustees also had the responsibility to keep abreast and informed about the Funds' investments, and they had the sole authority to terminate or redeem their investments in the Plan Funds when deemed advisable based on the individual needs of their particular Plan.  *Id.*  State Street was responsible for determining the securities in which the Funds themselves invested, consistent with the stated objectives and written guidelines governing each individual Fund.  State Street was not, however, an investment adviser for most of the Plans, and thus did not, and could not, exercise

---

[3] A few of the putative class plaintiffs were advisory clients who subscribed to and paid for SSgA's asset allocation services (underscoring the different positions of members of the potential class).  But the vast majority of the putative class members were not advisory clients, and SSgA merely provided money management services to them.

any authority over which Funds the Plan Trustees selected as investments for Plan assets, how much of Plan assets they invested in which Funds, and when if ever they chose to redeem.[4]  *Id.*

> **B.   STATE STREET WAS AUTHORIZED TO INVEST FUND ASSETS IN MORTGAGE-RELATED SECURITIES, AND THE PLAN TRUSTEES KNEW OR SHOULD HAVE KNOWN OF THE FUNDS' EXPOSURE TO THIS SECTOR**

The governing instruments for each of the Funds authorized State Street to invest in precisely the types of securities that the Plan Trustees have challenged as inappropriate.  *See* Countercl. ¶¶  43-45.  The Declarations of Trust, investment management agreements and Fund Declarations expressly permitted State Street to invest in "mortgage-backed securities," "asset-backed securities," "futures contracts and options thereon of any type," and "derivative securities."  Countercl. ¶¶ 44-46.  Thus, each relevant Fund was expressly authorized to own the very types of securities that the Plan Trustees now allege were not suitable for their Plans.  *See* Countercl. ¶ 47; Compl. ¶ 2.

State Street also made clear in communications to the Plan Trustees, albeit varying in content and number, that the Funds maintained material exposures to and over-concentrations in mortgage and housing-related securities, including asset-backed securities.  *See* Countercl. ¶¶ 30-31.  These disclosures made apparent to Plan Trustees how each Fund's investment strategy and portfolio composition diverged from its relevant benchmark (and thus how it planned to beat that benchmark), as well as the degree of each Fund's concentration in an asset class that Plan Trustees have now deemed inappropriate for their Plan participants.  *See id.*  The Counterclaim sets forth specific examples of such disclosures to individual Plan Trustees:

---

[4] Even with respect to the Plans who subscribed to SSgA's advisory services as asset allocation clients, ultimate discretion over the selection of Plan investments remained with the Trustees, as alleged in the Counterclaim.  *See* Counterclaim ¶ 21.

- A presentation was made to one Counterclaim Defendant indicating as of September 30, 2006, the Intermediate Bond Fund had a 46.2% allocation to asset-backed securities, which typically consisted primarily of debt obligations backed by residential mortgages and home equity loans.  *See* Countercl. ¶ 30(a).

- Other Plan Trustees were told that between January and June 2007, the Bond Market Fund's allocation to asset-backed securities had increased from 18.88% to 37.99%, as compared to the benchmark's allocation, which had decreased from 1.19% to 0.98%.  *See* Countercl. ¶ 30(b).

- State Street's Fact Sheets – which were frequently distributed to clients and consultants and were always available upon request – also reflected material exposure to mortgage-related securities throughout the relevant period.  *See* Countercl. ¶ 31 (citing examples).

Certain of the Plan Trustees also engaged third-party investment advisors to assist them in exercising their duties to make appropriate investment selections on behalf of Plan participants – thus implicitly recognizing that investment advice was not State Street's role.  *See* Countercl. ¶ 23.  State Street provided substantial reporting and commentary to a number of these investment advisors, who provided investment advice and information to the Plan Trustees about their investments in the Funds.  *See* Countercl. ¶¶ 32-33.  As far back as April 2004, for example, State Street described in a presentation to the investment advisor for one Counterclaim Defendant how its core active fixed income strategies (such as the Bond Market Fund) held concentrated positions in asset-backed securities in order to generate excess returns.  *See* Countercl. ¶ 40.  The Plan Trustees and their consultants had access to a full range of customized performance and transaction data, investment commentary, and fund strategy information through State Street's online "Client's Corner" and "Consultant's Corner" platforms; some of the Plan Trustees availed themselves of this information, and many did not, but it was available and timely.  *See* Countercl. ¶ 36.  As such, the Plan Trustees knew or should have known about the Funds' exposure to mortgage-related securities through these varied communications prior to

investing in the Funds, throughout the course of their investment, and at the time that

redemptions were occurring as the subprime mortgage crisis flared.  *See* Countercl. ¶ 29.

### C.   PLAINTIFFS CHOSE TO REMAIN IN THE STATE STREET FUNDS DESPITE DISCLOSURES REGARDING UNDERPERFORMANCE ATTRIBUTABLE TO CONCENTRATED POSITIONS IN ASSET-BACKED SECURITIES

The Counterclaims also allege that the Plan Trustees received material information about

the Funds' underperformance arising from concentrated positions in asset-backed subprime

mortgage securities prior to the summer of 2007, but elected to remain invested in the Funds for

varying periods of time.  Specifically, State Street reported that mortgage-related asset-backed

securities had led to 40 to 60 basis points of underperformance in the Intermediate Bond Fund,

the Bond Market Fund, and the Short Term Bond Fund[5] during the first quarter of 2007.  *See*

Countercl. ¶¶ 33-35.  State Street also made specific statements to the Plan Trustees and their

consultants prior to the summer of 2007, attributing the source of underperformance in the Funds

to significant exposure to the "subprime mortgage market."  *See* Countercl. ¶ 35 (citing

examples).  Commentary explaining the Funds' exposure to mortgage-related securities and

resulting underperformance was posted for clients and advisors on State Street's Client's Corner

and Consultant's Corner web platforms, and explicitly noted the exposure in AAA- and AA-

rated subprime securities.  *See* Countercl. ¶ 36.

Through these and related disclosures, all of which predate the substantial losses incurred

by the Funds in late July and August 2007, *see* Compl. ¶ 92, the Plan Trustees were aware or

should have been aware that the Funds were:  1) actively managed to beat their benchmarks by

appreciable amounts; 2) were concentrated in so-called asset-backed securities as the means of

achieving that investment goal; and 3) were significantly underperforming or losing money as a

---

[5] The Unisystems, Andover, AGMA, Nashua, and NEEW Plans were invested in these funds.

result of the subprime mortgage investments.  *See* Countercl. ¶¶ 35-37.  Nevertheless, the Plan Trustees determined that such investments remained suitable for their Plans, or in some cases inexcusably failed to assess their Plan investments at all.

As the downturn in fund performance became pronounced in late July and early August 2007, State Street continued to provide additional information about the cause of underperformance in the Funds – subprime exposure – and, in a number of instances, recommended that the Plan Trustees redeem their investments in the funds.  These Plan Trustees either failed to review the information State Street provided, or made the conscious determination that the Funds remained prudent investments for their Plans, and maintained their positions for varying time periods despite these explicit warnings.  *See* Countercl. ¶ 51 (citing examples).  Due either to the Plan Trustees' decisions to maintain their Plan investments in the Funds, or their neglect of their fiduciary duties to oversee those investments, a number of the Plans suffered most or even all of their losses late in the third quarter of 2007, after receiving this information.  *See* Countercl. ¶ 51.  These losses should have been mitigated, or could have been avoided entirely in many instances had the Plan Trustees performed their basic fiduciary duties to the Plans.  Countercl. ¶ 51.

## IV.   ARGUMENT

In considering a motion to dismiss under Rule 12(b)(6), the court must construe the counterclaim liberally and in a light most favorable to State Street, "accepting all factual allegations in the [counterclaim] as true, and drawing all reasonable inferences in the [non-moving party's] favor."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A motion to dismiss cannot be granted based on "disbelief of a complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In *Bell Atlantic Corporation v. Twombly*, the Supreme Court clarified that a complaint will satisfy the Rule 8 pleading standard if its allegations "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  550 U.S. 544, 127 S. Ct. 1955, 1965 (citing, *inter alia*, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating that although "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test")) (other citations omitted).  The Court did not disturb the Rule 12(b)(6) standard of review.  *See id.* at 1973 n.14 (noting that "we do not apply any 'heightened' pleading standard"); *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that *Twombly* does not impose a "heightened pleading standard").  Rather, in order to survive a motion to dismiss, Rule 8 requires only "a short and plain statement of the claim showing the pleader is entitled to relief." *Twombly*, 127 S. Ct. at 1964 (internal quotation marks omitted).  A complaint being challenged by a Rule 12(b)(6) motion must only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1959); *id.* (stating that "[s]pecific facts are not necessary" to survive a motion to dismiss).  As discussed below, State Street's counterclaims provide ample notice of its claims against the Plan Trustees and the grounds upon which those claims rest.

A.     **STATE STREET'S FIRST COUNTERCLAIM STATES A VALID CLAIM FOR CONTRIBUTION OR INDEMNIFICATION UNDER ESTABLISHED LAW AND IS BASED UPON DETAILED FACTUAL ALLEGATIONS OF THE PLAN TRUSTEES' BREACH OF THEIR INDEPENDENT FIDUCIARY DUTIES**

State Street's First Counterclaim seeks contribution and/or indemnification from the Plan Trustees based on "[t]heir selection of investment products that were apparently not suitable for their Plans, and their failure to meaningfully evaluate whether the Plan Funds remained prudent investments for the Plans."  Countercl. ¶ 29.  This claim is founded on settled law in the Second

Circuit that permits claims for apportioning liability among fiduciaries under ERISA through indemnification or contribution.  As the Second Circuit stated:  "We see no reason to reject contribution as an equitable means of apportioning wrongdoing in this [ERISA] context. . . . There is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt." *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241-42 (2d Cir. 2002) (reversing district court's dismissal of claims against ERISA co-fiduciary for both contribution and indemnification).

The Counterclaim alleges in detail how the Trustees failed to inform themselves about their investment selections for Plan assets and to make appropriate investment decisions on the Plans' behalf.  The Trustees are thus responsible for their Plans' losses, and should be required to contribute to any damages levied against State Street in apportionment to their fault.  The Plan Trustees are incorrect that State Street has failed to plead a valid claim as a matter of law.

### 1.    The "Substantially More at Fault" Defense Does Not Bar the First Counterclaim as a Matter of Law

The Plan Trustees' primary argument is that, as a matter of law, they *cannot* be liable under ERISA because State Street was "substantially more at fault" than the Trustees for the Plans' investment losses.  *See* Pls.' Mem. 12-17.  This argument, however, does not explain how State Street's pleading fails on its face to assert a valid claim; instead, it raises a fact-based affirmative defense that cannot be decided on a Rule 12(b)(6) motion.

As an initial matter, the Plan Trustees' reliance on the "substantially more at fault" defense ignores the distinction – clearly pled in the Counterclaims – between the Plan Trustees' fiduciary duty to make informed investment selections and State Street's separate duty to manage the Funds prudently.  Under ERISA, State Street and the Plan Trustees serve two

-11-

separate functions in their stewardship of the assets of ERISA plans.  State Street, for its part, manages a wide range of investment funds, in which plans and other institutional investors can invest.  State Street undertakes to manage these funds in accordance with the stated investment objectives and restrictions set forth in the relevant documents governing each fund.  Investors and potential investors in these funds, including the trustees of ERISA plans, are separately responsible for reviewing information and understanding the investment objectives and related risks of each fund, and determining which funds, if any, constitute appropriate investments for their individual needs.  *See* Countercl. ¶ 21.

Contrary to the Plan Trustees' suggestion, the Counterclaims in no way suggest that the Plan Trustees had some duty or ability to select specific securities or otherwise manage the Funds themselves.[6]  Rather, State Street alleges that the Plan Trustees breached their independent duty to select and maintain appropriate investment options for their Plan participants, separate and apart from State Street's management of the Funds.  Countercl. ¶¶ 21, 29.  *See In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 435 (3d Cir. 1996) (describing "the duty to conduct an independent investigation into the merits of a particular investment" as "the most basic of ERISA's investment fiduciary duties"); *Harris Trust & Sav. Banks v. Salomon Bros., Inc.* (*Salomon Bros.*), 832 F. Supp. 1169, 1178 (N.D. Ill. 1993) ("ERISA finds fiduciary duties where there is actual authority, and [] a trustee can retain some control over a pension trust's assets despite delegation of authority to an investment manager.").

Specifically, the Plan Trustees made the decision to invest the Plans' assets in actively managed funds whose stated investment objectives were to outperform relevant benchmark

---

[6] The Plan Trustees make much of the fact that the documents governing the funds establish State Street's duty to manage the funds.  However, State Street has never suggested that the Plan Trustees managed the Funds themselves, or selected specific securities for the Funds to own. Nor is such an allegation required to support State Street's claims.

indices by varying but significant amounts, and to do so by investing in concentrated positions of asset-backed securities. Countercl. ¶¶ 26, 30, 37. The Plan Trustees knew or should have known, based on the documents governing the active funds that State Street could use derivatives and invest in mortgage-related securities, which the Plan Trustees described after the fact as inappropriate securities to be included in their Plans' investments. *See* Countercl. ¶ 29, 44-46. Many of the Plan Trustees also received timely and sufficient notice that these asset-backed securities were responsible for underperformance in the funds, yet they failed to take action that would have avoided or mitigated the damages caused to the Plans. Countercl. ¶ 32-36.[7]

Significantly, because the Funds contained the investments of multiple ERISA plans, as well as those of other investors, State Street was not in a position to adjust the Funds' investment strategies to meet the objectives of any single investor – nor was that State Street's role. Rather,

---

[7] While the allegations in the Counterclaims are more than adequate to state an actionable claim, the Plan Trustees are aware that the factual record developed to date fully supports these allegations. A number of the Plan Trustees have admitted in deposition testimony that they either knew about or failed to investigate the securities held by the Plan Funds that they now challenge as inappropriate. For example, Plan Trustee John Patenaude of Nashua testified that he expressly understood the Plan Fund he invested in utilized derivative instruments, (Skinner Decl., Ex. 1 at 216:8-11), while Plan Trustee Alan Gordon of AGMA testified that he entirely shirked his responsibilities, because "I don't know anything about investments" (Skinner Decl., Ex. 2 at 141:24-25). Certain of the Plan Trustees have also testified to ignoring warnings from State Street or their advisors to exit the funds. After receiving a July 30, 2007 call from State Street informing him that "that the Intermediate Bond Fund had incurred substantial losses as a result of investment in subprime mortgages," and "advis[ing] us that we may want to get out of that fund," (Skinner Decl., Ex. 3 at 168:24-169:4, 170:8-9), Mr. Cohen of Unisystems went on vacation to Las Vegas, did nothing to investigate the issue, ignored numerous communications from SSgA, and took no action regarding the relevant investment. (Skinner Decl., Ex. 3 at 173:1-176:23.) By the time Mr. Cohen returned from Las Vegas two weeks later, the Plan had incurred substantial additional losses. (Skinner Decl., Ex. 3 at 188:10-190:16.) Nashua's consultant sent Mr. Patenaude a recommendation by email that, based on its communications with SSgA, Nashua terminate its investment in the Bond Market Fund on August 14, 2007, but Mr. Patenaude inexplicably failed to open the email from the Plan's investment advisor "until September, October." (Skinner Decl., Ex. 1 at 178:22-181:4.) Mr. Patenaude conceded that every day in August that he delayed in redeeming out of the Bond Market Fund compounded the losses the Nashua Plan sustained. (Skinner Decl., Ex. 1 at 206:12-16.)

the Funds were managed in accordance with fund-specific objectives, and in accordance with fund-specific limitations.  It was up to the Plan Trustees for each entity investing in the funds to determine on an ongoing basis which of the Funds, if any, were appropriate for its specific objectives.  In the case of the Plans, this obligation fell upon the Plan Trustees, and the breach of these obligations form the basis for State Street's Counterclaims.[8]  The Plan Trustees' position that they cannot, as a matter of law, be more at fault than State Street would eliminate the fiduciary duties under ERISA of any plan trustee who retains a money manager, an outcome that has no basis in law.[9]

Moreover, contrary to the Plan Trustees' arguments, State Street alleges more than simply a breach of their duty to "monitor" the performance of the funds.  The Plan Trustees' failure properly to investigate the funds at the outset and to make and maintain appropriate investments on behalf of their Plans apparently caused plan participants to bear exposure to riskier asset classes than was appropriate for their investment objectives and risk tolerances.  Indeed, these failures constituted a breach of "the most basic of ERISA's investment fiduciary duties."  *See Unisys*, 74 F.3d at 435.  As alleged in the Counterclaim, the Funds were permitted

---

[8] *See* Dep't of Labor Information Letter, March 21, 1996, *available at* http://www.dol.gov/ebsa/regs/ILs/il032196.html ("If the plan is investing in a pooled fund which is managed by a party other than the plan fiduciary who has chosen the fund, then that plan fiduciary should obtain, among other things, sufficient information to determine the pooled fund's strategy with respect to use of derivatives in its portfolio, the extent of investment by the fund in derivatives, and such other information as would be appropriate under the circumstances.").

[9] Indeed, it is not at all clear as a legal matter that the "substantially more at fault" rule can benefit ERISA fiduciaries like the Plan Trustees, who maintain discretion over the investment of plan assets.  The illustration provided in the Restatement (Second) of Trusts applies the "substantially more at fault" rule to a fiduciary who has *no knowledge* of the investments made with trust assets by its co-fiduciary and does not consent to such investments.  *See* Restatement (Second) of Trusts § 258, illus. 4.  *See also id.* cmt. e. ("The mere fact that one of the trustees did not actively participate in the breach of trust does not necessarily put him in the position of being substantially less at fault.").

-14-

to invest in the mortgage-related securities that caused the Plans' investment losses, the Plan Trustees knowingly exposed the Plans to these investments and knowingly maintained those exposures well after they received explicit information about the Funds' varying but concentrated positions in AA- and AAA-rated subprime mortgages, and as a result, the Plan Trustees are substantially more at fault than State Street for the Plans' losses. *See* Countercl. ¶¶ 36, 47, 51.

Ultimately, the Plan Trustees' invocation of the "substantially more at fault" defense raises questions of fact that cannot be determined on a motion to dismiss. The Plan Trustees' contention that the Court can determine, as a matter of law, that State Street is more at fault for those losses is baseless, as such a determination would require inappropriately weighing the parties' allegations against one another. Courts addressing the "substantially more at fault" argument in pre-trial motions have held that it is a factual question to be adjudicated at trial. *See Salomon Bros.*, 832 F. Supp. at 1179 (denying motion to dismiss counterclaims because "we cannot rule, as a matter of law, that Salomon will be deemed 'more substantially at fault' than Ameritech so as to bar contribution") (citing Restatement (Second) of Trusts § 258(1)); *Pressman-Gutman Co. v. First Union Nat'l Bank*, No. Civ.A. 02-8442, 2004 WL 1091048, at *1 (E.D. Pa. May 14, 2004) (denying motion for summary judgment of third-party complaint for contribution and indemnification based on "substantially more at fault" argument because "it would be premature for us to decide at this juncture whether one fiduciary is substantially more at fault than the other").

The cases cited by the Plan Trustees are inapposite, and only emphasize the factual nature of the "substantially more at fault" inquiry. The primary case upon which Trustees rely, *Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance Co.* (*Harris Trust*), 122 F. Supp.

2d 444 (S.D.N.Y. 2000), was decided *after a bench trial*, in which the counterclaimant was found by the court after trial to have failed to prove a breach by the counterclaim defendant. *Id.* at 464. *Harris Trust* provides no support for Trustees' position that State Street can be deemed substantially more at fault than the Trustees as a matter of law – and indeed suggests the contrary, that a trial is necessary to resolve the issue. Similarly, *Haddock v. Nationwide Financial Services Inc*., 570 F. Supp. 2d 355 (D. Conn. 2008)*,* rejected a contribution claim in a case where the underlying complaint sought disgorgement or restitution of misbegotten gains from a fiduciary who received nothing, reasoning that as the "sole beneficiary" of such gains, the defendant had no basis to demand that others assist it in returning them. *Id.* at 362-64. The damages sought by the Trustees in this case, for which State Street seeks indemnification or contribution, bear no resemblance to the facts in *Haddock*. Similarly, *Sunderlin v. First Reliance Standard Life Insurance Co.*, 235 F. Supp. 2d 222 (W.D.N.Y. 2002), is narrow and inapposite, as it rejected an indemnification claim brought by a plan administrator over claims regarding its failure to provide a summary plan description to the plaintiff participant, because that duty belonged solely to the administrator. *Id.* at 236-37.[10]

State Street in no way tries to avoid the "substantially more at fault" doctrine, or "pleads around" it, as Plan Trustees contend. Indeed, State Street has explicitly pled that the Trustees were "substantially more at fault than State Street for any harm to the Plans," Countercl. ¶ 54, and has provided specific factual allegations in support of that claim, as set forth above. The dispute between the parties on this issue is a factual one, which cannot be adjudicated on a motion to dismiss under Rule 12(b)(6).

---

[10]   State Street filed a similar counterclaim against Prudential, and Prudential has not moved to dismiss, recognizing instead that resolution of the counterclaim necessarily entails a factual based adjudication.

-16-

> **2.     State Street's Counterclaim Is Not A "Reiteration" Of Its Defenses**
> **Against Plaintiffs' Claims In The Complaint.**

The Plan Trustees next assert that a counterclaim for contribution or indemnification is unavailable to State Street because it is merely "an inappropriate reiteration of [State Street's] defense to the liability alleged in the Complaint."  *See* Pls.' Mem. 17-18.  Here again, the Trustees ignore the fact that the counterclaim is based on the breach of their independent duties to make informed and appropriate decisions regarding the Plans' investment options – duties that are distinct from State Street's separate duty to invest the money in the Funds that the Trustees selected.  *See* Countercl. ¶¶ 21, 56-57.  Thus, there is a clear logical distinction between State Street's defenses to the Trustees' claims and its Counterclaim for contribution or indemnification:  State Street will defend itself against the Trustees' claims by demonstrating that it did *not* mismanage the Funds or mislead investors about the nature of the Funds, whereas the Counterclaim is based on the Trustees' failure properly to select and oversee the Plans' investment options in light of the Plans' investment objectives, and to mitigate the Plans' losses when it became apparent that the Funds were facing varying degrees of investment issues.  As a matter of fact and logic, the outcome of the Counterclaim does not turn on the outcome of the Trustees' claims, and the Counterclaim is not simply a mirror image or "reiteration" of the defenses to the Complaint.

Of course, a counterclaim for contribution or indemnification is *always* based in part on an assumed possibility of liability for the defendant-counterclaimant on the underlying affirmative claims; indeed, this is the very nature of contribution and indemnification.  But that pleading device does not serve to convert the counterclaim into a mere reiteration of the counterclaimant's defenses, as the Plan Trustees argue.  If this logic were correct, a contribution or indemnity counterclaim would effectively always be unavailable, an approach the Second

Circuit has flatly rejected.  *See Chemung*, 939 F.2d at 18 (reversing dismissal of counterclaim and concluding "that incorporating traditional trust law's doctrine of contribution and indemnity into the law of ERISA is appropriate."); *see also Oneida Indian Nation of N.Y. v. New York*, 194 F. Supp. 2d 104, 143 n.47 (N.D.N.Y. 2002) ("Counterclaims for contribution are permitted under Fed. Rule of Civ. Proc. 13(a) 'in order to facilitate the litigation of all the claims arising from the same occurrences in the same lawsuit.'") (citing *Index Fund, Inc. v. Hagopian*, 91 F.R.D. 599, 605 (S.D.N.Y. 1981)).

Plaintiffs rely on an inapposite case from the Northern District of Illinois, *Murphy v. Traveler's Insurance Co.*, No. 84 C 502, 1985 WL 1469 (N.D. Ill. May 24, 1985).  In *Murphy*, the defendant alleged in its counterclaim that it merely offered and did not breach an insurance contract, which, if proven, would render it a non-fiduciary under ERISA.  *Id.* at *3. Consequently, there was no factual scenario in which the defendants could have prevailed on its indemnity claim while having any liability to the plaintiffs for a breach of fiduciary duty in the first place.  In contrast, while State Street denies the Trustees' allegations that it imprudently managed the Funds or misled investors, it is possible that State Street could be found liable on these theories, but that the Plan Trustees were still equally or more at fault for resulting losses to the Plans by investing and then continuing to invest Plan assets in funds that were unsuitable for the Plans' specific investment objectives.[11]

The Plan Trustees have provided no reason to dismiss the First Counterclaim for failure to state a claim.

---

[11]  For the same reason, cases dismissing counterclaims that assert simple defenses to liability mirroring the factual allegations and legal theories raised by a defendant are equally inapposite. *See, e.g.*, *Arista Records, LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822(HB), 2008 WL 4974823, at **4-5 (S.D.N.Y. Nov. 24, 2008).

**B.      STATE STREET'S SECOND COUNTERCLAIM STATES A VALID CLAIM BASED ON DETAILED FACTUAL ALLEGATIONS, AND THE PLAN TRUSTEES CANNOT DEFEAT THE COUNTERCLAIM AT THE PLEADING STAGE BY RAISING FACTUAL DISPUTES**

State Street's Second Counterclaim is brought on behalf of those Plans that are still State Street clients, and seeks in State Street's capacity as a fiduciary to recover from the current Plan Trustees the investment losses caused by their unsuitable and uninformed investment decisions. As a fiduciary for these clients, State Street has statutory standing under ERISA to pursue claims on behalf of the Plans for losses due to the breaches of other fiduciaries, including the Plan Trustees.  *See* 29 U.S.C. § 1132 ("A civil action may be brought . . . by a . . . fiduciary for appropriate relief under [29 U.S.C. § 1109]."); *Haddock*, 570 F. Supp. 2d at 365 (holding that an investment manager "would have standing to pursue a claim for breach of fiduciary duty on behalf of the Plans against other fiduciaries, here specifically, the Trustees.").  Like State Street's First Counterclaim, the Second Counterclaim is based on the Plan Trustees' breach of their distinct fiduciary duty – independent of State Street's management of the Funds – to make informed and appropriate investment selections from among the many funds offered by State Street or other investment managers and in maintaining those investments thereafter.  The detailed factual allegations in support of the Counterclaims are summarized at pages 4-9 above.

**1.      The Second Counterclaim Properly Pleads That The Plan Trustees Breached Their Fiduciary Duties to Plan Participants in Their Initial Selection Of Investment Options**

The Plan Trustees argue that State Street has not pled a viable claim that Trustees breached their fiduciary duties in selecting investment options for the Plans.  *See* Pls.' Mem. 18-19.  But in making this argument, the Trustees simply point to the allegations in their *own*

Complaint and challenge State Street's interpretation of the evidentiary record. *See id*. at 19.[12]
Nowhere do the Trustees acknowledge that they must accept the factual allegations in State
Street's Counterclaims as true and explain to the Court why those facts do not support a claim.
As alleged in the Counterclaim and discussed above, it was the Plan Trustees who were
responsible for selecting investments appropriate to their plans' overall diversification, risk
tolerances and other investment objectives.  Countercl. ¶ 21.  This specific obligation was in no
way delegated to State Street, which was a manager of the Funds' underlying assets, not an
investment adviser for most clients.  Countercl. ¶ 21.  Nor was State Street, as the manager of
commingled funds with numerous investors, responsible for or retained to even provide
investment advice to each Plan for when it served solely as a money manager.  Rather, as alleged
in the Counterclaim, the Trustees "had the sole responsibility to invest their Plans' assets
prudently based on the unique investment objectives, characteristics, risk tolerance, and overall
portfolio of their Plans."  Countercl. ¶ 21.

Instead of addressing the adequacy of State Street's allegations from a pleading
perspective, the Plan Trustees first argue that State Street's counterclaim is not supported by the
*Trustees'* allegations in the Complaint.  *See* Pls.' Mem. 19 ("[T]here is nothing in the Complaint
that remotely suggests that (or would support an allegation that) the Plan Trustees breached any
duties by investing in the SSgA-managed Bond Funds.").  The Counterclaim does cite to the
Complaint for the apparently undisputed proposition that Plan Trustees claim not to have
understood the nature of the Funds' investments at the time they made their investment
selections.  Compl. ¶ 80; Countercl. ¶¶ 25-26 .  But this does not mean that State Street looks to

---

[12] *See also* Pls.' Mem. 3 (describing allegations as "gross mischaracterizations"); 4 ("gross
distortions"); 7 ("gross distortions" and "blatantly false mischaracterizations"); 8 ("false and
unequivocally belied," "further distortions," and "gross mischaracterizations"); 9 ("fabrication");
10 ("cut [] out of whole cloth").

the Complaint for the factual support of its Counterclaim.  To the contrary, the Counterclaim contains detailed factual allegations of the information provided to Plan Trustees regarding the nature of the investments selected by the Trustees for the Plans, including the Plan Funds' concentrations in asset-backed and housing-related securities and derivatives as disclosed in the form of presentations (Countercl. ¶ 30(a)), fund fact sheets (Countercl. ¶ 31), written correspondence (Countercl. ¶ 35), postings on its Client's Corner website (Countercl. ¶ 36), and statements to their third-party consultants (Countercl. ¶ 40), among other types of disclosures. *See also* Countercl. ¶¶ 21, 29, 30-42, 47, 50 (alleging that the Plan Trustees failed to make and maintain appropriate investment selections in light of these disclosures).

The Plan Trustees' only response to these allegations is to challenge their factual accuracy.  *See* Pls.' Mem 19 ("[T]here is nothing in the governing Bond Fund documents that suggested that these funds were 'unsuitable' investments when acquired . . . .  [State Street] has chosen to base its claims on gross distortions of . . . the pertinent documents, and on conclusory allegations that are belied by the documents.").  Such arguments are not, however, proper in a Rule 12(b)(6) motion.  The Trustees have failed to carry their burden in the Motion to demonstrate why State Street's factual allegations do not set forth a claim upon which relief can be granted.

## 2.     The Plan Trustees' Breach Continued After the Plans' Investments

As discussed above, the Plan Trustees continued to breach their fiduciary responsibilities by failing to reconsider or mitigate the losses from their investment decisions during the summer of 2007, despite several SSgA communications regarding underperformance attributable to the subprime investments, albeit varying from Plan to Plan in both content and time.  *See Glennie v. Abitibi-Price Corp*., 912 F. Supp. 993, 1004 (W.D. Mich. 1996) ("When a fiduciary does receive negative information regarding a particular investment in an ERISA plan, it is that fiduciary's

duty to act prudently to protect, to the extent possible, the plan from loss."); *Whitfield v. Cohen*, 682 F. Supp. 188, 196 (S.D.N.Y. 1988) (holding that ERISA trustee "cannot escape liability by pointing to the authority delegated to [investment management company] to manage Plan assets" and that trustee "had a duty to . . . withdraw the investment if it became clear or should have become clear that the investment was no longer proper for the Plan") (citing *Pub. Serv. Co. of Colo. v. Chase Manhattan Bank, N.A.*, 577 F. Supp. 92, 104 (S.D.N.Y. 1983)). The Plan Trustees' arguments with respect to these failures continue to misconstrue State Street's allegations and to improperly raise factual disputes regarding them.

First, the Plan Trustees argue that they were "relieved" of their fiduciary duties when they decided to invest in State Street funds.  *See* Pls.' Mem. 19-20.  This assertion misconstrues the law governing ERISA trusts; the retention of, and delegation of certain duties to, an investment manager under section 405 of ERISA does not mean that a trustee is not liable to an investment manager for contribution or indemnity "where the trustee's own actions were the cause of some or all of the loss at issue."  *Rubin v. Valicenti Advisory Servs., Inc.*, 326 F. Supp. 2d 427, 428 (W.D.N.Y. 2004); *see also* 29 U.S.C. § 1105(d)(2) ("Nothing in this subsection shall relieve any trustee of any liability under this part for any act of such trustee"); *Salomon Bros.*, 832 F. Supp. at 1178 ("Under § 405(d)(2), a fiduciary may be liable for its own actions, despite appointment of an investment manager.").  Specifically, the Plan Trustees retained decision-making responsibility for the critical determinations with respect to the funds in which their Plan assets would be and remained invested, as well as the amounts of assets to place in those Funds. *See Salomon Bros.*, 832 F.Supp. at 1178-79 (finding that under § 405(d)  "an investment management agreement removes the 'obligation to invest or otherwise manage any asset of the plan' from the trustee, but still leaves a trustee liable for his own acts"); *Harley v. Minn. Mining*

& *Mfg. Co.*, 42 F. Supp. 2d 898, 908 n.13 (D. Minn. 1999) (noting that although defendant-fiduciary hired an investment manager "to implement the [investment manager's] strategy[,] whether that strategy was prudent throughout the relevant period remains within [the defendant-fiduciary's] domain of responsibility") (citing *Whitfield*, 682 F. Supp. at 196).  The Plan Trustees' breach of duty in exercising this responsibility was the primary source of the Funds' losses.

Next, the Plan Trustees argue that the Counterclaim cannot go forward unless State Street pleads its own underlying breach.  *See* Pls.' Mem 21-22.  This argument again fails to account for the independent nature of State Street's and the Plan Trustees duties, and the scenario where investment losses incurred in a prudently managed but relatively risky fund are attributable to the trustee who selects such an investment.  State Street alleges more than a failure to "monitor" fund performance by the Plan Trustees, but instead seeks recovery on behalf of the Plans for the improper selection and maintenance of investments in funds that State Street contends were appropriately managed, but nonetheless improper investments for the Plans.  Countercl. ¶¶ 29, 41-42.  Because this duty of the Plan Trustees to make informed and appropriate investment selections is distinct from State Street's management of the funds, an underlying breach by State Street is not a requisite part of its Counterclaims.

Finally the Plan Trustees attempt to turn State Street's counterclaim on its head and to argue the facts, by contending that State Street's disclosures about the Funds were not enough to put them on notice that the Bond Funds were allegedly being managed imprudently.  *See* Pls.' Mem 22-24 (information provided by State Street to Trustees "[was] not inconsistent with the governing fund documents or inherently inconsistent with the fund investment objectives").  Here again, State Street's Counterclaim does not turn on the prudence of how the Funds

themselves were managed, but rather on the distinct issue of whether the Funds selected by the Plan Trustees were appropriate for their respective Plans.  *See* Countercl. ¶¶ 29, 41.  The Plan Trustees made and maintained improper selections despite explanations from State Street about the Funds in which they invested.  *See* Countercl. ¶¶ 30-40, 51.  As State Street alleges detailed facts about the information available to the Plan Trustees and their inappropriate selection and maintenance of investments that were not suitable to their Plans, their Motion to Dismiss should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, State Street respectfully requests that the Court enter an order denying the Plan Trustees' Motion to Dismiss its Counterclaims.

Dated:  April 7, 2009

ROPES & GRAY LLP

By: /s/ Harvey J. Wolkoff
Harvey J. Wolkoff
Robert A. Skinner
Daniel J. Maher
Lila A. Palmer
One International Place
Boston, MA  02110
Tel: (617) 951-7000
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
daniel.maher@ropesgray.com
lila.palmer@ropesgray.com

*Attorneys for Defendant and Counterclaimant*
*State Street Bank and Trust Company and*
*Defendant State Street Global Advisors, Inc.*