UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. ERISA LITIGATION<br><br>This document relates to:<br><br>07 Civ. 9319<br>07 Civ. 9687<br>08 Civ. 0265<br>08 Civ. 07934 | MDL No. 1945<br><br>No. 07 Civ. 8488 (RJH)<br><br>ECF Case |

**PLAINTIFF PLAN TRUSEES' MEMORANDUM IN REPLY TO SSgA'S OPPOSITION TO MOTION TO DISMISS SSgA'S COUNTERCLAIMS**

Lynn Lincoln Sarko (LS-3700)
Derek W. Loeser (DL-6712)
Karin B. Swope  (KS-3369)
Laura Gerber
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900

Gary Gotto
3101 N. Central Ave., Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088

David Preminger (DP-1057)
275 Madison Avenue, Suite 1425
New York, NY 10016
Telephone: (212) 878-8890

William C. Fredericks
Jonathan Harris
Jerald Bien-Willner
**BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400


Jeffrey C. Block (JCB-0387)
Patrick T. Egan
Kristen D. Tremble
**BERMAN, DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  ARGUMENT .................................................................................................................. 2

    A.   SSgA's First Counterclaim Is Barred As A Matter of Law By the "Substantially More at Fault" Doctrine ................................................................. 2

    B.   SSgA's First Counterclaim Merely Restates Its Underlying Defense on the Merits, But Fails to State a Claim for "Liability Over" Against Any Trustee. ....................................................................................... 5

    C.   SSgA's Second Counterclaim Fails to Adequately Allege a Breach of Fiduciary Duty by Any Identified Plan Trustee ............................................... 6

        1.   SSgA's Distortions of the Complaint, Which Are Refuted by the Complaint itself, Need Not Be Accepted As True ......................... 6

        2.   Distortions Aside, SSgA fails to Make Any Allegations that Support any Fiduciary Breach Claim Against the Plan Trustees. ........................................................................................................ 7

        3.   SSgA's Efforts To Blame the Trustees for Failing to Identify and Respond to SSgA's Mismanagement Sooner Is Based On Its Profound Misunderstanding of ERISA § 405(d)(1). ................................................................................................ 8

        4.   SSgA's Does Not, and Cannot, Allege Breach of a Duty to Monitor. ................................................................................................... 9

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Glennie v. Abitibi-Price Corp.*, 912 F. Supp. 993 (W.D. Mich. 1996)........................................ 8

*Haddock v. Nationwide Fin'l Serv., Inc.*, 570 F. Supp. 2d 355, 362-64 (D. Conn. 2008) ........................................................................................................................ 3

*Harley v. Minn. Mining & Mfg. Co.*, 42 F. Supp. 2d 898 (D. Minn. 1999)................................. 9

*Harris Trust & Sav. Banks v. John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444 (S.D.N.Y. 2000) .................................................................................................... 3

*Harris Trust & Sav. Banks v. Salomon Bros.*, 832 F. Supp. 1169, 1179 (N.D. Ill. 1993) ........................................................................................................................ 4

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y 2004) ..................... 6

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ........................................................................................................................ 6

*Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987) ................................... 9

*Murphy v. Traveler's Insurance Co.*, 1985 WL 1469 (N.D. Ill. May 24, 1985)........................... 5

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003)..........................................................................................4

*Pressman-Gutman Co. v. First Union Nat'l Bank*, 2004 WL 1091048 (E.D. Pa. 2004) ................................................................................................................ 4, 5, 6

*Pub. Serv. Co. of Colo. v. Chase Manhattan Bank,* N.A., 577 F. Supp. 92 (S.D.N.Y. 1983) ............................................................................................................ 8

*Rubin v. Valicenti Advisory Servs., Inc.*, 326 F. Supp. 2d 427 (W.D.N.Y. 2004) ........................ 8

*Sunderlin v. First Reliance Std. Life Ins. Co.*, 235 F. Supp. 2d 222, 236-37 (W.D.N.Y. 2002) ........................................................................................................... 3

*Whitfield v. Cohen*, 682 F. Supp. 188 (S.D.N.Y. 1988)............................................................. 8

**Statutes**

ERISA § 405(d)(1), 29 U.S.C. § 1105(d)(1)................................................................................... 2

ERISA § 405(d)(2), 29 U.S.C. § 1105(d)(2)................................................................................... 8

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 553 n.31 (3d ed. 2004) .............................................................................................. 6

Restatement (Second) of Trusts § 258 (1959) ................................................................. 1, 2, 3, 5

I.   PRELIMINARY STATEMENT

SSgA's Opposition brief ("Opp. Br.") in no way cures the flawed premises and fundamental defects of its Counterclaims. Instead, as set forth herein and in the Trustees' Memorandum in Support of their Motion to Dismiss ("MTD Mem."), SSgA's Counterclaims should be dismissed as a matter of law.

SSgA's First Counterclaim, seeking contribution and indemnity, fails to state a claim for relief because, on the face of the pleadings, if SSgA is found liable on the mismanagement claims asserted against it, SSgA is "substantially more at fault" than the Plan Trustees for the resulting losses under the Restatement (Second) of Trusts § 258 (1959) ("Restatement § 258"), which the Second Circuit has embraced for purposes of determining the availability of contribution or indemnity under ERISA. Consistent with established precedent, this issue can and should be decided now because of the differences in the fiduciary roles played by SSgA and the Plan Trustees. As established by the pleadings and the documents cited therein, the Plan Trustees had the fiduciary duty to act prudently in *selecting* SSgA to manage Plan assets. In contrast, as an investment manager SSgA had the sole and exclusive duty to prudently *manage* the Plan assets entrusted to it. In the absence of allegations that the Trustees had any role in making investment decisions for or otherwise managing any of the SSgA Bond Funds, ***if*** SSgA is found liable for imprudent management of those Funds, ***then*** the "substantially more at fault" rule precludes SSgA, as professional investment manager, from shifting any of its liability for mismanagement to the Trustees as a matter of law.

SSgA's Second Counterclaim for fiduciary breach fares no better. Although SSgA argues that the Trustees acted imprudently in selecting SSgA and its Bond Funds, SSgA's only allegations in support of this contention are gross distortions of the *Trustees'* allegations. Apart from these distortions, SSgA can point to no allegations in its Counterclaims that support its claims that (a) the Bond Funds were inappropriate investment vehicles in light of their purported investment strategy (which was to meet or modestly exceed the performance of established fixed

1

income benchmark indices within the constraints of "benchmark tracking error" and other prudent risk management practices), or that (b) any Plan Trustees knew or should have known that SSgA was in fact grossly mismanaging the Bond Funds by making increasingly large (and frequently leveraged) investments in particularly volatile subprime mortgage-backed and other "toxic" assets and by failing to follow its own risk management policies.  SSgA's further contention that the Trustees are liable for failing to "get out" of SSgA's Bond Funds in the summer of 2007 fails not only for want of adequate plausible factual allegations, but also because it flies in the face of ERISA § 405(d)(1), 29 U.S.C. § 1105(d)(1), which specifically relieves plan fiduciaries who appoint an investment manager from obligations with respect to the investment or management of the assets entrusted to the investment manager.

## II.     ARGUMENT

### A.     SSgA's First Counterclaim Is Barred As A Matter of Law By the "Substantially More at Fault" Doctrine

The well-established "substantially more at fault rule" of the Restatement § 258 bars SSgA's First Counterclaim.  *See* MTD Mem. at 12-17.  SSgA's arguments, which conspicuously avoid any analysis of Restatement § 258, and rely instead on misdirection and assertions that factual issues preclude dismissal on this basis, are unavailing.

SSgA's attempted misdirection is to assert that the Trustees ignore the differences between their fiduciary roles and the fiduciary roles of SSgA.  Opp. Br. at 11.  To the contrary, the Trustees *rely* on these different fiduciary roles in analyzing the application of Restatement § 258.  *See* MTD Mem. at pp. 14-17.  It is precisely ***because*** of this critical distinction between SSgA's fiduciary role (as investment manager with sole and exclusive control over the Plan assets invested in the Bond Funds), and the Plan Trustees' fiduciary role (as the parties responsible for selecting SSgA as investment manager) that SSgA is necessarily "substantially more at fault" as a matter of law under Restatement § 258 with regard to the claims that Plaintiffs may establish at trial that SSgA mismanaged the Bond Funds.  This distinction forms the core of

2

the Trustees' argument as to why SSgA's contribution and indemnity counterclaims must be dismissed.  *See* MTD Mem at 13-17.

SSgA's effectively concedes this very point when it notes that its Counterclaim "is based on the Trustees' failure properly to select and oversee the Plans' investment options in light of the Plans' investment objectives, and to mitigate the Plans' losses," and admits that SSgA itself was responsible for the actual management of the Bond Funds in which Plan assets had been invested.  Opp. Br. at 11.  Restatement § 258 contemplates precisely this type of situation, and finds that the fiduciary with direct investment management responsibility (here, SSgA) is barred from obtaining contribution or indemnity from the appointing or monitoring fiduciary (here, the Plan Trustees).  *See* Restatement § 258, cmt. d (barring claim for contribution or indemnity by a fiduciary responsible for managing plan assets (e.g., SSgA) against a fiduciary (*e.g.,* a Plan Trustee) that is liable only because of an improper delegation to or failure to prevent or redress the breach of the fiduciary seeking contribution and indemnity).

SSgA's argument that determining whether a fiduciary is substantially more at fault "raises questions of fact that cannot be decided on a motion to dismiss" (Opp. Br. at 15) is also unavailing.  The Trustees' MTD Mem., at 13-15, cites cases in which contribution or indemnity claims in ERISA fiduciary breach cases were dismissed at the pleading stage based on the substantially more at fault rule in Restatement § 258, including two from this Circuit.  *See Haddock v. Nationwide Fin'l Serv., Inc.,* 570 F. Supp. 2d 355, 362-64 (D. Conn. 2008); *Sunderlin v. First Reliance Std. Life Ins. Co.,* 235 F. Supp. 2d 222, 236-37 (W.D.N.Y. 2002). SSgA's attempts to distinguish these cases based on their underlying facts are unpersuasive, as these factual differences do not alter the legal analysis of these cases which unequivocally conclude that dismissal of the counterclaims was appropriate where the claims run afoul of the "substantially more at fault" rule.[1]  Nor does SSgA's characterization of the "substantially more

---

[1] SSgA correctly notes that another case cited by the Trustees, *Harris Trust & Sav. Banks v. John Hancock Mut. Life Ins. Co.,* 122 F. Supp. 2d 444 (S.D.N.Y. 2000) ("*Harris Trust")* was decided after a trial.  However, nothing

3

at fault" rule as an affirmative defense, Opp. Br. at 11, change the analysis, as it is well-settled that an affirmative defense can support the dismissal of a claim under Rule 12(b)(6) where, as here, the affirmative defense is established on the face of the pleadings. *See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003).

Moreover, SSgA's reliance on *Harris Trust & Sav. Banks v. Salomon Bros.*, 832 F. Supp. 1169, 1179 (N.D. Ill. 1993) and *Pressman-Gutman Co. v. First Union Nat'l Bank*, 2004 WL 1091048 (E.D. Pa. 2004), is misplaced. In *Salomon Bros.,* the party seeking contribution specifically alleged that the contribution defendant (the plan sponsor) had exercised control over plan assets by authorizing the plan's investment in certain fee agreements (the ***specific*** investments that caused the loss in question). *Salomon Bros.*, 832 F. Supp. at 1178. The allegations in *Salomon Bros.* that the contribution defendant had exercised control over plan assets raised issues of fact that precluded dismissal of the contribution claim under the "substantially more at fault" doctrine. Here, however, there are no allegations whatsoever that any Plan Trustees exercised control ***in any way*** with respect to SSgA's decisions concerning the investment of the Plans' assets under SSgA's management. Indeed, the Trustees' Complaint specifically alleges (and the governing Bond Fund documents relied on by SSgA confirm) that the investment discretion for those assets resided ***solely and exclusively*** with **SSgA**. Compl. ¶ 76; MTD Mem. at 7-8; *see also* SSgA Opp. Br. at 5 (conceding that SSgA was responsible for "determining the securities in which the Funds themselves invested"). It was the imprudent exercise of this discretion for which the Plan Trustees seek to recover. Thus, if the Trustees establish SSgA's imprudence in investing the assets of the Bond Funds as alleged in the Complaint, then SSgA, as the party with the ***sole*** responsibility to make those investment decisions, is substantially more at fault as a matter of law.

---

in that opinion suggests that the "substantially more at fault" rule could not have been applied at the Rule 12(b)(6) stage had the issue been presented earlier.

*Pressman-Gutman* is similarly distinguishable. There, a breaching investment manager brought a third party claims for contribution and indemnity against two co-fiduciaries on the grounds that these co-fiduciaries had allegedly "participated in" the investment management of the plans, and had exercised actual control over the investments in question. 2004 WL 1091048 at *1. The court held that *if* those facts were established, the investment manager would not be "substantially more at fault" as a matter of law under Restatement § 258. Here, however, there are simply *no* similar allegations that any of the Trustees participated in – let alone "exercised actual control over" – SSgA's management of the Bond Funds in which the Plans were invested.

**B.    SSgA's First Counterclaim Merely Restates Its Underlying Defense on the Merits, But Fails to State a Claim for "Liability Over" Against Any Trustee.**

As discussed in the preceding section, if SSgA is liable for mismanaging the Bond Funds in which the Plans were invested, then taking all of SSgA's allegations as true, the "substantially more at fault rule" prevents any portion of that liability to be shifted to the Plan Trustees. Conversely, if SSgA were to successfully establish that it did ***not*** mismanage the SSgA Bond Funds, that would establish its ***defense*** to underlying liability – but it would not establish any claim for contribution or indemnity against the Plan Trustees. The situation here is thus closely akin to *Murphy v. Traveler's Insurance Co.,* 1985 WL 1469 (N.D. Ill. May 24, 1985), where (as here) there was "no factual scenario in which the defendants could have prevailed on its indemnity claim while having any liability to the plaintiffs for a breach of fiduciary duty." Opp. Br. at 18.

SSgA fundamentally misapprehends Restatement § 258 when it asserts that if SSgA is found liable for imprudently managing the Bond Funds, the Plan Trustees could be "equally or more at fault" for the resulting losses. The fact remains that the claims asserted in the Complaint – the only claims for which SSgA can seek indemnity or contribution – are for losses resulting from ***SSgA's*** imprudent management of Bond Funds for which SSgA had sole management authority. In sum, if the claims alleged in Plaintiffs' Complaint are established, SSgA is necessarily "substantially more at fault" than the Plan Trustees under Restatement § 258 and no

claim for contribution or indemnity will lie. Conversely, if those claims are not established, there will be no predicate underlying SSgA liability for SSgA to shift to other persons via contribution or indemnity. Either way, SSgA's contribution and indemnity claims should be dismissed.[2]

## C. SSgA's Second Counterclaim Fails to Adequately Allege a Breach of Fiduciary Duty by Any Identified Plan Trustee

### 1. SSgA's Distortions of the Complaint, Which Are Refuted by the Complaint itself, Need Not Be Accepted As True

As set forth in the Trustees' MTD Mem. at 18-19, the factual "allegations" that SSgA offers to support its claim that the Trustees' selection of SSgA as investment manager (and of SSgA's Bond Funds as investments vehicles) are based entirely on distortions of the *Trustees'* allegations, and are, moreover, refuted on the face of the governing Bond Fund documents that SSgA itself incorporated in its own pleadings.[3] SSgA's argument that the Court must accept SSgA's distortions of the *Trustees'* allegations as true, and should ignore the actual contents of the documents SSgA relies on, is simply wrong. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y 2004) (court "need not accept as true an allegation that is contradicted by documents" on which the pleading relies); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp.2d 371, 405-406 (S.D.N.Y. 2001) (same); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 553 n.31 (3d ed. 2004) .

---

[2] SSgA suggests that "all" conceivable claims for contribution would be barred under such a result, in contravention of the Second Circuit's holding in *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020 (2d Cir. 1992), that ERISA allows contribution claims in appropriate cases. SSgA's suggestion is absurd. For example, if Plaintiff A and Defendant B served as *de facto* joint investment managers, it is entirely possible that Defendant B could be liable while still having a valid claim for contribution against Plaintiff A. *See, e.g., Preston-Gutmann,* 2004 WL 1091048 (discussed *supra).* However, such shared or "joint" investment management responsibility is wholly absent here.

[3] In *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998), SSgA argued successfully that plan documents, even though not attached to or incorporated into a complaint, could be considered against the plaintiffs in a motion to dismiss.

6

### 2. Distortions Aside, SSgA fails to Make Any Allegations that Support any Fiduciary Breach Claim Against the Plan Trustees.

SSgA asserts (Opp. Br. at 21) that paragraphs ¶¶ 30(a), 31, 35, 36 and 40 of its Counterclaim constitute "detailed factual allegations" that the Trustees' *initial selection* decisions (i.e., their initial decision to retain SSgA as investment manager, and to select one or more SSgA Bond Funds as Plan investment vehicles) were imprudent.  However, none of these paragraphs even purports to allege any information the Trustees either used or ignored in connection with any decision to initially select any Bond Fund or to retain SSgA.  Instead, all of the communications alleged by SSgA in Counterclaim ¶¶ 30(a), 31, 35 and 36 all occurred in 2006-07 – long after the initial retention of SSgA.  As for Counterclaim ¶ 40, it refers only to information allegedly provided to an unidentified "consultant" (rather than to any Plan Trustee) in April 2004 – an allegation so vague that it is impossible to determine whether it is relevant to any Plan Trustee's conduct, or to any initial selection decision.  Thus, SSgA offers no factual allegations whatsoever (as opposed to naked conclusory assertions) to support its claim that the Plan Trustees' initial selection of any SSgA Bond Funds or retention of SSgA was imprudent.[4]

---

[4] This is not surprising because, as the Complaint alleges, SSgA did not cause the Funds to begin to take on dramatically greater risk until late 2006 or early 2007 when – ***against the advice of SSgA's fixed income risk management department --*** SSgA's senior fixed income executives (all of whom have since been ***fired*** (Compl. ¶¶68-70)) made a deliberate decision to significantly increase the exposure of SSgA's Bond Funds to particular subprime-mortgage and U.S. home-equity loan-backed securities and other related instruments (such as swaps). *See, e.g.,* Compl. ¶¶ 65-67, 82-83; Suppl. Decl. of Derek Loeser dated April 24, 2009 at Exh A, attaching excerpts of Deposition Testimony before the SEC of Patrick Armstrong (Director, SSgA Investment Rick Management) at 102:11-103:19, 105:12-106:12 ("It was [Risk Management's] position to reduce [the Funds'] subprime exposure prior to and throughout the market crisis [of 2007]… We can understand … risk-return relationships, and when the denominator, the risk, becomes so much more heightened than what you expect to achieve on our return, it didn't make sense for us to continue with a trade such as that."); *id* at 196:18-198:9 (discussing how SSgA risk management department "repeatedly" raised the issue of how the numerous SSgA Bond Funds that had invested (directly or indirectly) in SSgA's LDBF Fund had "too much undiversified risk" in a particular segment of the subprime mortgage market from February 2007 on); *id* at 64:22-68:19) (how SSgA portfolio managers actually ***significantly increased*** their already large and excessive exposure to one particularly risky subprime security (the "ABX BBB") in June 2007 ***without advising SSgA's risk management department***).  *See also id.* at 213:17-24 (discussing Armstrong email of 7/2/2007 to senior SSgA fixed income executive Paul Greff, which stated that "by ignoring stop losses, we are undermining the fundamental premise of [SSgA's] risk budgeting system.").

7

> **3.    SSgA's Efforts To Blame the Trustees for Failing to Identify and Respond to SSgA's Mismanagement Sooner Is Based On Its Profound Misunderstanding of ERISA § 405(d)(1).**

As explained in the Trustees' MTD Mem. at 19-20, once SSgA was appointed as investment manager, under ERISA §405(d)(1) the Trustees were relieved of the duty "to invest or otherwise manage any asset" that was subject to SSgA's management.[5] In response, SSgA blithely asserts that the Trustees breached their duties in 2007 by failing to mitigate losses or "reconsider" their decisions to invest with SSgA or its Bond Funds. Opp. Br. at 21. However, a duty to mitigate losses or to reconsider investment decisions is exactly the type of duty that a fiduciary who appoints an investment manager is relieved of under ERISA §405(d)(1), which expressly states that an appointing fiduciary is not "under an obligation to invest or otherwise manage any asset" that is subject to the management of an investment manager. Any action that the Trustees might have taken to "mitigate losses" or "reconsider investment decisions" would have involved reinvesting or otherwise managing the assets that were under SSgA's management.

None of the authorities cited by SSgA indicates otherwise. Neither *Whitfield v. Cohen*, 682 F. Supp. 188 (S.D.N.Y. 1988), nor *Pub. Serv. Co. of Colo. v. Chase Manhattan Bank*, *N.A.*, 577 F. Supp. 92 (S.D.N.Y. 1983), nor *Glennie v. Abitibi-Price Corp.*, 912 F. Supp. 993 (W.D. Mich. 1996) involved situations where an investment manager was appointed, and hence did not implicate ERISA § 405(d)(1). In contrast, ERISA § 405(d)(2), 29 U.S.C. § 1105(d)(2), *Rubin v. Valicenti Advisory Servs., Inc.,* 326 F. Supp. 2d 427 (W.D.N.Y. 2004), and *Salomon Bros.*, *supra*, all simply confirm that ERISA § 405(d)(1) does not relieve a fiduciary from liability for its *own acts*. However, SSgA does not point to any actions of any Plan Trustee that caused a

---

[5] SSgA misstates the Trustees' position by asserting that the Trustees construe the appointment of SSgA as relieving them of all fiduciary duties. *Compare* Opp. Br. at 22 *with* MTD Mem. 19-20 (noting that appointment of SSgA only relieved the Trustees of their obligation to manage the investment of those assets that it had duly entrusted to an ostensibly qualified professional investment manager (SSgA))

8

loss, but, *at most*, alleges only *inaction* by certain unidentified Trustees.[6]  But it is elemental that for a *failure to act* to support a claim, there must be an underlying duty to act -- and such a duty is expressly disclaimed by ERISA § 405(d)(1).

Finally, to the extent that *Harley v. Minn. Mining & Mfg. Co.*, 42 F. Supp. 2d 898 (D. Minn. 1999) suggests the existence of a duty to continually assess an investment manager's *strategy* that goes beyond the limitations of § 405(d)(1), it is an outlier case that is inconsistent with both the statute and Second Circuit's decision in *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987) – a case that SSgA ignores but which gives effect to ERISA § 405(d)'s plain meaning.  Moreover, the Plan Trustees have ***never*** attacked the Bond Funds' stated investment strategy, which was to meet or modestly exceed that of well established benchmark indices within the constraints of purportedly vigorous risk management practices. *See e.g.,* MTD Mem. at Table A.  Instead, it was SSgA's imprudent execution of that strategy that caused the catastrophic losses.[7]

### 4.     SSgA's Does Not, and Cannot, Allege Breach of a Duty to Monitor.

To assert a claim for breach of a duty to monitor, SSgA must plead that it, as the monitored fiduciary, was imprudent.  MTD Mem. at 21-22.  SSgA appears to acknowledge as much, stating that rather than bringing a claim for failure to monitor, it "instead seeks recovery ... for the improper selection and maintenance of investments."  Opp. Br. at 23.  But even if SSgA

---

[6] The Trustees reiterate all their arguments as to the conclusory and unspecified nature of SSgA's "factual" allegations concerning alleged failures to mitigate damages.  MTD Mem. at 9-11.

[7] SSgA's argument that it was the delay of certain Plan Trustees in "getting out" of SSgA's Bond Funds – rather than SSgA's own gross misconduct – that was the "cause" of various Plans' losses is both absurd and implausible on its face.  First, on October 5, 2007, SSgA's President and CEO (who was subsequently fired), wrote a letter to SSgA's remaining clients in which he blamed their losses on that group of SSgA clients which had engaged in "panicked selling" earlier that summer.  *See Letter*, SSgA President and CEO William Hunt to SSgA's Valued Clients, dated October 5, 2007 (Loeser Supp. Decl. Ex. B).  In other words, in October 2007 SSgA was blaming those clients who got out for the losses of those who stayed in, but now is blaming (and suing) those who stayed for causing their own losses.  Even if SSgA can't get its story straight as to whether it was the "early panic seller clients" or the clients who "waited too long" who are "responsible" for the Bond Funds' losses, the reality is that that by the late summer of 2007 catastrophic loss for *all* of SSgA's Bond Funds was inevitable, and at its core SSgA's counterclaims amount to nothing more than a disingenuous attempt to shift a portion of the responsibility for this overall loss to SSgA Plan clients who, *indisputably,* had absolutely *nothing* to do with any of the specific "toxic asset" investment decisions or derelictions of prudent risk management practices that caused SSgA's Bond Funds to meet with disaster.

9

had brought a failure to monitor claim, it would fail for the reasons discussed above. *See also* MTD Mem. 21-22.

### III.  CONCLUSION

Based on the foregoing, the Plan Trustees respectfully request that the Court dismiss SSgA's Amended Counterclaims.

Dated: April 30, 2009                                    Respectfully submitted,


s/ Derek W. Loeser
**(On behalf of all Counsel for Named Class Plaintiffs, with permission)**
**KELLER ROHRBACK LLP**
Lynn L. Sarko (LS-3700)
Derek W. Loeser (DL-6712)
Karin B. Swope (KS-3369)
Laura R. Gerber
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Gary Gotto
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

David Preminger (DP-1057)
275 Madison Avenue, Suite 1425
New York, NY 10016
Telephone: (212) 878-8890
Facsimile: (212) 878-8895

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
William C. Fredericks (WF-1576)
Jonathan Harris (JH-3047)
Jerald D. Bien-Willner
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444


**BERMAN DEVALERIO**
Jeffrey C. Block (JCB 0387)
Patrick T. Egan
Kristen D. Tremble
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

10