**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE STATE STREET BANK AND
TRUST CO. ERISA LITIGATION

This Document Relates To:
No. 07 Civ. 9319
No. 07 Civ. 9687
No. 08 Civ. 0265

MDL DOCKET No. 1945
Master File No. 07-cv-8488 (RJH)
ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     ARGUMENT ............................................................................................. 2

      A.    The Applicable Legal Standards .......................................................... 2

      B.    The Proposed Settlement Is The Product Of A Rigorous And
           Adversarial Process, And Is Accordingly Entitled To A Threshold
           Presumption Of Fairness ...................................................................... 2

      C.    The Settlement Is Also Fair, Reasonable And Adequate Under The
           *Grinnell* Factors .................................................................................. 3

           1.    The Complexity, Expense And Likely Duration Of
                  Litigation ................................................................................. 4

           2.    The Class's Reaction To The Settlement .................................. 6

           3.    The Stage Of The Proceedings And The Extent Of
                  Discovery Taken ...................................................................... 8

            4.    The Risks Of Establishing Liability ......................................... 8

           5.    The Risks Of Establishing Damages ...................................... 10

           6.    The Risks Of Maintaining The Class Action Through Trial ... 10

           7.    The Reasonableness Of The Settlement In Light Of The
                  Best Possible Recovery And The Attendant Risks Of
                  Litigation ............................................................................... 11

      D.    The Court's Prior Class Certification Order Should Be Confirmed ..... 12

III.    The Proposed Notice Program Satisfies Rule 23 And Due Process ................................. 12

IV.     THE PLAN OF ALLOCATION TREATS ALL CLASS MEMBERS
       FAIRLY AND SHOULD ALSO BE APPROVED ......................................... 14

V.      CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

CASE                                                                                          PAGE

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 179 (2d Cir. 1987)..................................................................................14

*In re AOL Time Warner ERISA Litig.*,
   No. 02-8853, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ..................................................3

*Bello v. Integrated Res., Inc.*,
   No. 88-1214, 1990 WL 200670 (S.D.N.Y. Dec. 4, 1990) ......................................................11

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ................................................................................14

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)....................................................................... passim

*Curtiss-Wright Corp. v. Helfand*,
   687 F.2d 171 (7th Cir. 1982) ................................................................................14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................3

*Foe v. Cuomo*,
   700 F. Supp. 107 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989)................................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................4

*Gordon v. Hunt*,
   117 F.R.D. 58 (S.D.N.Y. 1987) .............................................................................13

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).............................................................................14

*Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*,
   858 F. Supp. 1243 (E.D.N.Y. 1994) .........................................................................4

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) ......................................................................15

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ........................................................................10, 11

*In re PaineWebber Ltd. P'ships. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................................8

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..................................8, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................2, 4, 6

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)....................................................................................4

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004)................................3, 5

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................2, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ....................................................................1, 6, 12, 13, 14

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiffs Alan Kober (as Trustee of the Andover Companies Employee Savings and Profit Sharing Plan); Warren Cohen (as Trustee of the Unisystems, Inc., Employees' Profit Sharing Plan); and John L. Patenaude, (as a member of the Nashua Corporation Pension Plan Committee) (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this Memorandum in support of their motion for an Order and Final Judgment granting final approval of the proposed Stipulation of Settlement (the "Stipulation") and Plan of Allocation.

Lead Plaintiffs set forth the facts relevant to this motion and the history of their litigation with State Street Bank & Trust Company ("State Street") in greater detail in the accompanying Joint Declaration of William C. Fredericks, Derek W. Loeser and Patrick T. Egan ("Joint Declaration" or "Joint Decl."). The Joint Declaration is an integral part of this submission, and for the sake of brevity is incorporated herein by reference. Unless otherwise indicated, capitalized terms used herein have the same meaning as ascribed to them in the Stipulation.

## I.   PRELIMINARY STATEMENT

The proposed Settlement reflects an excellent result for the Class, as it recovers approximately 58.05% of the third quarter "Capital Losses" that each Included Plan suffered as a result of State Street's alleged mismanagement of the various Bond Funds in which the Plans had invested. Joint Decl. at ¶ 3. The Settlement, however, did not come easily. To the contrary, this Action was vigorously litigated and hard-fought throughout, involved the production of over 13 million pages of documents, the taking of dozens of depositions, the briefing of numerous contested motions, and the expenditure of substantial sums on expert witnesses. In short, the Settlement was only reached after experienced counsel on both sides had developed a thorough understanding of the strengths and weaknesses of their respective positions – and indeed it was only reached after a series of protracted off-again, on-again settlement negotiations conducted

over a nine month period under the auspices of a highly experienced mediator, the Hon. Nicholas H. Politan (U.S.D.J., Ret.).

For the reasons set forth herein and in the accompanying Joint Declaration, the proposed Settlement satisfies all applicable criteria for approval, including the well-established factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"). Accordingly, the proposed Settlement and Plan of Allocation should be approved as fair, reasonable and adequate in all respects.

## II.    ARGUMENT

### A.    The Applicable Legal Standards

Courts favor the settlement of complex class action litigation because it saves time and money and enables the parties to resolve disputes on their own timetable and terms. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (citation and internal quotes omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) ("public policy favors settlement, especially in the case of class actions").

The time-honored standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether the proposed settlement is "fair, adequate, and reasonable." *Wal-Mart,* 396 F.3d at 116 (citation omitted). Here, the Settlement easily satisfies this standard.

### B.    The Proposed Settlement Is The Product Of A Rigorous And Adversarial Process, And Is Accordingly Entitled To A Threshold Presumption Of Fairness

A district court's consideration of a settlement's fairness typically begins with a threshold examination of "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "A court must

ensure that the settlement resulted from 'arm's-length negotiations' and that plaintiff's counsel engaged in the discovery 'necessary to effect representation of the class's interest.'"   *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *5 (S.D.N.Y. Oct. 18, 2004) (quoting *D'Amato,* 236 F.3d at 85).   In this regard, numerous courts have noted that significant pre-negotiation discovery and motion practice, particularly when combined with an arms-length negotiation process conducted under the auspices of and experienced mediator, provide strong evidence of the absence of any fraud or collusion.   *See In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at * 5 (S.D.N.Y. Sept. 27, 2006) (citations omitted).

Here, the negotiation process that culminated in the proposed Settlement was difficult and hard fought, and involved three separate face-to-face mediation sessions (one of which lasted two days) conducted under the auspices of Judge Politan.  Joint Decl. at ¶¶ 47-51.  Moreover, the Settlement was reached only after nearly two years of hard fought litigation, including extensive document and deposition discovery.   Joint Decl. at ¶¶ 26-43 (detailing steps taken by Lead Counsel during the course of litigation).  Moreover, Lead Counsel had worked with their experts on liability and damages from the early stages of the litigation, first to help develop appropriate discovery strategies and then to analyze the resulting information obtained through discovery.

In sum, as the Court has also had first-hand occasion to observe in recent conferences with the Parties, there can be no serious dispute that this Settlement is the product of arms'-length negotiations between experienced and sophisticated counsel on both sides.  Accordingly, the Settlement is entitled to a threshold presumption of fairness.  *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004).

C.   **The Settlement Is Also Fair, Reasonable And Adequate Under The *Grinnell* Factors**

In *Grinnell*, the Second Circuit identified the following nine factors that courts should consider in deciding whether a proposed class action settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted); *see also Wal-Mart*, 396 F.3d at 117.

"In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Global Crossing*, 225 F.R.D. at 456 (citation omitted). Moreover, in applying the *Grinnell* factors, a court should not substitute its judgment for that of the parties who litigated the case and negotiated the settlement. *Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1266 (E.D.N.Y. 1994). The court should therefore not conduct a mini-trial of the merits, recognizing that the purpose of settlement is to avoid a judicial resolution of contested matters. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *see also Grinnell*, 495 F.2d at 462 (explaining that the court should "stop short of the detailed and thorough investigation that it would take if it were actually trying the case").

For the reasons set forth below, plaintiffs respectfully submit that the *Grinnell* factors plainly and decisively favor approval of the Settlement.

## 1.     The Complexity, Expense And Likely Duration Of Litigation

Many courts have recognized the complexity of ERISA breach of fiduciary duty claims. In *WorldCom*, upon consideration of a proposed ERISA settlement, Judge Cote noted that there is a "general risk inherent in litigating complex claims such as these to their conclusion." *WorldCom*, 2004 WL 2338151, at *6 (approving settlement).

This case, even more than many other ERISA class action cases, was both broad in scope and unusually complex. As detailed in the accompanying Joint Declaration, this Action involved

-4-

numerous contested issues relating to both liability and damages.  In addition, the case was exceptionally complex from a factual and legal perspective, as it centered around State Street's misconduct in managing highly complex Bond Fund portfolios which were heavily invested in subprime asset-backed securities and related derivative instruments and other esoteric securities, many of which were significantly leveraged.  Proving that State Street's relevant portfolio and risk management systems and practices were imprudent and resulted in actionable breaches of fiduciary duty under ERISA with respect to the Included Plans would have also likely been highly dependent on the outcome of a protracted – and very expensive – "battle of the experts" at trial.

In terms of the duration and cost of additional litigation likely avoided as a result of the proposed Settlement, Lead Plaintiffs had already reviewed over thirteen million pages of documents and had taken or defended twenty-five depositions.  Nonetheless, given the complexity of the matters at issue in this Action, it is likely that dozens of additional depositions would have been required to complete remaining merits discovery – and formal expert discovery (including the exchange of detailed expert reports, expert depositions and likely rebuttal reports and rebuttal depositions) had not yet even begun.  The proposed settlement also obviates the time and costs of additional briefing on class certification, as well as the time and costs that would be inherent in briefing potential summary judgment motions.

Moreover, a trial in this case would likely have lasted several weeks, and involved dozens of fact and expert witnesses.  In addition, there would be potentially difficult and complex procedural issues relating to whether certain issues that this Action has in common with the related *Prudential* action – also originally filed in this Court – would be tried separately or concomitantly.  And finally, even if the Class were to recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any actual

recovery for years, with no assurance that the final result of any appeals would be a recovery as large as that obtained under the Settlement – and indeed no assurance that they would recover at all.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003).

Given the myriad complexities presented by this Action, as well as the likely additional time and expense necessary to litigate them through trial and appeals, the first *Grinnell* factor weighs decidedly in favor of approving the Settlement.

<h3 style="text-align:center">2.     The Class's Reaction To The Settlement</h3>

The reaction of the Class to a settlement is a significant factor to be weighed in considering the settlement's fairness, reasonableness and adequacy.  *See Wal-Mart*, 396 F.3d at 119 ("the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor").

Pursuant to this Court's Preliminary Approval Order, on October 28, 2009 the long-form Notice (the "Notice") was mailed to each of the eighty-three included plans that are members of the Class, care of their named fiduciaries at the fiduciaries or their Plan's last known address as provided by State Street.  In addition, the Publication Notice was published in *The Wall Street Journal* and distributed electronically and made available over the Internet via *PR Newswire*. The notice program was appropriate under the circumstances and more than complies with Fed. R. Civ. P. 23 and due process, as it was plainly calculated to ensure individual notice to each of the Included Plans (and their named fiduciaries) that comprise the Class.[1]  *See* Keough Decl., attached as Exhibit A to the Joint Decl.

---

[1] In the Notice materials distributed to each of the Included Plans and their named fiduciaries, the named fiduciaries were also directed to post the contents of the Court-approved Summary Notice on their Plan's website, or to otherwise make available the contents of the Summary Notice to their Plan's participants and beneficiaries.

Here, the Settlement has been well received by the Class. Although the February 10, 2010 deadline for objections has not yet passed, to date, there have been no objections to the Settlement. Moreover, of the eighty-three included plans – each an institutional investor with millions of dollars of assets, and, generally, separate counsel and outside advisors – only three Plans (each sponsored by the same corporate conglomerate and collectively referred to herein as "RJR") have requested exclusion from the Settlement. However, RJR's situation is unique, because (a) it had a pre-existing dispute with State Street regarding an alleged overpayment in connection with its redemption of certain investments from the Bond Funds, and (b) the Settlement itself contained special terms, applicable only to RJR, limiting its ability to actually collect its share of the proceeds of the Settlement in light of its "overpayment" dispute with State Street. *See* Stipulation ¶9.5. Accordingly, RJR's decision to opt out, under unique circumstances that did not apply to any other Class member, should have little or no weight in the Court's decision with respect to approving the Settlement – especially where *all* of the *other* Included Plans (and their named fiduciaries) chose to remain in the Class.[2]

In sum, "[t]he strong favorable reaction of the class is overwhelming evidence that the Settlement is fair, reasonable and adequate." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-165, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).

---

[2] Separately, three class members have filed challenges to the calculation of their Plan's Capital Losses. These challenges, however, do not involve objections to the approval of the Settlement as a whole or the Plan of Allocation, but rather dispute the third quarter 2007 Capital Loss calculations under the Settlement based on the data provided by State Street. Class Counsel has conferred with the Class Members who filed the challenges in an effort to explain the bases of the calculations. To the extent that any of the challenges is not withdrawn or otherwise resolved prior to Final Approval, Lead Plaintiffs respectfully submit that these challenges can and should be resolved expeditiously through the binding arbitration process under the auspices of Judge Politan that is specifically provided for under ¶5.5 of the Stipulation.

### 3.      The Stage Of The Proceedings And The Extent Of Discovery Taken

As previously noted, the Settlement in this case was reached only after nearly two years'

worth of vigorously contested litigation, and only after Lead Counsel had developed – through

discovery, the mediation process, and extensive consultations with their own experts – a

thorough understanding of the various strengths and weaknesses of Plaintiffs' claims.  Indeed, in

terms of fact discovery alone, as of the period that the Settlement was negotiated in the late

Spring and early summer of 2009, Plaintiffs had already reviewed thirteen million pages of

documents, took or defended twenty-five depositions, successfully litigated various contested

discovery matters, defeated two motions to transfer, briefed a motion for class certification, and

filed and fully briefed a motion to dismiss the Counterclaims that State Street had brought

against the named plaintiff Plan trustees.  Given the stage of this litigation, the Court can

reasonably conclude that the Parties have "a clear view of the strengths and weaknesses of their

cases."  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *3

(S.D.N.Y. May 14, 2004) (quotation omitted), and that neither side entered into the proposed

Settlement prematurely or without an adequate understanding of the range of possible outcomes

at trial.

### 4.      The Risks Of Establishing Liability

In assessing the Settlement, the Court should also balance the benefits afforded the Class,

including the immediacy and certainty of a proposed recovery, against the uncertainties, risks

and expense of continuing litigation.  *See Grinnell*, 495 F.2d at 463.  The fairness and adequacy

of the Settlement are further strengthened here when one weighs the immediate benefits of a

58% recovery against the litigation risks that Plaintiffs would have had to overcome in order to

establish liability and damages at trial, and to prevail on appeal.

Although Lead Plaintiffs believe that they would have been able to establish that State Street breached its fiduciary duties in numerous respects with respect to its management of the Funds at issue, State Street would have likely offered extensive expert testimony to the effect that its portfolio and risk management systems were adequate and met industry standards, that State Street exercised an appropriate level of care in managing the Funds' assets, and that State Street is not responsible for any of the Included Plan's investment losses because any such losses (according to State Street) were the result of unprecedented, sudden and unforeseeable changes in financial markets (notably the market for subprime asset-backed securities). In sum, this case would have likely boiled down largely to a "battle of the experts" and the fact finder's reaction to the respective expert witnesses proffered by each side – matters that are inherently uncertain, particularly in a factually complex case.

In addition, as set forth in its Counterclaims, State Street also would have argued that even if it was partly liable for certain losses, the plaintiff Plan trustees themselves (and/or other Plan fiduciaries, such as investment consultants hired by various Plans) were primarily or substantially more at fault than State Street – thereby, in their view, (a) raising individual issues of fact that potentially threatened Plaintiffs' ability to maintain this litigation as a class action and (b) threatening to bog down the ultimate resolution of this Action in "satellite" counterclaim litigation (and possibly satellite cross-claim litigation).

Although Plaintiffs believe that they would have ultimately been able to prevail at trial and on appeal, there was a meaningful risk that if this case were litigated to a final judgment the Plaintiffs would ultimately recover less than what they would recover under the proposed Settlement – or nothing at all. The risks of continued litigation, especially when compared to the substantial and immediate monetary benefits of Settlement, therefore also weigh heavily in favor of approval of the Settlement.

-9-

### 5.      The Risks Of Establishing Damages

Even if Plaintiffs were successful in proving liability and certifying a class, the amount of damages suffered by Class Members would have been vigorously contested at trial.  Plaintiffs would have had to prove that State Street's investment decisions and mismanagement of the Bond Funds did in fact constitute breaches of their fiduciary duties to the Included Plans, and that those breaches of fiduciary duty caused the Included Plans' to suffer actual harm.  Plaintiffs would have also had to quantify the Class's damages for the Court.  However, as noted above, State Street would have likely argued, through its experts, that the decline in the performance of the State Street-managed Bond Funds (in which the Plans had invested) was not due to mismanagement on its part, but was a result of an unprecedented and unexpected meltdown in the subprime mortgage market that was beyond State Street's ability to control or predict.  This too would have involved an extensive (and expensive) battle of the experts, with no guarantee that the ultimate recovery would exceed the recovery of 58% of each respective Plan's Capital Loss provided for under the Settlement.

Although Plaintiffs believe they would have also been able to prove substantial damages, they are also aware that proof of damages also involves risks that settlement avoids.  *Compare In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a only a small percentage of total damages sought because the magnitude of damages often becomes a "battle of experts…with no guarantee of the outcome"). This factor, like the others, also weighs in favor of the proposed Settlement.

### 6.      The Risks Of Maintaining The Class Action Through Trial

For all of the reasons set forth in their motion for class certification that was filed prior to the parties' reaching a settlement, Lead Plaintiffs believe this case is appropriate for class certification.  In the course of this litigation, however, State Street offered various arguments in

opposition to class certification.  For example, State Street argued that the proposed Class would be unwieldy because it included forty funds with different portfolio managers and different risk profiles, objectives and returns.  Moreover, State Street also argued that different Included Plans had differing investment objectives and responded differently to certain events as the market for subprime asset-backed securities declined during the Class Period, thereby potentially raising individual issues of proof.  Because the proposed Settlement eliminates the risk that a certifiable class could not be maintained through trial, this factor also weighs in favor of Settlement.[3]

### 7.   The Reasonableness Of The Settlement In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation

The last two *Grinnell* factors consider whether the settlement is within a range of reasonableness compared to a "possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.  In evaluating a proposed settlement, a court is not required to engage in a trial on the merits to determine the prospects of success, *Milken*, 150 F.R.D. at 54, but rather need only determine whether the Settlement falls within a "range of reasonableness."  *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (citations omitted).

Here, the proposed Settlement represents approximately 58% of the Capital Losses suffered by the Included Plans during the third quarter of 2007 – the period during which the State Street-managed Bond Funds at issue incurred the vast bulk of the losses at issue in this Action.[4]  Although Lead Plaintiffs would have sought to obtain an even larger recovery at trial

---

[3] The defendants' ability to withstand a greater judgment at trial is another factor in determining whether a settlement is reasonable.  *Bello v. Integrated Res., Inc.*, No. 88-1214, 1990 WL 200670 (S.D.N.Y. Dec. 4, 1990) (risk that plaintiffs would be unable to recover even if victorious is a strong argument supporting settlement).  Here, this factor was not a consideration as Plaintiffs do not question State Street's ability to withstand a larger judgment.

[4] In fact, as noted in the Joint Declaration at n.1, on an aggregate basis the total Capital Losses suffered by the Included Plans on their investments in State Street-managed Bond Funds were higher when calculated based only on their investment performance for the third quarter of 2007,

(including prejudgment interest and recoveries based on more generous damages theories), State Street would have continued to argue that it was liable for *no* losses, and that even if it were liable its liability would amount to only a small portion of the Capital Losses suffered by the Included Plans during 2007.

Given the time-value of money, the probability of lengthy litigation and appeals in the absence of a settlement, and the risk that the Class might ultimately fail to obtain a better result even if the case were litigated to a final non-appealable judgment, the final *Grinnell* factor also weighs strongly in favor of approval of the Settlement.

### D.    The Court's Prior Class Certification Order Should Be Confirmed

The Court previously preliminarily certified the Class for purposes of the Settlement.  As previously set forth in plaintiffs' motion for preliminary approval, all of the requirements of Rule 23 are satisfied.  Since the Court's preliminary approval, no Class Member has objected to certification of the Class nor raised any issue that calls into question the Court's prior Order. There have been no intervening events since the entry of the Preliminary Approval Order. Therefore, the Class, as set forth and described in the Preliminary Approval Order, should be finally certified by the Court.

### III.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Rule 23(e) requires that once a class action settlement has been reached, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Further, Rule 23 provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

---

as compared to what they would have been if calculated based on investment performance over the entire Class Period.

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The generally accepted method of providing notice to class members is by direct mail and publication in newspapers. *See Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice is "long-accepted norm in large class actions.").

In accordance with the Court's Preliminary Approval Order, the Class Members (namely, the Included Plans and their named fiduciaries) have been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections. The notice plan fully informed the Included Plans, through their named fiduciaries, of the Action and of the proposed Settlement, and of the various deadlines for them to opt-out or to file objections. *See* Joint Decl. at ¶¶57-71; Keough Decl; Ex. A to Joint Decl.

Here, the Parties' notice program as approved by the Court and implemented by Co-Lead Counsel consisted of: (1) the Class Notice, which was mailed to the last known address of each named fiduciary of each Included Plan; and (2) the Publication Notice, which was published in the *PR Newswire* and *The Wall Street Journal*; and (3) creating a dedicated website administered by the claims administrator to provide information to Class members and providing the Class Notice, the Publication Notice, and a toll-free telephone number through which any unanswered questions regarding the Settlement could be raised. *See* Keough Decl., Ex. A to Joint Decl.

The Notice forms and methods employed here is "fairly, accurately, and neutrally describe the claims and parties in the litigation[,]…the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989). Accordingly, the Notice provided to the Class satisfies the requirements of due process and Fed. R. Civ. P. 23.

IV.     THE PLAN OF ALLOCATION TREATS ALL
        CLASS MEMBERS FAIRLY AND SHOULD ALSO BE APPROVED

        In connection with final approval of the Settlement, Lead Plaintiffs also request that the

Court approve the proposed Plan of Allocation for the Net Settlement Fund.

        A district court has broad supervisory powers with respect to allocating a class action

settlement and wide latitude in determining what to consider in approving a settlement plan of

allocation. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (citation

omitted).  The Court has discretion in allocating settlement funds, and a proposed plan of

allocation will be upheld unless there has been an abuse of discretion. *Curtiss-Wright Corp. v.

Helfand*, 687 F.2d 171, 175 (7th Cir. 1982).  This is because allocation of a fixed settlement fund

among competing complainants "is a traditional equitable function, using 'equity' to denote not a

particular type of remedy, procedure, or jurisdiction but a mode of judgment based on broad

ethical principles rather than narrow rules." *Id.* at 174 (internal citations omitted).

        Like the Settlement itself, the Plan of Allocation must be fair, reasonable and adequate.

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).  As such, it should

not be overly complex, and it should reflect the class members' respective interests in the

litigation:  accordingly, "a plan of allocation that reimburses class members based on the type

and extent of their injuries is reasonable."  *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194

F.R.D. 166, 184 (E.D. Pa. 2000) (citation omitted).  Similarly, a plan of allocation is fair and

reasonable as long as it has a "reasonable and rational basis." *Veeco*, 2007 WL 4115809, at *13.

Moreover, courts give "substantial weight to the opinions of experienced counsel" regarding the

fairness of an allocation.  *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196

(D. Kan. 2000).

        Here, the Plan of Allocation was designed to achieve an equitable distribution of the Net

Settlement Funds to Class Members.  It is the product of Lead Counsel's investigation and

-14-

discovery, consultation with their experts, and their careful review and analysis of information obtained from State Street.  Lead Counsel believe that the Plan of Allocation is a fair, adequate, and reasonable method to allocate the Net Settlement Fund among Included Plans.  Notably, to date, no Included Plan has objected to the Plan of Allocation.

The Plan of Allocation was described in the Class Notice approved by the Court on October 28, 2009, and mailed to Class Members on November 11, 2009, pursuant to the preliminary approval Order.  As stated in that Class Notice, the Plan of Allocation provides for the allocation of the Net Settlement Fund among the Included Plans on a *pro rata* basis, based on each such Included Plan's respective "Capital Losses," that is, the losses that it suffered on its capital investments in the respective Bond Funds during the third quarter of 2007.  Under the Plan of Allocation, each Included Plan will receive approximately 58.05% of its total third quarter Capital Losses, less that Plan's *pro rata* share of (a) taxes on interest earned on the Gross Settlement Fund, (b) costs of notice and administration, and (c) Court-awarded attorneys' fees and expenses.

In sum, the Plan of Allocation is recommended by experienced and competent counsel, based on consultation with their experts and on relevant data obtained from State Street.  Moreover, following issuance of the Notice to all Class Members, there has been no objection to the Plan of Allocation.  These facts weigh heavily in support of a finding that the Plan of Allocation is fair, reasonable and adequate.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable and adequate, approve the Plan of Allocation, and otherwise fully and finally dismiss and resolve this Action in accordance with the terms of the Parties' Stipulation.

Respectfully submitted this 27th day of January, 2010.

BERNSTEIN       LITOWITZ       BERGER
   & GROSSMANN LLP

By: ___*/s/ William C. Fredericks*___
      William C. Fredericks

Max W. Berger
William C. Fredericks
Jerald D. Bien-Willner
1285 Avenue of the Americas
New York, NY 10019
Telephone: 212-554-1400
Facsimile: 212-554-1444

KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Derek W. Loeser
Gary A. Gotto
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206-623-1900
Facsimile: 206-623-3384

BERMAN DEVALERIO
Glen DeValerio
Jeffrey C. Block
Patrick T. Egan
One Liberty Square
Boston, MA 02109
Telephone: 617-542-8300

*Co-Lead Counsel for the Plaintiffs*