UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | MDL No. 1945 |
| PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE STREET BANK & TRUST CO. and STATE STREET GLOBAL ADVISORS, INC<br><br>    Defendants. | No. 07 Civ. 8488 (RJH) |

**STATE STREET'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern District of New York, defendants State Street Bank and Trust Company ("SSBT") and State Street Global Advisors, Inc. ("SSgA, Inc.") (collectively, "State Street") hereby submit the following statement of undisputed material facts in support of their cross-motion for partial summary judgment.

## PRIAC'S INVESTMENTS WITH SSGA

1. Plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC") offered separate accounts invested in two unregistered collective investment trust funds managed by State Street: the Intermediate Bond SL Series Fund ("IBF") and the Government Credit Bond Fund ("GCBF") (collectively, the "Bond Funds").  *See* Maher Decl. Ex. 1, ¶¶ 12-18.  PRIAC offered both Bond Funds as part of its "Manager of Managers" ("MOM") program.  *Id.*; Ex. 2 at pp. 5-6.  PRIAC provided analytical and reporting services on the Bond Funds through its "Due Diligence Advisor Program" (the "DDA Program").  *Id*; Ex. 3; Ex. 4 at pp. 3-6.

## PRIAC'S FIDUCIARY DUTIES

2. PRIAC served as an intermediary between State Street and its clients.  Under the MOM program model, information was to flow from State Street to PRIAC to the Plans, with PRIAC serving as the Plans' source of information regarding the Bond Funds.  *See* Maher Decl. Ex. 5, ¶¶ 18, 28.

3. Historically, and pursuant to PRIAC policy, State Street did not known the identity of PRIAC's clients.  State Street could not contact them directly.  Maher Decl. Ex. 6; Ex. 7 at p. 175:4 – 175:15; *see also* Ex. 8 at p. 482:8 – 482:18.

4. PRIAC concedes it owed fiduciary duties under ERISA to its clients within the MOM Program.  Maher Decl. Ex. 1, ¶ 14.  Among its duties, "PRIAC's primary duties were to

convey information about the funds from the investment managers to the Plans and assist the Plan Sponsors in their due diligence activities." Ex. 5, ¶ 28.

5. In furtherance of its effort to comply with that obligation, PRIAC undertook to provide "[b]oth regular reports and updates, along with interim reports on important developments. . . ." Maher Decl. Ex. 2 at p. 25; Ex. 5, ¶ 28. PRIAC pledged to provide plan sponsors and participants with: (i) "Quarterly DDA Reports"; (ii) "Competitive Analysis"; (iii) "White Papers on current investment topics"; (iv) "Investment Review Meetings with Prudential Client Service Teams"; (v) "Fund Fact Sheet[s]"; (vi) "Daily Performance"; and (vii) "Employee communication materials." Maher Decl. Ex. 2 at p. 25. PRIAC also undertook to provide its clients with "ad hoc reports relative to investment-related issues." Maher Decl. Ex. 2 at App. D1.

6. PRIAC also undertook to provide reporting and "rigorous and objective analysis" on the Bond Funds. *Id.*

7. PRIAC's clients understood and expected that PRIAC had fiduciary duties to keep them informed regarding their investments. For example, one client, Bekaert, claimed that it "retained Prudential as its co-fiduciary and investment advisor." Maher Decl. Ex. 9 at p. 5280254. A client consultant, Andrew Basch of the Citi Family Office, stated his belief on August 29, 2007 that "Prudential in their Fiduciary responsibility and in their Due Diligence process has failed the client." Maher Decl. Ex. 10 at p. 11572.

8. For its services, State Street charged PRIAC a fee equal to 10 basis points on the first $50,000,000 of its investment, 8 basis points on the second $50,000,000, and 6 basis points on anything above that. Maher Decl. Ex. 11. PRIAC charged a total of 35 basis points for both

Bond Funds.  Maher Decl. Ex. 12; Ex. 13.  Thus, PRIAC's fee for its own services was anywhere between 25 and 29 basis points larger than State Street's.  *Id.*

### PRIAC FAILED TO INFORM ITS CLIENTS OTHER THAN CIGNA OF THE BOND FUNDS' EXPOSURE TO DEVELOPING SUBPRIME TURMOIL IN 2007

9.      State Street's regular reporting disclosed current information regarding the Bond Funds' active management and overweight exposure to ABS.  State Street sent PRIAC monthly performance reports, quarterly commentary, and quarterly characteristics reports that showed the Bond Funds' current compositions versus their benchmarks.  The reporting disclosed the Bond Funds' use of leverage and increasing exposure to ABS.  *See*, *e.g.,* Maher Decl. Ex. 14 at pp. 472460, 472466, 472468; *see also* Exhs. 15 – 29.

10.     Although PRIAC had access to more up-to-date data, its quarterly DDA reports and Fact Sheets emphasized one-, three-, and five-year performance and sector allocation data that did not show short-term changes in the Bond Funds' compositions versus their benchmarks.  Maher Decl. Ex. 5, ¶ 30  *see also* Ex. 4; Ex. 7 at pp. 180:22 – 181:4 ; Exhs. 30 - 33.

11.     State Street provided PRIAC with additional information regarding the Bond Funds' subprime exposure in the spring of 2007.  On April 11, 2007 State Street sent PRIAC commentary for the first quarter of 2007 attributing the Bond Funds' underperformance to ABS subprime exposure, and adding that, despite that underperformance, State Street would "continue to hold [its] asset-backed exposure."  Maher Decl. Ex. 28 at p. 274915.  The commentary also described both Bond Funds as "active."  *Id.*

12.     On June 21, 2007, PRIAC forwarded the April 11, 2007 State Street commentary to CIGNA in response to questions it had posed about IBF.  Maher Decl. Ex. 28; Ex. 35 at p. 5829; Ex. 36 at p. 36:14-24; Ex. 37.

13. On or before June 28, 2007, CIGNA noticed that the State Street commentary forwarded by PRIAC referred to IBF as "active," while PRIAC's Fact Sheets and DDA materials referred to it as "passive." Maher Decl. Ex. 38; *see also* Ex. 39. PRIAC, on behalf of CIGNA, began requesting additional information from State Street regarding the IBF. Maher Decl. Ex. 7 at pp. 85:9 – 85:16, 292:4 –293:15; *see also* Ex. 40 at pp. 175:13 – 176:4.

14. On June 29, 2007, State Street sent PRIAC characteristics data as of May 31, 2007. Maher Decl. Ex. 41. That same day, PRIAC forwarded this information to CIGNA. Maher Decl. Ex. 39. There is no evidence that PRIAC sent this information to any other clients. *See* Maher Decl. Ex. 7 at p. 78:3 – 78:12.

15. On July 6, 2007, State Street sent PRIAC commentary discussing in detail the "Sub-prime Impact on [State Street's] Active Portfolios in the first quarter of 2007" and the "Sub-Prime Impact on Active Portfolios in June" resulting in underperformance in the Bond Funds. Maher Decl. Ex. 42. The commentary noted that the subprime market was continuing to experience extreme volatility and illiquidity, and that State Street was planning to maintain its subprime exposure. *Id.* PRIAC forwarded this commentary to CIGNA that same day. Maher Decl. Ex. 43. After receiving this investment commentary, CIGNA indicated that it thought the commentary "was very good in terms of understanding the investing philosophy" of IBF. Maher Decl. Ex. 44. There is no evidence to indicate this information was forwarded by PRIAC to any of its clients invested in IBF other than CIGNA. Maher Decl. Ex. 7 at pp. 90:23 – 93:4.

16. On July 12, 2007, State Street sent PRIAC portfolio characteristics as well as a spreadsheet containing portfolio holdings information for IBF as of March 30, 2007 and as of June 30, 2007. Maher Decl. Ex. 45. The document also contained a worksheet entitled "Sub Prime Exposure." Maher Decl. Ex. 46. The Sub Prime Exposure worksheet showed that 81.94%

of IBF (by notional value) had been invested in ABS as of March 2007, and that nearly all of that exposure was concentrated in the home equity sector. Maher Decl. Ex. 45 at 8767. Furthermore, the holdings report listed over $1 billion notional value in total return swaps on the Lehman Brothers ABS index as well as significant holdings in securities backed by subprime mortgages. *See* Maher Decl. Ex. 45. As PRIAC witness Dean Molinaro testified, the Sub Prime Exposure worksheet disclosed that the IBF was leveraged 4 to 1. Maher Decl. Ex. 7 at pp. 105:21 – 107:6. This information prompted CIGNA to request a conference call with the portfolio manager. PRIAC forwarded the holdings and ABS characteristics to CIGNA the next day. Maher Decl. Ex. 47. There is no evidence to indicate that this information was forwarded by PRIAC to any of its other clients invested in IBF. *Id.*; Ex. 7 at pp. 103:8 – 104:14.

17.   Also on July 12, 2007, State Street informed PRIAC that the name PRIAC had been using in its Fact Sheets and DDA materials for IBF incorrectly referred to IBF as a "passive" and "index" fund. Maher Decl. Ex. 48; *see also* Ex. 8 at pp. 311:19 – 312:11. In fact, PRIAC never believed IBF was a passive index fund. Maher Decl. Ex. 7 at pp. 58:11 – 61:20; Ex. 40 at pp. 56:25 – 57:14, 58:23 – 60:16, 102:22 – 104:10, 127:10 – 127:21, 152:17 – 152:22; Ex. 8 at 95:7 – 9, Ex. 49 at p. 369530; Ex. 50 at p. 4647434. PRIAC sent no affirmative communications regarding the name change to clients at this time, and waited until August 2, 2007 to change IBF's name on the PRIAC website. Maher Decl. Ex. 51 at Answer to Interrogatory No. 8; *see also* Ex. 52 at pp. 62:12 – 63:22.

18.   On July 18, 2007, CIGNA, PRIAC, and State Street participated in a conference call. The parties discussed the use of leverage in IBF, IBF's correct name, and IBF's resulting underperformance. Maher Decl. Ex. 7 at pp. 142:16 – 144:15. State Street again informed PRIAC that PRIAC was using the incorrect "passive" name for the IBF. Maher Decl. Ex. 53 at

p. 44139; *see also* Ex. 54.  Following the July 18 call, both CIGNA and PRIAC were aware that IBF was materially invested in ABS collateralized by subprime mortgages and that it had a significant leveraged position.  Maher Decl. Ex. 7 at pp. 150:18 – 151:3.

19.     On July 25, 2007, State Street sent PRIAC State Street's standard monthly performance report.  Maher Decl. Ex. 21.  The report indicated that IBF had underperformed the index in June 2007 by 52 basis points, and GCBF had underperformed the index by 60 basis points.  *Id.* at 534573.  There is no evidence to indicate that PRIAC forwarded this report to any PRIAC clients invested in the Bond Funds.  *See* Maher Decl. Ex. 7 at p. 176:16 – 23.

20.     On August 2, 2007, State Street sent PRIAC an e-mail with the subject line "IMPORTANT:  SSgA Subprime Update."  Maher Decl. Ex. 55.  The e-mail described the deterioration of the subprime mortgage market over the course of the summer, and the resulting negative effect on State Street's active fixed incomes strategies, including IBF and GCBF.  *Id.*  The e-mail noted that "downward pressure on valuations in the subprime mortgage market have resulted in varying degrees of negative performance on several of SSgA's active fixed income strategies . . ."  *Id.*  The e-mail specifically noted that IBF had returned -3.11% year-to-date versus the benchmark, which had performed at 2.40%.  *Id.*  Robert Frascona of PRIAC has acknowledged that at the time he received this e-mail, he was aware that there was a similar loss in GCBF.  Maher Decl. Ex. 8 at p. 481:13 –18.  The August 2 update further noted that State Street had sold large quantities of AAA-rated bonds.  Maher Decl. Ex. 55.

21.     There is no evidence to indicate that PRIAC forwarded this update in its entirety to any of the Plans invested in IBF or GCBF.  Maher Decl. Ex. 8 at pp. 474:1 – 474:14, 475:17 – 475:25, 478:9 – 479:17, 481:19 – 482:2; Ex. 56 at pp. 258:19 – 261:18.  State Street supplemented these disclosures with additional commentary for IBF (August 8), characteristics

for both Bond Funds (August 15), and attribution for IBF (August 16).  Maher Decl. Exhs. 57-59.

### CIGNA DECIDED ON JULY 30, 2007 THAT IT WISHED TO EXIT IBF

22. On July 30, 2007, as PRIAC concedes, "CIGNA decided to begin moving money out of the Intermediate Bond Fund."  Pl.'s Brief p. 20 fn. 6.  Based on State Street's disclosures regarding IBF, the substance of which PRIAC provided only to CIGNA, "CIGNA expedited its redemption."  *Id*; *see also* Ex. 60.

23. As of the date of CIGNA's decision, PRIAC's clients had suffered only just over one-quarter of their eventual losses.  *See* Maher Decl. Ex. 71 at Ex. A.  The losses as of that date are also less than half of what State Street paid PRIAC as part of its recent settlement of regulatory claims.  Maher Decl. Ex. 61.

### PRIAC WAITED UNTIL LATE AUGUST 2007 TO INFORM OTHER INVESTORS, WHO SUFFERED SUBSTANTIAL LOSSES AS A RESULT

24. PRIAC did not update other affected clients until on or about August 20, 2007, when it notified them that PRIAC had placed both of the Bond Funds on its "Watch List." Maher Decl. Ex. 62; Ex. 63; Ex. 64; Ex. 65 at p. 1142.  This was also the first notification actively sent to clients informing them that PRIAC's marketing materials had incorrectly included the terms "passive" and "index" in the name of IBF.  Maher Decl. Ex. 51, at Answer to Interrogatory No. 8; Ex. 56 at p. 115:5 –13.

25. On August 29, 2007, PRIAC requested that the Plans' investments in the Bond Funds be liquidated.  Maher Decl. Ex. 66 at p. 2914104.

26. State Street's expert, Dr. Andrew Carron, concluded that PRIAC's breaches of its fiduciary duties caused over half of the Plans' losses in the Bond Funds.  Maher Decl. Ex. 67, ¶ 206.  None of PRIAC's proposed experts have disputed this contention.  *See* Maher Decl. Ex.

68 at pp. 219:17 – 221:17; Ex. 69 at pp. 114:17 – 116:9; Ex. 52 at pp. 24:11 – 25:13; Ex. 70 at pp. 26:18 – 29:13.

Dated:  July 2, 2010

      ROPES & GRAY LLP

      By: /s/ Robert A. Skinner
      Robert A. Skinner
      Harvey J. Wolkoff
      Daniel J. Maher
      One International Place
      Boston, MA  02110
      Tel: (617) 951-7000
      Fax: (617) 951-7050
      harvey.wolkoff@ropesgray.com
      robert.skinner@ropesgray.com
      daniel.maher@ropesgray.com

*Attorneys for Defendant State Street Bank and Trust Company and State Street Global Advisors, Inc.*