UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE STATE STREET BANK AND TRUST  :
CO. ERISA LITIGATION                :
                                    :
                                    :    07 Civ. 8488 (RJH)
This document relates to:           :
                                    :
07 Civ. 8488 (*Prudential Retirement Insurance and* :    ECF CASE
*Annuity Company v. State Street Bank and Trust*    :
*Company and State Street Global Advisors, Inc.*)   :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# PLAINTIFF'S RESPONSE TO STATE STREET'S STATEMENT IN SUPPORT OF CROSS-MOTION PURSUANT TO LOCAL RULE 56.1


Edwin G. Schallert
Steven Klugman
Jeremy N. Klatell
Courtney M. Dankworth
Miranda H. Turner
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Plaintiff Prudential
Retirement Insurance and Annuity Company

Dated: New York, New York
       July 30, 2010

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC") responds as follows to defendant State Street Bank and Trust Company's ("State Street") Rule 56.1 Statement of Undisputed Facts in Support of Cross-Motion for Partial Summary Judgment (the "State Street Statement"). This response is provided solely for the purpose of complying with Local Rule 56.1(b).

In this response, citations to "PA" refer to page numbers in PRIAC's Appendix. Pages PA 1 through PA 2403 of the Appendix were submitted with PRIAC's motion for partial summary judgment, and pages PA 2404 through PA 3092 were submitted with PRIAC's Memorandum of Law in Opposition to State Street's Motion for Summary Judgment. PA 3093 through PA 3156 are being submitted with PRIAC's Reply Memorandum in Support of Its Motion for Partial Summary Judgment. Names that accompany the "PA" citations identify deponents or declarants.[1]

## I.     General Objection

PRIAC objects to the State Street Statement on the ground that it does not comply with Local Rule 56.1(a), in that many of the paragraphs of the State Street Statement do not contain a short and concise statement of fact to which PRIAC can meaningfully respond in the manner contemplated by Local Rule 56.1(c). Many of these statements are lengthy, complex, repetitive and/or argumentative. As a result, responding to the State Street Statement imposes a burden on PRIAC that is beyond that contemplated by Local Rule 56.1.

---

[1]    In this memorandum, PRIAC uses capitalized terms as they are defined in its Memorandum of Law in Support of Motion for Partial Summary Judgment Dismissing All Counterclaims.

## II.     Response to State Street's Rule 56.1 Statement

1.      PRIAC disputes the facts asserted in the first sentence of paragraph 1 of the State Street Statement. In 1996, when the separate accounts first invested in the Bond Funds, the names of the Bond Funds were the Government Corporate Enhanced Bond Index Fund and the Government Corporate Intermediate Enhanced Bond Index Fund. (PA 2572.) PRIAC does not dispute the facts asserted in the second sentence of paragraph 1. PRIAC disputes the facts asserted in the third sentence of paragraph 1. PRIAC monitored the Bond Funds through its DDA Program. (Palms ¶ 14, PA 4.) The primary measure by which PRIAC assessed fund performance was the "DDA score," a composite of four objective performance-based criteria, which emphasized historical (one to five years') performance. (*Id.* ¶ 15, PA 4-5.) PRIAC evaluated and ranked by quartile the Bond Funds against institutional and retail peer groups. (*Id.*) The DDA Reports showed each fund's ranking for that quarter, performance over multiple periods, from quarterly to five years, percentages of assets invested in various bond categories or "sectors," various fund characteristics, and facts such as net asset value, benchmark, and the ten largest bond holdings, as well as commentary on performance for each quarter. (Palms ¶ 17, PA 5.) PRIAC made the DDA Reports available to its clients each quarter. (*Id.*) PRIAC also created quarterly Fund Fact Sheets for the Bond Funds, which described their investment strategy as that of an enhanced index fund seeking to add consistent value over their respective benchmarks. (*Id.* ¶ 22, PA 6; PA 928-29; PA 1061-62; 1067-68.) PRIAC's clients could obtain at any time daily performance and other information about their investments on PRIAC's Plan Sponsor and Plan Participant websites. (Palms ¶ 24, PA 7; PA 3102-04 Conley.) There was a distinction between the two types of funds that PRIAC offered to retirement plan clients – Alliance Funds and Institutional Sub-advised Funds – and that distinction reflected significant differences in PRIAC's relationship to the funds and the scope of the services that it provided.

(*Id.* ¶ 9, PA 3.) Alliance Funds included mutual funds and commingled trusts run by well-known outside managers like State Street. (*Id.*) The Bond Funds were Alliance Funds. (*Id.* ¶ 13, PA 4.) The outside manager for each Alliance Fund controlled its investment process, as State Street did for the Bond Funds. (*Id.* ¶ 11, PA 3-4.) PRIAC did not have access to portfolio holdings on a daily basis and could not ensure that the fund was managed consistent with its stated style. (*Id.* ¶ 11, PA 3-4.) The decision to continue investing in an Alliance Fund or withdraw from that fund was left to the discretion of the Plans. (*Id.* ¶ 12, PA 4.) Institutional Sub-advised Funds were funds for which PRIAC agreed on an investment strategy with the fund's investment manager. (*Id.* ¶ 9, PA 3.) PRIAC monitored these funds for style consistency, defined as the correlation to managers investing in similar mandates. (*Id.* ¶ 19, PA 5.)

2.  PRIAC does not dispute the facts asserted in the first sentence of paragraph 2 of the State Street Statement. PRIAC disputes the facts asserted in the second sentence of paragraph 2. State Street provided certain information about the Bond Funds to PRIAC, and PRIAC provided certain information about the Bond Funds to the Plans. (*Id.* ¶ 17, PA 5; Frascona ¶¶ 16, 18, PA 18-19.) PRIAC was the Plans' principal but not their sole source of information relevant to their investments in the Bond Funds. Additional information such as the sector allocations of the Bond Funds' respective benchmark indexes was publicly available. (Palms ¶ 18, PA 5.)

3.  PRIAC objects to the first sentence of paragraph 3 of the State Street Statement on the ground that it contains no citation to admissible evidence as required by Local Rule 56.1(d). PRIAC disputes the facts asserted in the first sentence of paragraph 3. State Street requested only one time, in September 2007, the names of the Plans with investments in the Bond Funds. (Maher Decl. Ex. 6.) That request was made after all the Plans had redeemed their

3

investments in the Bond Funds and the funds had closed. (*Id.*) PRIAC disputes the facts asserted in the second sentence of paragraph 3. State Street communicated directly with several of PRIAC's clients and their investment consultants about the Bond Funds in July, August and September 2007. (PA 2545; PA 3001; PA 3003.)

4. PRIAC objects to the first sentence of paragraph 4 of the State Street Statement on the ground that it is argumentative. PRIAC does not dispute that it was a fiduciary to the Plans within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). PRIAC disputes the facts asserted in the second sentence of paragraph 4. PRIAC's disclosure obligations to its clients regarding their investments involved conveying to those clients certain information about funds that PRIAC received from the investment managers, in a form and at times that were within PRIAC's judgment as to what disclosures to clients at what times were appropriate for different kinds of funds, and PRIAC provided additional services to Plans. *See* paragraph 1, *supra*.

5. PRIAC does not dispute that excerpts from PRIAC documents are quoted accurately in paragraph 5 of the State Street Statement. PRIAC disputes the facts asserted in the first sentence of paragraph 5 that its reporting to its clients was designed to be "[i]n furtherance of its effort to comply with that obligation" as described in paragraph 4 of the State Street Statement. PRIAC generated numerous standard and interim reports for its clients that served various purposes. *See* paragraph 1, *supra*. PRIAC disputes the facts asserted in paragraph 5 that it "undertook" or "pledged" to provide its clients with certain kinds of documents. (PA 2198-2270.) PRIAC disputes the facts asserted in the third sentence of paragraph 5 that it undertook to provide its clients with interim or *ad hoc* reports on any and all developments. In the exercise of

its judgment, PRIAC on occasion provided interim reports to clients about certain developments affecting their investments.  (Frascona ¶ 29, PA 21; Palms ¶¶ 33-34, PA 10; PA 2428 Logue.)

6.      PRIAC does not dispute the facts asserted in paragraph 6 of the State Street Statement.

7.      PRIAC objects to the first, second and third sentences of paragraph 7 of the State Street Statement on the ground that they contain no citations to admissible evidence as required by Local Rule 56.1(d).  The first, second and third sentences of paragraph 7 are based on inadmissible hearsay.  PRIAC disputes the facts asserted in the quotation in the second sentence of paragraph 7.  PRIAC offered the Bond Funds to the Plans as Alliance Funds, and PRIAC did not provide investment advice to clients about their investments in Alliance Funds.  (Palms ¶¶ 12-13, PA 4; PA 2460 Stern.)  PRIAC disputes the facts asserted in the third sentence of paragraph 7.  PRIAC's monitoring of the Bond Funds complied with its obligations under its DDA Program.  *See* paragraph 1, *supra*.

8.      PRIAC does not dispute the facts asserted in the first sentence of paragraph 8 of the State Street Statement.  PRIAC disputes the facts asserted in the second and third sentences of paragraph 8.  PRIAC charged the Plans a range of fees for investing in two separate accounts each of which held investments in one of the Bond Funds.  (Palms Reply Decl. ¶ 5, PA 3094.)  In 2007, the highest fee that PRIAC charged for investing in either of the Bond Funds was 35 basis points.  (Maher Decl. Ex. 12.)  In 2007, PRIAC charged CIGNA, the Plan with the largest investment in the Bond Funds, 15 basis points to invest in the Intermediate Bond Fund.  (PA 3112.)  The fee that PRIAC charged each Plan to invest in a separate account that held investments in one of the Bond Funds compensated PRIAC for its (a) establishment and operation of the separate accounts that invested in the Bond Funds, (b) monitoring and reporting

5

on the performance of the Bond Funds as part of its Manager-of-Managers Program and DDA Program, and (c) maintaining records of investments for the Plans.  (Palms Reply Decl. ¶ 6, PA 3094.)  The fee paid to PRIAC included State Street's fee for providing its investment services to the Bond Funds, and PRIAC paid that fee to State Street.  (*Id.*)

9.     PRIAC objects to the first, second and third sentences of paragraph 9 of the State Street Statement on the ground that it contains no citation to admissible evidence as required by Local Rule 56.1(d).  PRIAC objects to the fourth sentence of paragraph 9 on the ground that it contains no citation to admissible evidence to support the facts asserted as required by Local Rule 56.1(d).  PRIAC disputes the facts asserted in paragraph 9.  The Bond Funds' sector weights that State Street reported to PRIAC showed that during 2006 the Bond Funds' ABS holdings increased and decreased from time to time.  (PA 2588; PA 2610; PA 2632; PA 2661; PA 2683; PA 2705; PA 2735; PA 2757; PA 2778; PA 2810; PA 2832; PA 2854.)  State Street never disclosed to PRIAC the Bond Funds' actual ABS exposures, reflecting the Bond Funds' leverage and their use of total return swaps.  In early 2005, State Street decided not to reflect those exposures, and instead to "normalize" the sector percentages in its reports to investors so that they would total 100%, even if the amount of invested assets exceeded the amount invested in a fund because of leverage.  (PA 1047; PA 1082; PA 2161.)  State Street's client-facing personnel advocated providing two sets of sector weights to clients, one of which would reveal leverage to investors, but they were overruled.  (PA 580-81 Saarinen; PA 825.)  State Street senior managers criticized normalizing sector percentages without reporting negative cash in reports to investors as indefensible and misrepresenting a fund's true exposures.  (PA 1047.) PRIAC never received a report with sector weights reflecting a negative cash balance, and after a fourth quarter 2004 report for the Government Credit Bond Fund, the sector weights for the

Bond Funds that State Street provided always totaled 100%. (Frascona ¶¶ 20-21, PA 19.) State Street's reports to PRIAC did not disclose the leverage of either of the Bond Funds. (*Id.* ¶ 21, PA 19.) For example, State Street reported to PRIAC the Government Credit Bond Fund's ABS concentrations of 32% as of May 31, 2007. (PA 60.) The Government Credit Bond Fund's sector weights including the fund's leverage component, which were never provided to PRIAC, reflected ABS concentrations of 151.1% of the fund's net asset value as of May 31, 2007. (*Id.*) State Street reported to PRIAC the Intermediate Bond Fund's ABS concentrations of 32.1% as of May 31, 2007. (PA 59.) The Intermediate Bond Fund's sector weights including the fund's leverage component, which were never provided to PRIAC, reflected ABS concentrations of 143.1% of the fund's net asset value as of May 31, 2007. (*Id.*) State Street did not disclose to PRIAC the amount of leverage in the Bond Funds until late August 2007, and it never explained to PRIAC the manner in which State Street employed leverage in either Bond Fund. (Palms ¶¶ 31-32, PA 9; *see also* Frascona ¶ 21, PA 19; *id.* ¶ 27, PA 21.) On an August 22, 2007 conference call with PRIAC, State Street admitted that its reporting to PRIAC had not been transparent in revealing the use or amount of leverage in the Bond Funds. (*Id.* ¶ 30, PA 21-22; PA 2472, at 2476; PA 2480, at 2493.)

10.     PRIAC objects to paragraph 10 of the State Street Statement on the ground that it contains no citation to admissible evidence to support the facts asserted as required by Local Rule 56.1(d). PRIAC disputes the facts asserted in paragraph 10. PRIAC's DDA Reports and Fund Fact Sheets reported the most "up-to-date data" State Street sent to PRIAC. State Street cites to no evidence to the contrary.

11.     PRIAC objects to the first sentence of paragraph 11 of the State Street Statement on the ground that it contains no citation to admissible evidence as required by Local Rule

7

56.1(d). PRIAC disputes the facts asserted in the second sentence of paragraph 11 of the State Street Statement. The first quarter 2007 commentary did not state that the Bond Funds underperformed due to subprime investments, including investments in the ABX index, even though State Street did provide such an explanation to other investors in the Bond Funds in February and April 2007. (PA 456-57 Flinn; PA 594-95 Thornton; PA 1435; PA 1592; PA 1843.) The first quarter 2007 commentary that State Street sent to PRIAC attributed the Bond Funds' losses in part to the treasury market, agency market, stock market and credit market, as well as to the ABS market. (Maher Decl. Ex. 28.) PRIAC disputes the facts asserted in the second sentence of paragraph 11. The commentary did not describe the funds as being actively managed. *Id.*

12.     PRIAC does not dispute the facts asserted in paragraph 12 of the State Street Statement.

13.     PRIAC objects to the first sentence of paragraph 13 of the State Street Statement on the grounds that it contains no citation to admissible evidence as required by Local Rule 56.1(d). The first sentence of paragraph 13 is based on inadmissible hearsay. PRIAC disputes the facts asserted in the first sentence of paragraph 13. PRIAC's Fund Fact Sheets described the Intermediate Bond Fund's strategy as that of an enhanced index fund. (*E.g.*, PA 928-29.) PRIAC disputes the facts asserted in the second sentence of paragraph 13. PRIAC began asking State Street questions about the Bond Funds in April 2007, based on their underperformance in the first quarter of 2007, and continued to ask questions about the Bond Funds through August 2007. (Dingee ¶ 4, PA 23-24; *id.* ¶¶ 8-13, PA 25-26; PA 1459.) PRIAC asked certain questions on behalf of CIGNA in June and July 2007. (PA 671; PA 680; PA 777-78.)

8

14. PRIAC does not dispute the facts asserted in the first sentence of paragraph 14 of the State Street Statement. PRIAC disputes the facts asserted in the second sentence of paragraph 14. Some of the information contained in the characteristics reports sent by State Street was reflected in PRIAC's DDA Reports, which PRIAC made available to its clients. (*E.g.*, PA 1125.)

15. PRIAC objects to the first sentence of paragraph 15 of the State Street Statement on the ground that it is argumentative. PRIAC disputes the facts asserted in the first sentence of paragraph 15. The July 6 commentary State Street sent to PRIAC did not mention either of the Bond Funds. (PA 674.) PRIAC does not dispute the facts asserted in the second and third sentences of paragraph 15. PRIAC objects to the fourth sentence of paragraph 15 on the ground that it contains no citation to admissible evidence as required by Local Rule 56.1(d). The fourth sentence of paragraph 15 is based on inadmissible hearsay. PRIAC disputes the facts asserted in the fourth sentence of paragraph 15. The July 6 commentary did not mention the Intermediate Bond Fund. (*Id.*) CIGNA's email to PRIAC that is quoted in the fourth sentence of paragraph 15 stated that the July 6 commentary "did not cover some other things such as how much exposure to these subprime markets there was over time and how much there is currently, and what the exposure is." (Maher Decl. Ex. 44.) PRIAC does not dispute the facts asserted in the fifth sentence of paragraph 15.

16. PRIAC disputes the facts asserted in the first sentence of paragraph 16 of the State Street Statement. The spreadsheets that State Street sent to PRIAC on July 12, 2007 were truncated versions of spreadsheets that State Street had created in response to PRIAC's request for holdings data, including subprime holdings. (PA 683; PA 1654, at 1655; PA 1719.) State Street sent PRIAC the truncated spreadsheets without obtaining approval from Michael Wands,

SSgA's Head of North American Fixed Income, which approval Mr. Wands had instructed State Street's Fixed Income Group to obtain before responding to clients' requests about investments in subprime. (PA 2164.) PRIAC does not dispute the facts asserted in the second sentence of paragraph 16. PRIAC objects to the third sentence of paragraph 16 on the ground that it is argumentative. PRIAC disputes the facts asserted in the third and fourth sentences of paragraph 16. The truncated spreadsheets that State Street sent to PRIAC were not comprehensible to PRIAC, just as they were not comprehensible to State Street personnel or to State Street's expert witness in this case. (Dingee ¶ 6, PA 24; PA 509-17 Kinney; PA 391-92 Carron.) The truncated spreadsheets did not disclose subprime investments to PRIAC in July 2007. (PA 2445 Dingee.) PRIAC disputes the facts asserted in the fifth sentence of paragraph 16. The Intermediate Bond Fund was not leveraged by 4 to 1 on either March 30 or June 30, 2007. (PA 2156.) The truncated spreadsheets sent to PRIAC on July 12 were not comprehensible to PRIAC, just as they were not comprehensible to State Street personnel or State Street's expert witness in this case. (Dingee ¶ 6, PA 24; PA 509-17 Kinney; PA 391-92 Carron.) The truncated spreadsheets did not disclose subprime investments to PRIAC in July 2007. (PA 2445 Dingee.) PRIAC objects to the sixth sentence of paragraph 16 on the grounds that it contains no citation to admissible evidence as required by Local Rule 56.1(d). PRIAC disputes the facts asserted in the sixth sentence of paragraph 16. In June and July 2007, CIGNA was considering investing about $150 million in the Intermediate Bond Fund, in addition to the $174 million it had invested. (PA 3110-11 Forde.) PRIAC asked certain questions on behalf of CIGNA in June and July 2007. (PA 671; PA 680; PA 777-78.) State Street's responses to the questions PRIAC asked on behalf of CIGNA were incomplete. (Maher Decl. Ex. 44; PA 1654, at 1655; PA 1719; Dingee ¶ 6, PA

24; PA 509-17 Kinney; PA 391-92 Carron.) PRIAC does not dispute the facts asserted in the seventh and eighth sentences of paragraph 16.

17. PRIAC disputes the facts asserted in the first sentence of paragraph 17 of the State Street Statement. On September 19, 2005, and again on September 21, 2005, State Street told PRIAC that State Street had changed the name for the Intermediate Bond Fund to the "Passive Intermediate Bond Index Fund" and instructed PRIAC to use the new name. (PA 1086.) Following State Street's direction, PRIAC used the new name from October 2005 through July 2007 in materials it provided to clients. (Frascona ¶ 12, PA 17.) PRIAC believed that State Street had directed PRIAC to use the name that State Street intended to be used for the Intermediate Bond Fund. (Frascona ¶ 12, PA 17.) Before and after State Street gave that direction to PRIAC, PRIAC's marketing materials described the Bond Funds' strategies as those of an enhanced index fund. (PA 928-29; PA 1061-62; 1067-68.) PRIAC does not dispute the facts asserted in the second sentence of paragraph 17. PRIAC objects to the third sentence of paragraph 17 on the ground that it is argumentative. PRIAC disputes the facts asserted in the third sentence of paragraph 17. PRIAC notified its clients of the change in the name of the Intermediate Bond Fund by changing the name on its plan sponsor website, which was available to plan sponsors and their outside investment advisors, and on its plan participant website on August 2. (PA 645-46 Ortiz; PA 1041; PA 2354.)

18. PRIAC objects to the first sentence of paragraph 18 of the State Street Statement on the ground that it contains no citation to admissible evidence as required by Local Rule 56.1(d). PRIAC does not dispute the facts asserted in the first sentence of paragraph 18. PRIAC objects to the second sentence of paragraph 18 on the ground that it contains no citation to admissible evidence to support the facts asserted as required by Local Rule 56.1(d). PRIAC

11

disputes the facts asserted in the second sentence of paragraph 18. To the best of PRIAC's knowledge, there is no admissible evidence that during the July 18 call State Street associated the Intermediate Bond Fund's underperformance with the use of leverage in the fund. PRIAC does not dispute the facts asserted in the third sentence of paragraph 18. PRIAC objects to the fourth sentence of paragraph 18 on the ground that it is argumentative and it contains no citation to admissible evidence as required by Local Rule 56.1(d). The fourth sentence of paragraph 18 is based on inadmissible testimony. PRIAC disputes the facts asserted in the fourth sentence of paragraph 18. PRIAC was not aware that State Street's investment strategy for the Intermediate Bond Fund involved the use of leverage and was not aware of the extent of its investments in the ABS sector (and in subprime securities) until late August 2007. (Palms ¶¶ 31-32, PA 9; *see also* Frascona ¶ 21, PA 19; *id.* ¶ 27, PA 21.) In late July and August 2007, PRIAC requested that State Street provide it with information about the Bond Funds. (Frascona ¶ 27, PA 21; Dingee ¶¶ 8-13, PA 25-26.) Among those requests, PRIAC asked whether a report that it had received for the Bond Funds reflected leverage, asked for characteristics on the Intermediate Bond Fund reflecting any leverage, and requested the percentage of the Intermediate Bond Fund's exposures to subprime. (Dingee ¶¶ 10-11, 13, PA 25-26; PA 27; PA 31; PA 45.) State Street never responded to those requests. (Dingee ¶¶ 10-11, 13, PA 25-26.)

19.     PRIAC does not dispute the facts asserted in the first and second sentences of paragraph 19 of the State Street Statement. PRIAC objects to the third sentence of paragraph 19 on the ground that it is argumentative. PRIAC disputes the facts asserted in the third sentence of paragraph 19. On PRIAC's plan sponsor and plan participant websites, PRIAC made information about the performance of the Bond Funds available on a daily basis to clients that had invested in the Bond Funds. (Palms ¶ 24, PA 7; PA 3102-04 Conley.)

12

20. PRIAC does not dispute the facts asserted in the first sentence of paragraph 20 of the State Street Statement. PRIAC disputes the facts asserted in the second and third sentences of paragraph 20. State Street's August 2, 2007 email described recent market events generally, including deterioration in the subprime mortgage market in June and July 2007, and noted: "These market events *and* the subsequent downward pressure on valuations in the subprime mortgage market have resulted in varying degrees of negative performance in several of SSgA's active fixed income strategies and active derivative-based strategies." (Maher Decl. Ex. 55 (emphasis added).) The August 2 email did not state that the Intermediate Bond Fund and Government Credit Bond Fund were included in the "several of SSgA's active fixed income strategies and active derivative-based strategies" covered by the email. (*Id.*) PRIAC does not dispute the facts asserted in the fourth and fifth sentences of paragraph 20. PRIAC disputes the facts asserted in the sixth sentence of paragraph 20. The August 2 email states that State Street sold "a significant amount" of AAA-rated bonds from the Limited Duration Bond Strategy, without any explanation of what significance that sale had for the Bond Funds or for investors in the Bond Funds. (*Id.*)

21. PRIAC does not dispute the facts asserted in the first sentence of paragraph 21 of the State Street Statement. PRIAC disputes the facts asserted in the second sentence of paragraph 21. The communications from State Street to PRIAC referred to in the second sentence were sent in response to requests and questions from PRIAC, not as "supplement[s]" to State Street's August 2, 2007 email. The August 9 commentary was the standard quarterly commentary for the second quarter of 2007, which PRIAC requested every quarter from State Street. (Frascona ¶ 18, PA 19.) State Street typically sent these quarterly commentaries to PRIAC for both Bond Funds within two weeks after the close of a quarter, (*e.g.*, Maher Decl. Ex.

13

28), but did not send the August 9 commentary until six weeks after the close of the second quarter, after PRIAC's repeated requests for it, and it addressed only the Intermediate Bond Fund. (PA 1422.) State Street provided fund characteristics on August 15 only for the Intermediate Bond Fund, not for each of the Bond Funds. (PA 1580.) The August 16 commentary was not responsive to PRIAC's request for a detailed attribution report for the Intermediate Bond Fund, addressing in particular the effects of derivatives and leverage. (PA 2928.)

22.   PRIAC disputes the facts asserted in the first sentence of paragraph 22 of the State Street Statement. CIGNA requested redemption from the Intermediate Bond Fund on August 17, 2007. (PA 3115.) PRIAC disputes the facts asserted in the second sentence of paragraph 22. "CIGNA expedited its redemption" based on the underperformance of the Intermediate Bond Fund and CIGNA's own assessment of its investment goals. (PA 1004.) PRIAC made available to its clients daily performance data on its plan sponsor and plan participant websites. (Palms ¶ 24, PA 7; PA 3102-04 Conley.)

23.   PRIAC objects to paragraph 23 of the State Street Statement on the grounds that it relies on what is, in effect, an unauthorized supplemental expert report by State Street's expert, Dr. Andrew Carron, and Dr. Carron's declaration does not provide sufficient information to permit PRIAC to verify his calculations. PRIAC disputes the facts asserted in paragraph 23 of the State Street Statement. Exhibit A to the Declaration of Dr. Carron purports to calculate damages under Mr. Fischel's methodology for each day between July 18, 2007 and August 16, 2007, but does not provide any evidence of his methodology, and PRIAC has been unable to corroborate his calculations.

24. PRIAC objects to the first sentence of paragraph 24 of the State Street Statement on the grounds that it is vague and argumentative. PRIAC disputes the facts asserted in the first sentence of paragraph 24. PRIAC's clients could obtain at any time daily performance and other information about their investments, which PRIAC had provided on its plan sponsor and plan participant websites. (Palms ¶ 24, PA 7; PA 3102-04 Conley.) PRIAC objects to the second sentence of paragraph 24 on the ground that it is vague and argumentative. PRIAC notified its clients of the change in the name of the Intermediate Bond Fund when it changed the name on its websites on August 2, 2007. (PA 645-46 Ortiz; PA 1041; PA 2354.)

25. PRIAC does not dispute the facts asserted in paragraph 25 of the State Street Statement.

26. PRIAC objects to the first sentence of paragraph 26 of the State Street Statement on the ground that it is not a fact within the meaning of Local Rule 56.1. PRIAC disputes that Dr. Carron's conclusion as stated in the first sentence of paragraph 26. That conclusion is incorrect as a matter of law and therefore irrelevant. PRIAC does not dispute the facts asserted in the second sentence of paragraph 26.

### III.  Additional Facts

27. In 2003, State Street told PRIAC that it managed the Bond Funds with a target of achieving 30-40 basis points (0.3-0.4%) of excess return over the benchmark's return. (PA 2028, at 2050.)

28. At the end of 2005, State Street's Chief Executive Officer, William Hunt, set for the Fixed Income Group, which had responsibility for managing the Bond Funds, a goal of tripling the group's revenues and assets under management within three years. (PA 582-84 Saarinen; PA 605 Wands.)

15

29. Senior executives in State Street's Fixed Income Group perceived State Street's reputation as a passive and enhanced index fund manager as a hindrance to growing its fixed income business. (PA 466-69 Greff; PA 472-73 Greff; PA 480-81 Hopkins; PA 490-91 Hunt; PA 529-30 O'Hara; PA 567-68 Roberts; PA 606-07 Wands; PA 2107, at 2119; PA 2152.)

30. State Street's fees for active funds were materially higher than for enhanced index and passive funds. State Street typically set its management fees at 20-25% of a fund's excess return target. (PA 498 Kelly.)

31. In 2006, State Street's Fixed Income Group implemented an initiative known as "Leveraging Fixed Income." (PA 582-84 Saarinen; PA 1361; PA 1417; PA 2152.)

32. In 2006, State Street's Fixed Income Group decided to "[t]ake more active risk" in its bond investments and to "[g]enerate higher returns for clients in existing products." (PA 2152, at 2153; *see also* PA 2145.)

33. By early 2006, State Street had increased the return targets for both the Bond Funds to 70-80 basis points above their respective benchmarks. (PA 536-43 Pickett; PA 1573; PA 1652.)

34. Although State Street changed the investment strategy for the Bond Funds, increasing the risk to the Plans and Plan beneficiaries, it did not inform PRIAC that there was a change in the Bond Funds' investment strategy. (Frascona ¶ 9, PA 17; *id.* ¶ 28, PA 21; PA 2145; PA 2152.)

35. On August 1, 2007, State Street told PRIAC, in writing, that the investment strategy for the Bond Funds had not changed since at least 2002. (PA 1355.)

36. Prior to mid-August 2007, PRIAC had not deduced that State Street had changed the Bond Funds' investment strategy. (Frascona ¶ 9, PA 17; *id.* ¶ 28, PA 21.)

16

37. State Street quantified the risks of its investments using value at risk ("VaR") and conditional value at risk ("CVaR"). (Palmer Decl. Ex. 12 at ¶ 85.) VaR represented a risk limit for an investment equal to 95% of its expected loss. (PA 2513.) CVaR equaled the average loss possible if the investment VaR were exceeded. (*Id.*)

38. State Street's Fixed Income Group was required to follow two risk management policies in its procedure manual: the stop-loss policy and the Active Trade Template ("ATT"). (PA 2575.)

39. The stop loss policy defined an investments "soft stop" as its VaR, and its "hard stop" as its CVaR. (PA 2513.) When the value of an investment fell below the soft stop, the stop-loss policy required a discussion with the portfolio management team to determine whether to terminate or to continue with the investment. (*Id.*) Once the hard stop level was reached, fixed income senior management was to assume sole responsibility for the decision to terminate or continue the investment. (*Id.*)

40. The ATT required that a standardized form containing pertinent information about an investment, including stop-loss levels, be completed and distributed to the all Global Fixed Income personal prior to making that investment. (PA 2575.)

41. In July 2007, State Street senior management concluded that both the stop-loss policy and ATT had been violated for investment held by the Bond Funds. (PA 2581.)

42. State Street managed risk in the Bond Funds by calculating a risk budget. (PA 2547.) State Street's risk management group provided the portfolio managers with a risk budgeting database showing the amount of a given fund's risk budget had been "spent" through the fund's investments. (PA 2430 Armstrong; PA 3007.)

43. State Street managed the Bond Funds in excess of their risk budgets from November 2006 until they were closed in September 2007. (PA 2413.)

44. In addition to the Plans, as of June 30, 2007, 317 State Street clients held investments in State Street bond funds exposed to subprime investments. (PA 3131, at 3143.)

45. On August 31, 2007, 173 of the 317 State Street clients referenced in paragraph 44 held investment of over $4 billion in those funds. (*Id.*; Palms ¶ 40, PA 12.)

46. On September 30, 2007, 129 of the 317 State Street clients referenced in paragraph 44 held investments of over $2.5 billion in those funds. (PA 3131, at 3143.)

47. There were 59 clients of three SSgA business units (Global Asset Allocation ("GAA"), the Office of Fiduciary Advisor ("OFA") and Charitable Asset Management ("CAM")) that had investments in State Street bond funds with subprime exposures. (PA 2947, at 2969-72.)

48. OFA contacted clients at the end of July 2007 to recommend termination of their investments, and these clients were out of the funds by August 9, 2007. (*Id.* at 2971-72.)

49. CAM recommended redemptions of the bond funds at the end of July 2007, and all CAM clients had redeemed by August 20, 2007. (*Id.* at 2972.)

50. The vast majority of GAA clients received an explicit recommendation to exit the active bond funds in the first part of August, and most exited the funds in August 2007. (*Id.* at 2970-71.)

51. Neither PRIAC nor the Plans received recommendations from State Street to withdraw from the Bond Funds. ( Frascona ¶ 24, PA 20.)

52. On April 11, 2007, and again on July 6, 2007, State Street told PRIAC that it "remain[ed] confident in the fundamentals" of its investments (Maher Decl. Ex. 28; *see also* PA

18

674); "holding existing positions is the prudent decision" (PA 674); State Street had taken steps that "reduced risk" in the bond funds (PA 984); losses were the result of "liquidity and leverage issues" and not fundamentals (*id.*); "many judicious investors will hold the positions in anticipation of greater liquidity in the months to come" (PA 1352).

53. On October 5, 2007, the President and CEO of SSgA wrote a letter to State Street clients in which he insisted that "judicious investors" would retain their positions in the bond funds and that the "holdings of clients that did not panic during this period of turmoil . . . are now experiencing a steady recovery in their values." He asserted, the redemptions by the Plans involved "panicked selling during a period of market turmoil," and those panicked "redemptions were a contributing factor in the negative returns" in the bond funds. (PA 2570.)

Dated:  New York, New York
       July 30, 2010

                              DEBEVOISE & PLIMPTON LLP

                              By: _/s/ Edwin G. Schallert_
                                  Edwin G. Schallert
                                  Steven Klugman
                                  Jeremy N. Klatell
                                  Courtney M. Dankworth
                                  Miranda H. Turner
                              919 Third Avenue
                              New York, New York 10022
                              (212) 909-6000
                              egschall@debevoise.com

                              Attorneys for Plaintiff Prudential
                              Retirement Insurance and Annuity Company