



UNITED STATES | ENGLAND | CHINA

Steven L. Severson
SSeverson@faegre.com
(612) 766-7310

February 7, 2011

The Honorable Richard J. Holwell
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**VIA FACSIMILE**
(212) 805-7948

07 cv 8488

Re: *In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation* MDL No. 1945 (RJH) (S.D.N.Y.); *Apogee Enterprises, Inc. v. State Street Bank & Trust Co.* No. 09 Civ. 01899 (RJH) (S.D.N.Y.)

Dear Judge Holwell:

We represent plaintiff Apogee Enterprises, Inc. ("Apogee") in the above-referenced matter. We write to request a pre-motion conference to ask the Court's permission to file a summary judgment motion against defendant State Street Bank & Trust Company ("State Street"). Apogee's summary judgment motion would be based on the following:

Apogee is the plan sponsor, named fiduciary and plan administrator of the Apogee Enterprises, Inc. 401(k) Retirement Plan ("Plan"). State Street has served as an ERISA fiduciary to the Plan since 1999. Throughout this period, Apogee relied on State Street's representations describing the investment strategy of the State Street Daily Bond Market Fund ("Fund") in deciding to offer the Fund as an investment option to Plan participants. During this period, State Street continuously represented the Fund to be a "conservative," "stable," "risk-controlled," and "well-diversified" "enhanced bond index fund." Contrary to these representations, in 2006, State Street changed the investment strategy of the Fund by investing ever greater amounts of the Fund's assets in high-risk investments, including securities backed by subprime mortgage loans, and by applying leverage in making these investments, which had the effect of adding greater risk to the Fund. State Street did not disclose these changes in investment strategy to Apogee.

In addition, State Street (and its co-defendant, ING Institutional Plan Services LLC, formerly known as CitiStreet LLC) misled Apogee about the time required to exit the Fund. In early August 2007 – when the Fund was starting to realize large losses – Apogee asked the defendants how long it would take to switch out of the Fund, and was told it would take 60 to 90 days. In reality, and unbeknownst to Apogee, State Street was advising certain plan sponsors of the deteriorating situation of State Street bond funds, and State Street and CitiStreet were letting certain plan sponsors exit the Fund on as little as 48 hours' notice.

2200 WELLS FARGO CENTER | 90 SOUTH SEVENTH STREET | MINNEAPOLIS MINNESOTA 55402-3901
TELEPHONE 612-766-7000 | FACSIMILE 612-766-1600 | WWW.FAEGRE.COM

The Honorable Richard J. Holwell
February 7, 2011
Page 2

When Apogee finally learned this fact in late August, it immediately exited the Fund – but only after suffering millions of dollars of losses in August alone.

Apogee now seeks to recover the approximately $5 million in losses that the Plan incurred in 2007 (less that which Apogee has received from the SEC Fair Fund). Relevant to the summary judgment motion Apogee seeks to bring against State Street, Apogee alleges in Count I that State Street breached its ERISA fiduciary duties by failing to disclose that State Street changed the investment strategy of the Fund. In Count II, Apogee alleges that State Street breached its ERISA fiduciary duties by misleading Apogee about the time it would take to withdraw from the Fund.

Apogee is entitled to judgment as a matter of law on these claims because the undisputed record shows that State Street failed to fully and adequately disclose to Apogee relevant information about the Fund, in violation of its fiduciary duties under ERISA. Further, records submitted by State Street in support of State Street's pending summary judgment motions in other related matters show that State Street informed other investors as early as July 2007 that the Fund was underperforming and encouraged those investors to exit the Fund as soon as possible. These actions impermissibly favored other investors over Apogee, in violation of State Street's fiduciary duties.

Federal courts have consistently held that an ERISA fiduciary (like State Street) has a fiduciary duty to "provide completely accurate plan information" to a beneficiary. *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88-89 (2d Cir. 2001); *see also In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997); *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992). Here, it is undisputed that Apogee (through its investment advisor, SilverOak) asked State Street and CitiStreet representatives how long it would take to exit the Fund, and it is undisputed that Apogee was told (two different times) that it would take 60 to 90 days to exit the Fund. These statements were false, as the undisputed record shows that State Street was allowing investors to exit the Fund on 24 to 48 hours' notice.

Indeed, State Street itself has touted in its memoranda seeking summary judgment against claims raised by Memorial Hermann Healthcare System ("MH"), Houston Police Officers Pension System ("HPOPS"), and Prudential Retirement Insurance and Annuity Company ("PRIAC") that it told these investors to exit the Fund as early as July 2007. (*See* 1:07-cv-08488-RJH-JLC [Dkt. 213] at 8; 1:08-md-01945-RJH [Dkt. 128] at 10; 1:08-cv-05440-RJH-JLC [Dkt. 78] at 5, 7-8.) State Street called HPOPS on August 3, 2007, and asked if it wanted to move out of its subprime fund and move into another cash vehicle. (1:08-md-01945-RHJ [Dkt. 128] at 10.) State Street also called MH on July 27, 2007, and offered to transfer its subprime investments into a money market fund by the next business day. (1:08-cv-05440-RJH, JLC [Dkt. 78] at 5, 7-8.) Apogee received no such calls from State Street. A trustee, like State Street, may not show such favoritism to one class of investors over another. Though the duty of impartiality has not been discussed extensively in cases interpreting ERISA, the law of trusts (which the Supreme Court has recognized, in

The Honorable Richard J. Holwell
February 7, 2011
Page 3

*Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996), will "inform . . . an effort to interpret ERISA's fiduciary duties") makes clear that such a duty exists and binds trust fiduciaries. *See Restatement (Third) of Trusts* § 79 (2007); *see also McNeil v. McNeil*, 798 A.2d 503, 510 (Del. 2002). As the *Restatement* notes, "[a] trustee has a duty to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust." *Restatement (Third) of Trusts* § 79.

State Street has indisputably violated this duty of impartiality as to Apogee. Indeed, State Street not only failed to seek out Apogee to advise it of the deteriorating condition of the Fund (as it had with other investors), but State Street failed to assure that Apogee received an accurate answer in response to its affirmative request for information about how long it would take to exit the Fund. State Street has suggested in its recently-filed cross-claim against CitiStreet that it should have no liability for CitiStreet's failure to answer this question accurately, alleging that "State Street was not familiar with any requirements or waiting period that CitiStreet imposed to process a redemption request as part of its recordkeeping and related servicing obligations." (Dkt. 45 at Cross-Claim ¶ 13.) This allegation is disingenuous. In fact, Jim Hopkins – the State Street representative on the call with SilverOak and CitiStreet – knew that State Street was letting investors in its subprime funds out on 48 hours' notice, as Hopkins himself called MH on July 27, 2007, and invited MH to move its investments to a money market fund (and promised a 24-hour turnaround on such a move). (1:08-cv-05440-RJH-JLC [Dkt. 78] at 5, 7-8.) Further, it was Hopkins who belatedly notified Apogee's investment advisor in late August 2007 – after Apogee had been earlier misled about the time it would take to exit the Fund – that it was only a two- to three-day process to exit the Fund. (Saarinen Dep. Ex. 10.) And, State Street's Eric Saarinen (who served as Apogee's client liaison) testified that he knew that a statement that it would take 60 to 90 days to exit the Fund was merely a "recordkeeping answer" that would give way to "exception processing if there's a real material issue going on that requires quick action." (Saarinen Dep. at 76.) Saarinen understood that the market forces in place in August 2007 would justify such "exception processing." (*Id.*)

Apogee respectfully requests a pre-motion conference at which it will seek permission to file a summary judgment motion against State Street.

*[Handwritten annotation: No pre-motion conference will be necessary. Plaintiff shall file its motion by 3/25/11. Opposition shall be filed by 4/25/11. Reply by 5/9/11.]*

Very truly yours,

Steven L. Severson /sag

SEVSL/sls
fb.us.6071050.02
cc:    Counsel of Record (via e-mail)

SO ORDERED

*[Signature]*
RICHARD J. HOLWELL
UNITED STATES DISTRICT JUDGE

2/15/11