UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

IN RE STATE STREET BANK AND
TRUST CO. FIXED INCOME FUNDS          MDL No. 1945
INVESTMENT LITIGATION

─────────────────────────────────

PRUDENTIAL RETIREMENT INSURANCE
AND ANNUITY COMPANY,

     Plaintiff and Third-Party Defendant,

v.                                    No. 07 Civ. 8488 (PAC)

STATE STREET BANK & TRUST
COMPANY,

     Defendant and Third-Party Plaintiff.

─────────────────────────────────

**STATE STREET'S MEMORANDUM IN OPPOSITION TO
PRIAC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

MATERIAL FACTS ..............................................................................................................4

ARGUMENT .......................................................................................................................10

I.   PRIAC'S RENEWED SUMMARY JUDGMENT MOTION IS BARRED BY
     THE LAW OF THE CASE DOCTRINE...................................................................10

     A.   Judge Holwell Already Rejected PRIAC's Legal Arguments.................10

          1.   Judge Holwell Already Ruled in the S.J. Opinion that the Parties'
               Roles Were Inexorably Intertwined ..............................................11

          2.   Judge Holwell Already Rejected PRIAC's Theory that State Street Is
               Substantially More at Fault ...........................................................13

          3.   Judge Holwell Already Held that Fact Issues Remain Regarding the
               Truth of PRIAC's Defamatory Statements ....................................13

     B.   The ERISA Decision Excluded All of the Disputed Questions of Fact that
          Judge Holwell Determined Precluded Summary Judgment on State Street's
          Third-Party Claims ................................................................................14

          1.   The ERISA Decision Resolved None of the Factual Questions that
               Judge Holwell Held Precluded Summary Judgment on State Street's
               Contribution Claim. .....................................................................15

          2.   The ERISA Decision Resolved None of the Factual Questions that
               Judge Holwell Held Precluded Summary Judgment on State Street's
               Defamation Claim ........................................................................16

II.  JUDGE HOLWELL WAS CORRECT THAT FACTUAL ISSUES REMAIN
     PRECLUDING SUMMARY JUDGMENT ON STATE STREET'S
     CONTRIBUTION CLAIM .........................................................................................17

     A.   Judge Holwell Ruled Correctly that PRIAC's Role Supports a Claim for
          Contribution Based on a Joint Breach of Trust ......................................17

     B.   Judge Holwell Was Correct In Ruling that Factual Issues Remain Regarding
          Whether State Street Is Substantially More at Fault than PRIAC ..........20

III. FACTUAL ISSUES REMAIN REGARDING THE TRUTH OF PRIAC'S
     DEFAMATORY STATEMENTS ..............................................................................23

CONCLUSION....................................................................................................................25

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Baden v. Koch*, 799 F.2d 825, 828 (2d Cir. 1986) ........................................................................10

*Chemung Canal Trust Co. v. Sovran Bank*, 939 F.2d 12, 15-16 (2d Cir. 1991) ...............19, 20, 23

*DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) ....................................10

*Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984) ............................................................................13

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444, 464
   (S.D.N.Y. 2000), *modified*, 137 F. Supp. 2d 351 (S.D.N.Y. 2001), *vacated*, 302 F.3d
   18 (2d Cir. 2002) ........................................................................................................................12

*Prudential Ret. Ins. & Annuity Co. v. St. Street Bank & Trust Co.*, 772 F. Supp. 2d 519
   (S.D.N.Y. 2011) ............................................................................................................................1

*Prudential Ret. Ins. & Annuity Co. v. State St. Bank & Trust Co.*, No. 07 Civ. 8448, 2012
   WL 333774 (S.D.N.Y. Feb. 3, 2012) ............................................................................................1

*Scalp & Blade, Inc. v. Advest, Inc.*, 300 A.D.2d 1068 (N.Y. App. Div. 2002) ............................13

*Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D.N.Y.
   2002) ...........................................................................................................................................12

*Ulico Cas. Co. v. Clover Capital Mgmt., Inc.*, 146 F. Supp. 2d 163, 168 (N.D.N.Y. 2001) ...19, 20

*Weschler v. Hunt Health Systems, Inc.*, 198 F. Supp. 2d 508, 513-14 (S.D.N.Y. 2002) ...............10

*Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ...........................................................10

STATUTES

29 U.S.C. § 404 ..............................................................................................................................19

29 U.S.C. § 1104(a)(1)(B) ........................................................................................................17, 18

OTHER AUTHORITIES

18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 (1981) .................10

Restatement of Trusts § 258 .........................................................................................................11

Defendant and third-party plaintiff State Street Bank and Trust Company ("State Street") respectfully submits this brief in opposition to plaintiff and third-party defendant Prudential Retirement Insurance and Annuity Company's ("PRIAC") Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT

PRIAC's motion for summary judgment has no more merit today than it did last year, when Judge Holwell denied the same motion, based on the same facts and same legal arguments. *See Prudential Ret. Ins. & Annuity Co. v. St. Street Bank & Trust Co.*, 772 F. Supp. 2d 519 (S.D.N.Y. 2011) (the "S.J. Opinion"). The factual issues that precluded judgment in PRIAC's favor on State Street's third-party claims[1] then remain in dispute now. These issues must be resolved in the second phase of the trial, as structured by Judge Holwell. Specifically, Judge Holwell divided this case into two phases for trial: first, he tried PRIAC's claims against State Street under ERISA for losses suffered by PRIAC's retirement plan clients (the "Plans") from their investments in two bond funds managed by State Street (the "Bond Funds"). This first phase was tried before Judge Holwell in October 2011. *Prudential Ret. Ins. & Annuity Co. v. State St. Bank & Trust Co.*, No. 07 Civ. 8448, 2012 WL 333774 (S.D.N.Y. Feb. 3, 2012) (the "ERISA Decision"). The second phase is the trial of State Street's third-party claims for contribution and defamation. PRIAC now argues that the ERISA Decision, although specifically considering only evidence and arguments relating to phase one issues, somehow forecloses State Street's claims that are to be tried in phase two – even though Judge Holwell's opinion itself

---

[1] State Street originally filed its claims as counterclaims. In the S.J. Opinion at 563, Judge Holwell ruled that State Street's claims should properly be styled as third-party claims. Judge Holwell's reasoning was that PRIAC's claims against State Street are brought on behalf of the Plans, whereas State Street's claims are brought against PRIAC in PRIAC's individual capacity. State Street therefore filed a third-party complaint on April 21, 2011 re-designating its claims for contribution and defamation as third-party claims. Docket No. 267.

explicitly contemplates a second upcoming phase.  ERISA Decision, at *1 n.1.

Judge Holwell's S.J. Opinion remains the law of the case, and there is no basis for PRIAC's contention that the ERISA Decision overturned the legal rulings or resolved the factual disputes that Judge Holwell already decided preclude summary judgment.  There is simply no basis to assert that the ERISA Decision even addressed, let alone resolved, the fact issues that precluded entry of summary judgment on State Street's claims in the first go-around.

In the S.J. Opinion, Judge Holwell identified numerous specific disputed facts regarding communications between State Street, PRIAC, and the Plans during the July to August 2007 period that relate to contribution.  S.J. Opinion at 554-57.  Judge Holwell did not resolve these disputed questions of fact in the phase one trial.  To the contrary, his ERISA Opinion specifically "expresses no opinion on the adequacy of State Street's disclosures following [the end of June 2007]" precisely because "evidence of [that period] ha[d] not been presented to the Court at this phase of the trial."  ERISA Opinion at 29 n. 19.

PRIAC's argument that the ERISA Opinion decided these disputed factual questions is particularly misplaced because, consistent with the division of the trial into two phases, the phase one trial *excluded all* evidence related to State Street's contribution and defamation claims. Thus, State Street was not able to offer into evidence: (i) documents and testimony related to PRIAC's role as the Plans' only source of information and analysis about the Bond Funds; (ii) evidence from the critical time period in July and August 2007, before most of the losses were sustained, when State Street provided to PRIAC critical information about the Bond Funds' leverage, mounting losses, and concentrations in asset-backed securities ("ABS") collateralized by subprime mortgages to borrowers, just as an unprecedented liquidity crisis was burgeoning in the market for those securities (the so-called "subprime crisis"); and (iii) evidence that PRIAC

never provided this information to the Plans until after their losses, opting instead to falsely blame State Street in later mass communications to clients of not providing sufficient, timely information in July and August 2007 – that in fact had been provided to PRIAC, but not passed along to the Plans.  In contrast, in other situations where PRIAC was not involved and State Street was able to contact investors directly, the same magnitude of losses was avoided. PRIAC's suggestion that the ERISA Decision resolved these disputed issues without consideration of State Street's evidence is directly contrary to Judge Holwell's own stated views. He explained at the conclusion of the ERISA Decision that "[t]he remaining claims in this action – State Street's claim for contribution against [PRIAC] and State Street's defamation claim against [PRIAC] – *are to be tried at a later date*."  ERISA Decision, at *1 n.1 (emphasis added).

In fact, Judge Holwell already rejected *all* the arguments PRIAC again makes in support of its motion.  Judge Holwell was right to do so, and PRIAC has provided no basis for reconsideration of that prior ruling.  With regard to contribution, PRIAC argues that State Street cannot show PRIAC is jointly liable with State Street for the violations identified in the ERISA Decision because State Street managed the Bond Funds, whereas PRIAC was responsible only for disclosure.  But, PRIAC made *the very same argument* in its prior motion for summary judgment on State Street's claims, *see* Docket No. 210 at 29-31, 38, and Judge Holwell rejected it, holding that "[a]lthough the duties of State Street and PRIAC are not coextensive, they overlap, and PRIAC's claim of mismanagement by State Street also encompasses an element of nondisclosure to the Plans."  S.J. Opinion at 551.  Thus, it remains true today, as it was a year ago, that PRIAC "understates [the parties'] respective roles" when it argues that State Street's contribution claim should be barred "based solely on the idea that [the parties] owed wholly separate duties."  *Id.*  In reality, PRIAC and State Street undertook, together, to provide the Plans

with a complete package of investment services.  As Judge Holwell held, PRIAC cannot now avoid liability by attempting to draw a bright line where none existed.

Next, PRIAC argues that State Street has no right of contribution because State Street was "substantially more at fault" than PRIAC for the violations in the ERISA Decision. But Judge Holwell also rejected this argument in the S.J. Opinion, and specifically excluded from the phase one trial any resolution of those disputed questions of fact relating to whether State Street was substantially more at fault for the Plans' losses.  In fact, PRIAC's failure to provide the same information to the other Plans breached PRIAC's fiduciary duty and caused the Plans substantial losses in excess of what was already reimbursed pursuant to the Securities and Exchange Commission ("SEC") Fair Fund.[2]

Finally, PRIAC's argument that the ERISA Decision resolved questions of fact on State Street's defamation claim likewise fails because State Street's defamation claim relates entirely to issues that PRIAC concedes were excluded from the phase one trial.  These issues include the content and nature of State Street's disclosures to PRIAC about the Bond Funds in July and August 2007, the timeliness of State Street's responses to PRIAC's questions, and the accuracy of PRIAC's statements to clients in late August 2007 and later about information State Street provided in July and August.

## MATERIAL FACTS

PRIAC's motion omits and/or mischaracterizes material facts supporting State Street's third-party claims.  The following are the key material facts that require denial of PRIAC's

---

[2] In February 2010, State Street entered into a settlement agreement with the SEC and state regulators pursuant to which a Fair Fund was established and distributed to affected investors in these strategies.  Through the Fair Fund, PRIAC received $52,552,696.77.  In calculating PRIAC's damages, Judge Holwell held that State Street was entitled to a credit of $48,590,223 (or 92.46%) in connection with the SEC settlement.  ERISA Decision at *44.

motion for partial summary judgment ("Pl.'s Br.").  State Street also submits a response to the statement of material facts relied upon by PRIAC in its Motion for Partial Summary Judgment ("Opp. R. 56.1 Stmt.").[3]

PRIAC, together with State Street, undertook to provide the Plans with a full package of investment services normally provided by a single manager.  PRIAC's role included robust analysis and reporting on the Bond Funds.  PRIAC itemized these promised services in program documents that, according to PRIAC's own expert witness, spelled out the scope of PRIAC's fiduciary duties.  Opp. R. 56.1 Stmt. ¶ 1; PX 58; PX 17.  PRIAC's significant role is reflected in its 35 basis point fee, as compared with State Street's fee of only 6 to 10 basis points for managing the Bond Funds.  DX 42; DX 90; DX 469.  As a matter of policy, PRIAC would not divulge to State Street the identities of the PRIAC clients who invested in the Bond Funds.  DX 195.  PRIAC was thus the Plans *sole* source of information about the Bond Funds.  PRIAC filtered out from its own reporting to Plans the key information State Street provided.  This included State Street's description of the Bond Funds' investment styles and comparisons of the Funds' overweighted concentrations in ABS to their respective indices.  Opp. R. 56.1 Stmt. ¶ 2.  At the same time, PRIAC referred repeatedly in quarterly reports and fact sheets to the Intermediate Bond SL Series Fund ("IBF") as a "passive" fund, despite knowing the description was inaccurate.[4]  *Id*.  PRIAC thus breached its fiduciary duties by further obscuring the Funds'

---

[3] Pursuant to the Court's instruction not to resubmit exhibits, testimony, and other evidence already in the Court's possession as part of the trial record in this case, citations contained within State Street's opposition statement and this memorandum are, where possible, to the trial exhibit numbers assigned to those exhibits. Copies of documents and testimony referred to that were not assigned trial exhibit numbers or otherwise designated in their entirety are found in separately submitted volumes of exhibits to the Declaration of Robert A. Skinner, dated June 4, 2012 ("Skinner Decl.").

[4] Previously, in 2005, an employee at State Street had erroneously informed PRIAC that the name of IBF included the words "passive" and "index."  Opp. R. 56.1 Stmt. ¶ 27-33.  PRIAC

management strategies in normal course reporting to the Plans.

In the summer of 2007, especially after June 30, 2007, the subprime mortgage market experienced an unprecedented liquidity crisis that caused sharp drops in ABS prices, and the Bond Funds' performance followed suit.  DX 142.  As a result, State Street provided clients – including PRIAC – with material information to assist them in making informed decisions about their investments in the Bond Funds.  Opp. R. 56.1 Stmt. ¶¶ 12, 13, 14, 15, 17, 23. Unfortunately, PRIAC never provided this information to its clients until late August.  *Id.*; Opp. R. 56.1 Stmt. ¶ 35.  By then, it was too late.

In particular, State Street sent PRIAC characteristics, commentaries, status reports, and underlying security holdings in the spring and summer of 2007 that disclosed and commented upon the Bond Funds' active management and subprime-driven underperformance.  *Id.*  State Street provided commentary on July 6, 2007, disclosing that extreme volatility and illiquidity in the subprime market continued to affect the Bond Funds, but that State Street nonetheless intended to continue to maintain its ABS exposure.  Opp. R. 56.1 Stmt. ¶ 13.  On July 12, 2007, State Street confirmed to PRIAC in writing that PRIAC's use of "passive" and "index" in the name of IBF in communications to PRIAC's clients was incorrect, because the Bond Funds were actively managed.  Opp. R. 56.1 Stmt. ¶¶ 30, 31.  State Street also provided detailed holdings of the securities in the IBF to PRIAC in mid-July 2007, along with ABS portfolio characteristics.

---

had included the terms "passive" and "index" in the name of the fund, despite knowing all along that it was not a passive index fund.  *Id.*  Indeed, apart from sending commentaries to PRIAC – such as that provided on April 11, 2007 – describing the funds as actively managed, State Street sent monthly reports showing a sharp deviation between what the funds invested in and what the benchmark invested in, clearly indicating the funds were actively managed.  *Id.*  However, PRIAC did not provide this information to its clients.  *Id.*

Opp. R. 56.1 Stmt. ¶ 14.  PRIAC's senior Investment Strategist Dean Molinaro[5] acknowledged that the information showed, among other things, 4 to 1 leverage and substantial home-equity-related derivative securities in IBF.  Opp. R. 56.1 Stmt. ¶ 25.

However, PRIAC provided this information only to one client – its largest client, CIGNA – and no one else.  Opp. R. 56.1 Stmt. ¶¶ 13, 14.  The information prompted CIGNA to request a conference call directly with State Street, which was held immediately with one of the State Street portfolio managers on July 18, 2007.  Opp. R. 56.1 Stmt. ¶ 15.  PRIAC omits the critical information that State Street conveyed to PRIAC and CIGNA on the call, including IBF's significant concentration in ABS backed by subprime mortgages, use of 4 to 1 leverage, and active management style.  *Id*.  State Street also reemphasized on the call that these exposures were causing dramatic underperformance.  *Id*.  CIGNA decided on July 30, 2007 to redeem its investment from IBF as a result of the information that State Street provided through the end of July 2007.[6]  DX 194.  PRIAC neglects to mention that, had all Plans redeemed by that date, they would have avoided virtually all the losses of principal in their Bond Fund investments.  DX 351; DX 352; Skinner Decl. Ex. 7.

State Street continued to provide PRIAC with additional material information through mid-August.  On August 2, 2007, State Street provided PRIAC a status report presenting a bleak picture, indicating that the market for the ABS backed by subprime mortgages had seized up, forcing State Street to sell a significant number of AAA bonds.  Opp. R. 56.1 Stmt. ¶ 23.  State

---

[5] Dean Molinaro was a Senior Investment Strategist at PRIAC who dealt specifically with the State Street Bond Funds at issue in this litigation.

[6] CIGNA did not ultimately complete the redemption of its investment from IBF until August 20, 2007.  As PRIAC acknowledged internally at the time, CIGNA did not exit IBF earlier only because of CIGNA's "dragging its feet."  DX 268.  But the fact remains that the information State Street provided CIGNA and PRIAC by July 30, 2007 was sufficiently important that CIGNA decided by then to redeem its investment – demonstrating the materiality of that information to investors.

Street indicated that, as a result, IBF had underperformed by 550 basis points year-to-date, an extraordinary loss for a fund of this type. *Id.* Yet almost a week after receiving the update, PRIAC was still debating whether to bring the information to CIGNA's attention, ultimately deciding to provide the information only "in case the Cigna team inquir[ed] about it." *Id.* And there was not *any* debate about whether to bring the information to the attention of its other, apparently less-favored clients; PRIAC simply never did so. *Id.*

PRIAC complains that State Street failed to respond to all its questions in August 2007. Pl.'s Br. at 9-10. State Street had already provided PRIAC with the information State Street's other clients had in deciding to redeem, which was all the information necessary to decide whether to redeem. This included the Bond Funds' material underperformance arising from the concentration in ABS backed by subprime mortgages, the unprecedented illiquidity in the subprime bonds, the active nature (and correct name) of the funds, and the significant leverage being used. Opp. R. 56.1 Stmt. ¶¶ 13, 14, 15, 17, 23, 30. PRIAC obscures that, when presented with this information, CIGNA immediately announced its desire to redeem. Yet PRIAC kept this information from its other clients, and did nothing to implement CIGNA's decision to redeem. *Id.*; DX 268; DX 264.

Once PRIAC finally did disclose to the Plans in late August 2007 the information it received from State Street weeks earlier, PRIAC received sharp criticism and mounting complaints from clients about the prior dearth of information about the Bond Funds, as well as the patently false information that the IBF was a "passive" fund. DX 268; DX 189; DX 192; DX 301; DX 316; DX 324; DX 691; DX 692; DX 693; DX 202; DX 203; DX 698; DX 700. PRIAC brought this crescendo of complaints to a halt by falsely pointing the finger at State Street, saying in mass communications that State Street had withheld and concealed information that

State Street actually had provided to PRIAC weeks before. Opp. R. 56.1 Stmt. ¶¶ 36, 37.
Indeed, senior PRIAC personnel have admitted they knew State Street had provided them with
information fully explaining the Bond Funds' underperformance before PRIAC released its false
statements. Opp. R. 56.1 Stmt. ¶¶ 14, 15, 23, 25.

   PRIAC finally sought to redeem the Plans from the Bond Funds on August 29, 2007. DX
234. PRIAC championed its efforts to protect its clients. But by that point it was too late. The
Plans had suffered their losses, and State Street was already closing the Bond Funds. *Id.*

   In accordance with Judge Holwell's structure, none of these facts was addressed in the
phase one trial and thus in the ERISA Decision. The following table summarizes the Plans'
collective investment losses had they redeemed out of the Bond Funds on any of the relevant
dates described above, utilizing the methodology employed by PRIAC's damages expert Daniel
R. Fischel. Skinner Decl. Ex. 7. The investment losses would have been *less* than the $48
million PRIAC received through the Fair Fund settlement State Street reached with the SEC had
they redeemed at *any time* prior to August 16, 2007:

| Date | Event | PRIAC Losses Under Fischel Methodology |
|---|---|---|
| 7/18/2007 | State Street conducts a conference call with PRIAC and CIGNA regarding IBF's leverage and subprime exposure. Opp. R. 56.1 Stmt. ¶ 15. | ($11,139,229) |
| 7/26/2007 | State Street sends IBF investment characteristics to PRIAC for June, 2007. Opp. R. 56.1 Stmt. ¶ 17. | ($12,448,643) |
| 7/31/2007 | CIGNA informs PRIAC of its decision to exit IBF. DX 194. | ($24,053,222) |
| 8/2/2007 | State Street sends status update to PRIAC describing State Street Bond Funds' underperformance as a result of subprime exposure. Opp. R. 56.1 Stmt. ¶ 23. | ($25,727,505) |
| 8/9/2007 | State Street provides IBF Commentary for 2Q07 to PRIAC. Opp. R. 56.1 Stmt. ¶ 23. | ($36,579,963) |
| 8/15/2007 | State Street sends portfolio characteristics to PRIAC as of June 30 and July 31. Opp. R. 56.1 Stmt. ¶ 17. | ($47,815,752) |

| Date | Event | PRIAC Losses Under Fischel Methodology |
|------|-------|----------------------------------------|
| 8/16/2007 | State Street sends IBF performance attribution to PRIAC as of the end of July.  Opp. R. 56.1 Stmt. ¶ 23. | ($46,804,387) |

## ARGUMENT

## I.   PRIAC'S RENEWED SUMMARY JUDGMENT MOTION IS BARRED BY THE LAW OF THE CASE DOCTRINE

Judge Holwell's earlier S.J. Opinion remains the law of the case.  *See Weschler v. Hunt Health Systems, Inc.*, 198 F. Supp. 2d 508, 513-14 (S.D.N.Y. 2002); *see also DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (McLaughlin, J.) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988))).  The law of the case doctrine represents the principle that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).  Accordingly, the Second Circuit has "repeatedly stated that [it] will not depart from the sound policy of the law of the case doctrine absent 'cogent' or 'compelling' reasons."  *Baden v. Koch*, 799 F.2d 825, 828 (2d Cir. 1986) (quoting *Doe v. N.Y.C. Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983), *cert. denied,* 464 U.S. 864 (1983)).  The *only* grounds justifying a departure from the law of the case are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478, at 790 (1981).  PRIAC has not and cannot satisfy this demanding standard.

### A.   Judge Holwell Already Rejected PRIAC's Legal Arguments.

Judge Holwell has already rejected the theories PRIAC presents in support of its motion,

and those rulings remain the law of the case.

> **1.      Judge Holwell Already Ruled in the S.J. Opinion that the Parties'**
> **Roles Were Inexorably Intertwined.**

Judge Holwell already ruled that PRIAC's role in disseminating to and analyzing

information for the Plans could support State Street's claim for contribution.  PRIAC argues, as

it did before, that it was only responsible for disclosure, while State Street was responsible for

fund management.  So, PRIAC's reasoning goes, the parties could not have committed the same

"breach of trust," as purportedly required by the Restatement of Trusts Section 258 and ERISA,

which would mean PRIAC cannot be liable for contribution.  Pl.'s Br. at 15-16.  However, Judge

Holwell already recognized that nothing in the law of trusts or ERISA supports PRIAC's narrow

interpretation of the term "breach of trust."  Specifically, Judge Holwell rejected PRIAC's thin

parsing of the parties' respective roles in the S.J. Opinion (from which PRIAC quotes

selectively).  Judge Holwell specifically discredited PRIAC's "attempt[] to draw a bright line

through a field of gray."  S.J. Opinion at 551.  While he observed that "it might be appealing . . .

to separate the duties of 'prudent management' and 'reporting' neatly in this case, and to say that

State Street alone owed the former and PRIAC the latter," Judge Holwell recognized that "this

distinction fades when the breach is viewed from the perspective of the Plans."  *Id.*  Importantly,

Judge Holwell concluded that "the breach of fiduciary duty in this case [was] that their

investments were steered *without their knowledge* into risky investments and that *by the time*

*they were informed* of these investments, they had already incurred massive losses."  *Id.*

(emphasis added).  Because "PRIAC's claim of mismanagement by State Street also

encompasses an element of nondisclosure to the Plans," Judge Holwell held that "[t]he set of

duties owed by State Street and PRIAC, therefore, could intersect at nondisclosure."  *Id.*  In sum,

Judge Holwell recognized that "[a]lthough the duties of State Street and PRIAC are not

coextensive, they overlap," and, therefore, it would "understate[] their respective roles to bar a claim for contribution based solely on the idea that they owed wholly separate duties." *Id.* PRIAC offers no basis on which this Court should revisit the thorough and sound reasoning of Judge Holwell's S.J. Opinion on this point.

In fact, PRIAC cites only two cases to support its narrow interpretation of ERISA law, both of which Judge Holwell *already rejected* as bases for parsing out separate breaches of trust for nondisclosure and mismanagement.  S.J. Opinion at 551; *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co*., 122 F. Supp. 2d 444, 464 (S.D.N.Y. 2000), *modified*, 137 F. Supp. 2d 351 (S.D.N.Y. 2001), *vacated*, 302 F.3d 18 (2d Cir. 2002); *Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D.N.Y. 2002).  As Judge Holwell acknowledged in the S.J. Opinion, both cases stand only for the proposition that a counterclaim defendant is not liable for contribution unless it was bound, along with the counterclaim plaintiff, to perform the fiduciary duties alleged.  In distinguishing these cases in the S.J. Opinion, Judge Holwell recognized that State Street's contribution claim is based on the unique circumstances of this case – namely, that PRIAC and State Street undertook together to provide the Plans with a complete package of investment services normally provided by a single manager.  For PRIAC, that included a fiduciary duty to perform analysis, and to keep the Plans informed.  S.J. Opinion at 551.  For this reason, Judge Holwell held in the S.J. Opinion that PRIAC cannot pin the Plans' professed ignorance on State Street alone, as it attempts to do again in the present motion.

**2.**    **Judge Holwell Already Rejected PRIAC's Theory that State Street Is Substantially More at Fault.**

Judge Holwell also previously rejected PRIAC's argument that the Court could hold, as a matter of law, that State Street was substantially more at fault. PRIAC points to a line of cases, already considered by Judge Holwell, holding that a trustee who fails to "catch" a co-trustee in the act of breaching may not be liable for contribution. But, as Judge Holwell recognized previously in the S.J. Opinion, State Street's claim is not based on PRIAC's simple failure to "catch" State Street in the act of breaching. Instead, PRIAC had affirmative, active duties to analyze and transmit material information to the Plans. Indeed, PRIAC, not State Street, was the fiduciary responsible for keeping the Plans informed about their investments; State Street was not even informed about who PRIAC's clients were. S.J. Opinion at 558. None of the cases PRIAC cites – the same cases it cited in its original motion for summary judgment and that Judge Holwell distinguished – deal with such a situation.

So, for example, in *Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984), the court found that a trustee could not be liable for his co-trustee's breach, because his simple failure to exercise control over his co-trustee did not contribute substantially to the retirement plan losses at issue. *See id.* at 1337-38. In *Scalp & Blade, Inc. v. Advest, Inc.*, 300 A.D.2d 1068 (N.Y. App. Div. 2002), the court similarly held that a trustee's failure to monitor its co-fiduciary's actions did not contribute substantially to the trust's losses. *See id.* at 1069. But Judge Holwell recognized previously that neither case dealt with a situation such as the one here, where an investment professional such as PRIAC made promises to its clients to provide important services for a substantial fee. S.J. Opinion at 558.

**3.**    **Judge Holwell Already Held that Fact Issues Remain Regarding the Truth of PRIAC's Defamatory Statements.**

PRIAC argues that the Court should grant summary judgment on State Street's

defamation claim because the statements at issue were "substantially true."  However, Judge Holwell rejected this *very same argument* when PRIAC moved for summary judgment on State Street's defamation claim on the same grounds.  In particular, Judge Holwell held that, "for many of the same reasons that material issues of fact remain with respect to the contribution claim, issues of fact remain with respect to the truth of [the alleged defamatory] statements as well."  S.J. Opinion at 562.

> **B.     The ERISA Decision Excluded All of the Disputed Questions of Fact that Judge Holwell Determined Precluded Summary Judgment on State Street's Third-Party Claims.**

PRIAC makes no attempt to explain why Judge Holwell's prior S.J. Opinion no longer remains the law of the case.  Instead, PRIAC relies on the same evidence and arguments it relied on when Judge Holwell denied PRIAC's first motion for summary judgment in 2011, and the ERISA Decision.  However, PRIAC's suggestion that the ERISA Decision somehow resolved questions of fact regarding State Street's claims is at odds both with its concession that the ERISA Decision "covered the period through June 30, 2007" and with the position PRIAC took during the phase one trial, when PRIAC objected strenuously – and successfully – to the presentation of any evidence relating to State Street's third-party claims.  Pl.'s Br. at 2; Trial Tr. 157:18-158:7; 312:10-22; 332:2-333:7; 333:9-334:5; 340:10-341:21; 344:20-24; 1239:24-1240:25.  In fact, the parties had originally exchanged exhibit lists and deposition designations prior to trial that included evidence supporting State Street's contribution and defamation claims.  Skinner Decl. Ex. 6.  But when Judge Holwell ruled that the first phase of trial would not cover those issues, the parties exchanged new exhibit lists and deposition designations, deliberately excluding all evidence supporting State Street's third-party claims.[7]  Docket No. 305.  This, of

---

[7] The conclusory and self-serving affidavits that PRIAC has submitted do nothing to resolve these issues of fact.  In those affidavits, various PRIAC employees state that they were unaware

course, explains why Judge Holwell ruled in the ERISA Decision that PRIAC's recovery was "subject, of course, to a reduction by any amount to which State Street may be entitled as a result of its claim for contribution."  ERISA Decision at *44.

        **1.**        **The ERISA Decision Resolved None of the Factual Questions that Judge Holwell Held Precluded Summary Judgment on State Street's Contribution Claim.**

In denying PRIAC's prior motion on State Street's contribution claim, Judge Holwell held that "[m]any of the facts on which State Street relies, then, are subject to a reasonable interpretation that finds that PRIAC violated a duty of disclosure in July 2007."  S.J. Opinion at 557.  In particular, in the S.J. Opinion, Judge Holwell highlighted the importance of six key disclosures from State Street, none of which were addressed in the ERISA Decision: (i) an April 11, 2007 commentary (DX 260); (ii) the characteristics data State Street sent to PRIAC on June 29, 2007 (DX 674); (iii) the additional commentary State Street sent to PRIAC on July 6, 2007 (DX 179); (iv) the conference call that took place among State Street, CIGNA, and PRIAC on July 18, 2007 (Opp. R. 56.1 Stmt. ¶ 15); (v) the commentary State Street provided to PRIAC on August 2, 2007 (DX 142); (vi) the updated characteristics data State Street provided to PRIAC on August 15, 2007 (PX 35); and (vii) the conference call that took place between State Street and PRIAC the following day, August 16, to discuss the characteristics data.  In the S.J. Opinion, Judge Holwell held that "these disclosures would have alerted the Plans to the risks of investing

---

of the Bond Funds' return targets, volatility, State Street's internal analysis of the subprime mortgages underlying the bonds in which the Bond Funds invested, and State Street's risk management practices.  PRIAC argues that this purportedly missing information is critical to State Street's contribution claim.  Pl.'s Br. at 9.  However, State Street's contribution claim is based on PRIAC's failure to pass along key information to the Plans during the subprime crisis – namely, information about the Bond Funds' leveraged exposure to subprime mortgage-related securities, mounting losses from exposure to those securities, and active style.  State Street's internal analysis of the Bond Funds, while relevant to PRIAC's ERISA claim, has nothing to do with State Street's contribution claim, which focuses on PRIAC's conduct.

in the Bond Funds, and without this information, the Plans could have been misled into thinking that their investments were less risky than they actually were." S.J. Opinion at 553-554.

Judge Holwell's ERISA Decision explicitly carves out and disclaims any judicial holdings with respect to the above communications, and specifically "expresse[d] no opinion on the adequacy of State Street's disclosures following [June 2007], evidence of which has not been presented to the Court at this phase of the trial." ERISA Decision at *29 n.19. Nor can the fact that the ERISA Decision found State Street liable for a breach of fiduciary duty provide a basis to overturn Judge Holwell's S.J. Opinion. Because State Street's contribution claim is entirely premised on State Street first being held liable to PRIAC on the ERISA claims, Judge Holwell's S.J. Opinion assumed, *arguendo*, State Street's liability for breach of fiduciary duty. The fact that the ERISA Decision converted State Street's liability from hypothetical to actual changes nothing.

> **2.      The ERISA Decision Resolved None of the Factual Questions that Judge Holwell Held Precluded Summary Judgment on State Street's Defamation Claim.**

On State Street's defamation claim, Judge Holwell identified remaining questions of fact surrounding the timing and content of State Street's disclosures to PRIAC in July 2007, which PRIAC concedes were not part of the phase one trial. Pl.'s Br. at 3. *All* of the remaining alleged defamatory statements were made between August 29, 2007 and February 1, 2008. Judge Holwell found that questions of fact remained regarding their falsity because of evidence that State Street disclosed to PRIAC in July and August 2007 that, *inter alia*, the Bond Funds held substantial amounts of ABS backed by mortgages to subprime borrowers, the Bond Funds' underlying benchmarks did not contain these securities, and the Bond Funds contained ample leverage. Judge Holwell observed, for example, that "Molinaro's testimony about the July 18 conference call and July 12 spreadsheet create an issue of fact as to whether State Street had

informed PRIAC of the leverage and subprime exposure of the Bond Funds by those dates." S.J.

Opinion at 562. Again, as PRIAC concedes, this entire time period was not addressed during the

phase one trial. Pl.'s Br. at 3. Thus, PRIAC has not provided any reason for the Court to

reconsider Judge Holwell's prior rejection of PRIAC's motion.

## II.   JUDGE HOLWELL WAS CORRECT THAT FACTUAL ISSUES REMAIN PRECLUDING SUMMARY JUDGMENT ON STATE STREET'S CONTRIBUTION CLAIM

Even setting aside the law of the case, PRIAC's arguments for summary judgment still

fail for the same reasons they failed the first time. State Street has submitted evidence that

PRIAC's contribution to the Plans' losses was substantial. PRIAC breached its fiduciary duties

and exacerbated the Plans' losses by: (i) obscuring the Bond Funds' investments in the normal

course; and (ii) failing to pass critical information from State Street to the Plans during the height

of the subprime crisis in July and August 2007. Thus, PRIAC cannot blame the Plans' professed

ignorance on State Street alone, as PRIAC attempts to do here.

### A.   Judge Holwell Ruled Correctly that PRIAC's Role Supports a Claim for Contribution Based on a Joint Breach of Trust.

PRIAC's responsibilities with regard to the Bond Funds were substantial, and its breach

of those responsibilities supports a claim for contribution. PRIAC claims that it was only

responsible for disclosure, while State Street was responsible for fund management. But Judge

Holwell was correct that nothing in the law of trusts or ERISA supports PRIAC's narrow

interpretation of the term "breach of trust." To the contrary, ERISA recognizes the overlap

between disclosure and management by requiring investment managers to manage a fund in light

of its disclosed "aims" and "character." 29 U.S.C. § 1104(a)(1)(B).

Accordingly, in the ERISA Decision, Judge Holwell did not hold State Street liable for

mismanaging the Bond Funds in a vacuum. Instead, he held State Street liable for managing the

Bond Funds imprudently by accepting risks beyond their stated character and aims "without disclosing its intention to do so." ERISA Decision at *30. In particular, Judge Holwell held that "while subprime exposure was not imprudent per se, the Bond Funds' concentration in subprime securities exceeded a prudent level given the 'character' and 'aims,' 29 U.S.C. § 1104(a)(1)(B), of the Bond Funds." *Id.* Critically, PRIAC failed to timely transmit to the Plans the information State Street provided about the Bond Funds' "character" and "aims" in July and August 2007. *Id.* Moreover, Judge Holwell held that the Bond Funds were not sufficiently diversified in light of the Plans' understanding, from PRIAC's disclosures, that the Bond Funds were "enhanced index" and not "active" funds. *Id.* at *36 ("The Plans invested in the Bond Funds as enhanced index funds . . . ."). This was a misconception on the Plans' part that PRIAC's disclosures reinforced and that State Street corrected, definitively, in July 2007. Thus, in the ERISA Decision, Judge Holwell recognized the importance of the very type of disclosures State Street made to PRIAC in July and August 2007, and that PRIAC failed to pass on disclosures about leverage, subprime exposure, and risk associated with subprime investments from the burgeoning crisis in the market for those securities. *Id.* at *26-30.[8]

Furthermore, PRIAC's alleged distinctions between State Street's ERISA violations and PRIAC's violations are irrelevant, and without merit. Pl.'s Br. at 17. First, as described above, PRIAC's duties were intertwined with State Street's. Second, PRIAC's argument that its disclosure duties arose only out of its duty of loyalty under Section 404(a)(1) is at odds with Judge Holwell's holding that "an affirmative duty to disclose merely serves to correct the misleading disclosures already in existence, and is consistent with the duties of loyalty *and prudence* for ERISA fiduciaries." S.J. Opinion at 554 (emphasis added). PRIAC offers no

---

[8] Tellingly, PRIAC criticized State Street in the Complaint in this action for failing to provide that same information. Compl. ¶¶ 2-3, 18-20, 22-23, 25-26.

explanation as to why that distinction would bar a claim for contribution.  Third, there is simply no precedent in the law for PRIAC's suggestion that a temporal distinction in the facts underlying the parties' claims forecloses State Street's contribution claim.  *See, e.g.*, *Ulico Cas. Co. v. Clover Capital Mgmt., Inc.*, 146 F. Supp. 2d 163, 168 (N.D.N.Y. 2001) (holding contribution claim available against ERISA fiduciary whose breach post-dated, but exacerbated the loss resulting from, the trustees' initial breach).  Fourth, there is no legal basis for PRIAC's argument that, unlike State Street's contribution claim, PRIAC's ERISA claim against State Street was not subject to a causal requirement.  Both claims entitle plaintiffs to damages "resulting from" the defendant's breach of trust.  29 U.S.C. § 404.  Fifth, and finally, PRIAC cannot be correct that PRIAC and State Street could never under any circumstances have jointly breached the same disclosure duty.  Such a thin parsing of the term "breach of trust" would effectively eliminate the right of contribution under ERISA, which could not be reconciled with the Second Circuit's holding in *Chemung Canal Trust Co. v. Sovran Bank*, 939 F.2d 12, 15-16 (2d Cir. 1991) ("The 'right of action' for contribution is no more than a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons plaintiff chose to sue in the first instance.").

Judge Holwell recognized correctly that State Street and PRIAC undertook, together, to provide the Plans with a complete package of investment services normally provided by one manager.  For PRIAC, that meant a fiduciary duty to perform analysis, keep the Plans informed in the normal course, and to provide "interim reports" to the Plans on important events.  S.J. Opinion at 551, 554; DX 327; DX 351; DX 352; PX 17.  PRIAC breached those duties and exacerbated the Plans' losses.  The Second Circuit has held that contribution is appropriate in

such circumstances because "[t]here is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt." *Chemung*, 939 F.2d at 16; *see also Ulico*, 146 F. Supp. 2d at 168 (holding that contribution may be available if a co-fiduciary's breach of its own fiduciary duties was "increasing the amount of harm" caused by the defendant-fiduciary's initial breach in investing in a questioned investment).

**B.**   **Judge Holwell Was Correct In Ruling that Factual Issues Remain Regarding Whether State Street Is Substantially More at Fault than PRIAC.**

PRIAC's contribution to the Plans' losses was substantial.  Nevertheless, PRIAC argues that summary judgment against State Street's contribution claim is warranted because the ERISA Decision showed State Street is substantially more at fault, and PRIAC had no knowledge of State Street's alleged violations.  Pl.'s Br. at 18-19.  However, as Judge Holwell described in the S.J. Opinion, State Street's contribution counterclaim is based on PRIAC's failure to perform the important and fundamental role it carved out for itself in the relationship among State Street, PRIAC, and the Plans.  As the Plans' *sole* source of information regarding the Bond Funds, PRIAC pledged to: (i) "monitor the performance, risk, and style of [the Bond Funds]"; (ii) "provide comprehensive quarterly due diligence reports to assist plan sponsors in making informed decisions regarding these funds with their plans"; (iii) provide "interim reports on important developments"; and (iv) to "deselect an Alliance Fund" under "extreme circumstances."  DX 327; DX 351; DX 352; PX 17.  Thus, PRIAC, with State Street, had a primary role in providing the Plans with a package of investment services, including investment management, analysis, and reporting.  PRIAC agreed to serve the latter two functions, in exchange for a fee whose substantial size reflected that fact.  In fact, PRIAC would not even

inform State Street who its clients were.[9]

In spite of PRIAC's important role as the Plans' only source of information, when State Street provided PRIAC with critical information about the Bond Funds in April, June, July, and August 2007, PRIAC failed to analyze and report that information to the Plans on a timely basis. For example, the commentary provided on July 6, 2007 disclosed the negative impact of the subprime market on both Bond Funds. Opp. R. 56.1 Stmt. ¶ 13. On July 12, 2007, State Street definitively informed PRIAC that the use of "passive" and "index" in the name of IBF in communications to PRIAC's clients was incorrect. Opp. R. 56.1 Stmt. ¶ 17. State Street's monthly reports showed the Bond Funds' increasing concentrations in ABS. R. 56.1 Stmt. ¶ 30. State Street provided detailed holdings in mid-July 2007. Opp. R. 56.1 Stmt. ¶ 14. The list of holdings State Street provided indicated that, as Mr. Molinaro testified he knew, IBF's ABS exposure was leveraged at a ratio of roughly 4 to 1. Opp. R. 56.1 Stmt. ¶ 25. On the subsequent call between CIGNA, State Street and PRIAC, State Street reiterated IBF's use of leverage, concentration in asset backed securities, and active management style. Opp. R. 56.1 Stmt. ¶ 15. According to the testimony of Mr. Molinaro, who participated in the July 18 phone call, PRIAC (and CIGNA) were fully informed after the call about how State Street's managers ran the IBF. *Id.*

Nevertheless, PRIAC took no affirmative action to notify the Plans about the investment style of the Bond Funds, including the correct name of IBF, until late August 2007. Opp. R. 56.1 Stmt. ¶ 35. This was in spite of the fact that PRIAC recognized that "the word 'Passive' in the name implies 'index fund'." DX 199. Of course, the Plans were surprised to discover in late August that IBF was not a passive index fund. CIGNA, the first Plan to learn of the correct

---

[9] Even during the subprime crisis, when State Street pushed for permission to provide information directly to clients, PRIAC refused. DX 195.

name, noted that "[o]n the most basic level, the use of the terms 'passive' and 'index' in the

Fund's name misled investors . . . into believing that the Fund's approach would be to generally

mirror the practices of its benchmark bond index fund."   DX 117.  Similarly, PRIAC client

Gannett Fleming's investment consultant stated in an August 23 email:

> We have extensive communications from [PRIAC] in which the fund Gannett's DB Plan is invested is characterized as an index fund.   We now receive information – several days after Pru apparently received it from the manager[10] – indicating that the fund is actually an "enhanced index" or alternatively "active" fund which now has a very heavy concentration in sub-prime mortgage backed securities.

DX 201.

Fundamentally, the fact that IBF was not a passive index fund triggered PRIAC's duty to

issue an "interim report[] on important developments," as PRIAC's own expert, Dennis Logue,

conceded.  PX 17; DX 327.  PRIAC's failure to notify the Plans of IBF's correct name in a

timely fashion, and to correct the Plans' misimpression that IBF was a passive index fund,

exacerbated PRIAC's breach of its fiduciary duties in not disclosing other material information,

such as the Bond Funds' use of leverage and concentration in ABS backed by subprime

mortgages.

Upon reviewing these facts, Judge Holwell stated that he could not hold "that State Street

was substantially more at fault for the Plans' losses than PRIAC to the extent that a contribution

claim would fail as a matter of law."  S.J. Opinion at 558.  As described above, *none* of these

facts was taken up in the ERISA Decision.  In fact, the Plans suffered almost all their losses *after*

State Street had fully informed PRIAC regarding the Plans' investments.  PRIAC is responsible

for those losses.  Therefore, again, this case, unlike those that PRIAC cites, warrants distributing

---

[10] Actually, PRIAC was fully aware of this information by no later than mid-July 2007, as set forth above.

losses "proportionally among those responsible . . . without regard to which particular persons plaintiff chose to sue in the first instance." *Chemung*, 939 F.2d at 15-16.  There is no basis for entry of summary judgment dismissing State Street's contribution counterclaim.

## III.  FACTUAL ISSUES REMAIN REGARDING THE TRUTH OF PRIAC'S DEFAMATORY STATEMENTS

Judge Holwell correctly held in the S.J. Opinion that "for many of the same reasons that material issues of fact remain with respect to the contribution claim, issues of fact remain with respect to the truth of [the defamatory statements] as well."  S.J. Opinion at 562.[11]  State Street has presented ample evidence that PRIAC's statements accusing State Street of hiding the Bond Funds' strategies until late August 2007 were false.  Indeed, PRIAC now concedes that, starting in 2005, PRIAC stopped following its process for managers to regularly review fact sheets.  Opp. R. 56.1 Stmt. ¶ 20.  Thus, IBF fact sheets distributed by PRIAC to the Plans for the ensuing two years used the incorrect name for IBF without State Street's knowledge.  *Id.*  On July 12, 2007, State Street informed PRIAC that PRIAC was incorrectly marketing IBF as a passively-managed fund by calling IBF the "Passive Intermediate Bond Index Fund."  Opp. R. 56.1 Stmt. ¶ 31. Nonetheless, PRIAC failed to affirmatively notify clients of the incorrect name until after August 20.  Opp. R. 56.1 Stmt. ¶ 33.  Yet, PRIAC told its clients that when it found out about the correct name, it took immediate action to rename the fund, thus shifting even more blame to State

---

[11] PRIAC in its motion unilaterally declares that only portions of the six remaining statements (portions highlighted by PRIAC for the first time in this motion) are still at issue.  However, Judge Holwell held that "[a] triable issue of fact as to actual malice remains only on those that do [relate to State Street's investment strategy], namely Statements 12, 13, 15, 16, 17, and 23."  S.J. Opinion at 561 n.27.  Judge Holwell did not say that only a portion of those statements remained at issue, or make any attempt to identify the portions of the statements that related to State Street's investment strategy.  There is simply no basis for PRIAC's proffered limitation in the S.J. Opinion.

Street.[12]

Tellingly, PRIAC does not dispute State Street's evidence that State Street had, in fact, disclosed to PRIAC by July 18 the precise amount of leverage and subprime in the Funds – well before PRIAC opted to pass that information along to its clients.  In fact, as PRIAC now concedes, Pl.'s Br. at 6-7, State Street disclosed much earlier that the Bond Funds' investments included subprime mortgage-related securities.  State Street also informed PRIAC no later than July 12 that the Bond Funds were leveraged 4 to 1, as Mr. Molinaro testified.  Opp. R. 56.1 Stmt. ¶¶ 14, 25.  Mr. Molinaro further concedes that, after the July 18 conference call in which CIGNA and PRIAC participated, PRIAC was "fully aware of the portfolio characteristics, structure, [and] investment philosophy of the portfolio."  Molinaro Dep. Tr. 153:3-14, Skinner Decl. Ex. 1.

PRIAC contends that even if its defamatory statements were technically false, they were nonetheless "substantially true" for two reasons, neither of which has any merit.  Pl.'s Br. at 22-24.  PRIAC claimed that State Street had refused to inform PRIAC about the Funds' "extensive leverage" and "broad exposures" to subprime until "August 22, well after [PRIAC] had begun questioning SSgA about their index-lagging performance."  In defending the "substantial truth" of this statement, PRIAC first argues that State Street's communications "about subprime exposures and leverage did not inform PRIAC how those facts reflected the changes it had made in the Bond Funds [sic] investment strategy since 2006 or the heightened risk to which State Street was exposing investors," Pl.'s Br. at 23.  Importantly, though, PRIAC fails to identify a

---

[12] Contrary to PRIAC's assertion, Judge Holwell did not rule out the possibility that State Street could present additional arguments at trial to support its contention that PRIAC's defamatory statements are not covered by a conditional privilege because they were not made primarily for the purpose of furthering a common business interest between PRIAC and the Plans.  S.J. Opinion at 560 ("[T]he inference that these communications indicate an ulterior motive so strong such that the publication was not made chiefly in furtherance of the privileged interest is too attenuated to create a triable issue of fact based on *this argument*.") (emphasis added).

single fact that State Street could have or should have told PRIAC, but did not.

PRIAC next asserts that the incorrect dates included in its statements are not actionable as a matter of law because they do not undermine the "substantial truth" of the "gist" of the statements. Pl.'s Br. at 23. But in making the statements, PRIAC not only claimed State Street failed to provide correct information throughout the relationship (while the Plans were enjoying healthy steady returns), but also that State Street *deliberately* concealed information from PRIAC during a time of tremendous and unprecedented market turmoil (when the Plans began to lose money). *See, e.g.*, Pl.'s App'x at 4-5 ("SSgA also did not disclose these off-strategy investment strategies and practices . . . *even after weeks of receiving questions from Prudential*. SSgA did not explain the fund's extensive leveraged sector concentration until a call . . . *in mid-August, well after we had begun questioning SSgA about their index-lagging performance*.") (emphases added). It cannot be argued on summary judgment that the truth would have been "equally as damaging to [State Street's] reputation in the mind of the reader," given that the undisputed evidence shows that State Street *did* in fact communicate timely to PRIAC the dangers posed by continued investment in the Bond Funds well before the Plans suffered any losses.

None of PRIAC's rehashing of prior arguments has any merit, and its motion for summary judgment on State Street's defamation claim should be denied.

## CONCLUSION

For the foregoing reasons, State Street respectfully requests that the Court deny PRIAC's Motion for Partial Summary Judgment in its entirety.

Dated:  June 4, 2012     Respectfully submitted,

            ROPES & GRAY LLP


            By: /s/ Harvey J. Wolkoff
            Harvey J. Wolkoff
            Robert A. Skinner
            Daniel J. Maher
            Prudential Tower
            800 Boylston Street
            Boston, MA  02199-3600
            Tel: (617) 951-7000
            Fax: (617) 951-7050
            harvey.wolkoff@ropesgray.com
            robert.skinner@ropesgray.com
            daniel.maher@ropesgray.com
            *Attorneys for Defendant and Third-Party Plaintiff*
            *State Street Bank and Trust Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2012, I caused a true and correct copy of the foregoing document to be served upon the following counsel of record by e-mail and CM/ECF.

<u>/s/ Allison Boscarine</u>

Edwin G. Schallert
Jeremy Klatell
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022