UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

PRUDENTIAL RETIREMENT INSURANCE       :
AND ANNUITY COMPANY,                  :
                                      :
             Plaintiff and Third-Party Defendant,  :
                                      :
             -against-                :
                                      :
STATE STREET BANK AND TRUST           :
COMPANY,                              :
                                      :
             Defendant and Third-Party Plaintiff  :
------------------------------------------------------------ x

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:  November 19, 2012 |

07 Civ. 8488 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

On October 1, 2007, Plaintiff Prudential Retirement Insurance and Annuity Co.

("PRIAC") brought this action, pursuant to sections 409(a) and 502(a)(2) and (3) of the

Employee Retirement Income Security Act of 1974[1] ("ERISA") against defendants State Street

Bank and Trust Co. ("State Street").[2]  PRIAC acted as an ERISA fiduciary on behalf of nearly

200 retirement plans (the "Plans") that invested, through PRIAC, in two collective bank trusts

managed by State Street: the Government Credit Bond Fund ("GCBF") and the Intermediate

Bond Fund ("IBF," and, collectively, the "Bond Funds"), both of which PRIAC alleged lost

significant value due to State Street's breaches of fiduciary duty.  State Street filed its answer on

October 27, 2008, and counterclaimed for contribution or indemnification, defamation, and

---

[1] Section 502(a) is codified as 29 U.S.C. § 1132(a)(2) and provides that a civil action may be brought "by a . . . fiduciary for appropriate relief under section 1109 of this title."  Section 409(a) is codified as 29 U.S.C. § 1109(a) and provides in relevant part that "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan, and shall be subject to such other equitable or remedial relief as the court may deem appropriate."
[2] PRIAC also sued State Street Global Advisors, but subsequently dismissed that claim, and the Global Advisors entity was dismissed from this action.  See In re State St. Bank & Trust Co. ERISA Litig., 772 F. Supp. 2d 519, 523 n.2 (S.D.N.Y. 2011).

1

violations of the Massachusetts Unfair Trade Practices Act.[3]  Def.'s Answer & Counterclaim, Dkt. No. 97.

On March 28, 2011, Judge Holwell (1) denied State Street's motion for summary judgment based on PRIAC's failure to mitigate damages and on the doctrine of superceding cause; (2) denied State Street's cross-motion for partial summary judgment on its contribution counterclaim; (3) granted PRIAC's motion to dismiss State Street's claim under the Massachusetts Unfair Trade Practices Act, and (4) denied PRIAC's motion to dismiss State Street's contribution and defamation claims.  In re State St. Bank & Trust Co. ERISA Litig., 772 F. Supp. 2d 519, 523 (S.D.N.Y. 2011) (the "SJ Decision").

Judge Holwell conducted a  seven day bench trial in October 2011 on PRIAC's claims against State Street, with State Street's contribution and defamation claims against PRIAC to be tried separately at a later date.  On February 1, 2012, Judge Holwell awarded PRIAC $28,143,656, finding that State Street (1) violated its duty of care, skill, prudence and diligence; (2) did not violate its duty of loyalty; and (3) violated its duty to diversify its investment portfolio.  See generally In re State St. Bank & Trust Co. ERISA Litig., 842 F. Supp. 2d 616 (S.D.N.Y. 2012) (the "ERISA Decision").

PRIAC has renewed its  motion for partial summary judgment dismissing State Street's contribution and defamation claims, asserting that the ERISA Decision has changed the landscape.  The parties have fully briefed the issues and oral arguments were held on November 13, 2012.  For the reasons stated below, PRIAC's motion for summary judgment is denied.

---

[3] Pursuant to the S.J. Decision, State Street subsequently re-designated its claims for contribution and defamation as third-party claims.  Third Party Compl., Dkt. No. 267.

### BACKGROUND[4]

PRIAC argues that the Court should revisit its motion for summary judgment because "[t]he ERISA Decision provides an expansion of the record by adding factual findings and legal conclusions that make it possible to dispose of State Street's remaining claims."  PRIAC's Mem. of Law at 11, Dkt. No. 348.  State Street counters: (1) PRIAC's arguments have already been considered and rejected in the SJ Decision, and (2) the ERISA Decision specifically excluded the disputed questions of fact that Judge Holwell previously determined precluded summary judgment of State Street's claims.  State St.'s Opp'n at 10-17, Dkt. No. 349.

As Judge Holwell explained with regard to State Street's contribution claim,

> The factual core of State Street's argument begins with its assertion that PRIAC was fully aware of the leverage and subprime exposure in the Bond Funds by mid-July 2007.  According to State Street, PRIAC had a duty to pass on that information to the Plans at that time, but failed to do so until late August 2007.  If PRIAC had passed on that information in July, State Street surmises that the Plans would then have redeemed their interests in the Bond Funds.  If the Plans had done so in mid-July instead of late August 2007, their losses would have been substantially less than that which is claimed in this litigation.[5]

SJ Decision at 538.  PRIAC argues that the ERISA Decision found State Street liable for breaching fiduciary duties related to managing the Bond Funds' assets, which PRIAC cannot be held jointly liable for because it played no role in State Street's investment decisions.  PRIAC's Mem. of Law at 16-18.  Alternatively, PRIAC argues that the ERISA Decision makes clear that State Street was "substantially more at fault" than PRIAC, which would also bar holding PRIAC jointly liable for the damages suffered by the Plans.  Id. at 18-19.

With regard to its defamation claim, State Street identified twenty-three instances in which PRIAC sought to "conceal its fiduciary failures and to disclaim any responsibility" by

---

[4] The underlying facts and allegations are set forth in the SJ Decision and the ERISA Decision.  Familiarity with the two decisions is assumed.

[5] Indeed, State Street now argues that all of the damages that it was held liable for in the ERISA Decision accrued after PRIAC was fully aware of the Bond Fund's risk profile in July 2007.  State St.'s Opp'n at 9-10.

"cast[ing] blame on State Street through defamatory statements."[6]  Compl. at ¶ 33.  Judge

Holwell found that triable issues of fact existed only as to six of these statements.  PRIAC's

other statements were privileged as a result PRIAC's common interest with the Plans arising out

of their business relationship.  SJ Decision at 560-62.  With regard to the six statements still at

issue, however, Judge Holwell found that they would not have been privileged if PRIAC made

them with "actual malice," id. at 561 n.27, which requires a factual determination that the

declarant had "knowledge that [the statement] was false or [made the statement] with reckless

disregard of whether it was false or not."  Id. at 560 (quoting N.Y. Times Co. v. Sullivan, 376

U.S. 254, 279-280 (1964)).  PRIAC argues that the ERISA Decision made clear that these

statements are "substantially true," and therefore cannot form the basis of a defamation claim.

PRIAC's Mem. of Law at 21-25.

## ANALYSIS

### I.     Law of the Case Doctrine

*A.     Legal Standard*

The law of the case doctrine applies "when a court reconsiders its own ruling on an issue

in the absence of an intervening ruling on the issue by a higher court.  It holds that when a court

has ruled on an issue, that decision should generally be adhered to by that court in subsequent

stages in the same case, unless cogent and compelling reasons militate otherwise."  U.S. v.

Quintieri, 306 F.3d 1217, 1226 (2d Cir. 2002) (internal quotations omitted).  "A district court

may revisit [summary judgment] decisions but with the caveat that 'where litigants have once

battled for the court's decision, they should neither be required, nor without good reason

permitted, to battle for it again.'"  Bergerson v. N.Y. State Office of Mental Health, 652 F.3d

---

[6] State Street initially identified twenty four statements, one of which was made internally at PRIAC but not communicated externally.  See S.J. Decision at 559 (defamatory statement must be made to a third party) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508 (Mass. 2003)).

277, 288 (2d Cir. 2011) (quoting <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 953 (2d Cir. 1964)).

Cogent and compelling reasons to revisit an earlier decision are generally found only where there

is "'an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent a manifest injustice.'" <u>Official Comm. of Unsecured Creditors of</u>

<u>Color Tile, Inc. v. Coopers & Lybrand LLP</u>, 322 F.3d 147, 167 (2d Cir., 2003) (quoting <u>Virgin</u>

<u>Atl. Airways Ltd. V. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)); <u>see also</u>

<u>Bergerson</u>, 652 F.3d at 288 ("generally, there is a strong presumption against amendment of

prior orders.").

### B.   Contribution

#### 1.   <u>Joint Liability</u>

PRIAC argues that Judge Holwell held that PRIAC's liability for contribution requires

State Street to prove that it acted jointly with PRIAC in breaching their fiduciary duties to the

Plans. Judge Holwell found that State Street violated its fiduciary duties through improper

investment decisions by "fail[ing] to manage the Bond Funds 'with [the requisite] care, skill,

prudence, and diligence under the circumstances then prevailing,'" ERISA Decision at 649

(quoting 29 U.S.C. § 1104(a)(1)(B)), and by investing in a manner that "resulted in undiversified

risk for the Bond Funds." <u>Id.</u> at 652. It is undisputed that PRIAC played no role in State Street's

decisions regarding the Bond Fund's investments and therefore shares no culpability for these

violations.

That is not dispositive, however, because PRIAC omits the theory on which the SJ

decision actually relied in finding that "State Street and PRIAC may have failed jointly to fulfill

[an] obligation" to the Plans. SJ Decision at 554. Joint failure would make contribution

available to State Street. It argues that, regardless of the propriety of its investment strategy, as

discussed in the ERISA Decision, PRIAC was fully aware of the Bond Funds' asset allocations by mid-July 2007.  Accordingly, PRIAC was obligated to disclose this information to the Plans and breached its duty by not doing so, exacerbating the Plans' losses.  State Street could not communicate the information directly to the Plans itself because of PRIAC's  policy of not providing the names of its clients to anyone, and its refusal to provide that information to State Street when it was requested.  Id. at 526.  State Street was therefore reliant on PRIAC, functioning as an intermediary, to relay information to the Plans.  Id.  at 551.

Judge Holwell denied PRIAC's motion for summary judgment, holding that "[a]lthough the duties of State Street and PRIAC are not coextensive, they overlap, and PRIAC's claim of mismanagement by State Street also encompasses an element of nondisclosure to the Plans."  Id. at 551.  State Street's contribution claim against PRIAC was not barred "based solely on the idea that they owed wholly separate duties" to the Plans because, "to the extent an element of the claim relies on information not reaching the Plans, it walks too fine a line to carve out PRIAC's piece of the nondisclosure chain from the Plans' claim against State Street" given that "State Street was dependent upon PRIAC to deliver information to the Plans that State Street provided to PRIAC."  Id. at 551-52.  Rather, Judge Holwell found that there was a "limited" disclosure obligation because "the Plan's reliance on previous documents sent by PRIAC incorporating information from State Street may have misled the Plans into believing that the risk profile of their investments differed from the actual risk profile.  In such a case, an affirmative duty to disclose merely serves to correct the misleading disclosures already in existence."  Id. at 554.

Judge Holwell found at least three disputed questions of fact that precluded granting summary judgment on the issue of whether State Street, PRIAC, or both, had breached their disclosure obligations to the Plans as the financial crisis began in 2007.  First, the parties dispute

6

the significance of a spreadsheet PRIAC sent to State Street on July 12, 2007 that could have been used to determine the amount of leverage in the IBF.  SJ Decision at 530-31, 556.  Second, there were "issues of material fact as to the extent of PRIAC's knowledge of State Street's investment strategy for the Bond Funds" following a conference call the parties held on July 18, 2007.  Id. at 555-56.  Third, Judge Holwell found that "questions remain as to the reasonableness of PRIAC's conduct during the period between August 2," when it received a report from State Street disclosing the level of the Bond Funds' underperformance, "and August 20, when PRIAC . . . began providing extensive information about the Bond Funds to the Plans."  Id. at 556.  In sum, Judge Holwell concluded that many of the facts surrounding the alleged nondisclosure to the plans "are subject to a reasonable interpretation that finds that PRIAC violated a duty of disclosure in July 2007 and one that finds that it did not."  Id. at 557; see also id. at 536-37 (discussing other communications between PRIAC and State Street regarding the Bond Funds in July and August 2007).

The ERISA Decision did not answer any of these three questions; instead it addressed only "State Street's [d]isclosures to [i]nvestors *[t]hrough June 2007*," ERISA Decision at 641 (emphasis added), and explicitly stated that it "expresse[d] no opinion on the adequacy of . . . disclosures following this time, *evidence of which ha[d] not been presented to the Court*."  Id. at 641 n.19 (emphasis added).  While PRIAC submits that the ERISA Decision's factual findings "make it possible to dispose of State Street's remaining claims," PRIAC's Mem. of Law at 11, this is flatly contradicted by its own admission that "[w]ith some exceptions, the evidence [reflected in the ERISA Decision] was limited to State Street's management of the bond funds and its communications to PRIAC about the bond funds *through June 2007*."[7]  Id. at 2-3

---

[7] Indeed, during the October 2011 trial, PRIAC repeatedly objected to the admission of evidence relating to conduct occurring in July and August 2007.  See, e.g. Trial Tr. at 158:1-4; 341:1-3; 344:22-23; 1240:15-23.

(emphasis added).  Notably, PRIAC's argument that the ERISA Decision set forth sufficient findings of fact to allow joint liability to be addressed on summary judgment is belied by PRIAC's own brief, which fails to cite any findings of fact made by Judge Holwell in its discussion of "undisputed facts" regarding information State Street provided to PRIAC and PRIAC's reaction to said information in July and August 2007, see id. at 7-9, or with regards to PRIAC's knowledge of whether the IBF was a "passive," "enhanced," or "active" fund.  See id. at 10; see also Trial Tr. at 312:13-14 (PRIAC objecting to evidence regarding IBF's categorization as "not part of this trial.").

The ERISA Decision does not address the subject matter of PRIAC's motion for summary judgment on the issue of joint liability.  Disputed issues of fact remain, necessitating trial on this claim.  PRIAC's motion for summary judgment regarding joint liability is therefore denied.

## 2.  Substantially More at Fault

PRIAC argues that "State Street was substantially more at fault for the violations described in the ERISA Decision than PRIAC," and that after the October 2011 trial, "there can be no genuine dispute that PRIAC did not know that State Street had breached its fiduciary duties."  PRIAC's Mem. of Law at 18-19; see also SJ Decision at 557 ("'Where a breach of trust is committed and one of two trustees is substantially more at fault than the other, although both are liable to the beneficiary for the breach of trust, the loss should ultimately be borne by the trustee who is more at fault.'" (quoting Restatement (Second) of Trusts § 258 cmt. d)).  Again, PRIAC focuses on State Street's role in managing the Bond Funds, discussed at length in the ERISA Decision, but fails to explain how and why the ERISA Decision alters Judge Holwell's prior determination that "PRIAC could be seen to have had control over information State Street

gave it" in July and August, 2007.  SJ Decision at 558.  If so, PRIAC's "failure to take corrective

action [in July or August] could have exacerbated the Plan's losses significantly beyond those

incurred up until that point."  Id..  As discussed supra, the ERISA Decision did not address State

Street's disclosures to PRIAC in July and August, 2007 or PRIAC's alleged failure to pass on

information to the Plans that it had obtained from State Street.

       PRIAC cites four cases for the proposition that this Court should reject State Street's

contribution claims because State Street's role as the sole decision-maker regarding investments

necessitates finding that it is substantially more at fault than PRIAC.  PRIAC's Mem. of Law at

19 (citing Scalp & Blade, Inc. v. Advest, Inc., 755 N.Y.S.2d 140 (N.Y. App. Div. 2002); In re

Hyde Trust, 458 N.W.2d 802 (S.D. 1990); Free v. Briody, 732 F.2d 1331 (7th Cir. 1984));

PRIAC's Reply Mem. of Law at 8 (citing B.P. Corp. N. Am. Inc. Sav. Plan Inv. Oversight

Comm. v. N. Trust Invs., N.A., No. 08 Civ. 6029, 2010 U.S. Dist. LEXIS 12379 (N.D. Ill. Feb.

10, 2010); Hyde, 458 N.W.2d at 806).  Judge Holwell previously found three of these cases

inapposite because they dealt with situations where the defendant-fiduciary played a more

passive role than PRIAC is alleged to have done.  SJ Decision at 557-58 ("Free, BP Corp., and

Scalp & Blade do not involve a fiduciary who served as the conduit of information between [the]

investment manager and benefit plans and are therefore distinguishable.").  The Hyde case is

similarly unavailing, as it involved a suit between co-trustees where the defendant-trustee "did

not know about the [plaintiff-trustee's breach of fiduciary duty] until after the [trust's] losses

were sustained."  Hyde, 458 N.W.2d at 806.  Here, PRIAC is alleged to have failed to act despite

having been made aware of State Street's improper investment decisions *before* the Plans' losses

were sustained.  What PRIAC knew, and when PRIAC knew it, are questions of fact that remain

unanswered following the ERISA Decision.  These unresolved factual questions precluded the

prior motion for summary judgment on the basis of State Street being substantially more at fault than PRIAC, and nothing in Judge Holwell's ERISA Decision purported to answer them. PRIAC's motion for summary judgment regarding comparative levels of fault is therefore denied.

### C.   Defamation

State Street's defamation claims are governed by Massachusetts law.  SJ Decision at 558-559.  "To withstand a motion for summary judgment for defamation, a plaintiff must show that: (a) the defendant made a statement, concerning the plaintiff, to a third party . . . (b) [t]he statement could damage the plaintiff's reputation in the community . . . (c) [t]he defendant was at fault in making the statement . . . [and] (d) [t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'"  Ravnikar, 782 N.E.2d at 510-11. "[A] plaintiff may recover noneconomic losses, including . . . damage to reputation" for "statements that may prejudice the plaintiff's profession or business."  Id.  at 511.  "A factual statement need not state the precise truth.  Thus, when a statement is substantially true, a minor inaccuracy will not support a defamation claim."  Reilly v. Associated Press, 797 N.E.2d 1204, 1211 (Mass. App. Ct. 2003).  "'Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  LaChance v. Boston Herald, 942 N.E.2d 185, 189 (Mass App. Ct. 2011) (quoting Masson, 501 U.S. at 517).

Judge Holwell found that the allegedly defamatory statements identified by State Street were subject to a conditional privilege arising out of PRIAC's business relationship with the Plans, due to their "common interest in the Bond Funds and State Street's management of them." SJ Decision at 560.  Because State Street did not allege that PRIAC engaged in "unnecessary,

unreasonable, or excessive publication," Judge Holwell only addressed whether PRIAC acted with "actual malice" in determining whether the privilege was applicable.  Id.  The statements would have been made with "actual malice" if PRIAC made them "with a 'high degree of awareness of [their] probable falsity'" or "out of some base ulterior motive."  Id.  (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974)).  Judge Holwell found that all but six of the allegedly defamatory statements were subject to the common-interest privilege.  See id. at 560-621.

All of the remaining statements "relate to State Street's investment strategy" and what PRIAC knew about it.  Id. at 561 n.27.  Some of these statements claim that PRIAC became aware of State Street's actual investments on an August 22, 2007 conference call, while others describe it more broadly as occurring in "mid-August."  State Street claims that that this occurred in July 2007.  Judge Holwell previously denied summary judgment as to these statements because, "for many of the same reasons that material issues of fact remain with respect to the contribution claim, issues of fact remain with respect to the truth of these statements as well." Id. at 562.  The October 2011 trial did not address the timing or substance of any disclosures made after June 2007 and thus adds no new facts to the record that were not available to Judge Holwell at the time of the SJ Decision.  ERISA Decision at 641 n.19

PRIAC argues that even if State Street had provided full disclosure to it in mid-July, summary judgment would still be appropriate because "[t]he additional impact on a reader of a reference to State Street's disclosure of extensive leverage and subprime investments in the Bond Funds in 'mid-August' rather than in 'mid-July' would be minimal" considering that "State Street managed the Bond Funds under a different, riskier investment strategy for over a year without disclosing that important change to PRIAC."  PRIAC's Mem. of Law at 23.  In support

of this assertion, PRIAC cites Global Relief Found. v. N.Y. Times, 390 F.3d 973, 987 (7th Cir. 2004), which found several reports identifying the plaintiff alternatively as under investigation by the federal government for alleged terrorist ties or having been found by the government to have terrorist ties to be substantially true where the plaintiff was in fact under investigation and "[t]he only inaccuracy in the articles [wa]s the timing of the government's official actions against [the plaintiff which] did no more harm to [the plaintiff] than the true statements in the articles."

Global Relief is distinguishable from the instant case. The court in Global Relief did not examine whether there was any particular significance to the three-month discrepancy regarding when the plaintiff was added to a list of terrorist-funding organizations. It did not examine whether it was any more damaging for news organizations to report that this occurred in September 2001 than it would have been to correctly report that it occurred in December 2001. Here, however, the timing of State Street's disclosures to PRIAC is of great import. The remaining statements allege that State Street concealed its investment strategy from PRIAC while the Bond Funds lost money and while PRIAC affirmatively sought the information in question from State Street. As discussed supra, State Street argues that it made a full disclosure to PRIAC by mid-July, rather than in mid-August, and that if PRIAC had passed this information on to the Plans themselves, the Plans' losses would have been mitigated, if not eliminated entirely. Though a matter of weeks is a relatively short period of time in the context of PRIAC and State Street's multi-year relationship, the disputed questions of fact regarding these few weeks in particular are crucial in properly allocating responsibility for the Plan's financial losses between State Street and PRIAC. If State Street disclosed its investment approach to PRIAC prior to August 22, 2007, PRIAC's statements would not have been "substantially true."

12

Because questions of fact remain regarding the timing of State Street's disclosures to PRIAC,

PRIAC's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated, PRIAC's motion for summary judgment is denied.  The Clerk of

the Court is directed to terminate the motion at Docket #341.


Dated: New York, New York

November 19, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge

13