UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE STATE STREET BANK AND<br>TRUST CO. FIXED INCOME FUNDS<br>INVESTMENT LITIGATION | MDL No. 1945 |
| PRUDENTIAL RETIREMENT INSURANCE<br>AND ANNUITY COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>STATE STREET BANK & TRUST<br>COMPANY,<br><br>  Defendant. | No. 07 Civ. 8488 (PAC) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR ENTRY OF FINAL JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) OR FOR
CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL BACKGROUND .............................................................................................. 3

      A.      Nature of the Dispute ............................................................................................ 3

      B.      The Phase One Trial .............................................................................................. 3

      C.      Remaining Issues after Trial ................................................................................. 5

ARGUMENT ................................................................................................................................ 6

I.      THERE IS NO JUST REASON TO DELAY AN IMMEDIATE APPEAL ...................... 6

II.     ALTERNATIVELY, THE COURT SHOULD GRANT CERTIFICATION
        PURSUANT TO 28 U.S.C. § 1292(b) ............................................................................. 10

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Calif. Ironworkers Field Pension Trust v. Loomis, Sayles & Co.*,
   259 F.3d 1036 (9th Cir. 2001) ...............................................................................4, 5, 8, 10

*Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*,
   No. 99-Civ.-8934(RWS), 2003 WL 221746 (S.D.N.Y. Jan. 31, 2003)....................................7

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980)................................................................................................................6, 7

*Dardaganis v. Grace Capital, Inc.*,
   889 F.2d 1237 (2d Cir. 1989)....................................................................................................5

*DeBruyne v. Equitable Life Assur. Soc'y of the U.S.*,
   920 F.2d 457 (7th Cir. 1990) ..................................................................................................10

*Ginett v. Computer Task Grp., Inc.*,
   962 F.2d 1085 (2d Cir. 1992)....................................................................................................7

*GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*,
   895 F.2d 729 (11th Cir.1990) ...................................................................................................5

*Grand River Enterprises Six Nations Ltd. v. Pryor*,
   425 F.3d 158 (2d Cir. 2005).....................................................................................................6

*In re State St. Bank & Trust Co. ERISA Litig.*,
   772 F. Supp. 2d 523 (S.D.N.Y. 2011).......................................................................................3

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990).....................................................................................................10

*Wilmington Trust Co. v. Aerovias de Mexico, S.A.,*
   *893* F. Supp. 215 (S.D.N.Y. 1995)...........................................................................................7

**STATUTES**

28 U.S.C. § 1292(b) ......................................................................................................................2, 10

Employee Retirement Income Security Act of 1974 .........................................................................1

**OTHER AUTHORITIES**

Fabozzi, Frank, Ed. THE HANDBOOK OF FIXED INCOME SECURITIES...............................................8

Federal Rule of Civil Procedure 54(b)...................................................................................... passim

Restatement (Second) of Trusts ................................................................................................1, 5

Case 1:07-cv-08488-PAC-JLC   Document 357   Filed 12/13/12   Page 4 of 16

Pursuant to Federal Rule of Civil Procedure 54(b), Defendant State Street Bank and Trust Company ("State Street") respectfully submits this memorandum in support of its motion to (i) enter final judgment as to all claims against State Street, and (ii) expressly state the Court's determination that there is no just reason to delay State Street's immediate appeal from the Partial Judgment. State Street also requests that the Court stay proceedings related to the remaining claims while State Street's appeal is pending.

## PRELIMINARY STATEMENT

This case brought under the Employee Retirement Income Security Act of 1974 ("ERISA") arises from Prudential Retirement Insurance and Annuity Company's ("Prudential") allegation that State Street imprudently managed two bond funds (the "Bond Funds") by investing "too much" in bonds backed by subprime mortgages.  On February 3, 2012, Judge Holwell issued a Memorandum Opinion and Order (the "ERISA Decision") setting forth findings of fact and conclusions of law in favor of Prudential, and awarding compensatory damages in the amount of $28,143,656.  Judge Holwell noted that it was a "close question" whether Prudential should have been required, in order to meet its burden of proof, to show how much investment in bonds backed by subprime mortgages was "too much."  Despite the agreement of Prudential's own experts that some percentage investment by the Bond Funds in bonds backed by subprime mortgages was not imprudent, Prudential did not adduce any evidence to show what portion was prudent and what portion was not.  Nevertheless, the Court ordered State Street to pay damages on the *entire* amount of the subprime investment.  In so ruling, the Court departed from established precedent and from the Restatement (Second) of Trusts, which the Second Circuit has followed in construing ERISA.

On February 10, 2012, the Court issued a document captioned "Partial Judgment," pronouncing State Street's liability to Prudential consistent with the terms of Judge Holwell's ERISA Decision. The Partial Judgment resolved all claims by Prudential on behalf of its retirement plan clients (the "Plans") against State Street. The only claims that remain pending before the Court are a third-party contribution claim asserted by State Street against Prudential for its own role in causing the Plans' losses and a claim by State Street for defamation by Prudential. If State Street is correct that Prudential failed to meet its burden and prove what part of the subprime investment was "too much," the case is over. That issue is decisive because, at trial, State Street demonstrated that the Fair Fund payment to the Plans already exceeds the losses from what could possibly be deemed the imprudent excess investment in subprime. Thus, there would be no need for a second phase trial on State Street's contribution claim.

State Street respectfully submits that all the requirements are met for the Court to certify the Partial Judgment dated February 10, 2012 as a final judgment eligible for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). The ERISA case is separable from the yet-to-be-tried contribution case; indeed, the Court recognized the distinction when it fixed a cut-off of June 30, 2007 for evidence on Prudential's ERISA claims. Moreover, the ERISA case was brought by Prudential in its fiduciary capacity on behalf of the Plans, while the contribution case is asserted as a third-party complaint against Prudential in its individual capacity. The interests of sound judicial administration support staying the contribution and defamation claims while State Street appeals the Partial Judgment, which could render trial on State Street's contribution claim unnecessary. In the alternative, State Street requests that the Court certify Judge Holwell's ERISA Decision to the Second Circuit pursuant to 28 U.S.C. § 1292(b).

## **PROCEDURAL BACKGROUND**

A.   *Nature of the Dispute*

On October 1, 2007, Prudential commenced this action under sections 409(a) and 502(a)(2) and (3) of ERISA against State Street. *See* Dkt. No. 1. Prudential sued in its capacity as an ERISA fiduciary on behalf of the approximately 200 Plans that, through Prudential, invested in the two Bond Funds. Prudential's claims center on its allegation that State Street imprudently concentrated the Bond Funds' holdings in too many so-called "subprime" investments. In response to Prudential's Complaint, State Street asserted *inter alia* a contribution counterclaim against Prudential alleging that Prudential's *own* breaches of fiduciary duty – in failing to pass along to the Plans the material information provided by State Street regarding the Bond Funds' subprime exposure – made Prudential substantially more at fault than State Street for the Plans' investment losses. In an Order dated March 28, 2011, Judge Holwell concluded that the claim against Prudential was more properly styled a third-party claim, given that it was asserted against Prudential in its own capacity, and granted State Street leave to re-plead accordingly. *In re State St. Bank & Trust Co. ERISA Litig*., 772 F. Supp. 2d 523, 563 (S.D.N.Y. 2011). State Street has also asserted a defamation claim against Prudential, which remains pending following the Court's recent denial of Prudential's motion for summary judgment on that claim. *See* Opinion & Order at 13, Dkt. No. 353 (Nov. 19, 2012).

B.   *The Phase One Trial*

Shortly before the scheduled trial date, the Court adopted a phased trial structure that bifurcated trial on the ERISA claims against State Street from State Street's contribution claim against Prudential. A bench trial was held from October 11 through October 20, 2011, focusing on whether State Street's Bond Funds were prudently managed and what, if any, damages should

be awarded to the Plans on top of a $48.59 million payment that Prudential had already received from State Street through a Fair Fund established under the purview of the Securities and Exchange Commission. Judge Holwell decided that, in light of State Street's pre-July 2007 disclosures to Prudential, State Street breached its fiduciary duty to manage the Bond Funds prudently and its fiduciary duty to diversify the Bond Funds. Judge Holwell awarded damages to the Plans over and above the compensation they had already received through the Fair Fund.

During trial, State Street moved for Judgment on Partial Findings under Rule 52(c) that Prudential failed as a matter of law to meet its burden of proving what losses resulted from the allegedly excessive portion of the subprime exposure – and thus whether such losses exceeded the Fair Fund payment. Dkt. No. 310. By that time, Prudential had conceded that it was not imprudent for the Bond Funds to have invested to some degree in bonds backed by subprime mortgages. Judge Holwell conceded that it was a "close" legal question whether Prudential had met its burden of proving an "amount of damages . . . resulting from" the alleged over-concentration of subprime exposure in the Bond Funds. ERISA Decision at 658. Nevertheless, Judge Holwell concluded that Prudential should be awarded its damages as if the *entire portfolio* in both funds had been imprudently managed. *Id*. at 659.[1]

Judge Holwell's decision is squarely at odds with the Ninth Circuit's decision in *Calif. Ironworkers Field Pension Trust v. Loomis, Sayles & Co.*, 259 F.3d 1036 (9th Cir. 2001) ("*Loomis Sayles*") – a case that Judge Holwell recognized is "in many respects similar" to the case at bar. ERISA Decision at 658. In *Loomis Sayles*, the plaintiff plan alleged that the defendant investment manager had violated ERISA by imprudently over-concentrating in a single type of security, called "inverse floaters." The Ninth Circuit overruled the district court's

---

[1] Judge Holwell deferred ruling on Prudential's requests for attorneys' fees and prejudgment interest as "premature," given that the contribution and defamation claims remain to be tried. *Id*. at 660.

award of damages for the entire portfolio, holding that it would be "illogical and unjust" to force the investment manager to pay damages even for the portion of the portfolio that would not have been imprudent. *Loomis Sayles* at 1047. This concept, called the "permissible percentage," is reflected in the Restatement (Second) of Trusts, and has been implicitly applied as well by the Second Circuit in *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1243 (2d Cir. 1989) (recovery limited to the difference between the fund's losses and those it would have experienced if the investment adviser had followed the mandated 50% limit on equity securities) and the Eleventh Circuit in *GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.,* 895 F.2d 729, 733-34 (11th Cir.1990) (recovery limited to the difference between the fund's losses and those it would have experienced if the adviser had limited the fund's investment in long-term treasuries to a prudent level, namely, 35%). Prudential has failed to offer any evidence quantifying a "permissible percentage" versus an "impermissible percentage," let alone met its burden to prove that its losses resulting from such "impermissible percentage" exceeded its Fair Fund payment. In contrast, State Street offered substantial evidence that losses attributable to any conceivable "impermissible percentage" were well below Prudential's Fair Fund payment. Thus, if the Second Circuit were to apply this precedent here, the Court and the parties would avoid a lengthy contribution trial.

      C.     *Remaining Issues after Trial*

On February 10, 2012, this Court issued (i) a document captioned "Partial Judgment," which finally determined Prudential's ERISA claims on behalf of the Plans against State Street, and decreed that State Street is liable to Prudential in the amount of $28,143,656; and (ii) a document captioned "Notice of Right to Appeal," informing State Street that it has 30 days from the entry of judgment to file a notice of appeal with the Second Circuit. Dkt. Nos. 334 & 334-1. The Partial Judgment does not, however, include language expressly stating the Court's

determination that there is no just reason to delay the appeal and that the judgment is therefore "final" and appealable pursuant to Federal Rule of Civil Procedure 54(b).

State Street therefore brings this motion asking the Court to certify the Partial Judgment for immediate appeal by amending the Partial Judgment to state that there is no just reason to delay the appeal and that the judgment is "final" and appealable pursuant to Federal Rule of Civil Procedure 54(b). State Street also asks the Court to stay all proceedings related to the defamation and contribution claims while State Street's appeal is pending. As outlined below, if State Street prevails on appeal, its third-party contribution claim would be mooted.

## ARGUMENT

**I.     THERE IS NO JUST REASON TO DELAY AN IMMEDIATE APPEAL.**

Under Rule 54(b), the Court may enter "final judgment as to one or more but fewer than all of the claims or parties" if the Court determines "that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). Rule 54(b) thus allows entry of final judgment when: (1) there are multiple claims or parties; (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined; and (3) there is no just reason for delay. *Grand River Enterprises Six Nations Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005).

The Court's Partial Judgment of February 10, 2012 fully adjudicated Prudential's ERISA claims against State Street. The Partial Judgment is therefore "'final' because it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (*quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). Since the Partial Judgment "ends the litigation [of the claims against State Street] on the merits and leaves nothing for the court to do but execute the judgment," the

6

Partial Judgment is eligible for 54(b) certification. *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992) (*quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). [2]

Furthermore, sound principles of judicial economy and efficiency support issuing a Rule 54(b) judgment at this time. If the Second Circuit agrees with State Street on the "close" question of whether State Street can be held liable under ERISA for investment losses on that portion of the portfolios that was *not* imprudently managed, there will be no need for a trial on State Street's contribution claim. This is because Prudential failed to prove that losses "resulting from" the portion of the portfolios that *was* imprudently managed – the "impermissible percentage" – exceeded the Fair Fund settlement. Thus, an immediate appeal would spare the Court, the parties, and witnesses the time and expense of participating in another trial that could well prove wholly unnecessary. [3]

When granting a Rule 54(b) judgment, the court may consider whether the claims under review are "separable from the others remaining to be adjudicated," and whether an "appellate court would have to decide the same issues more than once." *Curtiss-Wright*, 446 U.S. at 8. Here, the legal and factual issues involved in the ERISA and contribution claims are separable. The ERISA claim was based on State Street's conduct prior to June 30, 2007, *i.e.*, its management of the Bond Funds. In contrast, the contribution claim focuses on *Prudential's conduct after* June 30, 2007, *i.e.*, whether it complied with its fiduciary duties to keep the Plans informed of the information provided to it by State Street about the Bond Funds. Indeed, it is

---

[2] The fact that Prudential's claims for attorneys' fees and prejudgment interest are still pending does not prevent the Court from ruling that the judgment is final for purposes of Rule 54(b ). *See Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, No. 99-Civ.-8934(RWS), 2003 WL 221746, at *3 (S.D.N.Y. Jan. 31, 2003) ("[E]ntry of a judgment is appropriate under Rule 54(b) where a court has issued a decision with respect to the merits and retains jurisdiction only with respect to the award of attorneys' fees[.]"); *Wilmington Trust Co. v. Aerovias de Mexico, S.A., 893* F. Supp. 215, 223 (S.D.N.Y. 1995) (finding that "there is no just reason for delay in the entry of a final judgment . . . given that the largely ministerial task of determining the amount and reasonableness of attorney's fees" would not affect the judgment on the merits).

[3] Furthermore, a win for State Street on appeal may well facilitate settlement of State Street's defamation claim, which provides additional grounds for granting 54(b) certification. *See Curtiss-Wright*, 446 U.S. at 8, n. 2.

notable that, whereas Prudential as plaintiff sues in its capacity as representative of the retirement plans, State Street's contribution claim is against Prudential in its own name – a distinction recognized by Judge Holwell in ordering that State Street's contribution counterclaim should be re-pled as a third-party claim.  Therefore, there is little, if any, risk that the appellate court would have to decide the same issues twice.

Immediate appeal is particularly appropriate in this instance because of the acknowledged "close" nature of the legal question on which the Court's ERISA Decision was premised, and the substantial authority contrary to Judge Holwell's conclusion on that issue.  *See supra* at 5.  Prudential admitted there was a "permissible percentage" of subprime in the Bond Funds, but failed to quantify either that percentage or the losses resulting from the portion of the investment that was imprudent or "impermissible," which *Loomis Sayles* requires.  *See* ERISA Decision at 659 ("PRIAC's [damages] calculation may not reflect the highest permissible percentage of subprime securities… .").

Prudential asserts that Judge Holwell "cured" any such issue by comparing the two Bond Funds against two funds that had "prudent" levels of subprime, at 14% and 7%.  Prudential's argument is, however, entirely without merit.  First, there was absolutely no evidence that a subprime concentration above 14% or 7% was imprudent.[4]  Further, the two comparison fund portfolios had Asset-Backed Securities (designated as ABS), not necessarily subprime.  Again, there was no testimony or evidence that these percentages consisted of subprime bonds, let alone constituted a demarcation of the prudent level of investment in such bonds.[5]

---

[4] Prudential's expert witnesses on liability, Dr. Marshall Blume and Dr. Christopher Culp, both conceded they did not consider those questions.  *See* State Street's [Updated] Memorandum of Law in Support of Motion under Rule 52(C) for Judgment on Partial Findings 5-12, Dkt. No. 310 (Oct. 16, 2011).  Moreover, Prudential offers no explanation why 7% would be a prudent concentration of subprime in one of the two funds, and 14% in another.
[5] There was unchallenged testimony from State Street's expert that ABS includes a variety of bond types other than those collateralized by subprime mortgages, including bonds collateralized by credit card debt, student loans, and auto loans.  Trial Tr. 1142 7-11; *see also* Fabozzi, Frank, Ed. THE HANDBOOK OF FIXED INCOME SECURITIES, 7th Ed,

This legal issue is determinative because, as described above, having admitted to the existence of a "permissible percentage" of subprime bonds in the Bond Funds, Prudential failed to meet its burden to quantify that percentage or the losses resulting from that portion that was imprudent. In contrast, State Street's evidence showed that those losses would be less than the amount the Plans have already obtained through the Fair Fund. The uncontested evidence at trial demonstrated that the Bond Funds could have been substantially exposed to subprime while staying within the risk parameters (*i.e.*, a 75 basis point "maximum" tracking error) that were allegedly communicated to Prudential. Trial Tr. 136:21-138:17, 1089:20-1091:1. Based on industry-standard risk metrics and actual performance, the vast majority of State Street's subprime exposure – which was 95% in AAA and AA bonds – was low-risk. Trial Tr. 382:6-385:2, 891:5-893:24. State Street has reinforced that point by showing that absent a single, high-volatility derivative trade – known as the BBB ABX index – the Bond Funds were managed within disclosed parameters prior to the market crisis. Trial Tr. 1090:5 – 1091:1; 138:12 – 20; 927:2-9; 1017:15-1018:4; 1028:22-1029:3; 507:22-25.

Accordingly, State Street will argue to the Second Circuit that Prudential, as a matter of law, has failed to carry its burden to prove that State Street caused the Plans to suffer damages in excess of the amount the Plans received from the Fair Fund. Prudential simply does not define – much less prove – the extent of the losses resulting from the breach. If State Street prevails on appeal, then its claim against Prudential for contribution will be moot and a trial on that issue will be unnecessary because State Street is not seeking to recover damages already paid to Prudential through the Fair Fund. Accordingly, the interests of judicial economy will be served

---

p. 19 (2005) ("Three common types of asset-backed securities are those backed by credit card receivables, home equity loans, and automobile loans…[t]here are also asset-backed securities supported by a pool of manufactured homes, Small Business Administration (SBA) loans, student loans, boat loans, equipment leases, recreational vehicle  loans, senior banks loans…").

if this Court amends the Partial Judgment of February 10, 2012, and certifies the issues for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b).[6]

## II.  ALTERNATIVELY, THE COURT SHOULD GRANT CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(B).

If the Court deems the Partial Judgment of February 10, 2012, not "final" under Rule 54(b), State Street requests that the Court certify the ERISA Decision to the Second Circuit pursuant to 28 U.S.C. § 1292(b).  The ERISA Decision presents a controlling question of law: whether the "permissible percentage" standard adopted in *Loomis Sayles* applies in the Second Circuit to ERISA cases in which an investment manager is alleged to have violated its duties of prudence and diversification by investing "too much" in a single type of security.  That question is controlling in that a decision for State Street on appeal would be dispositive.  *See supra* at 8-9. As discussed *supra* at 4-5, the question features substantial grounds for difference of opinion, as reflected by Judge Holwell's decision to reject the Ninth Circuit's "permissible percentage" standard and award Prudential all of its damages. Finally, because a win for State Street moots a contribution trial, an immediate appeal would materially advance the termination of litigation. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24-25 (2d Cir. 1990).

## CONCLUSION

For the reasons set forth above, State Street respectfully requests pursuant to Federal Rule of Civil Procedure 54(b) that the Court amend its Partial Judgment dated February 10, 2012 in order to permit State Street to pursue its appeal to the Second Circuit.  State Street also requests that the Court stay the trial of the remaining claims while State Street's appeal is pending.

---

[6] State Street also intends to argue on appeal that Judge Holwell misapplied the ERISA standards of prudence and diversification by applying hindsight reasoning and ignoring the careful process by which State Street investment managers selected the subprime mortgage-related investments in which the Bond Funds concentrated.  *See DeBruyne v. Equitable Life Assur. Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) (ERISA "requires prudence, not prescience.").  Regardless of the theory, a victory for State Street would moot the contribution trial.

Dated:  December 13, 2012	ROPES & GRAY LLP


	/s/ Harvey J. Wolkoff
	Harvey J. Wolkoff
	Robert A. Skinner
	Geoffrey M. Atkins
	Prudential Tower
	800 Boylston Street
	Boston, MA  02199-3600
	Tel: (617) 951-7000
	Fax: (617) 951-7050
	harvey.wolkoff@ropesgray.com
	robert.skinner@ropesgray.com
	geoffrey.atkins@ropesgray.com

	*Attorneys for Defendant State Street Bank and Trust Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2012, I caused a true and correct copy of the foregoing document to be served upon all counsel of record by ECF.

/s/ Allison M. Boscarine
Allison M. Boscarine
